**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P** | § | Case No. **19-34054-SGJ11** |
| **Charitable DAF Fund, L.P et al** | | |
| Appellant | § | |
| vs. | § | 21-03067 |
| **Highland Capital Management, L.P** | § | |
| | | |
| Appellee | § | **3:23-CV-01503-B** |

[167] Order granting Defendant Highland Capital Management, L.P.'s Renewed motion to dismiss adversary proceeding (related document # 122) Entered on 6/25/2023.

**Volume 32**

**APPELLANT RECORD**

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.*
*and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| CHARITABLE DAF FUND, L.P. AND CLO | § | |
| HOLDCO, LTD., DIRECTLY AND DERIVATIVELY | § | |
| | § | |
| Plaintiffs, | § | Adversary Proceeding No. |
| | § | |
| vs. | § |  21-03067-sgj11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| HIGHLAND HCF ADVISOR, LTD., AND | § | |
| HIGHLAND CLO FUNDING LTD., NOMINALLY | § | |
| | § | |
| Defendant. | § | |
| | § | *INDEX* |

## APPELLANTS' SECOND AMENDED STATEMENT OF ISSUES
### AND DESIGNATION OF RECORD ON APPEAL

Pursuant to Rules 8009(a)(1)(A)-(B) and (a)(4) of the Federal Rules of Bankruptcy

Procedure, The Charitable DAF Fund, L.P. and CLO Holdco, Ltd. ("Appellants") hereby designate

the following items to be included in the record and identify the following issues with respect to

---

their appeal of the Order Granting Defendant Highland Capital Management, L.P.'s "Renewed

Motion to Dismiss Complaint" [Adv. Proc. Doc. No. 122] which was entered by the United States

Bankruptcy Court for the Northern District of Texas on June 25, 2023.

## I.   STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

- Whether the Bankruptcy Court had jurisdiction to rule on Highland Capital Management L.P.'s Renewed Motion to Dismiss Complaint

- Whether the Renewed Motion to Dismiss Complaint was improperly granted

## II.   DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD

*Vol. 1*
*000001*

1.   Notice of Appeal for Bankruptcy Case Adversary Proceeding No. 21-03067-sgj11 [Doc. 168].

*000042*

2.   The judgment, order, or decree appealed from: Memorandum Opinion and Order Granting Defendant Highland Capital Management, L.P.'s "Renewed Motion to Dismiss Complaint" [Adv. Proc. Doc. No. 122] [Doc. 167].

*000080*

3.   Docket Sheet kept by the Bankruptcy Clerk.

4.   Documents listed below and as described in the Docket Sheet for Bankruptcy Case Proceeding No. 21-03067-sgj.

*Vol. 2*

| No. | Date Filed | Docket No. | Description/Document Text |
|---|---|---|---|
| 1 | 9/29/21 | 1 | (36 pgs; 3 docs) Adversary case 21-03067. ORDER REFERRING CASE NUMBER 21-CV-0842-B from U.S District Court for the Northern District of Texas, Dallas Division to U.S. Bankruptcy Court for Northern District of Texas, Dallas Division. Complaint by Charitable DAF Fund, LP, CLO Holdco, Ltd. against Highland Capital Management, LP, Highland HCF Advisor Ltd., Highland CLO Funding, Ltd. Fee Amount $350 (Attachments: # 1 Original Complaint # 2 Docket Sheet from 3:20-cv-0842-B) Nature(s) of suit: 02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)). (Okafor, M.) |
| 2 | 9/29/21 | 2 | (1 pg) Supplemental Document (cover sheet) by CLO Holdco Ltd., Charitable DAF Fund (RE: related document(s)1 Adversary case 21-03067) [ORIGINALLY FILED IN 21-CV-0842 AS #2 ON 04/13/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |

*000102*

*000138*

| | | | | |
|---|---|---|---|---|
| *Vol. 2*<br><br>*000139* | 3 | 9/29/21 | 6 | (93 pgs; 6 docs) MOTION for Leave to File First Amended Complaint filed by CLO Holdco Ltd., Charitable DAF Fund LP (Attachments: # 1 Exh 1_First Amended Complaint # 2 Exh 2_Motion for Authorization to Retain James Seery # 3 Exh 3_Order Approving Retention of James Seery # 4 Exh 4_Order Approving Settlement # 5 Proposed Order) (Bridges, Jonathan) (Entered: 04/19/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #6 ON 04/19/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *000232* | 4 | 9/29/21 | 22 | (7 pgs; 2 docs) MOTION for an Order to Enforce the Order of Reference filed by Highland Capital Management LP. (Attachments: # 1 Exhibit(s) A--Proposed Order) (Annable, Zachery) Modified text on 5/20/2021 (mjr). (Entered: 05/19/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #22 ON 05/19/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *000239* | 5 | 9/29/21 | 23 | (31 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re: 22 MOTION for an Order to Enforce the Order of Reference. (Annable, Zachery) Modified text on 5/20/2021 (mjr).(Entered: 05/20/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #23 ON 05/19/2021 IN U.S.DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *000270*<br><br>*Thru Vol. 6* | 6 | 9/29/21 | 24 | (926 pgs; 29 docs) Appendix in Support filed by Highland Capital Management LP re: 23 Brief/Memorandum in Support. (Attachments: # 1 Appendix 1 # 2 Appendix 2 # 3 Appendix 3 # 4 Appendix 4 # 5 Appendix 5 # 6 Appendix 6 # 7 Appendix 7 # 8 Appendix 8 # 9 Appendix 9 # 10 Appendix10 # 11 Appendix 11 # 12 Appendix 12 # 13 Appendix 13 # 14 Appendix 14 # 15 Appendix 15 # 16 Appendix 16 # 17 Appendix 17 # 18 Appendix 18 # 19 Appendix 19 # 20 Appendix 20 # 21 Appendix 21# 22 Appendix 22 # 23 Appendix 23 # 24 Appendix 24 # 25 Appendix 25 # 26 Appendix 26 # 27 Appendix 27 # 28 Appendix 28) (Annable, Zachery) Modified linkage and text on 5/20/2021 (mjr). (Entered:05/19/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #24 ON 05/19/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *Vol. 7*<br><br>*001196* | 7 | 9/29/21 | 26 | (7 pgs; 2 docs) MOTION to Dismiss Complaint filed by Highland Capital Management LP (Attachments: # 1 Exhibit(s) A--Proposed Order) (Annable, Zachery) Modified text on 5/28/2021 (jmg).(Entered: 05/27/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #26 ON 05/27/2021 IN U.S.DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |

| | | | | |
|---|---|---|---|---|
| *Vol. 7* *001203* *Thru Vol 8* | 8 | 9/29/21 | 28 | (508 pgs; 14 docs) Appendix in Support filed by Highland Capital Management LP (Attachments: # 1 Appendix 1 # 2 Appendix 2 # 3 Appendix 3 # 4 Appendix 4 # 5 Appendix 5 # 6 Appendix 6 # 7 Appendix 7 # 8 Appendix 8 # 9 Appendix 9 # 10 Appendix 10 # 11 Appendix 11 # 12 Appendix 12 # 13 Appendix 13) (Annable, Zachery) (Entered: 05/27/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #28 ON 05/27/2021 IN U.S. DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *Vol. 9* *001711* | 9 | 9/29/21 | 33 | (1 pg) Amended Civil Cover Sheet by CLO Holdco Ltd, Charitable DAF Fund LP. Amendment to 2 Supplemental Document. (Sbaiti, Mazin) Modified text on 6/23/2021 (mjr). (Entered: 06/22/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #33 ON 06/22/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001712* | 10 | 9/29/21 | 36 | (26 pgs) RESPONSE filed by CLO Holdco Ltd, Charitable DAF Fund LP re: 22 MOTION for an Order to Enforce the Order of Reference (Sbaiti, Mazin) (Entered: 06/29/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #36 ON 06/29/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001738* | 11 | 9/29/21 | 37 | (22 pgs) Appendix in Support filed by CLO Holdco Ltd, Charitable DAF Fund LP re 36 Response/Objection Response to Motion for an Order to Enforce the Order of Reference (Sbaiti, Mazin) (Entered: 06/29/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #37 ON 06/29/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001760* | 12 | 9/29/21 | 38 | (45 pgs) RESPONSE filed by CLO Holdco Ltd, Charitable DAF Fund LP re: 26 MOTION to Dismiss (Defendant Highland Capital Management, L.P.'s Motion to Dismiss Complaint) (Sbaiti, Mazin) (Entered: 06/29/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #38 ON 06/29/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001805* | 13 | 9/29/21 | 39 | (88 pgs) Appendix in Support filed by CLO Holdco Ltd, Charitable DAF Fund LP re 38 Response/Objection to Defendant Highland Capital Management, L.P.'s Motion to Dismiss Complaint (Sbaiti, Mazin) (Entered: 06/29/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #39 ON 06/29/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001893* | 14 | 9/29/21 | 42 | (12 pgs) REPLY filed by Highland Capital Management LP re: 22 MOTION for an Order to Enforce the Order of Reference (Annable, Zachery) (Entered: 07/13/2021) [ORIGINALLY FILED IN 21-CV-0842AS #42 ON 07/13/2021 IN U.S. |

| | | | | |
|---|---|---|---|---|
| | | | | DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *Vol. 9* | 15 | 9/29/21 | 43 | (852 pgs) Appendix in Support filed by Highland Capital Management LP re: 42 Reply. (Annable, Zachery) Modified text on 7/14/2021 (mjr). (Entered: 07/13/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #43 ON 07/13/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001905 thru Vol. 13* | | | | |
| *Vol. 14* | 16 | 9/29/21 | 45 | (21 pgs) REPLY filed by Highland Capital Management LP re: 26 MOTION to Dismiss (Defendant Highland Capital Management, L.P.'s Motion to Dismiss Complaint) (Annable, Zachery) (Entered:07/13/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #44 ON 07/13/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *002757* | | | | |
| *002778* | 17 | 9/29/21 | 57 | (7 pgs; 2 docs) MOTION to Dismiss and Joinder in Motion to Dismiss of Highland Capital Management, L.P. filed by Highland CLO Funding Ltd. (Attachments: # 1 Proposed Order) Attorney Paul R Bessette added to party Highland CLO Funding Ltd (pty:dft) (Bessette, Paul) (Entered: 08/30/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #57 ON 08/30/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *002785* | 18 | 9/29/23 | 58 | (12 pgs) Brief/Memorandum in Support filed by Highland CLO Funding Ltd. re 57 MOTION to Dismiss and Joinder in Motion to Dismiss of Highland Capital Management, L.P. (Bessette, Paul) (Entered: 08/30/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #58 ON 08/30/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *002797* | 19 | 9/29/23 | 59 | (80 pgs; 5 docs) Appendix in Support filed by Highland CLO Funding Ltd re 58 Brief/Memorandum in Support of Motion (Attachments: # 1 Exhibit(s) A - Jackson v Dear # 2 Exhibit(s) B – Prudential Assurance v. Newman # 3 Exhibit(s) C - Harbourvest Settlement Agreement # 4 Exhibit(s) D – Boleat Declaration) (Bessette, Paul) (Entered: 08/30/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #59 ON 08/30/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *002877* | 20 | 9/29/21 | 64 | (1 pg) ORDER OF REFERENCE: Pursuant to 28 U.S.C. § 157 and this District's Miscellaneous Order No. 33, this case is hereby REFERRED to Judge Stacey G. C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, to be adjudicated as a matter related to the consolidated Chapter 11 Bankruptcy of Highland Capital Management, L.P., Chapter 11 Case No.19-34054. (Ordered by Judge Jane J. Boyle |

| | | | | |
|---|---|---|---|---|
| *Vol. 14*<br><br>002878 | | | | on 9/20/2021) (svc) (Entered: 09/20/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #64 ON 09/20/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| | 21 | 10/19/21 | 66 | (5 pgs) Notice of hearing filed by Defendant Highland Capital Management, LP (RE: related document(s) 26 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, LP, 47 Motion to strike document filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd., 55 Motion to abate filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) Hearing to be held on 11/23/2021 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 26 and for 47 and for 55, (Annable, Zachery) (Annable, Zachery). |
| *002883*<br>*Thru Vol. 16* | 22 | 11/22/21 | 71 | (509 pgs; 2 docs) Witness and Exhibit List *for Hearing on November 23, 2021* filed by Defendant Highland Capital Management, LP (RE: related document(s) 26 Motion to dismiss adversary proceeding). (Attachments: # 1 Exhibits 1-13) (Hayward, Melissa) |
| *Vol. 17*<br><br>003392 | 23 | 11/22/21 | 72 | (2 pgs) Witness List filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 26 Motion to dismiss adversary proceeding, 47 Motion to strike (related document(s): 43 Document), 55 Motion to abate (related document(s) 1 Complaint), 69 Motion to abate *Plaintiffs' Amended Motion to Stay All Proceedings* (related document(s) 55 Motion to abate (related document(s) 1Complaint))). (Sbaiti, Mazin) |
| *003394* | 24 | 11/22/21 | 73 | (189 pgs; 4 docs) Exhibit List *for November 23, 2021 hearing* filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 47 Motion to strike (related document(s): 43 Document), 55 Motion to abate (related document(s) 1 Complaint)). (Attachments: # 1 Exhibit 1_Defendant's Memorandum of Law in Support of Motion for Reconsideration # 2 Exhibit 2_Highland Memorandum in Support of Motion to Dismiss # 3 Exhibit 3_Order (I) Confirming Fifth Amended Plan of Reorganization of Highland) (Sbaiti, Mazin) |
| *003583* | 25 | 12/7/21 | 80 | (2 pgs) Order granting Highland CLO Funding, Ltd.'s motion to dismiss adversary as a party with prejudice (related document 57) Entered on 12/7/2021. (Okafor, Marcey) Modified text on 3/11/2022 (Okafor, Marcey). |
| *003585* | 26 | 3/11/22 | 99 | (26 pgs) Memorandum of Opinion and order granting motion to dismiss the adversary proceeding (RE: related document(s) 26 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, LP). Entered on 3/11/2022 (Okafor, Marcey) |
| *003611* | 27 | 3/11/22 | 100 | (26 pgs) Order granting motion to dismiss adversary proceeding with prejudice (related document #26) Entered on 3/11/2022. (Okafor, Marcey) |

| | | | | |
|---|---|---|---|---|
| *Vol. 18* <br> *0036 37* | 28 | 3/21/22 | 104 | (29 pgs) Notice of appeal. Fee Amount $298 filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 100 Order on motion to dismiss adversary proceeding). Appellant Designation due by 04/4/2022. (Sbaiti, Mazin) |
| *0036 66* | 29 | 5/26/22 | 120 | (177 pgs; 2 docs) Support/supplemental document *Motion to Supplement Appellate Record* filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 111 Appellant designation). (Attachments: # 1 Amended Transcript of January 14, 2021 Hearing) (Sbaiti, Mazin) |
| *0038 43* | 30 | 6/9/22 | 121 | (1 pg) DISTRICT COURT Order: Case 3:22-00695-B is hereby transferred to the docket of the Honorable Judge Jane J. Boyle for consolidation with The Charitable DAF Fund LP, et al. v. Highland Capital Management LP, Case No. 3:21-cv-3129-N. Judge Karen Gren Scholer no longer assigned to case.(RE: related document(s) 86 Notice of appeal filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd., 104 Notice of appeal filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.). Entered on 6/9/2022 (Whitaker, Sheniqua) (Entered: 06/10/2022) |
| *0038 44* | 31 | 10/24/22 | 122 | (7 pgs) Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP (Annable, Zachery) |
| *0038 51* | 32 | 10/14/22 | 123 | (31 pgs) Brief in support filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)*). (Annable, Zachery |
| *Vol. 19* <br> *0038 82* <br> *Thru Vol 20* | 33 | 10/14/22 | 124 | (513 pgs; 15 docs) Support/supplemental document *(Appendix in Support of Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14) (Annable, Zachery) |
| *Vol. 21* <br> *0043 95* | 34 | 10/27/22 | 126 | (5 pgs) Notice of hearing *(Notice of Hearing and Briefing Schedule on Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, LP). Hearing to be held on 12/8/2022 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 122. (Annable, Zachery) |

| | | | | |
|---|---|---|---|---|
| *Vol. 21* *004400* | 35 | 11/18/22 | 128 | (10 pgs) Motion for withdrawal of reference. Fee amount $188, filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (Sbaiti, Mazin) |
| *004410* | 36 | 11/18/22 | 129 | (32 pgs) Response opposed to (related document(s): 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP) filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP. (Sbaiti, Mazin) |
| *004442* *Thru Vol. 22* | 37 | 11/18/22 | 130 | (254 pgs; 2 docs) Response opposed to (related document(s): 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP) filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP. (Attachments: # 1 Appendix) (Sbaiti, Mazin) |
| *Vol. 22* *004696* | 38 | 9/2/22 | 131 | (21 pgs) DISTRICT COURT MEMORANDUM OPINION AND ORDER: The Court REVERSES and REMANDS the bankruptcy court's Motion to Dismiss Order and AFFIRMS the bankruptcy courts Motion to Stay Order. re: appeal on Civil Action number: Case 3:22-00695-B consolidated with 3:21-CV-3129-B, (RE: related document(s) 81 Order on motion to abate, 100 Order on motion to dismiss adversary proceeding). Entered on 9/2/2022 (Whitaker, Sheniqua) (Entered: 11/29/2022) |
| *004717* | 39 | 12/2/22 | 133 | (15 pgs) Reply to (related document(s): 129 Response filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd., 130 Response filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) filed by Defendant Highland Capital Management, LP. (Annable, Zachery) |
| *004732* | 40 | 12/7/22 | 135 | (5 pgs) Notice of hearing filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, LP). Hearing to be held on 1/25/2023 at 01:30 PM at https://us-courts.webex.com/meet/jerniga for 122, (Annable, Zachery) |
| *004737* | 41 | 12/7/22 | 136 | (5 pgs) Notice of hearing filed by Defendant Highland Capital Management, LP (RE: related document(s) 128 Motion for withdrawal of reference filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.). Status Conference to be held on 1/25/2023 at 01:30 PM at https://us-courts.webex.com/meet/jerniga. (Annable, Zachery). |
| *004742* | 42 | 12/9/22 | 138 | (3 pgs) Response opposed to (related document(s): 128 Motion for withdrawal of reference. Fee amount $188, filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) filed by Defendant Highland Capital Management, LP. (Annable, Zachery) |

| | | | | |
|---|---|---|---|---|
| *Vol. 22*<br>0047415 | 43 | 12/9/22 | 139 | (25 pgs) Brief in support filed by Defendant Highland Capital Management, LP (RE: related document(s) 138 Response). (Annable, Zachery) |
| *Vol. 23*<br>0047770 | 44 | 12/9/22 | 140 | (280 pgs; 8 docs) Support/supplemental document *(Appendix in Support of Highland Capital Management, L.P.'s Response to Renewed Motion to Withdraw the Reference)* filed by Defendant Highland Capital Management, LP (RE: related document(s) 138 Response). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7) (Annable, Zachery) |
| *Vol. 24*<br>005050 | 45 | 12/16/22 | 144 | (6 pgs) Reply to (related document(s): 138 Response filed by Defendant Highland Capital Management, LP) filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP. (Sbaiti, Mazin) |
| 005056<br>Thru *Vol. 25* | 46 | 1/23/23 | 145 | (514 pgs; 15 docs) Witness and Exhibit List filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 #3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14) (Annable, Zachery) |
| *Vol. 26*<br>005570 | 47 | 1/23/23 | 146 | (280 pgs; 8 docs) Witness and Exhibit List filed by Defendant Highland Capital Management, LP (RE: related document(s) 128 Motion for withdrawal of reference. Fee amount $188,). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7) (Annable, Zachery) |
| *Vol. 27*<br>005850 | 48 | 1/23/23 | 147 | (221 pgs; 7 docs) Witness and Exhibit List filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)*). (Attachments: # 1 Exhibit 1_Excerpts from July 14, 2020 Hearing Transcript # 2 Exhibit 2_HCLOF Members Agreement Relating to the Company # 3 Exhibit 3_HarbourVest Settlement Agreement # 4 Exhibit 4_Order Approving Debtor's Settlement with HarbourVest # 5 Exhibit 5_HCLOF Offering # 6 Exhibit 6 Amended and Restated Investment Advisory Agreement) (Sbaiti, Mazin) |
| 006071 | 49 | 1/23/23 | 148 | (3 pgs) Witness and Exhibit List filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 128 Motion for withdrawal of reference. Fee amount $188,). (Phillips, Louis) |
| *Vol. 28*<br>006074 | 50 | 1/25/23 | 150 | (56 pgs; 2 docs) Amended Witness and Exhibit List filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 147 List (witness/exhibit/generic), 149 List (witness/exhibit/generic)). (Attachments: # 1 Exh 7_Testimony of Mark Patrick at June 8, 2021 hearing) (Sbaiti, Mazin |

| | 51 | 1/25/23 | 152 | (3 pgs) Notice of Appearance and Request for Notice by Louis M. Phillips filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP. (Phillips, Louis) |
| | 52 | 1/25/23 | 154 | (1 pg) Court admitted exhibits date of hearing January 25, 2023 (RE: related document(s) 128 Motion for withdrawal of reference, filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) (COURT ADMITTED DEFENDANT'S EXHIBITS #1, #2, #3, #4, #5 & #6 OFFERED BY ATTY GREG DEMO). (Edmond, Michael) (Entered: 01/27/2023) |
| | 53 | 2/6/23 | 158 | Report and recommendation to the U.S. District Court by U.S. Bankruptcy Judge. (RE: related document(s) 128 Motion for withdrawal of reference filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.). Entered on 2/6/2023 (Okafor, Marcey) |
| | 54 | 2/6/23 | 161 | (18 pgs) DISTRICT COURT Notice of transmission of report and recommendation in re: renewed motion to withdraw reference. Civil Case # 3:22-cv-02802-S. (RE: related document(s) 158 Report and recommendation to the U.S. District Court by U.S. Bankruptcy Judge. (RE: related document(s) 128 Motion for withdrawal of reference filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.). Entered on 2/6/2023) (Whitaker, Sheniqua) |
| | 55 | 4/3/23 | 165 | (1 pg) DISTRICT COURT ORDER: The Court GRANTS the 11 Joint Motion to Transfer Proceeding and Consolidate Before Original Court and the above-numbered case (3:22-cv-02802-S) is transferred to the docket of the Honorable Judge Jane Boyle: Civil case 3:21-cv-00842-B (order referring case). (RE: related document(s) 1 Complaint filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd., 143 Notice of transmission of motion to withdraw reference). Entered on 4/3/2023 (Whitaker, Sheniqua) Modified on 4/10/2023 (Whitaker, Sheniqua). (Entered: 04/10/2023) |

TRANSCRIPTS

| | 56 | 11/24/21 | 78 | (104 pgs) Transcript regarding Hearing Held 11-23-2021 RE: Motion Hearing. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 02/22/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Liberty Transcripts/Dipti Patel, Telephone number 847-848-4907. (RE: related document(s) 75 Hearing held on 11/23/2021. (RE: related document(s)55 MOTION to Stay filed by CLO Holdco Ltd, Charitable DAF Fund LP (Sbaiti, Mazin) (Entered: 08/26/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #55 ON 08/26/2021 IN U.S. |

*Handwritten annotations in left margin:*
Vol. 28
006130
006133
Thru Vol. 31
Vol. 32
006925
006942
006960
006961

| | | | | |
|---|---|---|---|---|
| | | | | DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.)) (Appearances: J. Pomerantz and J. Morris for Highland Defendants; J. Jordan and P. Bessett for HCLOF; M. Sbaiti for Plaintiffs. Nonevidentiary hearing. Motion denied. Mr. Pomerantz to upload order.), 76 Hearing held on 11/23/2021. (RE: related document(s) 47 Motion to strike 43 Appendix in support filed by CLO Holdco, Ltd., Charitable DAF Fund, LP (Bridges, Jonathan) Modified text on 7/16/2021 (mjr). (Entered: 07/15/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #47 ON 07/15/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.)) (Appearances: J. Pomerantz and J. Morris for Highland Defendants; J. Jordan and P. Bessett for HCLOF; M. Sbaiti for Plaintiffs. Nonevidentiary hearing. Motion denied (Plaintiffs acknowledged complained-of Appendices it did not relate to Motion to Dismiss). Mr. Pomerantz to upload order.)). Transcript to be made available to the public on 02/22/2022. (Patel, Dipti) |
| *Vol. 33* | 57 | 2/21/23 | 164 | 164 (112 pgs) Transcript regarding Hearing Held 1/25/23 RE: HEARING ON DEFENDANT HIGHLAND CAPITAL MANAGEMENT L.P.'S RENEWED MOTION TO DISMISS COMPLAINT (122) AND STATUS CONFERENCE RE: MOTION FOR WITHDRAWAL OF REFERENCE FILED BY PLAINTIFF CLO HOLDCO, LTD., PLAINTIFF CHARITABLE DAF FUND, LP (128). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 05/22/2023. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Dipti Patel, Telephone number 847-848-4907. (RE: related document(s) 155 Hearing held on 1/25/2023. (RE: related document(s) 122 Motion to dismiss adversary proceeding, (Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint) filed by Defendant Highland Capital Management, LP filed by Defendant Highland Capital Management, LP) (Appearances: J. Morris and G. Demo for Movants; L. Phillips and M. Sbaiti for Plaintiffs. Evidentiary hearing (appendices). Court took matter under advisement.), 156 Hearing held on 1/25/2023. (RE: related document(s) 128 Motion for withdrawal of reference. Fee amount $188, filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) (Appearances: J. Morris and G. Demo for Movants; L. Phillips and M. Sbaiti for Plaintiffs. Evidentiary hearing (appendices). Court announced it will recommend denial to District Court. Court is working on Report & Recommendation.)). Transcript to be made available to the public on 05/22/2023. (Patel, Dipti) |

*007065*

Dated:  July 14, 2023                     Respectfully submitted,

                                          **SBAITI & COMPANY PLLC**

                                          */s/  Mazin A. Sbaiti*
                                          **Mazin A. Sbaiti**
                                          Texas Bar No. 24058096
                                          **Jonathan Bridges**
                                          Texas Bar No. 24028835
                                          2200 Ross Avenue – Suite 4900W
                                          Dallas, TX  75201
                                          T:  (214) 432-2899
                                          F:  (214) 853-4367
                                          E:  mas@sbaitilaw.com
                                              jeb@sbaitilaw.com

                                          **Counsel for Appellants**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically through the Court's ECF system, which provides notice to all parties of interest, on this 14th day of July, 2023.

                                          */s/ Mazin A. Sbaiti*
                                          Mazin A. Sbaiti



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed February 6, 2023**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT | § | BANKR. CASE NO. 19-34054-SGJ-11 |
| L.P., | § | (CHAPTER 11) |
|     REORGANIZED DEBTOR. | § | |
| _____ | § | |
| CHARITABLE DAF FUND, L.P. and | § | |
| CLO HOLDCO, LTD., | § | |
| | § | |
|     PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADV. PRO. NO. 21-03067-sgj |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | CIV. ACT. NO. 3:22-cv-02802-S |
| L.P., | § | CIV. ACT. NO. 3:21-cv-0842-B |
| | § | |
|     DEFENDANT. | § | |

---

## REPORT AND RECOMMENDATION TO THE DISTRICT COURT
## ON "RENEWED MOTION TO WITHDRAW THE REFERENCE"
## [BANKR. DOC. NO. 128]

006925

## I.   INTRODUCTION

The above-referenced adversary proceeding is related to the now long-running Chapter 11 bankruptcy case of Highland Capital Management, L.P. ("Highland," the "Debtor," or sometimes the "Reorganized Debtor").  Highland is the main Defendant in this action, which was filed by Charitable DAF Fund, L.P. and CLO Holdco, Ltd. ("Plaintiffs") on April 12, 2021, in the District Court (*during* Highland's bankruptcy case and *prior* to the effective date of Highland's Chapter 11 plan) and assigned to Judge Jane Boyle.  For the *second* time since this action was filed, the Plaintiffs are urging the District Court to withdraw the reference from the bankruptcy court.  The *first* time that Plaintiffs urged it (unsuccessfully) was on June 29, 2021, to Judge Boyle, in Civil Action No. 3:21-cv-0842-B, in response to Defendant's motion to *enforce* the reference and in their cross-motion thereto, in which Plaintiffs specifically urged the District Court to find that mandatory withdrawal of the reference under 28 U.S.C. § 157(d) applied to the action and so enforcing the reference (and, thus, sending the action to the bankruptcy court) would be pointless. Judge Boyle entered an order on September 20, 2021, granting Defendant's motion to enforce the reference, referring the action to this bankruptcy court "to be adjudicated as a matter related to the consolidated Chapter 11 Bankruptcy of Highland Capital Management, L.P., Chapter 11 Case No. 19-34054."[1]  Plaintiffs brought their "Renewed Motion to Withdraw the Reference" ("Renewed MTWR") on November 18, 2022,[2] more than a year after Judge Boyle rejected their arguments and referred the action to the bankruptcy court.  The Renewed MTWR was transmitted to the District Court on December 15, 2022 and assigned to a different district judge – Judge Karen Scholer – under the above-referenced civil action number.[3]  Much has happened during this time

---

[1] *See Order of Reference*, Civ. Act. No. 3:21-cv-0842-B, Doc. No. 64.

[2] *See Renewed Motion to Withdraw the Reference*, Adv. Pro. 21-3067-sgj, Bankr. Doc. No. 128.

[3] *See* Civ. Act. No. 3:22-02802-S, Doc. No. 1.

006926

span.  This "jurisdictional ping pong" (as it might fairly be described) is best understood with the timeline of relevant events set forth in Part III below. But first, a description of the parties is in order.

## II.    THE PARTIES

Highland is the main Defendant in this action.  There were originally two other Defendants: (a) Highland CLO Funding, Ltd. ("HCLOF"), a Guernsey-based investment vehicle that is now past its investment period, and (b) Highland HCF Advisors, Ltd. ("HCFA"), which has been described as a non-debtor, wholly owned subsidiary of Highland, which served as a portfolio manager for HCLOF.  HCLOF was dismissed with prejudice from this action on December 7, 2021 [Bankr. Doc. No. 80].  The other Defendant, HCFA, has never appeared in this action, and it appears it was never served with the summons and complaint.[4]  The court is unclear why—perhaps it was dissolved as part of the Highland reorganization or has no assets.

The Plaintiffs are CLO Holdco Ltd. ("CLO Holdco") and Charitable DAF Fund, L.P. ("DAF").  DAF is CLO Holdco's parent company.  Both Plaintiffs are Cayman Island entities and are affiliated with Highland's former chief executive officer and founder (James Dondero).  Plaintiff CLO Holdco also happens to own a 49.02% equity interest in the dismissed Defendant HCLOF.

For ease of reference—and because there are a very large number of lawsuits pending in the Northern District of Texas involving Highland and its affiliates—this action presently before the

---

[4] Highland noted on page 3 of its *Motion for an Order Extending the Time to File a Responsive Pleading*, filed in the District Court on May 6, 2021, at Doc. No. 9 (and entered on the bankruptcy court docket on September 29, 2021 at Bankr. Doc. No. 9) that "[w]hile Highland agreed to accept service on its own behalf, it could not and did not accept service on behalf of the other defendants, Highland HCF Advisors, Ltd. and Highland CLO Funding, Ltd. (together, the "Other Defendants")" and that "to the best of Highland's knowledge, the Other Defendants have not been served with the Complaint such that the time for each of them to serve a responsive pleading has not begun to run."  A *Waiver of Service of Summons* with respect to HCLOF was filed on June 3, 2021 (at Doc. No. 30 in both the District Court and bankruptcy court), but there does not appear on either docket any proof of service or waiver of service with respect to service of the summons and complaint on HCFA that would indicate that HCFA has been served as of this date.

court will be referred to as the "Lawsuit Pertaining to HarbourVest Bankruptcy Settlement." The timeline below fully explains this.

### III.   THE RELEVANT TIMELINE

**October 16, 2019**:  Highland filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").

**December 23, 2020**:  Highland (during its bankruptcy case—and before getting a Chapter 11 plan approved) moved for approval by the bankruptcy court of a significant settlement it reached with entities collectively known as HarbourVest.  HarbourVest was a disputed creditor—asserting a $300 million proof of claim against Highland—and it also happened to own a 49.98% equity interest in the Defendant HCLOF.  Pursuant to the proposed settlement between Highland and HarbourVest (the "HarbourVest Settlement"), HarbourVest agreed to transfer its 49.98% equity interest in Defendant HCLOF to Highland (or Highland's designee) and agreed to greatly reduce its disputed claim in the bankruptcy case from $300 million to $80 million (which would be given part unsecured creditor status and part subordinated status).

**January 8, 2021**:  Plaintiff CLO Holdco objected to the HarbourVest Settlement, presumably at the direction of its parent, DAF (the other Plaintiff herein).  CLO Holdco argued that: (i) it, as a 49.02% equity member of HCLOF, had a "Right of First Refusal," pursuant to the HCLOF membership agreement, to acquire the 49.98% equity interest that HarbourVest was going to be transferring to Highland under the HarbourVest Settlement; and (ii) HarbourVest could not transfer its 49.98% equity interest to Highland without compliance with this purported right of first refusal.  CLO Holdco did not object on any other basis to the HarbourVest Settlement.

**January 14, 2021:**  The bankruptcy court held an evidentiary hearing on the proposed HarbourVest Settlement, during which CLO Holdco voluntarily withdrew its objection to the

006928

HarbourVest Settlement premised on the "Right of First Refusal." After an extensive presentation of evidence, the bankruptcy court overruled certain remaining objections (specifically, those of certain family trusts of James Dondero) and approved the HarbourVest Settlement.  Note that the Dondero family trusts appealed to the District Court the approval of the HarbourVest Settlement, and their appeal was dismissed for lack of standing.

    **February 22, 2021:**  The bankruptcy court entered an order confirming a Chapter 11 plan for Highland [Bankr. Doc. No. 1943] (the "Confirmation Order"), which confirmed Highland's extensively mediated, negotiated, and litigated plan [Bankr. Doc. No. 1808] (the "Plan").  The Plan became effective on August 11, 2021 [Bankr. Doc. No. 2700] (the "Effective Date").  At least the following provisions are germane to this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement.  First, pursuant to the Plan, the bankruptcy court expressly retained jurisdiction/authority to "allow, disallow, determine, liquidate … any Claim … including, without limitation, the resolution of any request for payment of any Administrative Expense Claim …."  Plan, Art. XI.  Second, the Plan defined "Administrative Expense Claim," in relevant part, as a: "Claim for costs and expenses of administration of the Chapter 11 Case . . . pursuant to sections 503(b), 507(a)(2), 507(b) … of the Bankruptcy Code, including … (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor . . . ."  Plan, Art. I.B.2.

    **April 12, 2021**: Plaintiffs commenced this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement in the District Court—which was assigned Civ. Action No. 21-CV-0842-B (Judge Jane Boyle)—naming Debtor/Highland, HCFA, and HCLOF as Defendants.  To be clear, this lawsuit was filed at a time when Highland was still a debtor in possession (its Plan had been recently confirmed, but the plan Effective Date had not yet occurred—it occurred in August 2021).  The

006929

underlying Complaint ("Complaint") alleges that conduct of Highland during the bankruptcy case in late 2020 and early 2021 revolving around the HarbourVest Settlement—prior to the Confirmation Order—violated contractual and extra-contractual duties Highland purportedly owed (i) to Plaintiff CLO Holdco as an investor in HCLOF; and (ii) to Plaintiff DAF as an advisee under an investment advisory agreement. The Complaint raises claims: (i) by Plaintiffs for breaches of fiduciary duty against Highland and HCFA (Count 1); (ii) by CLO Holdco for breach of the HCLOF Members Agreement against all three Defendants (Count 2); (iii) by Plaintiffs for negligence against Highland and HCFA (Count 3); (iv) by Plaintiffs for violations of the Racketeer Influenced and Corrupt Organizations statute (15 U.S.C. § 1961, et seq. ("RICO")) against Highland (Count 4); and (v) by CLO Holdco for tortious interference against Highland (Count 5). In Count 1 (breach of fiduciary duty), Plaintiffs allege that Debtor/Highland violated its "broad" duties to Plaintiffs under the Investment Advisers Act and Highland's "internal policies and procedures" by: (i) engaging in "insider trading with HarbourVest"; (ii) "concealing" the value of HarbourVest's 49.98% equity interest in HCLOF; and (iii) "diverting" the investment opportunity in the HarbourVest entities to the Debtor without first offering it to Plaintiffs.[5] In Count 4 (RICO), Plaintiffs allege that Highland and its co-Defendants were an "association-in-fact" engaged in a pattern of racketeering activity for this same underlying conduct; namely, failing to disclose the valuation of HCLOF's interest and ultimately effectuating the HarbourVest Settlement. Again,

---

[5] While specific statutory references to the federal Investment Advisers Act are sparse in the Complaint, subsequent pleadings of the Plaintiffs make clear they are referring to at least 15 U.S.C. § 80b-6 and 80b-15(a) (which they cite as imposing both a duty of care and a duty of loyalty, each unwaivable, on investment advisors, in favor of funds and its investors, citing *SEC v. Tambone*, 550 F.3d 106, 146 (1st Cir. 2008)); 15 U.S.C. § 206(2) (which they cite as requiring investment advisers to seek "best execution" for all their clients' transactions, citing *SEC v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 286, 300 (E.D. Pa. 2021)); and 15 U.S.C. § 215 (which they cite as recognizing "a limited private right of action for equitable relief including disgorgement, wherein one may seek to void the rights of a violator who performs a contract in violation of the Advisers Act"). Response to Renewed Motion to Dismiss, pp. 12-13. Bankr. Doc. No. 130.

Highland's alleged misconduct was the act of settling the $300 million proof of claim filed against Highland by HarbourVest under the terms and conditions of the HarbourVest Settlement. To be clear, the HarbourVest Settlement was implemented after full notice to creditors in the Highland case, an evidentiary hearing, and approval by the bankruptcy court after fulsome findings of fact and conclusions of law. And as noted earlier, one of the Plaintiffs, CLO Holdco, even objected to the HarbourVest Settlement and then withdrew its objection the morning of the bankruptcy court's hearing on the HarbourVest Settlement.

**May 19, 2021**: Soon after the commencement of this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, Highland moved before Judge Boyle for an order to enforce the Northern District of Texas's standing order of reference (Misc. Order No. 33) [Bankr. Doc. No. 22] (the "Motion to Enforce"), arguing that the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement should be referred to the bankruptcy court, since it asserted claims arising in, arising under, or related to Title 11 and Highland's bankruptcy case.

**May 27, 2021**: Highland also swiftly moved to dismiss the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement [Bankr. Doc. No. 26] (the "Original MTD"). The Original MTD was fully briefed to Judge Boyle.[6]

**June 29, 2021:** Plaintiffs reacted by filing their response to the Motion to Enforce [Bankr. Doc. No. 36], arguing the Motion to Enforce should be denied, and ***cross-moving therein that Judge Boyle should keep the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement*** because the claims therein were subject to mandatory withdrawal of the reference, under 28 U.S.C § 157(d)—i.e., they involved "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" and could not be adjudicated

---

[6] Defendant HCLOF filed a *Motion to Dismiss and Joinder in Motion to Dismiss of Highland Capital Management, L.P.* in the District Court at Doc. No. 57 (Bankr. Doc. No. 57) on August 30, 2021.

006931

in the bankruptcy court.  To be clear, the underlying Complaint (while all about the HarbourVest Settlement) asserts claims of breach of fiduciary duty under the federal Investment Advisers Act ("IAA") and state law; breach of contract; negligence; RICO; and tortious interference with contract.  Notably, the arguments in Plaintiffs' cross-motion on June 29, 2021 appear to be identical to those in Plaintiffs' Renewed MTWR now before the court.

**August 26, 2021:** Plaintiffs filed a motion before Judge Boyle asking her to stay the action before her, pending appeal of the Confirmation Order [Bankr. Doc. No. 55] (the "Stay Motion"), arguing that the Plan injunction somehow prohibited the prosecution of the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement.  The Stay Motion was fully briefed to Judge Boyle.

**September 20, 2021:**  The District Court (Judge Boyle) granted Highland's Motion to Enforce and referred this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement to the bankruptcy court, including the Original MTD, "[p]ursuant to 28 U.S.C. § 157 … to be adjudicated as a matter related to the … Bankruptcy of Highland Capital Management, L.P." [Bankr. Doc. No. 64].

**November 23, 2021:**  Plaintiffs and Defendants argued the Stay Motion and the merits of the Original MTD, including their alleged claims under the IAA and RICO, to the bankruptcy court.  Following the hearing the bankruptcy court denied the Stay Motion.[7]

**March 11, 2022:** The bankruptcy court granted the Original MTD and issued a written ruling on it (the "MTD Order")—never getting to the merits of the claims in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement. [Bankr. Doc. No. 100]. Rather, the bankruptcy court dismissed the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement with prejudice, on the

---

[7] *See Order Denying Motion to Stay*, Bankr. Doc. No. 81, entered on December 7, 2021.  As noted above,, the bankruptcy court also entered, on December 7, 2021, its *Order Granting Highland CLO Funding, Ltd.'s Motion to Dismiss* [Bankr. Doc. No. 80].

basis that the claims were precluded by the doctrines of collateral estoppel and judicial estoppel. *See Charitable DAF Fund, L.P. and CLO Holco, Ltd. v. Highland Cap. Mgmt., L.P., et al. (In re Highland Cap. Mgmt., L.P.)*, 2022 WL 780991 (Bankr. N.D. Tex., Mar. 11, 2022). The bankruptcy court concluded that the claims in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement were barred due to the strategic decisions of Plaintiff CLO Holdco during the bankruptcy case (i.e., choosing to withdraw its objection to the HarbourVest Settlement) and that decision was also binding on its Co-Plaintiff DAF (its parent) since the two were in privity. On March 25, 2022, the Plaintiffs appealed the MTD Order to the District Court. *See* 3:21-cv-00695-B, Doc. No. 2. The Plaintiffs did not raise 28 U.S.C. § 157(d) in the appeal or otherwise argue that the bankruptcy court lacked jurisdiction or authority to have entered the MTD Order.

**June 17, 2022:** Judge Boyle entered an order consolidating the appeal of the MTD Order with Plaintiff's appeal of the bankruptcy court's order denying the Stay Motion, which had been assigned Civ. Act. No. 3:21-cv-03129. *See* 3:21-cv-03129-B, Doc. No. 20.

**September 2, 2022**: Judge Boyle, sitting this time in an appellate capacity: (i) reversed the bankruptcy court's conclusion that collateral estoppel barred Plaintiffs' claims but (ii) remanded on the judicial estoppel determination.[8]  *See Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 166 (N.D. Tex. 2022). Specifically, Judge Boyle determined that the bankruptcy court had erred in its ruling that collateral estoppel barred entirely the claims in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, but Judge Boyle separately, in evaluating the bankruptcy court's determination that judicial estoppel also barred Plaintiff's Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, ruled that the bankruptcy court did not make a certain finding necessary to conclude judicial estoppel applied

---

[8] Judge Boyle also affirmed the bankruptcy court's order denying the Stay Motion.

006933

(i.e., a finding of "inadvertence"). Thus, Judge Boyle remanded to the bankruptcy court for possible further findings on the judicial estoppel doctrine and presumably for an adjudication on the merits of the various claims asserted in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, if the bankruptcy court concluded judicial estoppel did **not** apply (after evaluating the "inadvertence" factor).

**September 8, 2022**: Meanwhile, the U.S. Court of Appeals for the Fifth Circuit affirmed, in material part, the Confirmation Order's factual findings and legal conclusions in support of the Highland Plan. *NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt.*, L.P., 48 F.4th 419 (5th Cir. 2022). A petition for writ of certiorari is now pending before the U.S. Supreme Court regarding the Plan Confirmation Order. To be clear, there has never been a stay of the Plan (i.e., the Confirmation Order), and the Highland Plan has been in effect since August 11, 2021.

**October 14, 2022**: In response to Judge Boyle's remand, *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 166 (N.D. Tex. 2022), Highland filed a renewed motion to dismiss [Bankr. Doc. No. 122] (the "Renewed MTD"). It addresses the "inadvertence" factor on the judicial estoppel defense (arguing it bars Counts 2 and 5 of the Complaint), and also argues that all claims in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement—even if not precluded by the doctrine of judicial estoppel—are not plausible on their face, under *Iqbal* and *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**November 18, 2022**: Plaintiffs responded to the Renewed MTD and also filed their Renewed MTWR, again urging mandatory withdrawal of the reference. Plaintiffs once again are arguing that this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement "requires consideration" of non-bankruptcy federal laws regulating interstate commerce and, thus,

006934

mandatory withdrawal of the reference applies under 28 U.S.C. § 158(d). **_Interestingly, Plaintiffs have now moved to dismiss their RICO count (without prejudice)_**.[9] Thus, their sole "other federal law" argument boils down to this:

> This adversary proceeding primarily involves fiduciary duties imposed upon Registered Investment Advisers by the Investment Advisers Act of 1940 ("Advisers Act") and corresponding state law claims for breach of those duties. As a result, presiding over this action will require extensive consideration of federal laws regulating interstate commerce, which renders withdrawal of the reference to bankruptcy court mandatory under 28 U.S.C. § 157(d).

Renewed MTWR, at ¶ 5.

## IV.   <u>RECOMMENDATION</u>

The bankruptcy court recommends that Plaintiffs' Renewed MTWR be denied. The bankruptcy court clearly has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1334(b). The Renewed MTWR was not timely filed, which is required under the mandatory withdrawal provisions of 28 U.S.C. § 157(d), and it is the quintessential attempt at a second bite at the apple.

### A.   *Jurisdiction and Core Nature of the Action*

First, there is no concern about lack of bankruptcy subject matter jurisdiction here. Bankruptcy subject matter jurisdiction exists over the claims against the Defendant pursuant to 28 U.S.C. §§ 1334(b) and 157. Under 28 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings **_arising under_** title 11, or **_arising in_** or **_related to_**

---

[9] *See* Plaintiff's Response to Renewed MTD at 23 ("Plaintiffs respectfully dismiss the RICO claim under Rule 41(a) to the extent such a claim is revealed to have existed under non-securities bases. Because Highland has conceded that Plaintiffs' claims are actionable under the federal securities laws and the Advisers Act, and has cited same as a basis for dismissing the RICO claim, Highland is precluded and estopped from denying the violations of the Securities Laws and the Advisers Act. As such, to the extent that other, non-securities law violations may give rise to RICO violations, Plaintiffs respectfully reserve the right to bring such a claim but respectfully dismiss their RICO claim at this time.")

006935

cases under title 11."[10] (Emphasis added.) The bankruptcy courts, in turn, are delegated authority to exercise that jurisdiction from the district courts, under 28 U.S.C. § 157(a).[11] There does not appear to be any dispute that this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement is at least "related to" the Highland bankruptcy case. Thus, bankruptcy subject matter jurisdiction exists.[12] Moreover, there does not appear to be any dispute that the action involves "core" matters over which a bankruptcy court may generally enter final judgments.[13] As noted recently by the Fifth Circuit: "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. For example, claims concerning the administration of the estate, allowance or disallowance of claims against the estate, and sale of property of the estate are all core proceedings.[14] *See generally In re Southmark Corp.*, 163 F.3d 925, 930-31 (5th Cir. 1999) (malpractice suit against an examiner's accountant was a core proceeding; "The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. . . . Award of the professionals'

---

[10] 28 U.S.C. § 1334(b); *see also In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) ("[Section] 1334(b) grants jurisdiction to district courts and adjunct bankruptcy courts to entertain proceedings 'arising under,' 'arising in a case under,' or 'related to' a case under Title 11 of the United States Code, i.e., proceedings 'related to' bankruptcy.").

[11] *In re PFO Glob., Inc.,* 26 F.4th at 252 (citing 28 U.S.C. § 157(a)).

[12] *In re Bass*, 171 F.3d at 1022 ("To determine whether [bankruptcy] jurisdiction exists, 'it is necessary only to determine whether a matter is at least "related to" the bankruptcy.'" (quoting *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995))).

[13] Plaintiffs' Renewed MTWR seemed to dispute that core matters are involved. But their position on this at the status conference on this seemed equivocal. In addition, as noted earlier, there is a non-debtor Defendant named herein, HCFA, that is a subsidiary of Highland. Likely, claims asserted against it by Plaintiffs (which appear to be asserted at Counts 1-3) would not be core matters. However, HCFA has not been served and has failed to appear or defend in this matter. Thus, presumably there will be no adjudication of the claims against it in this action and the claims against it are irrelevant.

[14] *Foster v. Aurzada, et al.* No. 22-10310 and No. 22-10318, slip. Op. at p. 5 (5th Cir. Jan. 3, 2023) (per curiam), *citing In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) and 28 U.S.C. § 157(b)(2)(A), (B), (N), (O)).

006936

fees and enforcement of the appropriate standards of conduct are inseparably related functions of

bankruptcy courts.").[15]

Again, there appears to be no dispute here regarding the "core/noncore" status of the

claims.  Plaintiffs' argument is that, even if the claims are core, mandatory withdrawal of the

reference is necessitated, pursuant to 28 U.S.C.§ 157(d), because of other federal law, besides

bankruptcy law, being significantly implicated.

B.  *Untimeliness*.

Plaintiffs' request for mandatory withdrawal of the reference is by any reasonable measure

"untimely."  Under 28 U.S.C. § 157(d), a district court "shall, on ***timely*** motion of a party, so

withdraw a proceeding if … resolution of the proceeding requires consideration of both title 11

and other laws of the United States regulating organizations or activities affecting interstate

commerce."  28 U.S.C. § 157(d) (emphasis added).  Assuming a timely motion, mandatory

withdrawal is warranted only if a matter requires "substantial and material consideration" and

"significant interpretation of federal laws[,]" rather than a "straightforward application of a federal

statute to a particular set of facts." *In re Nat'l Gypsum*, 14 B.R. 188, 192-93 (N.D. Tex. 1991);

*Kirschner v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 1028, at *27-28

(Bankr. N.D. Tex. Apr. 6, 2022) (same). The Renewed MTWR was filed ***fourteen months*** after

Judge Boyle referred this action to the bankruptcy court.  Moreover, it was filed after: (a) the

bankruptcy court made a final ruling on a motion to dismiss, (b) Judge Boyle ruled on that final

bankruptcy court ruling in an appellate capacity, and (c) remanded back to the bankruptcy court

for further proceedings.

---

[15]  *See id.* at 930 (citing 28 U.S.C. § 157(b)(3)) (stating that whether claim has a state law origin is not dispositive to
whether it is a core bankruptcy matter); *In re Wood*, 825 F.2d at 97 n.34 (stating that whether right is state created is
not dispositive to whether proceeding is core under 28 U.S.C. § 157).

006937

To be clear, 28 U.S.C. § 157(d) does not define "timely," but it has been interpreted as requiring a motion to be made at the first reasonable opportunity. *See In re Fresh Approach, Inc.,* 51 B.R. 412, 415-16 (Bankr. N.D. Tex. 1985) (finding a motion to withdraw the reference untimely when filed sixteen days after the court entered its decision on the matter); *see also Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1007, n.3 (9th Cir. 1997). ("A motion to withdraw is timely 'if it was made as promptly as possible in light of the developments in the bankruptcy proceeding.'"); *Connolly v. Bidermann Indust. U.S.A., Inc.,* 1996 U.S. Dist. LEXIS 8059, at *8 (S.D.N.Y. June 13, 1996) ("Plaintiff's delay of over eight months renders her motion untimely, and as such it does not meet the threshold requirement set forth in 28 U.S.C. § 157(d)."); 9 COLLIER ON BANKRUPTCY ¶ 5011.01[2] ("[M]otions for mandatory withdrawal must be made as soon as it is apparent that it is necessary for the district court to hear the proceeding").

But this isn't just any untimely motion. This is a ***second*** motion. This appears to be the proverbial second bite at the apple—urged right after Highland, after reviewing Judge Boyle's September 2022 appellate ruling, moved for dismissal of this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, this time fully arguing the judicial estoppel factors that Judge Boyle determined had not been fully vetted. The Highland Renewed MTD also asks the bankruptcy court to, this time, rule on the merits of the claims (which the bankruptcy court did not do last time), in the event judicial estoppel does not apply. The Renewed MTWR appears to be an attempt by Plaintiffs to avoid the bankruptcy court exercising its duties in response to Judge Boyle's remand. It appears to be forum shopping and an attempt at delaying adjudication. The reality is that, if the bankruptcy court rules on the Renewed MTD in a way Plaintiffs find unsatisfactory, they can appeal again to the District Court. The further reality is that if judicial estoppel prevails, there will never be any "substantial and material consideration" and "significant interpretation of federal

laws]" in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement. *In re Nat'l Gypsum,* 14 B.R. 188, 192-93.

### C. No "Substantial and Material Consideration" and "Significant Interpretation of Federal Laws" are Implicated Here; This is At Bottom a Request for Allowance of an Administrative Expense Claim

To be clear, the causes of action in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement are tantamount to the assertion of administrative expense claims against a Chapter 11 Debtor. As a general matter, the filing of administrative expense claims triggers the claims allowance process and subjects a claimant to the bankruptcy court's equitable jurisdiction. *See, e.g., In re UAL Corp.*, 386 B.R. 701, 707 (Bankr. N.D. Ill. 2008) ("[B]y filing a claim … the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power … As such, there is no Seventh Amendment right to a jury trial … Claims for payment of an administrative expense are no different from other claims in this regard.") (citing *Langenkamp v. Culp*, 498 U.S. 42 (1990)); *see also Harpole Constr., Inc. v. Medallion Midstream, LLC (In re Harpole Constr., Inc.)*, 565 B.R. 193, 202 (Bankr. D. N.M. 2017) (same); *Carter v. Schott (In re Carter Paper Co.)*, 220 B.R. 276, 290-311 (Bankr. M.D. La. 1998) (finding breach of fiduciary duty claim against bankruptcy trustee originally filed in state court was an administrative expense claim and no jury trial right existed). It is difficult to see Plaintiffs' strategy here as anything other than an attempted end-run around the bankruptcy court. They argue as justification that there is substantial other federal law involved. But Plaintiffs' claims do not seem complex. If Plaintiffs survive the Renewed MTD (based on the judicial estoppel factors) their federal claims are simply: (a)(i) did Highland owe both Plaintiffs a fiduciary duty under the IAA; (ii) if so, what was the nature of that duty and was it violated; and (iii), if violated, what are the remedies and potential damages? Fiduciary duties (and interpretation of

006939

different sources of fiduciary duties) certainly are not outside a bankruptcy court's expertise. *See In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953-54 (7th Cir. 1996); *City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (mandatory withdrawal requires "significant interpretation, as opposed to simple application, of federal laws"). "[M]andatory withdrawal is to be applied narrowly" to "prevent 157(d) from becoming an 'escape hatch.'" *Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist. LEXIS 102134, at *6 (N.D. Tex. Oct. 1, 2009), *aff'd* 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009).  Moreover, bankruptcy courts frequently consider other federal law (as well as state law) in adjudicating claims against the estate.

"Claims against the estate" is what's implicated here.  The claims were asserted against the Debtor/Highland before its plan went effective and involve a time period during its case.  Administrative expense claims include claims arising from a debtor-in-possession's postpetition negligence, tortfeasance, and malfeasance.  *See Reading Co. v. Brown,* 391 U.S. 471, 478-79 (1968) (holding that if a debtor-in-possession commits a tort or harms a non-debtor following the petition date, the resulting claim is an administrative expense claim even though there was no benefit to the debtor's estate)  Moreover, the Plan made very clear that claims such as this were required to be filed in the bankruptcy court by a date certain.  *See In re Weblink Wireless, Inc.,* 2003 Bankr. LEXIS 2312, at *3 (Bankr. N.D. Tex. Mar. 12, 2003) ("The allowance of an administrative expense to be paid pursuant to a confirmed plan of reorganization constitutes a core matter over which the court has jurisdiction to enter a final order."); *see also In re Taco Bueno Rests., Inc.,* 606 B.R. 289, 292 (Bankr. N.D. Tex. 2019) (finding core jurisdiction to adjudicate administrative claim); *In re Pilgrim's Pride Corp.*, 453 B.R. 691, 692 (Bankr. N.D. Tex. 2011) ("Objections [to administrative expense claims] are subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B)").  The bankruptcy court has "core" jurisdiction to

006940

adjudicate the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement and can enter final orders under 28 U.S.C. §§ 157(b) and 1334(b).

For all these reasons, the Renewed MTWR should be denied.

## V.   COMPLAINCE WITH LOCAL BANKRUPTCY RULE 5011-1

Finally, in compliance with Local Bankruptcy Rule 5011-1, the bankruptcy court reports that it held a status conference in this matter on Wednesday January 25, 2023, at 1:30 pm.  All parties appeared through counsel.  As noted above, Highland opposes withdrawal of the reference, and the Plaintiffs continue to urge it.  Both sides presented their arguments orally.  There is no stay of this action in place.  As noted earlier, there is a pending Renewed MTD of Highland, filed after remand to the bankruptcy court by Judge Boyle, that the bankruptcy court has under advisement.  There is no scheduling order in place currently.  The parties are not ready for trial (indeed, the Defendant argues no trial is warranted, given its positions urged in the Renewed MTD).  As discussed herein, this action presents core matters.  There are no jury trial rights.

Again, it is the conclusion and recommendation of the bankruptcy court that the Renewed MTWR should be denied in its entirety.

### ###END OF REPORT AND RECOMMENDATION###

006941

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

In Re:                                              §
Highland Capital Management, L.P.                   §
                                                    §
                                    Debtor(s)       §    Case No.:    19−34054−sgj11
                                                    §    Chapter No.:   11
Charitable DAF Fund, LP  et al.                     §
                                    Plaintiff(s)    §    Adversary No.:    21−03067−sgj
            vs.                                     §
Highland Capital Management, LP  et al.             §
                                    Defendant(s)    §    Civil Case No.:       3:22−cv−02802−S
                                                    §
Charitable DAF Fund, LP et al.                      §
                                    Plaintiff(s)    §
            vs.                                     §
Highland Capital Management, LP et al.              §
                                    Defendant(s)    §
                                                    §
                                                    §
                                                    §
                                                    §

## NOTICE OF TRANSMITTAL OF REPORT AND RECOMMENDATION

I am transmitting:

One copy of:  Report and Recommendation to the District Court on "Renewed Motion to Withdraw
the Reference" [Bankr. Doc. No. 128] .


DATED:  2/6/23                          FOR THE COURT:
                                        Robert P. Colwell, Clerk of Court

                                        by: /s/Sheniqua Whitaker, Deputy Clerk



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 6, 2023**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT | § | BANKR. CASE NO. 19-34054-SGJ-11 |
| L.P., | § | (CHAPTER 11) |
|     REORGANIZED DEBTOR. | § | |
| _____ | § | |
| CHARITABLE DAF FUND, L.P. and | § | |
| CLO HOLDCO, LTD., | § | |
| | § | |
|     PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADV. PRO. NO. 21-03067-sgj |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | CIV. ACT. NO. 3:22-cv-02802-S |
| L.P., | § | CIV. ACT. NO. 3:21-cv-0842-B |
| | § | |
|     DEFENDANT. | § | |

---

## REPORT AND RECOMMENDATION TO THE DISTRICT COURT
## ON "RENEWED MOTION TO WITHDRAW THE REFERENCE"
## [BANKR. DOC. NO. 128]

006943

## I.    INTRODUCTION

The above-referenced adversary proceeding is related to the now long-running Chapter 11 bankruptcy case of Highland Capital Management, L.P. ("Highland," the "Debtor," or sometimes the "Reorganized Debtor").  Highland is the main Defendant in this action, which was filed by Charitable DAF Fund, L.P. and CLO Holdco, Ltd. ("Plaintiffs") on April 12, 2021, in the District Court (*during* Highland's bankruptcy case and *prior* to the effective date of Highland's Chapter 11 plan) and assigned to Judge Jane Boyle.  For the *second* time since this action was filed, the Plaintiffs are urging the District Court to withdraw the reference from the bankruptcy court.  The *first* time that Plaintiffs urged it (unsuccessfully) was on June 29, 2021, to Judge Boyle, in Civil Action No. 3:21-cv-0842-B, in response to Defendant's motion to *enforce* the reference and in their cross-motion thereto, in which Plaintiffs specifically urged the District Court to find that mandatory withdrawal of the reference under 28 U.S.C. § 157(d) applied to the action and so enforcing the reference (and, thus, sending the action to the bankruptcy court) would be pointless. Judge Boyle entered an order on September 20, 2021, granting Defendant's motion to enforce the reference, referring the action to this bankruptcy court "to be adjudicated as a matter related to the consolidated Chapter 11 Bankruptcy of Highland Capital Management, L.P., Chapter 11 Case No. 19-34054."[1]  Plaintiffs brought their "Renewed Motion to Withdraw the Reference" ("Renewed MTWR") on November 18, 2022,[2] more than a year after Judge Boyle rejected their arguments and referred the action to the bankruptcy court.  The Renewed MTWR was transmitted to the District Court on December 15, 2022 and assigned to a different district judge – Judge Karen Scholer – under the above-referenced civil action number.[3]  Much has happened during this time

---

[1] *See Order of Reference*, Civ. Act. No. 3:21-cv-0842-B, Doc. No. 64.

[2] *See Renewed Motion to Withdraw the Reference*, Adv. Pro. 21-3067-sgj, Bankr. Doc. No. 128.

[3] *See* Civ. Act. No. 3:22-02802-S, Doc. No. 1.

006944

span.  This "jurisdictional ping pong" (as it might fairly be described) is best understood with the timeline of relevant events set forth in Part III below.  But first, a description of the parties is in order.

## II.    THE PARTIES

Highland is the main Defendant in this action.  There were originally two other Defendants: (a) Highland CLO Funding, Ltd. ("HCLOF"), a Guernsey-based investment vehicle that is now past its investment period, and (b) Highland HCF Advisors, Ltd. ("HCFA"), which has been described as a non-debtor, wholly owned subsidiary of Highland, which served as a portfolio manager for HCLOF.  HCLOF was dismissed with prejudice from this action on December 7, 2021 [Bankr. Doc. No. 80].  The other Defendant, HCFA, has never appeared in this action, and it appears it was never served with the summons and complaint.[4]  The court is unclear why—perhaps it was dissolved as part of the Highland reorganization or has no assets.

The Plaintiffs are CLO Holdco Ltd. ("CLO Holdco") and Charitable DAF Fund, L.P. ("DAF").  DAF is CLO Holdco's parent company.  Both Plaintiffs are Cayman Island entities and are affiliated with Highland's former chief executive officer and founder (James Dondero).  Plaintiff CLO Holdco also happens to own a 49.02% equity interest in the dismissed Defendant HCLOF.

For ease of reference—and because there are a very large number of lawsuits pending in the Northern District of Texas involving Highland and its affiliates—this action presently before the

---

[4] Highland noted on page 3 of its *Motion for an Order Extending the Time to File a Responsive Pleading*, filed in the District Court on May 6, 2021, at Doc. No. 9 (and entered on the bankruptcy court docket on September 29, 2021 at Bankr. Doc. No. 9) that "[w]hile Highland agreed to accept service on its own behalf, it could not and did not accept service on behalf of the other defendants, Highland HCF Advisors, Ltd. and Highland CLO Funding, Ltd. (together, the "Other Defendants")" and that "to the best of Highland's knowledge, the Other Defendants have not been served with the Complaint such that the time for each of them to serve a responsive pleading has not begun to run."  A *Waiver of Service of Summons* with respect to HCLOF was filed on June 3, 2021 (at Doc. No. 30 in both the District Court and bankruptcy court), but there does not appear on either docket any proof of service or waiver of service with respect to service of the summons and complaint on HCFA that would indicate that HCFA has been served as of this date.

court will be referred to as the "Lawsuit Pertaining to HarbourVest Bankruptcy Settlement." The

timeline below fully explains this.

### III.   THE RELEVANT TIMELINE

**October 16, 2019**:  Highland filed its voluntary petition for relief under chapter 11 of the

Bankruptcy Code (the "Petition Date").

**December 23, 2020**:  Highland (during its bankruptcy case—and before getting a Chapter

11 plan approved) moved for approval by the bankruptcy court of a significant settlement it

reached with entities collectively known as HarbourVest.  HarbourVest was a disputed creditor—

asserting a $300 million proof of claim against Highland—and it also happened to own a 49.98%

equity interest in the Defendant HCLOF.  Pursuant to the proposed settlement between Highland

and HarbourVest (the "HarbourVest Settlement"), HarbourVest agreed to transfer its 49.98%

equity interest in Defendant HCLOF to Highland (or Highland's designee) and agreed to greatly

reduce its disputed claim in the bankruptcy case from $300 million to $80 million (which would

be given part unsecured creditor status and part subordinated status).

**January 8, 2021**:  Plaintiff CLO Holdco objected to the HarbourVest Settlement,

presumably at the direction of its parent, DAF (the other Plaintiff herein).  CLO Holdco argued

that: (i) it, as a 49.02% equity member of HCLOF, had a "Right of First Refusal," pursuant to the

HCLOF membership agreement, to acquire the 49.98% equity interest that HarbourVest was going

to be transferring to Highland under the HarbourVest Settlement; and (ii) HarbourVest could not

transfer its 49.98% equity interest to Highland without compliance with this purported right of first

refusal.  CLO Holdco did not object on any other basis to the HarbourVest Settlement.

**January 14, 2021:**  The bankruptcy court held an evidentiary hearing on the proposed

HarbourVest Settlement, during which CLO Holdco voluntarily withdrew its objection to the

4

HarbourVest Settlement premised on the "Right of First Refusal." After an extensive presentation of evidence, the bankruptcy court overruled certain remaining objections (specifically, those of certain family trusts of James Dondero) and approved the HarbourVest Settlement.  Note that the Dondero family trusts appealed to the District Court the approval of the HarbourVest Settlement, and their appeal was dismissed for lack of standing.

**February 22, 2021:**  The bankruptcy court entered an order confirming a Chapter 11 plan for Highland [Bankr. Doc. No. 1943] (the "Confirmation Order"), which confirmed Highland's extensively mediated, negotiated, and litigated plan [Bankr. Doc. No. 1808] (the "Plan").  The Plan became effective on August 11, 2021 [Bankr. Doc. No. 2700] (the "Effective Date").  At least the following provisions are germane to this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement.   First, pursuant to the Plan, the bankruptcy court expressly retained jurisdiction/authority to "allow, disallow, determine, liquidate … any Claim … including, without limitation, the resolution of any request for payment of any Administrative Expense Claim …." Plan, Art. XI.  Second, the Plan defined "Administrative Expense Claim," in relevant part, as a: "Claim for costs and expenses of administration of the Chapter 11 Case . . . pursuant to sections 503(b), 507(a)(2), 507(b) … of the Bankruptcy Code, including … (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor . . . ."  Plan, Art. I.B.2.

**April 12, 2021**: Plaintiffs commenced this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement in the District Court—which was assigned Civ. Action No. 21-CV-0842-B (Judge Jane Boyle)—naming Debtor/Highland, HCFA, and HCLOF as Defendants.  To be clear, this lawsuit was filed at a time when Highland was still a debtor in possession (its Plan had been recently confirmed, but the plan Effective Date had not yet occurred—it occurred in August 2021).  The

006947

underlying Complaint ("Complaint") alleges that conduct of Highland during the bankruptcy case in late 2020 and early 2021 revolving around the HarbourVest Settlement—prior to the Confirmation Order—violated contractual and extra-contractual duties Highland purportedly owed (i) to Plaintiff CLO Holdco as an investor in HCLOF; and (ii) to Plaintiff DAF as an advisee under an investment advisory agreement. The Complaint raises claims: (i) by Plaintiffs for breaches of fiduciary duty against Highland and HCFA (Count 1); (ii) by CLO Holdco for breach of the HCLOF Members Agreement against all three Defendants (Count 2); (iii) by Plaintiffs for negligence against Highland and HCFA (Count 3); (iv) by Plaintiffs for violations of the Racketeer Influenced and Corrupt Organizations statute (15 U.S.C. § 1961, et seq. ("RICO")) against Highland (Count 4); and (v) by CLO Holdco for tortious interference against Highland (Count 5). In Count 1 (breach of fiduciary duty), Plaintiffs allege that Debtor/Highland violated its "broad" duties to Plaintiffs under the Investment Advisers Act and Highland's "internal policies and procedures" by: (i) engaging in "insider trading with HarbourVest"; (ii) "concealing" the value of HarbourVest's 49.98% equity interest in HCLOF; and (iii) "diverting" the investment opportunity in the HarbourVest entities to the Debtor without first offering it to Plaintiffs.[5] In Count 4 (RICO), Plaintiffs allege that Highland and its co-Defendants were an "association-in-fact" engaged in a pattern of racketeering activity for this same underlying conduct; namely, failing to disclose the valuation of HCLOF's interest and ultimately effectuating the HarbourVest Settlement. Again,

---

[5] While specific statutory references to the federal Investment Advisers Act are sparse in the Complaint, subsequent pleadings of the Plaintiffs make clear they are referring to at least 15 U.S.C. § 80b-6 and 80b-15(a) (which they cite as imposing both a duty of care and a duty of loyalty, each unwaivable, on investment advisors, in favor of funds and its investors, citing *SEC v. Tambone*, 550 F.3d 106, 146 (1st Cir. 2008)); 15 U.S.C. § 206(2) (which they cite as requiring investment advisers to seek "best execution" for all their clients' transactions, citing *SEC v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 286, 300 (E.D. Pa. 2021)); and 15 U.S.C. § 215 (which they cite as recognizing "a limited private right of action for equitable relief including disgorgement, wherein one may seek to void the rights of a violator who performs a contract in violation of the Advisers Act"). Response to Renewed Motion to Dismiss, pp. 12-13. Bankr. Doc. No. 130.

Highland's alleged misconduct was the act of settling the $300 million proof of claim filed against Highland by HarbourVest under the terms and conditions of the HarbourVest Settlement.  To be clear, the HarbourVest Settlement was implemented after full notice to creditors in the Highland case, an evidentiary hearing, and approval by the bankruptcy court after fulsome findings of fact and conclusions of law.  And as noted earlier, one of the Plaintiffs, CLO Holdco, even objected to the HarbourVest Settlement and then withdrew its objection the morning of the bankruptcy court's hearing on the HarbourVest Settlement.

**May 19, 2021**: Soon after the commencement of this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, Highland moved before Judge Boyle for an order to enforce the Northern District of Texas's standing order of reference (Misc. Order No. 33) [Bankr. Doc. No. 22] (the "Motion to Enforce"), arguing that the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement should be referred to the bankruptcy court, since it asserted claims arising in, arising under, or related to Title 11 and Highland's bankruptcy case.

**May 27, 2021**: Highland also swiftly moved to dismiss the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement [Bankr. Doc. No. 26] (the "Original MTD").  The Original MTD was fully briefed to Judge Boyle.[6]

**June 29, 2021:** Plaintiffs reacted by filing their response to the Motion to Enforce [Bankr. Doc. No. 36], arguing the Motion to Enforce should be denied, and ***cross-moving therein that Judge Boyle should keep the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement*** because the claims therein were subject to mandatory withdrawal of the reference, under 28 U.S.C § 157(d)—i.e., they involved "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" and could not be adjudicated

---

[6] Defendant HCLOF filed a *Motion to Dismiss and Joinder in Motion to Dismiss of Highland Capital Management, L.P.* in the District Court at Doc. No. 57 (Bankr. Doc. No. 57) on August 30, 2021.

006949

in the bankruptcy court.  To be clear, the underlying Complaint (while all about the HarbourVest

Settlement) asserts claims of breach of fiduciary duty under the federal Investment Advisers Act

("IAA") and state law; breach of contract; negligence; RICO; and tortious interference with

contract.  Notably, the arguments in Plaintiffs' cross-motion on June 29, 2021 appear to be

identical to those in Plaintiffs' Renewed MTWR now before the court.

**August 26, 2021:** Plaintiffs filed a motion before Judge Boyle asking her to stay the action

before her, pending appeal of the Confirmation Order [Bankr. Doc. No. 55] (the "Stay Motion"),

arguing that the Plan injunction somehow prohibited the prosecution of the Lawsuit Pertaining to

HarbourVest Bankruptcy Settlement.  The Stay Motion was fully briefed to Judge Boyle.

**September 20, 2021:**  The District Court (Judge Boyle) granted Highland's Motion to

Enforce and referred this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement to the

bankruptcy court, including the Original MTD, "[p]ursuant to 28 U.S.C. § 157 … to be adjudicated

as a matter related to the … Bankruptcy of Highland Capital Management, L.P." [Bankr. Doc. No.

64].

**November 23, 2021:**  Plaintiffs and Defendants argued the Stay Motion and the merits of

the Original MTD, including their alleged claims under the IAA and RICO, to the bankruptcy

court.  Following the hearing the bankruptcy court denied the Stay Motion.[7]

**March 11, 2022:** The bankruptcy court granted the Original MTD and issued a written

ruling on it (the "MTD Order")—never getting to the merits of the claims in the Lawsuit Pertaining

to HarbourVest Bankruptcy Settlement. [Bankr. Doc. No. 100]. Rather, the bankruptcy court

dismissed the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement with prejudice, on the

---

[7] *See Order Denying Motion to Stay*, Bankr. Doc. No. 81, entered on December 7, 2021.  As noted above,, the
bankruptcy court also entered, on December 7, 2021, its *Order Granting Highland CLO Funding, Ltd.'s Motion to
Dismiss* [Bankr. Doc. No. 80].

8

basis that the claims were precluded by the doctrines of collateral estoppel and judicial estoppel. *See Charitable DAF Fund, L.P. and CLO Holco, Ltd. v. Highland Cap. Mgmt., L.P., et al. (In re Highland Cap. Mgmt., L.P.)*, 2022 WL 780991 (Bankr. N.D. Tex., Mar. 11, 2022). The bankruptcy court concluded that the claims in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement were barred due to the strategic decisions of Plaintiff CLO Holdco during the bankruptcy case (i.e., choosing to withdraw its objection to the HarbourVest Settlement) and that decision was also binding on its Co-Plaintiff DAF (its parent) since the two were in privity. On March 25, 2022, the Plaintiffs appealed the MTD Order to the District Court. *See* 3:21-cv-00695-B, Doc. No. 2. The Plaintiffs did not raise 28 U.S.C. § 157(d) in the appeal or otherwise argue that the bankruptcy court lacked jurisdiction or authority to have entered the MTD Order.

**June 17, 2022:** Judge Boyle entered an order consolidating the appeal of the MTD Order with Plaintiff's appeal of the bankruptcy court's order denying the Stay Motion, which had been assigned Civ. Act. No. 3:21-cv-03129. *See* 3:21-cv-03129-B, Doc. No. 20.

**September 2, 2022**: Judge Boyle, sitting this time in an appellate capacity: (i) reversed the bankruptcy court's conclusion that collateral estoppel barred Plaintiffs' claims but (ii) remanded on the judicial estoppel determination.[8] *See Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 166 (N.D. Tex. 2022). Specifically, Judge Boyle determined that the bankruptcy court had erred in its ruling that collateral estoppel barred entirely the claims in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, but Judge Boyle separately, in evaluating the bankruptcy court's determination that judicial estoppel also barred Plaintiff's Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, ruled that the bankruptcy court did not make a certain finding necessary to conclude judicial estoppel applied

---

[8] Judge Boyle also affirmed the bankruptcy court's order denying the Stay Motion.

006951

(i.e., a finding of "inadvertence").  Thus, Judge Boyle remanded to the bankruptcy court for possible further findings on the judicial estoppel doctrine and presumably for an adjudication on the merits of the various claims asserted in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, if the bankruptcy court concluded judicial estoppel did ***not*** apply (after evaluating the "inadvertence" factor).

**September 8, 2022**: Meanwhile, the U.S. Court of Appeals for the Fifth Circuit affirmed, in material part, the Confirmation Order's factual findings and legal conclusions in support of the Highland Plan.  *NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt.*, L.P., 48 F.4th 419 (5th Cir. 2022).  A petition for writ of certiorari is now pending before the U.S. Supreme Court regarding the Plan Confirmation Order. To be clear, there has never been a stay of the Plan (i.e., the Confirmation Order), and the Highland Plan has been in effect since August 11, 2021.

**October 14, 2022**: In response to Judge Boyle's remand, *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 166 (N.D. Tex. 2022), Highland filed a renewed motion to dismiss [Bankr. Doc. No. 122] (the "Renewed MTD"). It addresses the "inadvertence" factor on the judicial estoppel defense (arguing it bars Counts 2 and 5 of the Complaint), and also argues that all claims in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement—even if not precluded by the doctrine of judicial estoppel—are not plausible on their face, under *Iqbal* and *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**November 18, 2022**:  Plaintiffs responded to the Renewed MTD and also filed their Renewed MTWR, again urging mandatory withdrawal of the reference.  Plaintiffs once again are arguing that this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement "requires consideration" of non-bankruptcy federal laws regulating interstate commerce and, thus,

mandatory withdrawal of the reference applies under 28 U.S.C. § 158(d). ***Interestingly, Plaintiffs
have now moved to dismiss their RICO count (without prejudice)***.[9]  Thus, their sole "other federal
law" argument boils down to this:

> This adversary proceeding primarily involves fiduciary duties imposed
> upon Registered Investment Advisers by the Investment Advisers Act of 1940
> ("Advisers Act") and corresponding state law claims for breach of those duties. As
> a result, presiding over this action will require extensive consideration of federal
> laws regulating interstate commerce, which renders withdrawal of the reference to
> bankruptcy court mandatory under 28 U.S.C. § 157(d).

Renewed MTWR, at ¶ 5.

## IV.    **RECOMMENDATION**

The bankruptcy court recommends that Plaintiffs' Renewed MTWR be denied.  The
bankruptcy court clearly has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §
1334(b).  The Renewed MTWR was not timely filed, which is required under the mandatory
withdrawal provisions of 28 U.S.C. § 157(d), and it is the quintessential attempt at a second bite
at the apple.

### A.    *Jurisdiction and Core Nature of the Action*

First, there is no concern about lack of bankruptcy subject matter jurisdiction here.
Bankruptcy subject matter jurisdiction exists over the claims against the Defendant pursuant to 28
U.S.C. §§ 1334(b) and 157.  Under 28 U.S.C. § 1334(b), "district courts shall have original but not
exclusive jurisdiction of all civil proceedings ***arising under*** title 11, or ***arising in*** or ***related to***

---

[9] *See* Plaintiff's Response to Renewed MTD at 23 ("Plaintiffs respectfully dismiss the RICO claim under Rule 41(a)
to the extent such a claim is revealed to have existed under non-securities bases. Because Highland has conceded that
Plaintiffs' claims are actionable under the federal securities laws and the Advisers Act, and has cited same as a basis
for dismissing the RICO claim, Highland is precluded and estopped from denying the violations of the Securities Laws
and the Advisers Act. As such, to the extent that other, non-securities law violations may give rise to RICO violations,
Plaintiffs respectfully reserve the right to bring such a claim but respectfully dismiss their RICO claim at this time.")

cases under title 11."[10] (Emphasis added.)  The bankruptcy courts, in turn, are delegated authority

to exercise that jurisdiction from the district courts, under 28 U.S.C. § 157(a).[11]  There does not

appear to be any dispute that this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement is at

least "related to" the Highland bankruptcy case.  Thus, bankruptcy subject matter jurisdiction

exists.[12]  Moreover, there does not appear to be any dispute that the action involves "core" matters

over which a bankruptcy court may generally enter final judgments.[13]  As noted recently by the

Fifth Circuit:  "[A] proceeding is core under section 157 if it invokes a substantive right provided

by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy

case.  For example, claims concerning the administration of the estate, allowance or disallowance

of claims against the estate, and sale of property of the estate are all core proceedings.[14]  *See*

*generally In re Southmark Corp.*, 163 F.3d 925, 930-31 (5th Cir. 1999) (malpractice suit against

an examiner's accountant was a core proceeding; "The bankruptcy court must be able to assure

itself and the creditors who rely on the process that court-approved managers of the debtor's estate

are performing their work, conscientiously and cost-effectively. . . .  Award of the professionals'

---

[10] 28 U.S.C. § 1334(b); *see also In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) ("[Section] 1334(b) grants jurisdiction to district courts and adjunct bankruptcy courts to entertain proceedings 'arising under,' 'arising in a case under,' or 'related to' a case under Title 11 of the United States Code, i.e., proceedings 'related to' bankruptcy.").

[11] *In re PFO Glob., Inc.*, 26 F.4th at 252 (citing 28 U.S.C. § 157(a)).

[12] *In re Bass*, 171 F.3d at 1022 ("To determine whether [bankruptcy] jurisdiction exists, 'it is necessary only to determine whether a matter is at least "related to" the bankruptcy.'" (quoting *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995))).

[13] Plaintiffs' Renewed MTWR seemed to dispute that core matters are involved.  But their position on this at the status conference on this seemed equivocal.  In addition, as noted earlier, there is a non-debtor Defendant named herein, HCFA, that is a subsidiary of Highland.  Likely, claims asserted against it by Plaintiffs (which appear to be asserted at Counts 1-3) would not be core matters.  However, HCFA has not been served and has failed to appear or defend in this matter.  Thus, presumably there will be no adjudication of the claims against it in this action and the claims against it are irrelevant.

[14] *Foster v. Aurzada, et al.* No. 22-10310 and No. 22-10318, slip. Op. at p. 5 (5th Cir. Jan. 3, 2023) (per curium), *citing In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) and 28 U.S.C. § 157(b)(2)(A), (B), (N), (O)).

006954

fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.").[15]

Again, there appears to be no dispute here regarding the "core/noncore" status of the claims. Plaintiffs' argument is that, even if the claims are core, mandatory withdrawal of the reference is necessitated, pursuant to 28 U.S.C.§ 157(d), because of other federal law, besides bankruptcy law, being significantly implicated.

B. *Untimeliness*.

Plaintiffs' request for mandatory withdrawal of the reference is by any reasonable measure "untimely." Under 28 U.S.C. § 157(d), a district court "shall, on **timely** motion of a party, so withdraw a proceeding if … resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added). Assuming a timely motion, mandatory withdrawal is warranted only if a matter requires "substantial and material consideration" and "significant interpretation of federal laws[,]" rather than a "straightforward application of a federal statute to a particular set of facts." *In re Nat'l Gypsum*, 14 B.R. 188, 192-93 (N.D. Tex. 1991); *Kirschner v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 1028, at *27-28 (Bankr. N.D. Tex. Apr. 6, 2022) (same). The Renewed MTWR was filed **fourteen months** after Judge Boyle referred this action to the bankruptcy court. Moreover, it was filed after: (a) the bankruptcy court made a final ruling on a motion to dismiss, (b) Judge Boyle ruled on that final bankruptcy court ruling in an appellate capacity, and (c) remanded back to the bankruptcy court for further proceedings.

---

[15] *See id.* at 930 (citing 28 U.S.C. § 157(b)(3)) (stating that whether claim has a state law origin is not dispositive to whether it is a core bankruptcy matter); *In re Wood*, 825 F.2d at 97 n.34 (stating that whether right is state created is not dispositive to whether proceeding is core under 28 U.S.C. § 157).

006955

To be clear, 28 U.S.C. § 157(d) does not define "timely," but it has been interpreted as requiring a motion to be made at the first reasonable opportunity.  *See In re Fresh Approach, Inc.,* 51 B.R. 412, 415-16 (Bankr. N.D. Tex. 1985) (finding a motion to withdraw the reference untimely when filed sixteen days after the court entered its decision on the matter); *see also Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1007, n.3 (9th Cir. 1997). ("A motion to withdraw is timely 'if it was made as promptly as possible in light of the developments in the bankruptcy proceeding.'"); *Connolly v. Bidermann Indust. U.S.A., Inc.,* 1996 U.S. Dist. LEXIS 8059, at *8 (S.D.N.Y. June 13, 1996) ("Plaintiff's delay of over eight months renders her motion untimely, and as such it does not meet the threshold requirement set forth in 28 U.S.C. § 157(d)."); 9 COLLIER ON BANKRUPTCY ¶ 5011.01[2] ("[M]otions for mandatory withdrawal must be made as soon as it is apparent that it is necessary for the district court to hear the proceeding").

But this isn't just any untimely motion.  This is a ***second*** motion.  This appears to be the proverbial second bite at the apple—urged right after Highland, after reviewing Judge Boyle's September 2022 appellate ruling, moved for dismissal of this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, this time fully arguing the judicial estoppel factors that Judge Boyle determined had not been fully vetted.  The Highland Renewed MTD also asks the bankruptcy court to, this time, rule on the merits of the claims (which the bankruptcy court did not do last time), in the event judicial estoppel does not apply.  The Renewed MTWR appears to be an attempt by Plaintiffs to avoid the bankruptcy court exercising its duties in response to Judge Boyle's remand. It appears to be forum shopping and an attempt at delaying adjudication.  The reality is that, if the bankruptcy court rules on the Renewed MTD in a way Plaintiffs find unsatisfactory, they can appeal again to the District Court.  The further reality is that if judicial estoppel prevails, there will never be any "substantial and material consideration" and "significant interpretation of federal

laws]" in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement. *In re Nat'l Gypsum*, 14 B.R. 188, 192-93.

C. No "Substantial and Material Consideration" and "Significant Interpretation of Federal Laws" are Implicated Here; This is At Bottom a Request for Allowance of an Administrative Expense Claim

To be clear, the causes of action in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement are tantamount to the assertion of administrative expense claims against a Chapter 11 Debtor. As a general matter, the filing of administrative expense claims triggers the claims allowance process and subjects a claimant to the bankruptcy court's equitable jurisdiction. *See, e.g., In re UAL Corp.*, 386 B.R. 701, 707 (Bankr. N.D. Ill. 2008) ("[B]y filing a claim … the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power … As such, there is no Seventh Amendment right to a jury trial … Claims for payment of an administrative expense are no different from other claims in this regard.") (citing *Langenkamp v. Culp*, 498 U.S. 42 (1990)); *see also Harpole Constr., Inc. v. Medallion Midstream, LLC (In re Harpole Constr., Inc.)*, 565 B.R. 193, 202 (Bankr. D. N.M. 2017) (same); *Carter v. Schott (In re Carter Paper Co.)*, 220 B.R. 276, 290-311 (Bankr. M.D. La. 1998) (finding breach of fiduciary duty claim against bankruptcy trustee originally filed in state court was an administrative expense claim and no jury trial right existed). It is difficult to see Plaintiffs' strategy here as anything other than an attempted end-run around the bankruptcy court. They argue as justification that there is substantial other federal law involved. But Plaintiffs' claims do not seem complex. If Plaintiffs survive the Renewed MTD (based on the judicial estoppel factors) their federal claims are simply: (a)(i) did Highland owe both Plaintiffs a fiduciary duty under the IAA; (ii) if so, what was the nature of that duty and was it violated; and (iii), if violated, what are the remedies and potential damages? Fiduciary duties (and interpretation of

different sources of fiduciary duties) certainly are not outside a bankruptcy court's expertise. *See In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953-54 (7th Cir. 1996); *City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (mandatory withdrawal requires "significant interpretation, as opposed to simple application, of federal laws"). "[M]andatory withdrawal is to be applied narrowly" to "prevent 157(d) from becoming an 'escape hatch.'" *Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist. LEXIS 102134, at *6 (N.D. Tex. Oct. 1, 2009), *aff'd* 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009). Moreover, bankruptcy courts frequently consider other federal law (as well as state law) in adjudicating claims against the estate.

"Claims against the estate" is what's implicated here. The claims were asserted against the Debtor/Highland before its plan went effective and involve a time period during its case. Administrative expense claims include claims arising from a debtor-in-possession's postpetition negligence, tortfeasance, and malfeasance. *See Reading Co. v. Brown*, 391 U.S. 471, 478-79 (1968) (holding that if a debtor-in-possession commits a tort or harms a non-debtor following the petition date, the resulting claim is an administrative expense claim even though there was no benefit to the debtor's estate) Moreover, the Plan made very clear that claims such as this were required to be filed in the bankruptcy court by a date certain. *See In re Weblink Wireless, Inc.*, 2003 Bankr. LEXIS 2312, at *3 (Bankr. N.D. Tex. Mar. 12, 2003) ("The allowance of an administrative expense to be paid pursuant to a confirmed plan of reorganization constitutes a core matter over which the court has jurisdiction to enter a final order."); *see also In re Taco Bueno Rests., Inc.*, 606 B.R. 289, 292 (Bankr. N.D. Tex. 2019) (finding core jurisdiction to adjudicate administrative claim); *In re Pilgrim's Pride Corp.*, 453 B.R. 691, 692 (Bankr. N.D. Tex. 2011) ("Objections [to administrative expense claims] are subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B)"). The bankruptcy court has "core" jurisdiction to

16

adjudicate the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement and can enter final orders under 28 U.S.C. §§ 157(b) and 1334(b).

For all these reasons, the Renewed MTWR should be denied.

## V.    COMPLAINCE WITH LOCAL BANKRUPTCY RULE 5011-1

Finally, in compliance with Local Bankruptcy Rule 5011-1, the bankruptcy court reports that it held a status conference in this matter on Wednesday January 25, 2023, at 1:30 pm.  All parties appeared through counsel.  As noted above, Highland opposes withdrawal of the reference, and the Plaintiffs continue to urge it.  Both sides presented their arguments orally.  There is no stay of this action in place.  As noted earlier, there is a pending Renewed MTD of Highland, filed after remand to the bankruptcy court by Judge Boyle, that the bankruptcy court has under advisement. There is no scheduling order in place currently.  The parties are not ready for trial (indeed, the Defendant argues no trial is warranted, given its positions urged in the Renewed MTD).  As discussed herein, this action presents core matters.  There are no jury trial rights.

Again, it is the conclusion and recommendation of the bankruptcy court that the Renewed MTWR should be denied in its entirety.

### ###END OF REPORT AND RECOMMENDATION###

006959

# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CHARITABLE DAF FUND, L.P. and CLO HOLDCO, LTD., directly and derivatively, | § § § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-2802-S |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., and HIGHLAND CLO FUNDING, LTD. | § § § § | |

## ORDER

This Order addresses the Joint Motion to Transfer Proceeding and Consolidate Before Original Court [ECF No. 11] ("Motion"). The Court **GRANTS** the Motion and the above-numbered case is hereby transferred to the docket of the Honorable Judge Jane Boyle, and shall henceforth carry the suffix letter "B."

**SO ORDERED.**

SIGNED April 3, 2023.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

006960

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS (DALLAS)

```
IN RE:                        .   Case No. 19-34054-11(SGJ)
                              .
HIGHLAND CAPITAL             .
MANAGEMENT, L.P.,            .
                              .
                              .
         Debtor.             .
. . . . . . . . . . . . . . . .
                              .   Adv. No. 21-03067(SGJ)
CHARITABLE DAF FUND, LP,     .
et al.,                      .
                              .
         Plaintiffs,         .   Earle Cabell Federal Building
                              .   1100 Commerce Street
      v.                      .   Dallas, Texas  75242
                              .
HIGHLAND CAPITAL,            .
MANAGEMENT, L.P., et al.,    .
                              .
         Defendants.         .   Tuesday, November 23, 2021
. . . . . . . . . . . . . . .     9:40 a.m.
```

TRANSCRIPT OF HEARING ON
PLAINTIFFS' MOTION TO STAY ALL PROCEEDINGS (55);
PLAINTIFFS' MOTION TO STRIKE REPLY APPENDIX (47); AND
DEFENDANTS' MOTION TO DISMISS COMPLAINT (26)

**BEFORE HONORABLE STACEY G. JERNIGAN**
**UNITED STATES BANKRUPTCY COURT JUDGE**

TELEPHONIC APPEARANCES CONTINUED ON NEXT PAGE.

Audio Operator:          Hawaii S. Jeng

Proceedings recorded by electronic sound recording, transcript
produced by a transcript service.

_____

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail:  DBPATEL1180@GMAIL.COM**
**(847) 848-4907**

2

TELEPHONIC APPEARANCES:

For CLO Holdco, Ltd.:          Sbaiti & Company PLLC
                              BY:  MAZIN AHMAD SBAITI, ESQ.
                              JP Morgan Chase Tower
                              2200 Ross Avenue, Suite 4900 W
                              Dallas, Texas 75201


For Highland Capital          Pachulski Stang Ziehl & Jones LLP
Management:                   BY:  JOHN MORRIS, ESQ.
                              780 3rd Avenue, 34th Floor
                              New York, NY 10017


                              Pachulski Stang Ziehl & Jones LLP
                              BY:  JEFFREY N. POMERANTZ, ESQ.
                              10100 Santa Monica Blvd., 13th Floor
                              Los Angeles, California 90067


For Highland CLO              Brobeck Phleger & Harrison
Funding, Ltd.:               BY:  JONATHAN W. JORDAN, ESQ.
                              4801 Plaza on the Lake
                              Austin, Texas 78746


                              King & Spalding LLP
                              BY:  PAUL RICHARD BESSETTE, ESQ.
                              500 West 2nd Street, Suite 1800
                              Austin, Texas 78701

006962

3

**INDEX**

                                                              **PAGE**

PLAINTIFFS' MOTION TO STAY ALL PROCEEDINGS (55)
    Court's Ruling - Denied                                    29

PLAINTIFFS' MOTION TO STRIKE REPLY APPENDIX (47)
    Court's Ruling - Denied                                    32

DEFENDANTS' MOTION TO DISMISS COMPLAINT (26)
    Court's Ruling - Under Advisement                          103

006963

4

1          THE COURT:  Good morning.  Please be seated.

2          All right.  We have a setting in the Charitable DAF

3  Fund, et al., v. Highland, Adversary 21-3067.  We have three

4  motions that are set.

5          Let me get appearances from the Plaintiffs' counsel

6  first.  Go ahead.

7          MR. SBAITI:  Good morning, Your Honor.  This is Mazin

8  Sbaiti for the Plaintiffs.

9          THE COURT:  Okay.  Thank you.

10          Now for the Defendants, who do we have appearing?

11          MR. POMERANTZ:  Good morning, Your Honor.  It's Jeff

12  Pomerantz and John Morris from Pachulski Stang Ziehl & Jones.

13  Your Honor, before -- I understand Your Honor is going to take

14  up the motion to stay first.

15          Before Your Honor does so, I have a procedural issue

16  relating to that motion that I would like to address the Court

17  after appearances are made.

18          THE COURT:  All right.  I assume that's all the

19  lawyer appearances for this adversary.

20          MR. JORDAN:  Your Honor?

21          THE COURT:  Oh, go ahead.

22          MR. JORDAN:  Your Honor, we are a nominal defendant,

23  but John Jordan on behalf of Highland CLO Funding, Ltd.

24          THE COURT:  Okay.  Thank you.  Sorry about that.

25          MR. BESSETTE:  And, Your Honor, Paul Bessette, Mr.

006964

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 18-12    Filed 09/11/24    Page 54 of 153    PageID 7523

5

1    Jordan's colleague is on the phone, as well.

2                 THE COURT:  Okay.  Thank you.

3                 All right.  Anyone else I missed?

4          (No audible response)

5                 THE COURT:  All right.  Mr. Pomerantz, your

6    procedural issue?

7                 MR. POMERANTZ:  Thank you, Your Honor.

8                 Your Honor, I must once again bring to this Court's

9    attention a violation of the Court Rules by the various counsel

10   representing Mr. Dondero.  This time it's by Mr. Sbaiti.

11                When the district court entered its order granting

12   Highland's motion to enforce the reference and referring this

13   matter to Your Honor, there were three matters on the Court's

14   docket, district court's docket that got transferred.  First

15   was the motion to dismiss, second was the motion to stay, and

16   third was the motion to strike, which essentially has been

17   rendered moot.

18                The briefing was complete with respect to the first

19   two matters, the motion to dismiss and the motion to stay.  And

20   all that remained for the Court to do was to set a hearing and

21   have oral argument.  Your Honor, on October 13th, Your Honor

22   set a hearing for today for each of those two motions.

23   Nevertheless, on November 10th, almost a month after the Court

24   set the matters for hearing and after pleadings were closed,

25   Plaintiffs filed what they called their amended motion to stay.

6

1      As an initial matter, Your Honor, the amended motion

2  was not even filed in this adversary proceeding initially.  It

3  was filed in the main case, and there was an error that Mr.

4  Sbaiti corrected on November 18th, five days before this

5  hearing.  Plaintiff did not ask for leave of court to file any

6  further pleadings.  They did not provide the time under the

7  local rules for response.  And, in fact, they raised additional

8  arguments in their amended motion.

9      Well, Your Honor, we can certainly argue to the Court

10 that the amended motion constitutes a new motion, is untimely,

11 and the hearing should be continued to allow us to file a

12 response.  We're not going to do that, Your Honor.  As I will

13 discuss when it's my time to response substantively to the

14 motion, the new arguments to stay the proceedings, the amended

15 motion are equally as frivolous as the arguments contained in

16 the original motion.

17     But I bring this to the Court's attention because,

18 again, it's extremely frustrating to have the lawyers

19 representing Mr. Dondero's related entities continue to act as

20 if the rules do not apply to them.  Your Honor will recall just

21 a week or so ago, Your Honor made a -- we had a similar issue

22 in connection with the motion to dismiss.  Failure to follow

23 the rules is unprofessional, and it's disrespectful not only to

24 Highland's professionals but also to the Court and it

25 interferes with Your Honor's ability to control your docket and

006966

7

1  sufficiently prepare for contested matters.

2       At some point, Your Honor, there should be real

3  consequences for the continued violation of the rules.  Having

4  said that, Your Honor, we are prepared to go forward with the

5  motion to stay today.

6       THE COURT:  All right.  Mr. Sbaiti, what say you?

7  I'm looking at Docket Entry Number 69 in the adversary

8  proceeding that was filed last Thursday.  So, obviously, very,

9  very late in the game, shall we say.  What is your response to

10  this?

11       MR. SBAITI:  Your Honor, that was not filed in the

12  adversary as an error.  When we asked one of our paralegals to

13  file it, we're not as familiar with the bankruptcy court system

14  and it was an error.  It was corrected once the lawyers

15  realized it, which was last -- which was on November the 18th.

16  It was filed in, I guess in the main case.  But it was simply

17  an inadvertent error, Your Honor.

18       MR. POMERANTZ:  I would add, Your Honor, the original

19  motion filed inadvertently was November 10th.  It still was not

20  timely.  I think Mr. Sbaiti needs to answer the question of why

21  that was filed untimely, okay.

22       THE COURT:  All right.  Thank you, Mr. Sbaiti.

23       So, one of my pet peeves in life is people blaming

24  paralegals, by the way.  But be that as it may, as Mr.

25  Pomerantz points out that it was still untimely the motion

8

1  filed in the underlying bankruptcy case November 10th.  So what

2  is your --

3         MR. SBAITI:  Your Honor, when we looked at the motion

4  and looked at the progression of the case, we filed an amended

5  motion simply to clarify our position.  And really I don't

6  think we've changed our arguments all that much.  We simply

7  clarified our position.  We've seen amended motions filed in

8  the bankruptcy in our prior dealings, and so at that point, we

9  felt like there wasn't a rule explicitly saying we couldn't

10  have an amended motion.

11         But if it's untimely, Your Honor, you know, we don't

12  think it changes the underlying arguments.  As Mr. Pomerantz

13  said, we don't think there's any prejudice to Highland either.

14         THE COURT:  All right.  Well, just to be clear, you

15  know, it's one thing in an underlying bankruptcy case to file

16  an amended motion after you've gotten a motion set for hearing

17  that might slightly adjust, you know, facts or relief sought.

18  And, of course, we independently look at it when it happens in

19  an underlying case to see do we need more notice to affected

20  parties.

21         But in an adversary proceeding, you know, you just

22  don't do this.  All right?  If you have some sort of

23  exceptional circumstances, you can file I guess a motion to

24  amend because I got to include this new information that didn't

25  exist.  But you just don't do this, okay?

006968

9

1          So I don't -- could you be clear what was the new

2   information?  What was the new information that had to be

3   brought before the Court suddenly?

4          MR. SBAITI:  Your Honor, there wasn't new

5   information.  We were simply giving notice of our understanding

6   of where the legal arguments were going.  The reason being is

7   that after those motions were filed and recently, the debtor

8   took the position in two other cases that they should be

9   dismissed pursuant to the permanent injunction.

10          And so that clarified for us at least a couple of

11  arguments that were unclear to us where the debtor stood on

12  whether or not the permanent injunction would be a basis to

13  dismiss or stay any of the claims that were pending.  There are

14  two other claims pending in district court.  Since we had filed

15  that motion, the debtor filed a motion to reconsider the stays

16  that were granted in those two courts.  And then they also

17  moved to dismiss on the basis of the permanent injunction.

18          And so given that the debtor took the position that

19  they were willing to dismiss those cases based upon the

20  permanent injunction, it in many ways contravenes the position

21  they took in response to our motion which is that the -- for

22  example, they somewhat take the position in Paragraph 22, it

23  wasn't as clear then but it's clear -- it seems clearer now

24  that the permanent injunction is not relevant to whether or not

25  the case can go forward in any capacity.

006969

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 68-2    Filed 09/01/23    Page 59 of 153    PageID 7528
Document Page 91 of 304

10

1          And so we simply wanted to incorporate that, but it's

2   mainly legal argument about the choices that are before the

3   Court.  That was really it.  I mean, theoretically, I would

4   have made them for the first time during oral argument and we

5   thought we were doing something good by giving -- apprising the

6   Court in writing and giving notice of these arguments to the

7   other side by filing an amended motion.  We didn't add new

8   evidence or anything like that.

9          MR. POMERANTZ:  Your Honor, that argument is

10  completely disingenuous because our motion to dismiss and

11  motion for reconsideration that Mr. Sbaiti refers to is several

12  weeks ago, okay.  It wasn't November 10th.  It was several

13  weeks ago.

14         I will respond substantively why Mr. Sbaiti is wrong

15  and there's no inconsistent positions when it's my time to

16  speak.  But for Mr. Sbaiti to say he was doing us a favor and

17  he was reacting to recent new information is just wrong, Your

18  Honor.  And they should just not be continued to allowed to get

19  away with flouting the rules.

20         THE COURT:  All right.  Well, let me just say I'm

21  confused, maybe I should say baffled, about this amended

22  motion.  You know, the motion to dismiss that is before the

23  Court for oral argument today isn't about the injunction, isn't

24  about the plan injunction.  It's about res judicata and other

25  12(b)(6) arguments.

11

1        So I'm confused and I think, you know, it's been
2   clear for many months in this adversary proceeding, in
3   particular, the debtor's position on the plan injunction,
4   particularly, you know, in the whole argument on the motion to
5   leave to add Mr. Seery as a defendant.

6        So I'm confused, but we're going to go forward on the
7   argument today, whatever argument you want to make.  And you've
8   been, I guess, forewarned.  I will say that these last-minute
9   amended motions are not going to be tolerated, are not going to
10  be considered.  And so, you know, I hope you won't do it again.
11  Your firm has already been sanctioned once in this adversary
12  proceeding.  I'm sure we all remember.

13       So, you know, I'm just kind of baffled why you would
14  take a chance filing an amended motion without leave or somehow
15  getting it to the attention of the Court or running it by the
16  other parties for their consent to you doing it.  But we're
17  going to go forward and just hear the arguments, okay.  And so
18  --

19       MR. SBAITI:  Thank you.

20       THE COURT:  -- I'll hear your argument.

21       I'm letting people know I don't know where this time
22  estimate came on the calendar today, three hours.  I don't know
23  if someone specifically expressed that.  But I'm letting you
24  know at noon I have a swearing-in ceremony that I'm doing back
25  in my chambers.  So I will stop at noon Central time.

**WWW.LIBERTYTRANSCRIPTS.COM**

006971

12

1           And so does anyone think that's going to be a

2   problem?

3           MR. SBAITI:  It should not be, Your Honor, from our

4   perspective.

5           THE COURT:  Mr. Pomerantz?

6           MR. POMERANTZ:  I don't believe so.  Mr. Morris is

7   going to handle the motion to dismiss which is going to be the

8   bulk.  My presentation on the motion to stay is only going to

9   be around ten minutes or so.

10          THE COURT:  Okay.  Thank you.

11          Mr. Sbaiti, your argument on the motion for stay.

12          MR. SBAITI:  Thank you, Your Honor.

13          Your Honor, may I share my screen?

14          THE COURT:  You may.

15          MR. SBAITI:  I have a PowerPoint that can kind of --

16          THE COURT:  Okay.  You may.

17          MR. SBAITI:  -- walk us through.  Thank you.

18          Is Your Honor able to see my screen?

19          THE COURT:  I can, yes.

20          MR. SBAITI:  Thank you, Your Honor.

21          Your Honor, what I would point you to is, first, the

22  injunction language.  This is what Your Honor's permanent

23  injunction says, and this is really what animates our motion to

24  stay.  Out motion to stay is derived specifically because my

25  clients and I feel like our case has been enjoined by this

006972

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-32   Filed 09/31/2304   Page 62 of 153   PageID 7531

13

1    injunction, if not completely disposed of.

2             The language says that we're an enjoined:

3             "An enjoined party is permanently enjoined from

4             commencing, conducting, or continuing in any manner

5             any suit, action, or other proceeding of any kind

6             including any proceeding in a judicial, arbitral,

7             administrative, or other forum against or affecting

8             the debtor or the property of the debtor."

9             And then (v) of that injunction says:

10            "or acting or proceeding in any manner in any place

11            whatsoever that does not conform to or comply with

12            the provisions of the plan."

13            One of the things that was suggested in Paragraph 22

14   of their response was that the DAF and Holdco are not enjoined

15   parties.  But the final plan defines an enjoined party in

16   Article 1(b)(56) as any entity who has or -- all entities who

17   have held, hold, or may hold claims against the debtor; any

18   entity that has appeared and/or filed any motion, objection, or

19   other pleading in this Chapter 11 case regardless of the

20   capacity in which such entity appeared and any other party in

21   interest.  And, five, the related persons of each of the

22   foregoing.

23            Article 1(b)(22) defines a claim as any claim that's

24   defined in Section 1015 of the Bankruptcy Code.  And Section

25   1015 of the Bankruptcy Code defines a claim as a right to

006973

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/11/2304   Page 63 of 153   PageID 7532

14

1   payment whether or not such right is reduced to judgment,

2   liquidated, unliquidated, fixed, contingent, matured,

3   unmatured, disputed, undisputed, legal, equitable, secured, or

4   unsecured.

5         So given this definition, when we've read this

6   injunction, we believed that we were enjoined parties, the DAF

7   and Holdco were both enjoined parties.  They had appeared in

8   the -- they have claims.  Obviously, those are the claims being

9   asserted here.

10         And so going back to the injunction language, we

11   believe this lawsuit has been disposed of by this permanent

12   injunction.  We believe there's really only one or two things

13   that should probably happen with this lawsuit.  Either it could

14   be dismissed based upon the permanent injunction or what we

15   proposed in our motion to stay is that the Court exercise its

16   inherent authority to simply stay the case pending the appeal

17   of this language, which is up on appeal in the Fifth Circuit

18   right now.

19         If that language, and if the injunction gets affirmed

20   by the Fifth Circuit, then certainly the dismissal can happen

21   once that affirmance happens and there's no harm, no foul, and

22   no one's wasted any time.

23         If they're not, if it's overturned, then, obviously,

24   the injunction would be vacated, presumably by the Fifth

25   Circuit.  And at some point, if the Court decides not to enter

15

1  a similar injunction that would likewise dispose of this case,

2  then the case could proceed on the merits.

3          The issue we've identified both in our original

4  motion and as we fleshed out in our -- as a matter of law in

5  our amended motion to simply put a finer point on it is that

6  the merits are now -- have been disposed of.  This injunction

7  ends this case, at least as far as we read it.  It ends this

8  case irrespective of the underlying merits of the lawsuit,

9  which means that the lawsuit merits themselves have become moot

10 and any opinion or any attempt to resolve it is obviously an

11 advisory opinion by the Court.

12         So we really only see two ways that this could go

13 right now without either gutting the injunction or

14 circumventing it completely, which is to say that either the

15 case should be dismissed based upon the permanent injunction or

16 the case should be stayed based upon the permanent injunction.

17         Mr. Pomerantz or the debtors' brief suggests that,

18 well, the injunction doesn't prevent hearing pending motions.

19 But I would respectfully disagree with that.  If you look at

20 the language, "commencing, conducting, or continuing in any

21 manner in any suit, action, or other proceeding against or

22 affecting the debtor."

23         As 12(b)(6) hearing, I would imagine, was intended to

24 fall under the umbrella of a proceeding.  And us arguing a

25 12(b)(6) motion would us be conducting and maybe even

006975

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 68-2    Filed 09/11/23    Page 65 of 153    PageID 7534

16

1  continuing the suit because we're trying to protect the merits

2  of the suit, which as I said are at this juncture already moot.

3         And so it comes down to I think a very simple

4  question, which is what do we do at this juncture.  Do we just

5  simply dismiss the lawsuit in light of this permanent

6  injunction or stay the lawsuit in light of this permanent

7  injunction?

8         The debtor makes a lot of hay out of the fact that,

9  well, there are special rules that apply when you're trying to

10 stay a case pending appeal.  But if you look at all of their

11 case law, it has to do with different circumstances where an

12 appeal -- where there's a matter on appeal that could

13 substantially affect the resolution of the case, which here we

14 think it actually could.  But in those cases, those appeals

15 would affect the resolution of the case on the merits; whereas,

16 here, the question goes to whether or not a permanent

17 injunction that really has stopped us all in our tracks.

18        As soon as we understood this injunction and its

19 scope, we're the ones who reached out to the debtor's counsel

20 and asked them on a meet-and-confer whether or not they would

21 just agree to stay the matter.  And we were a little bit

22 surprised by their reaction when they first didn't think that

23 this applied to our case, and we didn't understand how.  And

24 then they changed their mind, said it did apply to our case but

25 they didn't think that we should stay the case.  And they

17

1  didn't suggest let's just dismiss it based upon the permanent

2  injunction.

3          So it kind of comes down to the same small -- same

4  simple issue, Your Honor.  There's this permanent injunction,

5  and I don't think there's any way for us to get around it at

6  this juncture.

7          THE COURT:  Mr. Pomerantz:

8          MR. POMERANTZ:  Yes, Your Honor.

9          I'm going to respond to several of the arguments Mr.

10 Sbaiti made in his motion, which apparently he's abandoned

11 because he only is focused on the injunction.  And I'm also

12 going to tell Your Honor, what our arguments are because

13 despite Mr. Sbaiti's efforts, he's completely misquoted them.

14         So in the motion and the amended motion, the

15 Plaintiffs make several arguments why this Court should stay

16 the matter.  First, they argue they're entitled to a stay

17 because the exculpation provision in the plan prohibits them

18 from proceeding against the Defendants in the action.  And

19 there are several problems with that argument.

20         First, Mr. Sbaiti and the Plaintiffs don't even

21 attempt to meet the Fifth Circuit's standards for a stay

22 pending appeal because, of course, they can't.  Mr. Sbaiti's

23 trying to sidestep the grounds for a stay pending appeal by

24 arguing it doesn't apply just is incorrect.

25         They would have to show that there is a likelihood of

006977

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 8-2   Filed 09/18/23   Page 67 of 153   PageID 7536

18

1  success on the merits, they would suffer irreparable harm, the

2  debtor wouldn't suffer irreparable harm, and there is -- public

3  interest supports a stay.  They can't do any of them.

4         In fact, as Your Honor is well aware, Your Honor

5  denied the actual appellants in that suit, in that order, the

6  confirmation order, a stay pending appeal and that was denied

7  by the district court and also denied by the Fifth Circuit

8  Court of Appeals.

9         The Plaintiffs didn't object to the plan, they are

10  not parties to the appeal, and they never sought a stay pending

11  appeal.  So they really can't explain why they as really

12  strangers to the appeal are entitled to a stay of the

13  effectiveness of the plan when the actual appellants to that

14  order were denied a stay pending appeal up through the

15  appellate ladder.

16         Second, notwithstanding Mr. Sbaiti's arguments in the

17  motion, the exculpation provision is neither as broad nor does

18  it affect all the parties that are subject to this litigation.

19  There are three Defendants in the complaint.  The only

20  Defendant that is covered by the exculpation provision is the

21  debtor.  The exculpation provision does not apply HCF Advisors,

22  and it does not apply to Highland CLO Funding.

23         Also, while the exculpation provision does apply to

24  the debtor, it only exculpates the debtor from claims of

25  negligence.  The complaint raises a variety of causes of action

006978

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/11/23   Page 68 of 153   PageID 7537

19

1  that have nothing to do with negligence and would not be

2  covered by the exculpation provision.

3          But, Your Honor, the biggest problem with their

4  argument that the exculpation provision supports a stay is that

5  the exculpation -- the appeal of the exculpation provision has

6  nothing to do with this case.  Why?  Because the Fifth Circuit

7  appeal concerns whether the exculpation provision is

8  appropriate for parties other than the debtor.  The debtor is

9  the only Defendant in this case that obtains the benefit of the

10 exculpation.

11         And there is no dispute, there was no dispute at

12 confirmation, there's no dispute in the case law, there's no

13 dispute in Pacific Lumber, there's no dispute in the appeal

14 that a plan can exculpate the debtor.  So the Fifth Circuit

15 appeal doesn't implicate the exculpation provision and cannot

16 support a basis for a stay.

17         The next argument Mr. Sbaiti makes is the injunction

18 provision, and the injunction provision is on appeal to the

19 Fifth Circuit.  But the aspect of the appeal of the injunction

20 is not the provision that Mr. Sbaiti points to.

21         And, again, as with the exculpation provision, the

22 same arguments about failure to obtain a stay, failure to be

23 party to the appeals, and failure to object to the plan apply,

24 as well.  But as is the case with the exculpation provision,

25 the resolution of the appeal of the injunction provision will

006979

20

1    not affect this case in any way.

2           They point to the portion of the injunction that

3    prohibits enjoined parties from directly or indirectly

4    continuing, commencing, or conducting in any manner any suit or

5    action proceeding against the debtor.  They argue that they

6    cannot proceed without violating the injunction because the

7    injunction was intended to put all litigation against the

8    debtor to an end.

9           But, of course, Your Honor, that is not true.  That

10   is not what the injunction is.  The issue on appeal before the

11   Fifth Circuit as it relates to the injunction is whether the

12   injunction impermissibly enjoins parties from enforcing their

13   rights with respect to post-effective date commercial

14   relationships with the reorganized debtor.  And, of course, we

15   argue that it's appropriate, but it has nothing to do with the

16   provision Mr. Sbaiti identified.

17          The appeal does not impact in any way whether a plan

18   can enjoin prosecution of claims that arose prior to the

19   effective date.  And, of course, such a plan provision is

20   completely appropriate and is customary.  The plan provided the

21   debtor as the plan provides all debtors with a fresh start and

22   enjoins litigation against the debtor.

23          But importantly, Your Honor, that does not mean as

24   Plaintiffs argue that any liability for pre-effective date

25   conduct just goes away and that creditors are left without a

006980

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 18-2   Filed 09/11/23   Page 70 of 153   PageID 7539

21

1  remedy to pursue claims against the debtor for pre-effective

2  date conduct.

3        Rather, if they have a pre-petition claim in lieu of

4  their litigation that's pending, they file a pre-petition claim

5  against the estate and that matter is resolved in the claims

6  objection procedure.  Or, as in the case here, when they make

7  an allegation that there is a post-petition claim, what do they

8  do?  They file a request for payment of an administrative

9  claim, and this Court addresses the validity of the

10  administration claim.  The lawsuit pending in another

11  jurisdiction stops, but the claim has to be resolved in the

12  bankruptcy court.

13        The only conduct that the injunction really prohibits

14  is them from proceeding with actions in other courts.  It does

15  not deny them a remedy.  Accordingly, their argument that they

16  cannot proceed with claims against the debtor because of the

17  injunction provision just lacks any merit and can't form the

18  basis for a stay.

19        Plaintiffs' next argument in their briefing is that

20  if the Court refuses to stay the complaint, they will file a

21  motion to withdraw the reference of this matter to the district

22  court.  Your Honor, this is the biggest head-scratcher of them

23  all given how this complaint ended up before Your Honor.  This

24  exact issue and Plaintiffs' arguments as to why the reference

25  should be withdrawn have already been fully briefed and decided

22

1  by the district court.

2          As Your Honor may recall, the Plaintiff filed this

3  action in the district court, conveniently failing to include

4  the bankruptcy case as a related case or mentioning that the

5  bankruptcy courts have related jurisdiction in the filings.

6  Your Honor may have had occasion to review the underlying

7  complaint when the debtor brought a motion for contempt against

8  counsel for Plaintiffs for pursuing a claim against Mr. Seery

9  in violation of Your Honor's January 9th, 2020 and July 16th,

10 2020 orders.

11         Your Honor issued an order finding counsel and

12 various parties in contempt which order is, of course, subject

13 to appeal.  At the time we were litigating the contempt motion,

14 we filed two motions in district court.  The first was a motion

15 to enforce the reference and have the district court send that

16 complaint to Your Honor.  And that motion to enforce the

17 reference is now on Your Honor's docket at Number 22 and 23.

18         The second was the motion to dismiss which is before

19 Your Honor today.  Plaintiffs oppose the motion to enforce the

20 reference arguing that mandatory withdrawal was required

21 because the matter involved consideration of non-bankruptcy

22 federal law, specifically federal securities laws and the

23 Investment Advisors' Act.

24         Plaintiffs further argue to the district court why

25 would you refer the case to the bankruptcy court if it's only

006982

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 6-2   Filed 09/31/23   Page 72 of 153   PageID 7541

23

1   going to end up back in the district court upon mandatory

2   withdrawal of the reference.  They argue to the district court

3   that would be a complete waste of time.

4           We filed our reply at Docket Number 42 explaining to

5   the district court why mandatory withdrawal of the reference

6   did not apply and why this case should be referred to Your

7   Honor.  And what did the district court subsequently do?  It

8   entered an order referring this action to Your Honor which is

9   why we are here today.

10          Plaintiffs now flout the district court's order of

11  reference by telling the Court that if the Court does not stay

12  the matter, they will file a motion to withdraw the reference

13  before Your Honor, and they attach virtually identical pleading

14  that they filed in opposition to our motion to enforce the

15  reference.

16          Plaintiffs did not disclose in their amended motion

17  that there was a fully-briefed motion to enforce the reference

18  before the district court.  Plaintiffs' argument is

19  disingenuous and designed to mislead the Court.

20          The district court has only agreed that mandatary

21  withdrawal of the reference does not apply and this case

22  belongs in Your Honor.  And while we cannot stop the Plaintiffs

23  from filing any motion before this Court, we want to put them

24  on notice that if they do file a motion for withdrawal of the

25  reference in light of the facts as I just stated them, we will

24

1  seek sanctions.

2          In any event, Your Honor, the fact that they may file

3  a motion for withdrawal of the reference at some point in the

4  future is not grounds to stay the matter.

5          Lastly, Your Honor, Plaintiffs argued in the opening

6  that Highland's position today in opposing the motion to stay

7  is inconsistent with positions Highland has taken in two other

8  lawsuits commenced by the Sbaiti firm.  Like all of their other

9  arguments, they misrepresent the facts and are frivolous.

10          The Sbaiti firm filed a complaint on behalf of the

11  DAF in the district court arguing that Highland mismanaged

12  (audio drop).  That complaint followed in the heels of an

13  almost identical complaint filed by Dugaboy asserting the same

14  claims.

15          And Your Honor may recall questioning Mr. Sbaiti at a

16  hearing in June how Dugaboy could pursue such a claim in the

17  district court if Dugaboy had a pending proof of administrative

18  claim on file in the bankruptcy case.  Well, soon after that

19  hearing, Your Honor, the Dugaboy complaint was dismissed, and a

20  few days later the DAF complaint was filed.  That complaint has

21  never been served on Highland.

22          The second lawsuit is also a lawsuit filed by the

23  Sbaiti firm on behalf of an entity called PCMG in the district

24  court.  And PCMG previously held less than five one-hundredths

25  of a percent interest in a certain fund managed by highland.

006984

25

1  The lawsuit alleges that Highland acted improperly to sell

2  certain assets of the fund, thereby damaging PCMG.  That

3  complaint has also never been served on Highland.

4          The Plaintiffs sought a stay of those matters before

5  Highland could file a response, and the court -- the district

6  court's entered stays in those matters.  And Highland has filed

7  motions for reconsideration and the motions to dismiss because

8  they violate the injunction.

9          But, importantly, Your Honor, if you read the

10  motions, Highland does not argue that Plaintiffs do not have a

11  remedy for the alleged wrongs they say they suffer.  Rather,

12  Highland's argument is that any claims alleged in those

13  lawsuits, just like any claims alleged in the lawsuit before

14  Your Honor today, must proceed in bankruptcy court as part of

15  the claims objection process.  That's where they will have

16  their day in court.  The lawsuits don't go away.  The

17  injunction prevents them from continuing on in district court.

18          Accordingly, Highland is being totally consistent in

19  all matters, and the litigations may not proceed there but must

20  proceed before Your Honor.  And, of course, none of these three

21  matters are implicated by the Fifth Circuit appeal.

22          Your Honor, the amended motion was procedurally

23  improper and is substantively without merit.  And for all these

24  reasons, we request that the Court deny the stay motion and

25  proceed with the hearing on the motion to dismiss.

006985

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 32   Filed 09/16/23   Page 75 of 153   PageID 7544

26

1          Thank you, Your Honor.

2          THE COURT:  All right.

3          Mr. Sbaiti, you get the last word.

4          MR. SBAITI:  Thank you, Your Honor.

5          Your Honor, the administrative claim process that was

6  described as being the way that these claims were supposed to

7  proceed, by the language of the order that we read, does not

8  allow for these claims.  Those claims are limited to a specific

9  category of claims that don't include the claims that are

10  alleged in this lawsuit.

11          And in any event, this lawsuit wasn't filed as an

12  administrative claim.  So if that's the case and it needs to be

13  refiled or reasserted as an administrative claim, then I think

14  that's a subject for another day.  All I know is that we have

15  this injunction right now that either should stay this case

16  pending the appeal, which I'll address the issue on appeal in a

17  moment, or it should be dismissed, perhaps without prejudice so

18  that it can be refiled properly as an administrative claim if

19  that's what's supposed to happen, because I guess this converts

20  the matter.

21          The appeal, the subject of the appeal as to the

22  injunction, Your Honor, the appeal actually encompasses many of

23  the issues that we're talking about in this case.  Now Mr.

24  Pomerantz tries to narrow the scope of what's up on appeal, and

25  that may indeed be the argument that they're going to present

27

1   to the Fifth Circuit or that they've presented to the Fifth

2   Circuit.

3          But the actual issue up on appeal is the

4   enforceability and validity of the order for a variety of

5   reasons which includes the provision that we're talking about

6   and the enforceability of the provision that we're talking

7   about because it gets rid of particular claims.  And I guess

8   the argument back is, no, it doesn't because there's now an

9   alternative means of going there.

10         Mr. Pomerantz says that we shouldn't have proffered a

11  motion to enforce the reference.  That proffer, however, was

12  because Judge Boyle's reference to this Court didn't deal with

13  our motion to -- our cross-motion to withdraw the reference.

14  All it dealt with was their motion to enforce the reference as

15  a -- to enforce the standing order in the district court.  And

16  that's all she ordered was she cited the standing order and the

17  statutes, I think it's 157(a), and that's really all it did.

18         So it left open the question of whether she wanted

19  Your Honor to deal with the withdrawal of the reference

20  specifically as to the 12(b)(6) issue in the first instance.

21  It didn't resolve the question.  It doesn't purport to resolve

22  that question.  And it's not unheard of for the district court

23  then to send the matter to the bankruptcy court and then to

24  piecemeal which proceedings the withdrawal of the reference is

25  applicable to and then all the other proceedings would stay

006987

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/18/23   Page 77 of 153   PageID 7546

28

1    with Your Honor or with the bankruptcy court.

2             So we weren't flouting the district court's order,

3    and we certainly weren't flouting any of the previous orders.

4    And the threat of a sanction for simply exercising our rights

5    in due course is not well taken.

6             Now Mr. Pomerantz says, well, the DAF and CLO Holdco

7    are not parties to the appeal.  I don't think that's relevant

8    because if the provision is struck by the Fifth Circuit, it's

9    not only struck for the appellants, it's struck as to all.

10   It's either valid or it's invalid.  And even if it's declared

11   to be invalid only as to the appellants, it's not suddenly

12   valid as to everyone else who didn't appeal.  That's not

13   generally how these appeals have worked.

14            If the Court doesn't stay this matter, Your Honor,

15   and doesn't dismiss it, we still maintain, Your Honor, that as

16   it stands today, the question on the merits have been mooted

17   and we cannot proceed.  I think what Mr. Pomerantz is hoping

18   for or the debtor is hoping for is a provision where our hands

19   are potentially tied to argue the motion.

20            And if the Court tells us they're not, then we'll

21   certainly argue the 12(b)(6).  But what I don't want to do is

22   argue a 12(b)(6) motion that on its face appears to violate the

23   permanent injunction and then be held in contempt for violating

24   that injunction.

25            And so that's why we've asked for the Court to either

29

1   stay the matter under its inherent jurisdiction or to -- if

2   you're going to -- if it's not going to be stayed, then we

3   believe it has to be dismissed according to the permanent

4   injunction as it stands right now.

5            THE COURT:  All right.

6            The motion to stay is denied.  The amended motion to

7   stay is likewise denied.  This is an odd argument.  I guess one

8   might say the traditional four-factor test for a stay of a

9   proceeding has really not been the subject of the argument here

10  for a stay.

11           So suffice it to say the four-prong test for a stay,

12  you know, hasn't been met here.  There hasn't been a showing of

13  substantial likelihood of success on the merits or irreparable

14  injury if the stay's not granted or a stay will not

15  substantially harm others or the stay would serve a public

16  interest.

17           But going on to the arguments that were focused on by

18  movant, I just don't think that you have shown that, you know,

19  either the exculpation clause or the injunction provisions of

20  the plan somehow tie your hands in arguing the 12(b)(6) motion,

21  defending against the 12(b)(6) motion today or I just think

22  that your arguments reflect, frankly, a misunderstanding of how

23  the injunction language and exculpation language applies here.

24           So the motion for stay is denied, and I will ask Mr.

25  Pomerantz to submit an order reflecting the Court's ruling.

006989

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 68-2    Filed 09/01/23    Page 79 of 153    PageID 7548

30

1        So it looks like we have another procedural matter,

2   Mr. Sbaiti.  You filed a motion to strike reply appendix of the

3   Plaintiffs quite a while back.  So did you want to present

4   that?

5        MR. SBAITI:  Yes, Your Honor.  I think it's a very

6   simple procedural issue.

7        Generally, a party that files a 12(b)(6) is limited

8   to the four corners of the complaint.  And if there's a

9   contract incorporated or a document incorporated as an

10  intrinsic part of the complaint, you know, that's usually

11  considered under the 12(b)(6) motion.

12       What the Defendants did, what the debtor here did is

13  they filed a bunch of evidence in their 12(b)(6), essentially

14  attempting to argue it as a summary judgment.  We raised that

15  in our response.  So as part of our response, we objected to

16  all the evidence.  But then on the reply, they filed a bunch

17  more evidence both without leave and improperly, basically

18  sandbagged us.

19       And so we raised two points for striking that

20  evidence.  One was akin to the first argument, which is it's

21  not an evidentiary hearing.  It's not an evidentiary process in

22  the first instance.  A 12(b)(6) motion has to assume that the

23  facts pled are true, and then the question is whether they

24  state a claim.

25       And, secondly, adding them to the reply is especially

31

1   egregious because the reply is the last word.  And we didn't

2   have an opportunity to respond, and we also don't think it's

3   relevant nor should we have to respond to a whole bunch of

4   extra evidence that was attached.

5           That's essentially the basis of our motion, Your

6   Honor.

7           MR. POMERANTZ:  Your Honor, the simple answer to the

8   issue is we filed the reply of the appendix in connection with

9   the motion to enforce the reference.  We didn't file it in

10  connection with the motion to dismiss.  The motion to enforce

11  the reference is moot.  So what Mr. Sbaiti, his whole argument

12  doesn't make any sense.

13          As a substantive matter, just there wasn't any

14  evidence.  It was pointing to court pleadings, orders, and

15  stuff.  So it's irrelevant.  I don't know why it's still on the

16  docket.  It shouldn't be on the docket since it related to the

17  motion to enforce the reference.

18          THE COURT:  All right.  Mr. Sbaiti, did you just

19  simply --

20          MR. SBAITI:  Your Honor, much of that evidence was --

21          THE COURT:  -- misunderstand or what?

22          MR. SBAITI:  I think we might have because it was

23  filed as a separate item, and it may have been miscalendared or

24  misapplied on our system.  But the way it was presented to us

25  when we got it was it appeared to be evidence in support of,

006991

32

1  well, I guess both, but certainly evidence that was averted to

2  in the reply.

3          But if they're saying that the Court's not going to

4  consider it, then that moots the motion and I think we can move

5  on.

6          MR. POMERANTZ:  Yes, Your Honor.  I had nothing to do

7  with his motion.  I guess there was another mistake on their

8  end.  I guess that stuff happens occasionally.

9          THE COURT:  Okay.  All right.  So I'll deny it as

10 based on a mistake that's been acknowledged here.  And so with

11 that, let's have an order cleaning that up, as well, Mr.

12 Pomerantz, please.

13         With that, we'll move on to the Defendants' motion to

14 dismiss complaint.  I think, Mr. Pomerantz, you said Mr. Morris

15 will be making this argument?

16         MR. POMERANTZ:  That is correct, Your Honor.

17         THE COURT:  All right.

18         Mr. Morris, I'll hear your argument.

19         MR. MORRIS:  Good morning, Your Honor.  John Morris

20 for Pachulski Stang Ziehl & Jones for the reorganized debtor.

21 Can you hear me okay?

22         THE COURT:  I can.  Thank you.

23         MR. MORRIS:  Okay.

24         Your Honor, this is a bit like Groundhog's Day.  I

25 believe that we're going to spend the next half hour or an hour

006992

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/31/2304   Page 82 of 153   PageID 7551

33

1  discussing the very issues that were before the Court earlier

2  this year on the HarbourVest 9019 motion.

3          As the Court will recall from the June 8 hearing,

4  there is a complaint that's been filed ostensibly by the DAF

5  and CLO Holdco.  As Your Honor will recall, the testimony

6  established that Mark Patrick had just been installed as the

7  trustee, had no knowledge of the prior events, and Mr. Dondero

8  and Mr. Sbaiti spent quite some time together formulating this

9  particular complaint that is nothing less than a collateral

10 attack on the Court's prior order.

11         I'd like to, if I can, just walk through a PowerPoint

12 presentation to try to make the debtor's position quite clear,

13 if I may.

14         THE COURT:  You may.

15         MR. MORRIS:  And I would ask my assistant, Ms. Canty

16 (phonetic), to put up the first slide.

17         Your Honor, you'll recall that last December, the

18 debtor filed its motion under Rule 9019 for court approval of a

19 settlement.  The debtor was completely and utterly transparent

20 in what the terms of the settlement were.

21         Very briefly, as set forth in Appendix 2 or Exhibit 2

22 which was the motion itself, in Paragraph 32, Your Honor, the

23 debtor set forth the terms of the transaction for which it was

24 seeking approval.  Those terms included in the very first

25 bullet point a statement that HarbourVest shall transfer its

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/11/23   Page 83 of 153   PageID 7552

34

1  entire interest in CLOF to an entity to be designated by the

2  debtor.

3          And that's an important point that we'll talk about

4  in a number of different contexts, Your Honor.  The debtor made

5  it very clear at the very first moment of this matter that it

6  was not going to acquire the asset but the asset was going to

7  be transferred to an entity to be designated by the debtor.

8  The debtor's motion filed last December clearly stated the

9  value of the interest that it would be acquiring in return.

10 That was also set forth in Paragraph 32 in a footnote.

11         It didn't say that it was the fair market value.  It

12 said the method of valuation was the net asset value and gave a

13 valuation date of December 1st so that all parties in interest

14 who received the motion understood the economics of the deal.

15 And the deal that the debtor was asking the Court to approve

16 was one whereby HarbourVest would receive certain claims and in

17 exchange for those claims, they were going to transfer their

18 interest in CLO -- HCLOF.

19         The debtor also filed on the docket for all to see a

20 copy of the settlement agreement.  The settlement agreement

21 sets forth the terms of the deal, including again the statement

22 that HarbourVest "will transfer all of its rights, title, and

23 interest in HCLOF."  It actually says to an affiliate or an

24 entity to be designated by the debtor.  And the transfer

25 agreement itself was also put on the docket.

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 68-2    Filed 09/11/23    Page 84 of 153    PageID 7553

35

1          So that's where things stood just before Christmas.

2    I know that there's some due process and other type arguments

3    that are in the Plaintiffs' opposition to the motion.  But, of

4    course, the undisputed facts are that the debtor timely filed

5    the motion.  The time period was consistent with all applicable

6    rules.  Nobody ever asked the debtor for an extension of time.

7    Nobody ever filed a motion for an extension of time.  And so

8    those due process arguments I think carry no weight at all.

9          So the debtor filed the motion.  And if we can go to

10   the next slide, we see what the responses were, and there were

11   several.  All of the responses, the only responses were

12   objections to the motion filed by Mr. Dondero and his certain

13   of his affiliated entities.

14         Mr. Dondero's objection can be summarized as follows.

15   He made the following observations and asserted the following

16   objections to the proposed settlement.  The first thing he said

17   is that the settlement far exceeds the bounds of

18   reasonableness.  Now, of course, one cannot make a

19   determination of reasonableness without having an understanding

20   of value.  The debtor was giving something and it was getting

21   something.

22         And so Mr. Dondero understood that the issue of value

23   was front and center.  If there was any mistake about it, he

24   also noted that he understood that as part of the settlement

25   and, again, I've written this incorrectly, HarbourVest will

36

1  transfer its entire interest in HCLOF to the debtor.  That is

2  not what Mr. Dondero understood.  In fact, Mr. Dondero

3  understood that it would transfer its entire interest in HCLOF

4  "to an entity to be designated by the debtor," again, making it

5  clear that he knew exactly what the debtor was doing here.  And

6  that can be found at Appendix 4 in Footnote 3 on Page 1 if you

7  want the exact quote from Mr. Dondero's pleading.

8          In the same footnote, he also specifically

9  acknowledges that he understood the valuation.  He understood

10  the method valuation.  He understood the valuation date of

11  December 1st.  And he urged the Court in his pleading to

12  scrutinize the settlement to make clear that the available

13  value of the investment should be realized by the debtor's

14  estate.

15          And this is such a critical point, Your Honor.  His

16  concern was that by placing the value in an entity other than

17  the debtor itself, that the Court wouldn't have jurisdiction

18  over that asset.  That was his concern.  So not only did he

19  understand that the asset was going to be transferred to an

20  affiliate, he wanted to make sure that this Court had

21  jurisdiction over the asset.

22          And, of course, Mr. Seery in his testimony and

23  otherwise, we provided the Court with all the comfort it needed

24  to know that even though it was being assigned to a special-

25  purpose vehicle wholly-owned by the debtor, it would

006996

37

1   nevertheless be subject to the Court's jurisdiction.

2          Mr. Dondero's trusts also filed an objection if we

3   can go to the next slide.

4          Dugaboy and Get Good represented by Douglas Draper

5   made the following observations and asserted the following

6   objections to the HarbourVest Settlement.  They, too, made

7   clear that they understood that the asset was going to be

8   transferred to an entity designated by the debtor.  They, too,

9   acknowledge that they understood that the debtor was valuing

10  the asset at approximately $22 million as of December 1st.  And

11  their objection was that the Court couldn't evaluate the

12  settlement without knowing how the asset was valued, without

13  knowing whether the debtor could acquire the asset, very

14  critical point.

15         These are the points that are made in the complaint.

16  These are the exact same points that are made in the complaint.

17  And also the Court couldn't evaluate the settlement unless they

18  understood that the value would be inure to the benefit of the

19  debtor's estate, again, mimicking Mr. Dondero's concern that by

20  placing the asset in an affiliate of the debtor, that it might

21  not be subject to the Court's jurisdiction.

22         Finally, and most importantly, if we can go to the

23  next slide.  The Plaintiff, CLO Holdco, filed an objection to

24  the 9019 motion.  And this is just so critical.  And this is

25  the Groundhog Day aspect that I specifically speak of.  CLO

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 82   Filed 09/11/2304   Page 87 of 153   PageID 7556

38

1  Holdco's objection was based solely on its assertion that it

2  had a superior right to the opportunity to acquire the asset

3  that was being transferred by HarbourVest.  It only made one

4  argument in support of its contention that it had a superior

5  right, but that argument was specifically premised on the

6  membership agreement, Section 6.1 and 6.2 of the membership

7  agreement.

8          CLO Holdco, the Plaintiff in the underlying action,

9  argued to this Court that HarbourVest had no authority to

10  transfer the asset without complying with the right of first

11  refusal that would give CLO Holdco the opportunity to take the

12  asset for itself.  That's what this Court was told.  CLO Holdco

13  didn't make this argument fleetingly.  They provided an

14  extraordinarily detailed analysis of Sections 6.1 and 6.2 of

15  the membership agreement and concluded "that HarbourVest must

16  effectuate the right of first refusal before it can transfer

17  its interest in HCLOF.  That was the objection.  Objections

18  have consequences, as Your Honor knows.

19          If we can go to the next slide.

20          By filing an objection, CLO Holdco and the trusts and

21  Mr. Dondero became participants in the litigation.

22  Notwithstanding the Plaintiffs' arguments to the contrary, when

23  they file the objections, they participate in what's called a

24  contested matter.  And in a contested matter, they had every

25  right to take all discovery on any issue that was related to

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/11/23   Page 88 of 153   PageID 7557

39

1   the 9019 motion, including the transfer, the disposition of the

2   asset to an affiliate of the debtor, the valuation of the asset

3   that's being received, the merits of the settlement itself, the

4   causes of action, whether, you know, what communications that

5   were, the negotiations, what did Mr. Seery and Mr. Pugatch

6   discuss?  Right?

7            They could have taken any discovery they wanted.  And

8   they did avail themselves of discovery, in fact.  They did -- I

9   don't know why they did what they did, but they chose to take

10  one deposition, and that was Mr. Pugatch, okay.

11           His deposition transcript, I think is at Exhibit 7,

12  or Appendix Number 7, and it was a long deposition.  It really

13  was.  And they asked Mr. Pugatch at the deposition if he knew

14  what the value of the asset that was being transferred was.

15  And he said $22.5 million.  So it wasn't just Mr. Seery or the

16  debtor who was subscribing to this valuation.  The party on the

17  other side of an arm's length negotiation was subscribing to

18  the exact same valuation.

19           The Plaintiffs could have taken whatever discovery

20  they wanted.  This is a full and fair opportunity to

21  participate in the litigation.  We proceeded to trial.  Before

22  we got there, actually, the debtor filed its response to CLO

23  Holdco's objection and proffered its own very detailed and

24  apparently very persuasive analysis that CLO Holdco's objection

25  was without merit, that CLO Holdco had no right of first

1  refusal under the facts and circumstances as they existed, and

2  with Grant Scott, Mr. Dondero's childhood friend at the helm,

3  we got to Court for the contested hearing on the debtor's 9019

4  motion, and CLO Holdco withdrew their objection.

5          And I've put up on the screen just an excerpt of the

6  transcript because, you know, when we talk about whether or *res*

7  *judicata* should apply, because was there a hearing on the

8  merits?  Was there a decision on the merits?  Just look at the

9  words of CLO Holdco's lawyer.  "CLO Holdco has had an

10 opportunity to review the reply briefing and after doing so has

11 gone back and scrubbed the HCLOF corporate documents based on

12 our analysis of Guernsey law."

13         And some of the arguments of counsel in those

14 pleadings and our review of the appropriate documents, counsel

15 obtained the authority from Mr. Scott to withdraw the CLO

16 Holdco objection based on the interpretation of the member

17 agreement.  We were grateful for that and the Court

18 specifically said in response, "That eliminates one of the

19 major arguments that we had anticipated this morning."

20         Apparently, the Plaintiffs believe that those events

21 have no meaning and that this Court's reliance on CLO Holdco's

22 substantive withdrawal of its objection has no meaning.  I

23 think they're wrong, and we'll get to that in a moment.

24         We proceeded with the hearing.  Mr. Seery and

25 Mr. Pugatch testified at length.  If you look at Footnote 3,

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/11/23   Page 90 of 153   PageID 7559

41

1   you'll see Mr. Seery testified for almost 70 pages of

2   testimony.  Mr. Pugatch testified for almost 45 pages of

3   testimony.  His testimony was exhaustive.  And, again, any of

4   the objecting parties had the right to ask whatever questions

5   they want.

6          But I do want to just note a few things that aren't

7   up on the screen right now.  If you go to Appendix 9, Your

8   Honor, which is the transcript of the hearing, at Page 13, you

9   will see that the very first thing I discussed in my opening

10  statement was the economics and how with a valuation of $22.5

11  million this deal made sense for the debtor.

12         You will see from Pages 30 to 42 there is extensive

13  testimony from Mr. Seery about the amount and the value of the

14  asset.  But the most important part of Mr. Seery's testimony is

15  that he explains how it came to be that HarbourVest agreed to

16  transfer its interest in HCLOF to an affiliate of the debtor.

17  And that came about, not because Mr. Seery or the debtor was

18  initially at all interested in doing this.  The whole idea

19  originated with HarbourVest.

20         They wanted to extract themselves from the Highland

21  platform.  They wanted to give this piece up.  So there's no

22  conspiracy going on here.  The unrebutted testimony that all of

23  the objecting parties had an opportunity to challenge was that

24  the whole idea originated with Mr. Pugatch and with

25  HarbourVest.  I think that's an important point to take into

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/21/2304 Page 91 of 153   PageID 7560

42

1  account.

2          And finally, again, from the hearing, if you look at

3  at Appendix 9, you'd also find that Mr. Pugatch, again,

4  testified, as he had in his deposition, as to the value of the

5  interest being transferred.  So we completed the testimony.  We

6  rested our case having had a full and fair opportunity to

7  contest the motion.  The objecting parties rested as well.  And

8  we got to the point where we had to prepare the notice, and we

9  were discussing that at the hearing, if we can go to the next

10  slide.

11          And it's very important, because again, this was all

12  done transparently, and it was all done on the record.  And

13  after the close of evidence, I addressed the order that was

14  going to be prepared.  I specifically said that I wanted to

15  make clear that we were going to include a provision, "that

16  specifically authorizes the debtor to engage in, to receive

17  HarbourVest the asset, you know, the HCLOF interest," right.  I

18  wanted everybody to know that was what was going to happen, and

19  then I said, "The objection has been withdrawn."  I think the

20  evidence is what it is and we want to make sure that nobody

21  thinks they're going to go to a different court somehow to

22  challenge the transfer.  But yet, that is exactly what the

23  complaint seeks to do.

24          Having put everybody on notice as to where we were

25  going, as to what the evidence showed, the debtor drafted and

007002

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/11/23   Page 92 of 153   PageID 7561

43

1    the Court adopted an order, and the order says, among other

2    things, that HarbourVest was authorized to transfer its

3    interest to the debtor.  Actually, it says, "to a wholly owned

4    and controlled subsidiary of the debtor," pursuant to the

5    transfer agreement, "without the need to obtain the consent of

6    any party or to offer such interest first to any other investor

7    in HCLOF."  So the Court heard the 9019 motion pursuant to a

8    Bankruptcy Rule and entered and order that was unambiguous and

9    that the Plaintiffs did not appeal from.

10            We can go to the next slide.

11            At a very high level, Your Honor, it is just crystal

12   clear that the complaint is just inextricably intertwined with

13   the 9019 proceedings and the order itself.  I think Mr. Sbaiti

14   would agree with me that but for the order that approved the

15   transfer of the asset and the testimony about the value of that

16   asset, they have no claims.

17            Every single claim is predicated on what happened in

18   the 9019 hearing.  Every single claim is predicated on the

19   Court's order approving the transfer of the asset and the

20   testimony and evidence that was adduced in relation to that

21   asset.

22            There were really only two issues that the Court -- I

23   mean, if you want to think about it at its most simplistic

24   level, the Court was being asked to assess, is it fair, is it

25   reasonable, is it legally permissible for the debtor to give

44

1  something.  In this case, allowed claims and releases, and to

2  get something in return.  In this case, HarbourVest's interest

3  in HCLOF and releases in return.  And that is really the

4  gravamen of the complaint.

5       The complaint is based whether it's breach of

6  fiduciary duty or RICO or breach of contract or tortious

7  interference, whatever the claim is, none of them exist if the

8  debtor doesn't get this.  They just don't exist.  And that is

9  why the complaint and the proceeding are inextricably

10 intertwined.  And if you just take a look at just one paragraph

11 of the pleading, it says at the core of this lawsuit is the

12 fact that HCM, that's the then debtor, purchased the

13 HarbourVest interests in HCLOF for $22.5 million knowing that

14 they were worth far more than that.  There's not a cause of

15 action that exists in the complaint that isn't dependent on

16 Paragraph 36.

17      So if we can go to the next slide with that

18 background, I'd like to argue why under 12(b), the complaint

19 should be dismissed because the claim should be barred under

20 the doctrine of *res judicata*.  Luckily, Your Honor, there is at

21 least one area of agreement between the parties here, and that

22 is the purpose of the doctrine and the elements that have to be

23 satisfied in order to meet the burden of proof necessary to

24 have the claims barred.  And in Footnote 1, you can -- I've

25 tried to just be helpful to the Court to show that we may not

007004

45

1   cite to the exact same cases, but the parties agree that the

2   doctrine is intended to foreclose the re-litigation of claims

3   that were or could have been raised in a prior action and that

4   there's four elements that have to be satisfied for the

5   doctrine to apply.

6          The parties have to be either identical or at least

7   in privity, the judgment in the prior action had to have been

8   rendered by a court of competent jurisdiction.  Number three,

9   the prior action had to have been concluded by a judgment on

10  the merits.  And the last one is that the same claim or cause

11  of action was involved in both suits.  So I just want to spend

12  a few minutes now, Your Honor, going through those four

13  elements to show the Court how easily the reorganized debtor

14  meets this standard.

15         If we can go to the next slide, I can take care of

16  the first two elements very quickly.

17         The first element, the debtor asserted that the

18  Plaintiffs were parties or in privity with parties to the prior

19  proceeding.  That's at Paragraph 17 of the motion to dismiss.

20  The debtor relies on the deposition testimony of Grant Scott,

21  who was then the trustee of the DAF.

22         CLO Holdco is a wholly-owned subsidiary of the DAF,

23  or wholly controlled, in any event, and Mr. Scott's testimony

24  was that he was the only director and there were no employees

25  of either entity.  So we, in our motion, put forth evidence to

007005

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 68-2    Filed 09/16/2304    Page 95 of 153    PageID 7564

46

1  establish the first element, and I don't believe, maybe I've

2  missed it.  I don't believe that the Plaintiffs have contested

3  that element.  If they have, I think Mr. Scott's testimony will

4  carry the day, in any event.

5           The second element as to whether or not a court of

6  competent jurisdiction is the entity or the court that rendered

7  the ruling.  Of course, that's been met, too.  The Plaintiffs,

8  in their opposition to the motion to dismiss, suggested that

9  the bankruptcy court would have lacked jurisdiction if their

10 cross motion to withdraw the reference was granted.  They said

11 if the district court decides that mandatory withdrawal

12 applies, then it cannot find that the bankruptcy courts already

13 entered final judgment was rendered on Plaintiffs' causes of

14 action and had jurisdiction to do so.  I think that's just a

15 clear misstatement of the law.

16          But in any event, Your Honor, at this point, I

17 believe it's irrelevant because the district court, in fact,

18 sent the case back to Your Honor and back to this Court.  And

19 so, at the end of the day, Plaintiffs' argument doesn't hold

20 water because of the district court's ruling, which can be

21 found -- the order of reference can be found at Docket

22 Number 64.  And so I think that easily takes care of the second

23 prong.

24          The third prong is whether -- if we can go to the

25 next slide -- the prior proceeding resulted in a judgment on

007006

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 8-32   Filed 09/11/23   Page 96 of 153   PageID 7565
Document Page 97 of 304

47

1   the merits.  And this is really the critical point, Your Honor.

2   As the Court knows, the whole doctrine of *res judicata* is

3   designed to prevent, as the parties agree, the re-litigation of

4   claims.  Stated another way, it's to bring finale.  It's to

5   make sure that the Court doesn't hear the same claims and the

6   same issues that either were brought or that could have been

7   brought in a prior proceeding.  And so, we believe that we

8   easily meet the standards set forth in the third prong.  The

9   9019 order necessarily determined that the *quid pro quo* that I

10  described earlier was fair, reasonable, and legally

11  permissible.

12          Notwithstanding their assertions to the contrary, the

13  Plaintiffs are most definitely seeking to unwind at least one

14  half of the Court's order by belatedly claiming that they are

15  entitled to the benefit of the bargain while leaving Highland

16  burdened, frankly, with the claims that HarbourVest got as part

17  of the deal.  I will tell you, Your Honor, and this is

18  argument, the debtor would never have asked for, and I don't

19  believe that the Court would ever have granted, the 9019 motion

20  if they thought that there was a risk in the future that

21  Highland wouldn't get the benefit of the bargain and it was

22  incumbent upon CLO Holdco and the DAF, and frankly, any party

23  in interest, to stand up and be counted and tell the Court and

24  the debtor, why the debtor was not entitled to do this deal and

25  CLO Holdco did that.  They actually did.

48

1    They stood up and they filed an objection and they

2    said we have a superior right to this asset in the form of a

3    right of first refusal.  They wound up folding in the face of

4    persuasive argument, and I respect the lawyer who did that.  I

5    just do.  But that was the time to speak up, and that's why it

6    is on the merits because that is exactly what *res judicata* is

7    intended to do.  It's intended to have everybody put your cards

8    on the table.  You don't put one card on the table and say, I'm

9    going to challenge this under 6.2 of the members agreement, but

10   I'm not going to tell you that I also think you owe me a

11   fiduciary duty under the Advisors Act or as the control party

12   or under any other theory that they had.  They can't do that.

13   That's exactly what the problem is here.

14       If we can go to the next slide.  Is it a judgment on

15   the merits?  The debtor and the Court relied on CLO Holdco's

16   representation that it was withdrawing its argument, its claim,

17   its contention, its assertion that it had a superior right to

18   obtain the HarbourVest interest in HCLOF.  Again, they did so

19   not whimsically, not because Mr. Kane was going to be out of

20   town and he couldn't make the hearing.  He did it after, and I

21   don't think this matters frankly, but I think it's worth noting

22   that he did it after an extremely careful analysis.  I would

23   tell you, Your Honor, that -- well, I would argue, Your Honor,

24   that even if Mr. Kane at CLO Holdco had never filed an

25   objection, if they'd never filed -- if they'd gotten notice

49

1  that this was happening and they sat silently, that would have

2  been enough for *res judicata* because the issue before the Court

3  was whether it was legally permissible for the debtor to

4  acquire this asset.

5          And if they had an obligation, if they owed a duty to

6  another party, it wouldn't have been legally permissible.  And

7  if somebody believed that it wasn't legally permissible because

8  a duty was owed to them, they had an obligation to speak up.

9  And so I think it's very important, particularly for the

10  collateral estoppel argument that I'll make in a moment, that

11  CLO Holdco did in fact file an objection.  It was based on the

12  breach of contract claim that's in their complaint.  It's the

13  exact same claim.  And they withdrew it.  I think it's very,

14  very important.  I think it highlights why *res judicata*

15  applies.  I think it is the linchpin of the collateral estoppel

16  argument.

17          But at the end of the day, I think if they say

18  nothing, they should be estopped or precluded under *res*

19  *judicata* from now asserting -- it would be like -- I was

20  thinking about this earlier, Your Honor.  If you'll remember

21  earlier this year, Mr. Dondero and his entities have kind of a

22  habit of withdrawing objections at the last minute.  We had a

23  couple of sale hearings earlier this year.  And the issue was

24  valuation, you know, and the process, and could the debtor meet

25  its burden of proving that the sale outside of the ordinary

007009

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 86-2    Filed 05/10/23    Page 99 of 153    PageID 7568

50

1  course of business was in the debtor's best interest.  And they

2  sold that restaurant.  And Mr. Dondero objected.  And at the

3  last second, they withdrew the objection.  Did they sue

4  tomorrow?  Does Your Honor really think that they could bring a

5  lawsuit tomorrow and say they just found a document or theory

6  on which the debtor had an obligation to give them a right of

7  first refusal, even though we've already closed on the

8  transaction, even though they were given notice of the

9  transaction, even though they filed an objection to the

10  transaction, even though they withdrew the objection?  Would

11  the Court tolerate for one second a new pleading tomorrow from

12  Mr. Dondero that the debtor actually had a fiduciary duty to

13  give him a right of first refusal to buy that asset under

14  whatever theory, just because he pleads it and the Court has to

15  accept as true the allegations in the complaint?  I think not.

16  And I think it's worth thinking about that to highlight just

17  how -- just how wrong this is.

18        Continuing on.  You know, the Plaintiffs in

19  opposition say it can't be a trial on the merits because we

20  weren't parties.  Of course they were parties.  Again, they

21  filed an objection.  They were the parties to the contested

22  matter, full stop.  They rely on a case called Applewood and

23  they say, this is the very first point they make in their

24  brief.  Applewood, if it wasn't *res judicata* in Applewood, how

25  could it possibly be *res judicata* here?  But the facts are just

51

1   so inapposite, right?

2          In Applewood, you had a garden variety plan and

3   release where the debtor and the officers and directors got a

4   discharge.  No objection to it.  And a secured lender later on

5   sought to sue guarantors who happened to be officers and

6   directors.  And the court, not surprisingly, said that the

7   confirmation order wouldn't prevent the secured lender from

8   going after the officers and directors, not in their

9   capacities, as such, but in their capacity as guarantors, which

10  were never part of the confirmation order.  That just doesn't

11  apply here because here, we have the debtor making a motion

12  before the Court in which it sought permission and authority to

13  acquire a particular asset.  Anybody who had a claim to that

14  asset should have stepped forward and put their cards on the

15  table.

16         And again, CLO Holdco put their cards on the table

17  and they lost, and they folded.  To use the poker analogy, they

18  folded.  And to hear them come into Court today and say we're

19  going to sue you because I reshuffled the deck, it's not right

20  and Applewood has no relevance.

21         Finally, Your Honor, you know, it's not on the

22  merits, they say, because you know, Mr. Seery and the debtor

23  hid the true value of the asset, and had we only known the true

24  value of the asset, we would have made all of these other

25  claims.  The fact of the matter is, you either have a fiduciary

007011

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 30-21   Filed 09/21/23   Page 101 of 153   PageID 7570

52

1  duty or you don't.  And if you had a fiduciary duty, they

2  should have spoken up and they did only under 6.2, but they

3  did.

4          But here's the important part, Your Honor.  Take the

5  allegations as true.  You have to take all of the allegations

6  as true, not just some of them.  And if you look at

7  Paragraph 127 of the complaint, and I would ask Ms. Canty to go

8  to Appendix 11 and let's just put Paragraph 127 up on the

9  board.

10         Here's the irony of the whole thing, right.  The

11 whole complaint is based on the fact that somehow Mr. Seery was

12 engaged in insider trading.  They accused him of insider

13 trading, and they say he didn't disclose the full value of the

14 asset.  Just read Paragraph 127.  James Dondero, who was on the

15 board of MGM, is the tippee.  You've got an insider trading

16 case -- I mean, I don't represent MGM.  I'm not with the SEC.

17 I don't know why Mr. Dondero thought he should be telling

18 Mr. Seery in December, 2020.  It's not clear if it was before

19 or after the 9019 motion was filed.  But Mr. Dondero is the

20 very source of information -- you can't make this up.  He's the

21 very source of the information that he now complains Mr. Seery

22 didn't disclose.

23         Of course, Mr. Dondero, the trust, CLO Holdco could

24 have asked Mr. Seery at any time, how did you come up with your

25 valuation?  Mr. Dondero, knowing that he had supplied to

53

1  Mr. Seery, according to Paragraph 27, please take it as true

2  for purposes of this motion only.  He's the source of the

3  inside information.  And now he has the audacity to come to

4  this Court, notwithstanding the Court's approval, all of the

5  time and money and effort spent in the 9019 process, and say,

6  Mr. Seery was wrong because he didn't tell CLO Holdco and the

7  DAF about the information that Mr. Dondero gave to Mr. Seery.

8  It's not right.

9       It was a judgment on the merits.  And if Mr. Dondero

10  or the DAF or CLO Holdco or the trust wanted to challenge the

11  valuation, they had every opportunity to do so.  And based on

12  Paragraph 127, if the Court accepts it as true, shame on them.

13  Shame on them for not pursuing this issue before.  The guy gave

14  Mr. Seery, according to this allegation, and I'm just going to

15  leave it there, inside information.  And he sits there in

16  silence, right?  It says, look at the last sentence: "The news

17  of the MGM purchase should have caused Seery to revalue HCLOF's

18  investment."  Seriously?

19       The third element is (indiscernible).  The fourth

20  element, if we can go to the next slide.

21       Are they the same claims?  Did the claims arise from

22  the same set of operative facts?  I've addressed this pretty

23  clearly already, so I don't want to belabor the point.  But

24  obviously, both the 9019 motion and the complaint arise solely

25  from the debtor's settlement with HarbourVest.  The debtor's

007013

54

1    acquisition of HarbourVest's interest in HCLOF and the debtor's

2    valuation of that interest.  Without those three facts, there

3    is no complaint.  It's just not credible to argue that the

4    fourth element is not met.

5              The case law is clear.  It's quoted in the

6    Plaintiffs' opposition.  It's not just the test of whether the

7    claims are the same.  It's whether the claim is the same as

8    that which was brought or could have been brought.

9              In their opposition, the Plaintiffs contend that the

10   claims "did not write them until after the settlement was

11   consummated," and that the first time the plaintiffs heard

12   about the valuation of HarbourVest's interests was at the

13   January 14, 2021, hearing.  I think I quoted that.  If you

14   look, I don't know if it's Page 10 or Paragraph 10; the way I

15   wrote it, it's probably Page 10.  I think that's a quote right

16   out of there.  But of course, as we saw the debtor disclosed

17   the valuation in its very initial motion, CLO Holdco's counsel

18   elicited valuation testimony directly from Mr. Pugatch, so that

19   was before the hearing.

20             And of course, Mr. Dondero and the trusts both cited

21   in their objections the valuation.  The notion that this was

22   not right, just -- it's contradicted by their own conduct,

23   their objections, their questions in deposition, the

24   information that was contained in the motion that they objected

25   to.

55

1          I do want to go off-script for just a minute, if we
2    could just take that down because I know that this is probably
3    something that Mr. Sbaiti may argue.  And that is, well, gee,
4    but you have to take the allegation as true that Mr. Seery
5    wasn't honest, that Mr. Seery lied to the court.  I don't
6    understand why there's not a fraud cause of action in there,
7    but there's not.  But that's their theory.

8          And gee, how does he get to skate away Scott free if
9    he's allowed to do that with impunity, right?  I will tell you,
10   Your Honor, of course you've seen Mr. Seery many times.  You've
11   made your own assessments of his credibility.  I'm not here to
12   argue the merits, but I will just say that the Defendants, if
13   ever forced to, will contest the allegation.

14         But here's the thing, and here's the important point
15   about, you know, whether or not he could lie with impunity and
16   say, I suspect that's where Mr. Sbaiti is going to want to go.

17         Mr. Seery said what he said.  And he had a reason to
18   speak, and he spoke, and he said what he said and he told
19   everybody who would listen exactly what he was doing and how he
20   was doing it.  For whatever reason, the objectors put the
21   valuation front and center.  It's right in their objections.
22   They noted the objections.  But for whatever reason, they did
23   nothing.

24         Whether they were negligent or whether they were
25   lying in wait is kind of irrelevant.  They had a full and fair

007015

56

1  opportunity to contest this issue.  And if they had done so,

2  and the evidence proved what they're now alleging, they can't

3  tell you what would have happened.  So, you know, HarbourVest

4  may have taken a different position.  The Court may have done

5  something.

6          We're never going to know now because Mr. Seery and

7  the debtor are getting away with something, but because they

8  put in evidence that went unchallenged by Mr. Dondero and the

9  Plaintiffs.  It simply went unchallenged.  And they say, oh,

10 gee, that's because we didn't know.  Well first of all, you

11 didn't ask.  And second of all, again, the source of the inside

12 information, the reason that Mr. Seery should have known the

13 asset was worth more.  The reason that he should have refrained

14 from trading and not engaged in insider information was

15 Paragraph 127.  It was Mr. Dondero.

16         Here's another thing.  If -- if again Mr. Seery had

17 not been honest with the Court and that was ever brought out,

18 Maybe HarbourVest -- maybe HarbourVest would have had a right

19 to complain.  There's a lot in the complaint about oh,

20 HarbourVest was misled.  The actual evidence that's in the

21 record, and this is part of res judicata, Mr. Seery testified

22 very clearly to the arm's length negotiation that took place.

23 He told the Court under oath that the negotiations were

24 contentious.

25         He told the Court under oath that in order to try to

57

1  resolve the case, he and Mr. Pugatch went off and had their own

2  private conversation without lawyers.  They could have taken

3  discovery on any of that, right.  What did you guys talk about?

4  It's certainly not privileged.  They had every opportunity.

5  But what we do know is that Mr. Pugatch under oath, in

6  deposition, and at trial, said the value is $22.5 million.

7        So I don't think Mr. Pugatch or HarbourVest is ever,

8  ever, every going to complain about the transaction they did.

9  Because of what the evidence simply shows.  But again, you've

10 got the Plaintiffs in their complaint saying that somehow the

11 debtor and Mr. Seery in negotiating this transaction has now

12 exposed the debtor to liability.  It just makes no sense.

13        So there was a time and there was a place to

14 challenge Mr. Seery.  Somebody, you know, maybe HarbourVest

15 could have done something, maybe they could still do something.

16 I don't know.  If they really think that there's a problem,

17 maybe we'll hear from HarbourVest someday.  But the Plaintiffs

18 have no right to complain.  They just don't.  They knew

19 everything.  They were the source of the inside information.

20 They sat on their hands, and they shouldn't be allowed to do

21 what they're doing now.

22        If we can go to the next slide.  I want to move to

23 the next theory and try to finish this up.  The next theory is

24 that the Plaintiffs' claims are barred by judicial estoppel.

25 The judicial estoppel argument is really, really very

58

1  straight-forward.  And it's important because if the Court

2  thinks about this the way I do, it's that the whole issue of

3  valuation is completely irrelevant to the Plaintiffs unless

4  they can show that they were owed some kind of duty, that they

5  had some superior right to acquire the asset.  But that's

6  exactly the issue that CLO Holdco relied upon and withdrew and

7  should now be estopped from pursuing.  Right.

8          The legal standard, again the parties agree on, that

9  in order to be estopped, the party must take an inconsistent

10 position.  And the party must have convinced the Court to

11 accept that position.  Again, both prongs are easily met here

12 in just a few sentences from the January 14 hearing.  You have

13 Mr. Kane saying that he understands and acknowledges and admits

14 that they have no superior right to the investment.  And the

15 Court relying on that very representation in declining to

16 conduct a hearing and render a ruling on the merits of the

17 claim that was withdrawn.  The objection that was withdrawn.

18          And for the avoidance of doubt, after Mr. Draper

19 spoke on behalf of the Trust, the Court, at Page 22 engaged in

20 the following colloquy.  The Court asked Mr. Draper:

21          "THE COURT:  Were you saying that the Court still

22          needs to drill down on the issue of whether the

23          debtor can acquire HarbourVest's interest in HCLOF.

24          "MR. DRAPER:  No.

25          "THE COURT:  Okay.  I was confused whether you were

007018

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 09/11/23   Page 108 of 153   PageID 7577

59

1        saying I needed to take an independent look of that.

2        Now that the objection has been withdrawn of CLO

3        Holdco, you're not pressing the issue.

4        "MR. DRAPER:  No.  I am not."

5        Okay.  You can call it res judicata, you can call it

6    judicial estoppel, collateral estoppel, the two prongs are

7    easily met.  They're taking an inconsistent position today and

8    through all kinds of different theories, including the one that

9    they withdrew, the Plaintiffs assert that they had a superior

10   right to acquire the interest from HarbourVest.

11       And they should have asserted those rights at the

12   hearing.  That was the time.  And they should be estoped now

13   from taking a completely inconsistent position from the one

14   that was before the Court.  And I just do want to point out,

15   the statement from a case called Hall vs. G.E. Plastic.  And

16   it's interesting, Your Honor, because there's only a few cases

17   that I focused on, because this is really more fact intensive.

18   And there isn't a dispute as to the, you know, the elements of

19   these matters.

20       But it is interesting that the Plaintiffs, you know,

21   generally ignore all of the cases that we cite to.  One which

22   is Hall vs. G.E. Plastic, where the Court said that the focus

23   on the prior success or judicial acceptance requirements is to

24   minimize the degree of a party contradicting a Court's

25   determination, based on a party's prior position.  That's the

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 06/06/23   Page 109 of 153   PageID 7578

60

1  whole point of the exercise.  You can't do this.  You can't do

2  this.

3      Just quickly, that leaves the individual arguments as to

4  each of the five causes of action and I just want to go through

5  some highlights.  There's a negligence claim, Your Honor.  And

6  we did not file a pleading, but the Court can certainly take

7  judicial notice of the fact that the effective date has

8  occurred.  Under the effective date, the plan is now effective.

9  That includes the exculpation clause, as Mr. Pomerantz, I think

10 accurately and without contradiction pointed out earlier, the

11 exculpation clause applies specifically to the debtor and to

12 negligence claims.  And that's not a matter that's at all

13 subject to appeal.

14      So I think just to add to the arguments that we have

15 in our papers, which I adopt and do not abandon for any

16 purpose, I would add to the argument on negligence, that it's

17 now precluded, as a result of the plan becoming effective.

18      The fiduciary duty count suffers from numerous defects.  I

19 just want to point out a couple of them.  They don't respond to

20 the argument under Corwin, that under the Advisor's Act, there

21 is no private right of action to sue for damages arising from a

22 breach of fiduciary duty.  This claim rears its head in

23 virtually every single complaint.  They've never addressed

24 Corwin.  Corwin is binding on this Court, and it is unambiguous

25 that there is no private right of action to sue for damages for

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 32   Filed 06/16/3104   Page 110 of 153   PageID 7579

61

1  breach of fiduciary duty under the Advisor's Act.

2          They ignore Goldstein.  Goldstein is not from the

3  Fifth Circuit, but it's very persuasive authority that advisors

4  do not owe fiduciary duties to their individual investors.

5  Instead, they owe fiduciary duty to their client.  Their client

6  is the entity with whom they're in contractual privity.  And so

7  in this case, there's no fiduciary duty there, either.

8          The breach of contract claim.  Again I just -- I

9  would just say quickly, Your Honor, it's barred under judicial

10 estoppel.  Even if it wasn't, it's clear based on Mr. James'

11 analysis and admission that the debtor's, or the reorganized

12 debtor's interpretation of 6.2 is accurate.  And you know, I

13 said this in the beginning.  Now let me tie it in a bow because

14 the breach of contract claim, and the tortuous interference

15 claim are both tied to the same thing.  And that is the

16 assertion that the Plaintiffs had a right under the membership

17 agreement, a right of first refusal.

18         And they basically say that the debtor was playing

19 games.  That they shouldn't be able to get through 6.2 by

20 assigning it to an affiliate.  And that's where I go back, Your

21 Honor, and just remind the Court that the debtor told the whole

22 world exactly what they were doing in their motion.  And their

23 objections, Mr. Dondero and the Trusts both acknowledge to the

24 whole world that they understood exactly what was happening.

25         In fact, their concern was not that it was going to

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 06/21/04   Page 111 of 153   PageID 7580

62

1   the debtor, but that it might be going to an affiliate outside

2   of the bankruptcy court's jurisdiction.  And for them to now

3   say, having taken all of those positions -- talk about

4   inconsistent positions.  They should be barred from saying

5   today, that the use of an affiliate to effectuate the

6   transaction was wrongful, because they actually told the Court

7   that they needed to -- that the Court needed to make sure that

8   it had jurisdiction over the very entity they now say somehow

9   shouldn't have been allowed to get the asset.

10          It's a bit much.  So that takes care of the tortuous

11   interference.

12          The RICO claim, Your Honor, again is a motion.

13   There's so many different aspects to it.  But I don't think the

14   Court needs to get past the Supreme Court holdings in HJ, Inc.

15   Again, just simply ignored by the Plaintiffs in their

16   opposition to the motion to dismiss.  In HJ, Inc., the Court --

17   the Supreme Court did an exhaustive analysis to try to

18   determine and ultimately did determine, what a pattern of

19   racketeering activity meant.  And the Supreme Court came to the

20   following formulation.  That it had to have two or more

21   predicate related offenses that amounted to a threat of

22   continued criminal activities.

23          You know, the notion here is that the debtor and Mr.

24   Seery engaged in insider trading.  We've already -- I've

25   already mentioned that according to the complaint, which the

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 09/13/04   Page 112 of 153   PageID 7581

63

1   Court can take as true.  Mr. Dondero, himself, was the tippee.

2   But be that as it may, they don't come close to meeting the

3   very high standards set forth by the Supreme Court in HJ, Inc.

4   to show that whatever conduct Mr. Seery and the debtor engaged

5   in, and if you take the allegations as true, in not telling

6   what the fair value of the asset was, that that doesn't amount

7   to a hill of beans for purposes of RICO.  That you don't have

8   any, I think predicate acts.  I think here's the Court,

9   predicate acts extending over a few weeks or months,

10  threatening no future criminal conduct, do not meet RICO

11  pleading grounds.  Right.

12          Security fraud claims cannot be predicate acts for

13  purposes of RICO.  That is also clear.  And that is really, I

14  mean they say mail, wire and fraud.  But what's really at heart

15  is the 10(b)(5).  Okay, it's the 10(b)(5) claim.  Again, Mr.

16  Seery being -- I mean Mr. Dondero being the tippee.  But those

17  are just some of the reasons.

18          None of, you know, that the RICO claim fails. You

19  know, I'll otherwise rely on the papers, unless the Court has

20  specific questions as to any of the other pieces of the motion

21  to dismiss the RICO claim, or any other aspect of the

22  Defendants' motion.  I think this is clear.  I think we win, no

23  matter how you slice it.  It's just wrong.  It's just wrong.

24      This Court will never, ever have a final order if Mr.

25  Dondero is able to engineer complaints such as this, which seek

64

1  to assert claims that absolutely positively could have and

2  should have been brought at the time the debtor made its

3  motion.

4          Unless the Court has any questions, I have nothing

5  further.

6          THE COURT:  I do not.  All right.

7          Mr. Sbaiti, I'm going to let you have as much time as

8  Mr. Morris.  He took 55 minutes.  As I mentioned, I have a hard

9  stop at 12:00 to do a swearing in ceremony.  So if you're not

10 finished in 40 minutes, then I'm going to have to take a break

11 and come back and let you finish.  All right?

12         MR. SBAITI:  Thank you, Your Honor.  Although I don't

13 think I'm going to be much longer than 35-ish minutes.

14         THE COURT:  Okay.

15         MR. SBAITI:  if not less.

16         THE COURT:  Okay.

17         MR. SBAITI:  I think you'll be able to be done by --

18 we'll be able to be done by noon.

19         THE COURT:  All right.  Thank you.

20         MR. SBAITI: Thank you, Your Honor.  Your Honor, may I

21 share my screen?

22         THE COURT:  You may.

23         MR. SBAITI:  Thank you, Your Honor.  Do you see my

24 Power Point, Your Honor?

25         THE COURT:  I do.

007024

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 31    Filed 09/15/23    Page 114 of 153    PageID 7583

65

1            MR. SBAITI:  Thank you, Your Honor.  I don't know

2    what which one you see.  Is it the --

3            THE COURT:  I see presentation.

4            MR. SBAITI:  With the full page?

5            THE COURT:  Yes, uh-huh.

6            MR. SBAITI:  Okay, yeah, great.  I just want to make

7    sure we're on the right page.  Thank you, Your Honor.  So Your

8    Honor, the defendant debtor is a registered investment advisor.

9    And it all begins with that.  And this where the distinctions

10   between what happened in the 9019 and I'll get to the elements

11   of res judicata through argument.

12           But the first thing that has to be identified is that

13   the Defendant is a registered investment advisor.  The

14   objection filed by Holdco back during the 9019 was an objection

15   against HarbourVest selling its interest by filing the right of

16   first refusal.  It did not deal with the investment advisor

17   feature of Highland's relationship.  And I'll get to why the

18   9019 doesn't preclude these arguments today.

19           This is essentially the structure.  Highland was the

20   investment advisor of HCLOF, and Holdco is an investor in

21   HCLOF.  And so Highland would owe a fiduciary duty under the

22   Advisor's Act against -- to CLO Holdco.

23           Highland also had a direct advisor relationship with

24   the DAF.  And so under the Investment Advisor's Act, it owed

25   fiduciary duties to both of those entities.  The law governing

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 06/16/23   Page 115 of 153   PageID 7584

66

 1  registered investment advisors is that it's a federally

 2  recognized and defined fiduciary duties.  The fiduciary duty to

 3   there's a fiduciary duty to affirmatively keep the advisee

 4  informed and the fiduciary duty not to self-deal, i.e., not to

 5  trade ahead of an advisee and opportunity that an advisee would

 6  want or expect and without the advisee's expressed informed

 7  consent.

 8          This is a federally recognized and defined fiduciary

 9  duty and it's actionable under state fiduciary duty laws.

10  While Mr. Morris ended his argument by saying we didn't deal

11  with their case law saying that there's no private right of

12  action under the Advisor's Act, the fact of the matter is that

13  Judge Boyle, about ten years ago, found that a state -- the

14  breach of fiduciary duty claim can be predicated on breaches of

15  federally imposed fiduciary duties under the Advisor's Act.

16  And that's what Douglass v. Beakley held.  And that's actually

17  what we cited in our response.  So I'm not sure why he would

18  argue that we haven't addressed the issue of where does this

19  private right of action come from.

20          Federal Law supplies the rules of the relationship

21  and State Law provides the cause of action for those breaches.

22  Now the scope of that has been expounded upon by many cases.

23  The Fifth Circuit held in Laird, as a fiduciary, the standard

24  of care to which an investment advisor must adhere imposes an

25  affirmative duty of utmost good faith and full and fair

007026

67

disclosure to all material facts, as well as an affirmative

obligation to employ reasonable care to avoid misleading his

clients.

The word "affirmative" there is important because it

means the investment advisor is not supposed to wait to be

asked.  The investment advisor as an affirmative duty to

proactively provide the information to the client.

The next standard comes from the SEC.  We call it the

SEC interpretation letter.  It's a release that came out in

2019.  And to meet it's duty of loyalty, an advisor must make

full and fair disclosure to its clients of all material facts

relating to the advisor relationship.  Material facts relating

to the advisor relationship include the capacity at which the

firm is acting with respect to the advice provided.

The SEC had another release in 2000 -- or excuse me,

in that same release, the SEC said the duty of loyalty requires

that an advisor not subordinate its clients interests to its

own.  In other word, an investment advisor must not place its

own interest ahead of its clients' interests.  An advisor has a

duty to act in the client's best interest, not its own.

The SEC general instruction three to part 2 of Form

ADV, that every investment advisor has to pull out.  And this

is cited in our papers.  As a fiduciary, you must also seek to

avoid conflicts of interest with your clients, and at a

minimum, make full disclosure of all material conflicts of

007027

68

1  interest between you and your clients that could affect the

2  advisor relationship. This obligation requires that you provide

3  the client with sufficiently specific facts, so that the client

4  is able to understand the conflicts of interest you have, and

5  the business practices in which you engage, and can give

6  informed consent to such conflicts or practices or reject them.

7           And, finally, the Third Circuit in Belmont said:

8           "Under the best interest test, an advisor may benefit

9           from a transaction recommended to a client if, and

10          only if, that benefit, and all related details of the

11          transaction are fully disclosed."

12          These fiduciary duties are unwaivable by the advisor.

13  Any condition, stipulation or provision binding any person to

14  waive compliance with any provision of this subchapter, or with

15  any rule, regulation or order thereunder shall be void.

16          So the lawsuit does not allege that the HarbourVest

17  settlement should be undone or unwound. I'd like to move to

18  that point. Mr. Morris says well, you have to unwind half of

19  the settlement. Maybe HarbourVest doesn't have to give back

20  what it got, but Highland would still be saddled with the cost

21  of the settlement, but not with the benefit of the settlement.

22          Well, actually that's not true. There's two points

23  that we would make on that. Number one, our suit is a suit for

24  damages. In other words, the suit would be a suit for money

25  damages, based on the difference between the value of the asset

007028

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 31   Filed 09/11/23   Page 118 of 153   PageID 7587

69

1   and what HarbourVest or what the actual value of the asset that

2   was represented, $22.5 million.  So the second point, though,

3   is that even under a situation where CLO or Holdco or the DAF,

4   or even HCLOF were to purchase the HarbourVest suit, the

5   expectation would obviously be that they'd pay the $22.5

6   million that Highland paid for it.

7          So Highland is -- so it's not unwinding, and there's

8   no saddling Highland with a burden that they didn't otherwise

9   have, I think that's a misrepresentation.  But we're not

10  seeking to unwind the lawsuit -- or excuse me, unwind the

11  settlement.

12         Now Mr. Morris is correct, the representation of

13  value by Mr. Seery is -- is one of the main points here.  And

14  the representation was that the value of the entire asset.  Not

15  just the shares of MGM, but the value of the entire asset was

16  $22.5 million.  So in other word, nearly half of HCLOF was

17  represented to be worth $22.5 million.  It was argued by

18  counsel on Page 14 of the January 14th transcript, and then on

19  Page 112 of that transcript, Mr. Seery specifically says the

20  current value is right around $22.5 million.

21         Now that was also in some of the filing papers and

22  Mr. Morris put up the evidence to Your Honor that Mr. Pugatch,

23  on behalf of HarbourVest also parroted that number.  But

24  there's not any evidence today about where that number came

25  from, or whether he was simply relying on Highland's

007029

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 32    Filed 07/01/24    Page 119 of 153    PageID 7588

70

1   representation of that value.

2           Now as a general rule, in these 12(B)(6) motions, as

3   I said before, we don't look at the evidence because the whole

4   point of discovery is to find out what's behind a lot of the

5   evidence.  That's been quoted.  The amount of evidence that

6   went into the 9019 motion as not necessarily full-blown

7   discovery.

8           I understand Mr. Morris saying well, they could have

9   asked the question.  But as I just showed you, they shouldn't

10  have to ask the question.  There should be fair and full

11  disclosure of all the material facts.  And if it turns out,

12  which we believe it is true, that by January, the value of

13  HCLOF was twice what it was represented, or the HarbourVest

14  portion of HCLOF was twice as to what it was represented,

15  that's a material omission that Highland had an affirmative

16  duty to not misrepresent.  Irrespective of the questions being

17  asked.

18          The DAF found out later on that the representation of

19  the value wasn't true.  Now Mr. Morris talked for a very long

20  time about all the opportunities that somebody, Mr. Dondero,

21  somebody other than CLO Holdco.  In addition to CLO Holdco,

22  could have asked the magic question to find out whether or not

23  they were telling the truth.  But that runs right in the face

24  of the standards set forth by the SEC and by the Courts as to

25  the affirmative obligation of an advisor to disclose all the

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 22   Filed 07/11/23   Page 120 of 153   PageID 7589

71

 1  material benefits that they're going to get as part of a trade.

 2  The idea being that when you're a registered investment advisor

 3  and you want to engage in a transaction, you make a full

 4  disclosure and say this is the transaction.  It's worth 41, but

 5  I'm paying 22-1/2.  But here's why I'd like to be able to do

 6  it.  And then that's the discussion that happens.

 7          That clearly didn't happen here.  And when it turned

 8  out that there was this entirely huge upside that they were

 9  gaining the benefit of, and maybe HarbourVest didn't care, that

10  that was a false statement.  Now the reason we don't have a

11  common law fraud claim, or that we don't necessarily hang our

12  hat on a fraud claim is we don't have enough evidence as it

13  stands today, to specifically say that Mr. Seery intentionally

14  misrepresented that.  Although we believe that it was grossly

15  reckless of him to do so.  But we don't really need a fraud

16  claim with a gross recklessness standard.  We have a breach of

17  fiduciary duty, which basically gets us to the same place.

18          So the timeline we have is September 30th was the

19  last valuation of HCLOF assets provided by HCMLP.  And the

20  value of HCLOF, at that time, or the HarbourVest of that value,

21  would have been about 22.5 million.  So what it appears to be

22  is that in January or in late December, the valuation that was

23  being done -- what was being reported, wasn't the current

24  valuation.  It was the valuation as of the end of the third

25  quarter of 2020.

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 31   Filed 07/21/23   Page 121 of 153   PageID 7590

72

1         On December 22nd, the motion to approve the
2    settlement with HarbourVest was filed.  HCMLP should have had
3    or would have had up-to-date valuations of the HCLOF assets,
4    but didn't necessarily disclose them as being different than
5    the 22.5 million.  On January the 14th, Your Honor, held the
6    9019 hearing.  And then that same day, Your Honor entered the
7    approval order.

8         And finally, in March, the DAF learns the true value
9    of HLOF assets as of January 2021 and starts to look into it.
10   Now Mr. Morris makes much of the fact that well, Mr. Dondero at
11   least knew that he had tipped them off, Mr. Seery.  And if you
12   actually read Paragraph 127, you'll see specifically what it's
13   purported that he said.  He said stop trading in the MGM
14   assets, because MGM might be in play.  So you can't trade
15   because I'm an advisor, Mr. Dondero's an insider, he's the
16   tipper, not the tippee.  Mr. Seery becomes the tippee under
17   that theory of the case, and he has to, and is required to,
18   because of their affiliation at the time, he's required to
19   cease trading.  And that was the purpose of saying that.

20        The collateral issue that we point is that he at the
21   very least knew about that, and that should have caused him to
22   revalue, if he hadn't done so at the time.  Not that, knowing
23   that alone is sufficient to know what the value of HCLOF
24   actually was on that date.  That's a complete misrepresentation
25   of the point and purpose of that allegation.

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 07/31/23   Page 122 of 153   PageID 7591

73

1        And as Your Honor knows, under 12(B)(6)

2  jurisprudence, the way this is supposed to go is we get the

3  benefit of every inference based upon the allegations, not the

4  movant.  So the first violation is that the debtor as an IRA

5  failed to affirmatively disclose the true current valuation of

6  HCLOF and failed to keep the DAF and CLO Holdco reasonably

7  informed of the value of the assets.

8        And the debtor as an IRA, failed to obtain CLO

9  Holdco's with the DAF's informed consent before it traded in

10 the asset, because it didn't have all of the information.  The

11 typical remedy for breach of fiduciary duty is typically

12 damages for any loss suffered by the Plaintiff as a result of

13 the breach.  I don't think there's a debate there.

14       So now we get to Mr. Morris' key argument.  His key

15 argument is that we should be talking about res judicata.  The

16 elements of res judicata and I think we agree is you have to

17 have identical parties in the action; the prior judgment was

18 rendered by a Court of competent jurisdiction; the final

19 judgment was final on the merits, and the cases involved the

20 same causes of action or the same transaction and nexus of

21 facts.

22       Now I'm going to skip to three, because I think

23 that's one of the key points that we disagree with them on.

24 There is no case, Your Honor, that we could find, and no case

25 that I read them citing that says an order on an 9019 has

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 32    Filed 07/14/23    Page 123 of 153    PageID 7592

74

1 preclusive effect under res judicata under an objector to the

2 settlement.  We looked.  We looked in the Fifth Circuit.  We

3 looked outside of the Fifth Circuit.  No District Court, no

4 Fifth Circuit Court of Appeals' opinion we could find held that

5 a 9019 order has res judicata effect on an objector's

6 objection.  And I think the reason is pretty simple.  Is it

7 doesn't.

8        Because the Plaintiff's claims, here our claims

9 hadn't even accrued.  We have a four year statute of

10 limitations, but I think more importantly is that, as the Fifth

11 Circuit said, the 9019 motion grants the Court discretion.

12 It's not supposed to be a mini trial.  The Court can approve a

13 settlement over even the valid objection of an objector.  It's

14 not a trial on the merits.  It's not supposed to be a trial on

15 the merits.  It's not supposed to be a disposition on the

16 merits.

17        So the fact that Your Honor could have approved the

18 9019 settlement with HarbourVest, even if we had a valid

19 objection, means this isn't a disposition on the merits, as res

20 judicata would envision.  It wasn't a trial on the merits, even

21 though it was withdrawn.

22        The other elements that we would point out to is that

23 neither the DAV nor Holdco were parties to the dispute between

24 HarbourVest and Highland.  And this keys off of the issue that

25 I just raised.  The cases that are cited by the debtor to Your

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 07/51/03 104   Page 124 of 153   PageID 7593

75

1   Honor all have to do with where one of the settling parties is

2   trying to undo the settlement for some collateral reason.  And

3   the Courts have held, no, that's res judicata, because you were

4   a party to the action.  HarbourVest brought the claims against

5   Highland.  Highland settled those claims.

6        CLO Holdco was collateral to that settlement, it's

7   not a -- excuse me, collateral to that dispute.  It's not a

8   party to that dispute.  Its claims weren't being resolved by

9   the settlement.  And while you have a notice to all creditors

10  and those objections can be raised, there was not inherently

11  any manner for resolving those objections on their own merits.

12  Only -- it was only resolved in so far as deciding whether or

13  not the settlement was in the best interest of the debtor,

14  which Your Honor decided, and we don't challenge that.  But we

15  do argue that it caused damages and the debtor shouldn't get

16  off for those damages.

17        The fourth element is that the --

18        THE COURT:  Just for the record, the standard in a

19  9019 context is not best interest of the debtor, right?

20        MR. SBAITI:  Your Honor, I mean that's what the rule

21  says and Your Honor's order --

22        THE COURT:  That is not what the rule says.  The rule

23  is actually very sparsely worded and then we have Fifth Circuit

24  case law and U.S. Supreme Court law that talk about what the

25  standard is.

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 07/61/2104   Page 125 of 153   PageID 7594

76

1        MR. SBAITI:  Yes, Your Honor.  And there are five --

2        THE COURT:  And it's -- is it fair?

3        MR. SBAITI:  There are five elements.

4        THE COURT:  Is it fair and equitable and in the best

5   interest of the estate given a long list --

6        MR. SBAITI:  Correct, Your Honor.  And I didn't mean

7   to --

8        THE COURT:  -- of considerations that the Court is

9   supposed to consider that "bear on the wisdom of the

10  settlement."  Okay.  So it's actually much more involved, is my

11  point, than is it in the best interest of the estate.  Is it in

12  the best interest of the estate and fair and equitable given

13  all factors bearing on the wisdom of the compromise?  And then

14  we have a long laundry list of things the Court should consider

15  as part of that analysis.

16        MR. SBAITI:  That's a --

17        THE COURT:  I just bring that up because if I'm still

18  -- my brain is still stuck five minutes ago on your comment

19  that you can't find any case saying that an order approving a

20  9019 compromise has res judicata effect on creditors.  And it's

21  -- let me just say it's shocking to me that someone would argue

22  otherwise.  Bankruptcy is a collective proceeding --

23        MR. SBAITI:  Your Honor --

24        THE COURT:  -- where creditors can weigh in and

25  object and raise whatever arguments they think the Court should

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 07/10/23   Page 126 of 153   PageID 7595

77

1  consider that bear on the wisdom of the compromise.  And the

2  Fifth Circuit in Foster Mortgage has said the Court should give

3  great deference to the views of the creditors, the paramount

4  interest of creditors.

5       So it's a really sort of shocking proposition that

6  the order approving a 9019 compromise wouldn't have res

7  judicata effect on all parties and interests who got notice of

8  that.  So if you have any elaboration on that, I'd like to hear

9  it.

10       MR. SBAITI:  Your Honor, we looked at the Fifth

11  Circuit cases that they cited, which I believe included that

12  case.  And even in that case, the point that we made in our

13  papers and the point I was trying to arrive at is that among

14  the factors, yes, the Court should give great deference to the

15  creditors.  But among the factors is not that the objections

16  lack merit or are meritless or that they wouldn't be winnable

17  if they were simply standalone claims.

18       And that was really the only point I was trying to

19  make is that Your Honor has discretion.  Granted it's -- as you

20  mentioned, it's not unfettered discretion.  It's bounded by

21  standards and there are -- there is, I know, about five

22  standards Your Honor has to consider or the Court has to

23  consider.  But among those, that laundry list of standards, is

24  not that the Court finds that any objection lacks merit.  And

25  that was really the only point I was making.

007037

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 07/31/04   Page 127 of 153   PageID 7596

78

1          And in terms of the case law, we looked at the Fifth

2     Circuit.  We looked, frankly, outside the Fifth Circuit as much

3     as we could, and because this is actually not an easy one to

4     research, as it turned out, despite the language.  And we also

5     looked for district court opinions in the Fifth Circuit to see

6     did any district court or did any court of appeals give this

7     type of approval to the standard that a 9019 order has res

8     judicata effect on a claim raised in an objection by a

9     creditor.

10          And we couldn't find any and I read all the cases

11    that Mr. Morris cited in his papers, and they didn't cite one

12    that explicitly said that.  They tried to drive at it through

13    insinuation that, well, if the Court has to give great

14    deference or if the Court has to take into account the

15    underlying facts and the fact that there is discovery, surely

16    that must mean this is akin to the trial on the merits.  And I

17    think that's where we simply disagree in good faith.  I'm not

18    ascribing any bad intention.  But we disagree that that's where

19    the law goes.

20          Res judicata is not -- while it's supposed to stop

21    the relitigation of issues, it is predicated on there having

22    been actual litigation of those issues.  And when HarbourVest

23    and Highland settle a case and my clients show up with an

24    objection, even though they withdraw an objection, that, in our

25    opinion -- and we're asking the Court to see it our way -- is

007038

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 22   Filed 09/19/03   Page 128 of 153   PageID 7597

79

1  not trial on the merits.  It's not a disposition on the merits

2  of the objection in and of itself.  Some objections we can --

3          THE COURT:  But the context matters.  In the context

4  of a 9019 compromise, the hearing is about look at the bonafide

5  ease of the settlement.  And it's either fair and equitable and

6  in the best interest of the estate or not.  And an objector can

7  say this is a terrible settlement and here's why it's a

8  terrible settlement and let me cross-examine the movant and let

9  me put on my own witness that will enlighten the Court as to

10 why this is a terrible settlement, why I say terrible, why it's

11 not fair and equitable.

12         That's your chance to convince the Court, don't

13 approve this settlement because there are, you know, 14

14 problems with it.  And if you convince the Court, then you

15 convince the Court and it's not approved.  If you don't, you

16 appeal, and we do have an appeal of the settlement order.

17         So, again, I'm not understanding the "res judicata

18 doesn't apply" argument.

19         MR. SBAITI:  Your Honor, if I could riff on two

20 points based upon what you just said, if I could address those.

21         The first is there are clearly two kinds of

22 objections that get -- at least two kinds of objections that

23 get raised in these 9019 approval hearings.  The two that you

24 heard recounted, some were this is bad for the estate.  There's

25 reasons why we don't think the estate will benefit from it and

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 22   Filed 08/01/23   Page 129 of 153   PageID 7598
Document   Page 80 of 104

80

1   it will be harmed from it.

2           And those types of objections, which I believe mostly

3   comprise the objections that Mr. Morris was talking about

4   because they are concerns for the estate.  And so creditors who

5   want to get money from the estate are concerned that the

6   settlement will not enter (phonetic) to the benefit of the

7   estate, and therefore, not enter to their benefit as creditors.

8   That's number one.

9           But those don't adhere in a lawsuit.  Those aren't

10  claims for damages that the settlement is going to create for

11  the person objection or for the party objecting.  There's a

12  whole separate set of objections similar to the ones HCLO

13  Holdco raised where that what inheres in the objection is this

14  is actually going to cause us some kind of damage.

15          And so, the factors though, don't require the Court

16  in those second set of instances to say, well, you know what?

17  Not only do I think you're wrong, but I think that your

18  lawsuit, the underlying causes of action that give rise to this

19  objection, have no merit on their own face, that the discovery

20  is not there to support them, that a jury is not going to find

21  there.  I am now the trier or the Court is now the trier of

22  fact on the merits of the underlying causes of action that

23  animate the objection.

24          And that's where I believe we're diverging with the

25  debtor on the law.  It goes too far to say that a 9019 hearing

007040

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 08/16/23   Page 130 of 153   PageID 7599
Document   Page 81 of 104

81

1  where the Court in the end has discretion to approve it, even

2  over a meritorious objection by any party, regardless of what

3  bucket of objections the objection falls into.  It goes -- our

4  argument today, Your Honor, and we're asking the Court to see

5  it our way, is that that would go too far.  That an actual

6  cause of action shouldn't be eradicated simply because of the

7  9019 process because, as you pointed out, the Court does have

8  to go through a litany of factors.

9        And if the Court determines that it's fair and it's

10 more equitable to overrule the objection, the Court has that

11 discretion.  And we're not here to unwind that discretion.

12       But the settlement process did violate certain

13 obligations and did cause my client damages.  And that's what

14 we're saying isn't precluded.

15       THE COURT:  Okay.

16       MR. SBAITI:  The fourth element, Your Honor, which I

17 guess in many ways maps on to the argument I just made to Your

18 Honor is that the cases, the underlying cases, do not involve

19 the same claims.  Plaintiffs' claims arise from the settlement

20 process itself and not from the underlying issues being settled

21 between HarbourVest and Highland.  So that's why we think at

22 least three of the four elements aren't met here.  And we'll

23 reserve on the papers, you know, whether jurisdiction was

24 applicable because I think that's probably water under the

25 bridge at this point in the oral argument.

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 32    Filed 08/21/23    Page 131 of 153    PageID 7600
Document    Page 82 of 104

82

1          Now, Mr. Morris attacks the case that we cite,

2    Applewood Chair vs. Three Rivers Planning.  And he argues that,

3    well, this is not applicable.  And the argument he made however

4    was he put it in the context of, well, the parties there, the

5    issue was you had guarantors who were not parties in their

6    capacity as guarantors.  But that's not actually what the Court

7    held.

8          The Court didn't say that the release wasn't

9    applicable to them because they didn't appear as parties in

10   their guarantee capacities.  They -- the Court held that, well,

11   the specific discharge language doesn't enumerate those

12   specific guarantees, and so therefore it's not released.

13         And where this dovetails, we believe, as closely as

14   we can, this isn't a 9019 case.  This is a final confirmed

15   plan.  But where it dovetails with what our argument is, is

16   that the Court there as well was essentially saying the

17   underlying causes of action weren't really presented to us, so

18   we're not -- we -- and the confirmation of the plan didn't

19   involve disposing of them, so we're not going to say that they

20   are precluded.  And we think that that's as close an analogy as

21   we've found in the Fifth Circuit to the issues here today.

22         So I would say, Your Honor, that we believe that

23   dispenses with the res judicata argument.  The judicial

24   estoppel argument, they conflate the language.  I'll go back to

25   this for a second.  They conflate the language of judicial

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 28-21    Filed 09/13/04    Page 132 of 153    PageID 7601

83

1   estoppel on the success of the claim.  None of the cases they

2   cite on judicial estoppel involved where a party took a

3   position, withdrew their argument, and then the Court moved on.

4         Mr. Morris tries to convert a judicial estoppel claim

5   into a judicial reliance claim, which is not the purpose of the

6   doctrine and is not the doctrine at all.  The doctrine is that

7   if you take a successful position in one court, you can't take

8   the opposite position in another court.  CLO Holdco didn't take

9   a successful position in one court and then change its position

10  later on.  In fact, its positions, as Mr. Morris stated, are

11  remarkably similar.  They're not inconsistent, which is the

12  problem with their judicial estoppel argument.  And we -- I

13  think we fairly briefed that in our papers and we'll otherwise

14  rest on the papers.

15        To deal -- to address the actual claims, again, I

16  come back to the idea of a fiduciary duty claim, which is our

17  lead claim.  And to be clear, it's a state claim predicated on

18  the violation of federally imposed fiduciary duties.

19        And I'm looking for a clock to make sure I'm not

20  abusing Your Honor's time, and I don't have one right in front

21  of me because my screen -- my screen is up.

22        Your Honor, the Douglass v. Beakley case is, like I

23  said, is Judge Boyle's case.  It specifically provides a cause

24  of action based upon violations of the Advisers Act.  We also

25  cite about four or five other cases in footnote 8 of our

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 09/14/23   Page 133 of 153   PageID 7602
Document   Page 84 of 104

84

1 response from other circuits, including the Third Circuit, the

2 Belton case that I referred to earlier, all of which held that,

3 yes, a state fiduciary duty claim can be predicated on breaches

4 of a federal Advisers Act violation.

5       The other point that they make on the fiduciary duty

6 claim is they argue HCMLP doesn't owe fiduciary duties to CLO

7 Holdco.  And the cases they cite, Your Honor, we dealt with in

8 the papers why they were distinguishable, because in those

9 cases they were dealing with the fact that there wasn't any

10 harm or any direct relationship.  But what they ignore is the

11 actual language of the Advisers Act, which is important.

12       Well, first of all, Mr. Seery admitted in his own

13 testimony during the approval hearing in July of 2019 that he

14 says, "We owe."  He says, "There are third party investors in

15 the fund -- in these funds who have no relation whatsoever to

16 Highland, and we owe them a fiduciary duty both to manage their

17 assets prudently, but also to seek to maximize value."  I think

18 Mr. Seery was absolutely correct when he said that.  Highland

19 owes fiduciary duties to the investors in the funds that

20 Highland manages.  The core of our case is that Highland is

21 using or abusing the assets of the funds it managed in HCLOF

22 for its own enrichment, which is a classic breach of fiduciary

23 duty case under the Advisers Act.

24       Now -- excuse me.  The other point that I would say,

25 Your Honor, is that there is a statutory basis for us to argue

1  a breach of fiduciary duty.  Excuse me.  I didn't mean to stop

2  sharing.  I apologize.

3          Are you back with me, Your Honor, on my --

4          THE COURT:  Yes.

5          MR. SBAITI:  -- PowerPoint?

6          THE COURT:  Yes.

7          MR. SBAITI:  Sorry about that, Your Honor.  I just

8  hit the wrong thing.  I'm not very technologically savvy.  Here

9  we go.

10          So Holdco is an investor in HCLOF, which is a pooled

11  investment vehicle.  A pooled investment vehicle under the case

12  law we cite is simply defined as an investment vehicle that

13  doesn't publicly solicit investors and has few than 100

14  investors.  Highland advises it.  That's the same holding in

15  TransAmerica Mortgage, by the way, which we also cite.

16          15 U.S. C. Section 80(b)(6) establishes the federal

17  fiduciary standards to govern the conduct of registered

18  investment advisers.  That's also the TransAmerica case.  15

19  U.S.C. Section 80(b)(6)(D) delegated to the SEC the power to

20  decide the scope of those duties that are imposed under the

21  statute.  And so the SEC enacted 17 C.F.R. Section 275.206(4)-

22  8.

23          And it expressly states, and we cite the statute or

24  the regular in full in our papers, that the fiduciary duties

25  are owed to investors in the pooled investment vehicles.  It

86

1  specifically says that.  It talks about two different duties

2  owed and they're owed to the investors in the vehicles, which

3  means they're owed to Holdco as an investor in HCLOF, which is

4  the vehicle that Highland manages.

5         It's black and white in the regulation.  And we

6  haven't seen any response.  There was no response of that in

7  the reply that was filed, Your Honor.  And so the argument that

8  there's not a fiduciary duty owed to Holdco because it's merely

9  an investor in HCLOF simply doesn't comport with the law.

10        And finally, the petition lays out the basis for our

11 claims including the applicable federal and state law.

12 Plaintiffs' response lays out why the legal arguments aren't

13 opposite at the 12(b)(6) stage and Rule 9(b) is met where

14 necessary under the federal claim.  And I'm trying to unshare

15 so that I can get back to regular argument.

16        I'd like to briefly address Mr. Morris' argument,

17 Your Honor.  Your Honor, I re-raise my argument that I made

18 before, which is that a 12(b)(6) motion and hearing is not the

19 appropriate time for all the evidence that was poured in here.

20 And I understand Mr. Morris' contention, well, it's really hard

21 to ignore all the history of this case.  But a lot of that

22 history really boils down to things that were actually admitted

23 in the complaint.  The complaint recognized there was a 9019.

24 But what Mr. Morris wants to do is go beyond that and to go to

25 what people said and what they must have meant.  What Mr.

007046

1  Dondero must have meant in his objection, what Dugaboy must

2  have meant by their objection, what Mr. Pugatch must have meant

3  by his testimony.

4         All of that is highly improper at this stage of the

5  proceeding, Your Honor.  It's outside of the 12(b)(6) confines.

6  It's outside the four corners of the complaint.  And we object

7  to all of that evidence being considered.

8         THE COURT:  Let me --

9         MR. SBAITI:  The question we --

10        THE COURT:  Let me ask you about that procedural

11 point.

12        MR. SBAITI:  Yes, Your Honor.

13        THE COURT:  As we know, 12(d) provides that if

14 matters outside the pleadings are presented to and not excluded

15 by the Court in a 12(b)(6) motion, the motion must be treated

16 as one for a summary judgment under Rule 56 and all parties

17 must be given a reasonable opportunity to present all the

18 material that is pertinent to the motion.

19        Are you -- what are you arguing?  That I should treat

20 it as a motion for summary judgment and give you more time to

21 present other materials?  I mean, you both presented an

22 appendix, okay.  And I'm telling you we're seeing this more and

23 more, I've noticed.  People are going beyond the four corners

24 of a motion to dismiss and attaching things.  And there's some,

25 you know, Fifth Circuit authority that says, well, if what is

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 31   Filed 08/11/23   Page 137 of 153   PageID 7606

88

1  attached is integral to understanding, you know, an allegation

2  or whatever in the pleading, you know, there is some discretion

3  to go outside the four corners.

4        So I'm trying to understand the point you're making

5  with this.  Are you saying I should treat it as a motion for

6  summary judgment or do these attachments really -- you know, do

7  I have authority under the Fifth Circuit to consider them as

8  part of the 12(b)(6) motion or not?

9        MR. SBAITI:  Typically, in our experience, Your

10  Honor, is when a summary or when a 12(b)(6) is going to be

11  treated as summary judgment under 12(d), the Court says that

12  and then the parties are given an opportunity, as you said, to

13  go do some discovery in order to put together the evidence and

14  materials to then come back and respond as a summary judgment.

15  We responded to a 12(b)(6) and objected to the evidence.  If

16  the Court wants to treat it as a summary judgment, then we

17  would ask for an opportunity for -- to conduct discovery in

18  order to be able to respond as a summary judgment motion, but

19  we didn't -- because we responded to a 12(b)(6) --

20        THE COURT:  You did the same thing though.  You did

21  the same thing in your response.  You submitted an appendix of

22  evidence, if you want to call it evidence.  As someone pointed

23  out, it's stuff from the bankruptcy court record.  I don't

24  think it went beyond what was already in the bankruptcy court.

25        MR. MORRIS:  And if I -- can I be heard on this, Your

1    Honor?

2                THE COURT:  You can.  You can.

3                MR. MORRIS:  Just to respond.  This is really quite

4    simple.  The motion to dismiss is based on res judicata.  Res

5    judicata necessarily requires a review of what happened in

6    connection with the prior hearing.  There's nothing that we

7    have identified or put forth in the appendix or on our exhibit

8    list except for the pleadings in the 9019, the transcripts, the

9    one deposition transcript, the one trial transcript, the

10   settlement agreement, the transfer agreement.  I'd love to know

11   what the Court couldn't or shouldn't take judicial notice of.

12   There is no emails.  There is no -- there is no -- there is no

13   extrinsic evidence, if you will.  All of this is either on the

14   docket or was presented as part of the hearing.

15               THE COURT:  Yeah.  I'm just trying to ferret --

16               MR. MORRIS:  And it's necessary.  And it's necessary

17   for the motion.

18               THE COURT:  Yeah.  I'm just trying to ferret out the

19   procedural position that's being asserted here.  And I don't

20   have the case cites off the top of my brain, but there is

21   authority from at least the Northern District judges, if not

22   the Fifth Circuit, saying in a 12(b)(6) motion I can take

23   judicial notice of items in the record.  And then, you know,

24   there -- I know there's Fifth Circuit authority saying I can go

25   beyond the four corners in a 12(b) context if it's just basic,

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 10-22   Filed 09/01/23   Page 139 of 153   PageID 7608

90

1  you know, explaining things that are in allegations.  You know,

2  such as --

3         MR. SBAITI:  May I address that, Your Honor?

4         THE COURT:  -- such as if a contract is in dispute,

5  okay.  Like there's no way you can have a cause of action under

6  the contract and here's the contract.  So I'm just trying to

7  nail down your procedural position here.

8         MR. SBAITI:  Your Honor, the distinction I was trying

9  to make that I don't think I put as artfully as I might be able

10 to put now is in a 12(b)(6) if there's a contract, as you said,

11 if there's a legal document, a contract and order that's

12 integral to the case, Your Honor can take judicial notice of

13 that.  Generally, a court can take judicial notice of filings

14 in a bankruptcy, the fact that they were filed.

15        So the transcripts, which Your Honor can't take

16 judicial notice of, is the truth of those.  And that was what I

17 was objecting to is it's one thing for him to say an objection

18 was filed and therefore, because an objection was filed, that

19 should be it.  That was your only chance.  I'm not saying Mr.

20 Morris can't make that argument.

21        But when he goes beyond the fact of the filing or the

22 fact that there was a transcript or the fact that there was a

23 deposition and starts to read from the depositions or read from

24 the filings and say this is what those mean, that goes against

25 the 12(b)(6) parameters because, number one, now it's

91

1   substantive evidence and not simply a judicial notice of

2   something that's right there in front of the Court, i.e.,

3   something on its own docket.  Because those statements and the

4   interpretation of those statements are subject to credibility

5   findings.  They're subject to clarification.  They're subject

6   to rebuttal.  That's the purpose of discovery.

7          And so if Your Honor -- and Mr. Morris is right.

8   Usually, res judicata involves knowing what happened in the

9   prior proceedings.  So if all he wants to do is rest on the

10  fact that an objection was filed by CLO Holdco and maybe even

11  other people, and that should be it and he thinks that's enough

12  for Your Honor to say res judicata applies, then I don't think

13  we have a problem.  It's when he goes beyond that and says,

14  Your Honor, these people must have known and this is what they

15  meant by their argument, that's what I'm asking Your Honor not

16  to consider.  And if Mr. Morris wants you to consider that,

17  that's a summary judgment motion and we should have the

18  opportunity to do discovery at the very least into the issues

19  he has now raised as supporting his res judicata defense which

20  he has the burden of proof on.

21         MR. MORRIS:  Your Honor, this is one of the strangest

22  arguments I have ever heard.  I'm allowed to offer the Court

23  and the Court is allowed to accept the documents, but I'm not

24  allowed to read them.  I'm not allowed to make arguments.  I

25  don't understand what that even means.  If it were a contract,

007051

1  I would be allowed to put the contract in front of Your Honor,

2  but I wouldn't be able to argue why the contract doesn't say

3  what the Plaintiff says.  I don't get it.

4         THE COURT:  Okay.

5         MR. MORRIS:  That's --

6         THE COURT:  Just I've heard enough on this.  I don't

7  think we have moved into Rule 12(e), that realm of me needing

8  to treat this as a motion for summary judgment.  I think the

9  so-called evidence, the appendix that was attached to the

10 motion as well as the appendix that was attached to Plaintiffs'

11 response, it's stuff that I can take judicial notice of that's

12 in the record of this Court and I can look at it.  You know, it

13 is what it is, the record of this Court.

14        All right.  So I have nine people waiting in

15 chambers.  I'm trying to figure out should I take a break now

16 or are you fairly close to wrapping up.  Either answer is fine,

17 Mr. Sbaiti.  I just need to figure out who I make wait here.

18        MR. SBAITI:  I have -- oh, I'm sorry.  I didn't mean

19 to interrupt you, Your Honor.  I was just going to say I have

20 five minutes left, but I know Mr. Morris probably wants to come

21 back.  So if you want to break now and we can come back at

22 whenever the Court wants us to, we can do so.

23        THE COURT:  All right.  Why don't you make your final

24 five minutes and then we'll take a break?

25        MR. SBAITI:  Okay.  Thank you, Your Honor.

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 09/21/3104   Page 142 of 153   PageID 7611

93

1       I just wanted to address some of the arguments that

2  Mr. Morris raised in his argument.  The first thing is -- and I

3  addressed this in part -- but Mr. Morris makes a big deal about

4  paragraph 127 of the complaint and essentially suggests that

5  we're the -- or that Mr. Dondero is the perpetrator of a

6  nefarious scheme.  Whereas, what the pleading actually says,

7  and I again encourage Your Honor to re-read -- to read it

8  specifically, is that Mr. Dondero warned Mr. Seery not to trade

9  in the stock and not to make any transactions because the stock

10 was going to appreciate in value.

11      That has two implications for us, Your Honor.  Number

12 one, it means Mr. Seery was a tippee of insider information,

13 and number two, it means that Mr. Seery, if he did trade on

14 that information or if he did pass that information on to

15 someone else, that is a problem from the Advisers Act

16 standpoint, which is really the only purpose of saying that.

17      While paragraph 127 also says that that should have

18 caused Mr. Seery to revalue the NAV of HCLOF, it does not state

19 and we did not plead that the entire value of HCLOF is tied to

20 the MGM stock.  So the insinuation that that somehow gave us

21 inside information about what the true value of HCLOF was and

22 we should have known or that Mr. Dondero should have known is

23 simply untrue.

24      The other argument Mr. -- that Mr. Morris likes to

25 harp on is that CLO Holdco withdrew its argument, but he

007053

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 32   Filed 09/14/23   Page 143 of 153   PageID 7612

94

1   characterizes Mr. Kane's withdrawal testimony -- as he says,

2   Mr. Kane admitted that CLO Holdco lacked the superior right to

3   obtain the HarbourVest.  If you read the very language that was

4   highlighted on Mr. Morris' slide, that's not what Mr. Kane

5   says.  Mr. Kane says, "We've gone back to the drawing board.

6   We've read your reply.  And my client has given me permission

7   to withdraw the argument or withdraw the objection."  That's

8   all he said.  There was not an admission that he was wrong.

9   There was not an admission that they had made a mistake.  There

10  was simply an admission that they decided to withdraw the

11  objection for whatever reason.

12          Lastly, on the specific claims --

13          THE COURT:  That's not an accurate description of the

14  record.  He said he looked at --

15          MR. SBAITI:  Your Honor, I was reading it along with

16  him.

17          THE COURT:  -- Guernsey Law.  And I don't know if his

18  words were deep dive.

19          MR. SBAITI:  Yeah.

20          THE COURT:  But he had looked at the agreements

21  extensively.  That's just not what he said.

22          MR. SBAITI:  And he said he was with -- Your Honor,

23  he said he was withdrawing.  He didn't say we were wrong.  He

24  didn't say we don't have a claim.  What he said was, "We're

25  withdrawing the objection."

007054

1          THE COURT:  After doing an extensive look at the

2  agreements in Guernsey Law, okay, so.

3          MR. SBAITI:  Sure.  But, Your Honor, he might have --

4  he could just as easily thought we have a chance, but it's not

5  a good one.  And frankly, we'll be here for 20 days and we're

6  withdrawing it for that reason because we'll live to fight

7  another day.  Your Honor, there's an innumerable number.  To

8  simply say that he admitted that they didn't have a correct

9  claim, it's just he didn't say that.  That's all.  That's the

10 only point I'm making.

11         Your Honor, I don't disagree with the debtor that the

12 Court's exculpation clause gets rid of the negligence claim

13 which was obviously filed before the effective date, so that

14 claim is gone.

15         And I think the last argument that Mr. Morris makes

16 on the RICO claim is the federal court, the Supreme Court

17 standard for pleading a RICO claim, that acts that only

18 continue for a few weeks are not -- don't set out a RICO claim.

19 Your Honor, in our response to that, we actually submitted an

20 amended complaint that shows that the type of acts we're

21 talking about, the pattern of the debtor using its investor

22 vehicles assets to liquidate is a long pattern and practice

23 than simply the HarbourVest suit.  And so, we move to amend on

24 that basis to satisfy that pleading defect, which is the main

25 one that they focused on.

007055

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 22   Filed 09/06/23   Page 145 of 153   PageID 7614
Document   Page 96 of 104

96

1          That's all I have, Your Honor.

2          THE COURT:  All right.  Thank you.

3          We're going to take a 15 minute break and come back.

4  I'll ask Mr. Jordan and Mr. Bessette did they have anything

5  they wanted to say today.  I know they joined in the debtor's

6  motion.  And then we'll let Mr. Morris have rebuttal.

7          All right.  So we'll be back in 15 minutes.

8          THE CLERK:  All rise.

9          MR. MORRIS:  Thank you, Your Honor.

10     (Recess at 12:05 p.m./Reconvened at 12:23 p.m.)

11          THE CLERK:  All rise.

12          THE COURT:  All right.  Please be seated.

13          We're back on the record in Charitable DAF v.

14  Highland Capital.  All right.  So I promised I was going to go

15  back to counsel for Highland CLO Funding, Ltd.  So Mr. Jordan,

16  Mr. Bessette, is there anything you wanted to say for oral

17  argument?

18          MR. JORDAN:  Thank you, Your Honor.  John Jordan on

19  behalf of HCLOF.

20          Our points are two procedural points.  The first is

21  as the Court anticipated, in our motion to dismiss filed back

22  in August, we joined in the motion to dismiss of Highland.  And

23  so to the extent that the Court after deliberation is inclined

24  to grant that motion, we would ask that as a joining party,

25  HCLOF be pulled along with that.

007056

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 22    Filed 09/06/23    Page 146 of 153    PageID 7615

97

1    The second procedural point is that back in our

2  motion to dismiss, we pointed out that the complaint does not

3  actually allege anything against HCLOF.  In the story, we're

4  essentially the football and neither Oklahoma nor UT.  And we

5  pointed that out as an additional argument to what you've heard

6  today.  That motion was never responded to.  The deadline by

7  agreement was extended to October 11th.  And the lack of

8  response was, we believe, not inadvertent but simply an

9  acknowledgment that HCLOF is not a party that anything is being

10  claimed against.

11    It particularly makes sense since effectively and in

12  rough numbers, they're half owned by both sides.  So for every

13  dollar that HCLOF spends hanging around the case, the parties

14  are paying essentially 100 cents collectively.  So for that

15  reason, we would ask, and subject to Mr. Sbaiti's input,

16  whether the Court would ask us or direct us to upload an order

17  granting our motion as unopposed.  We just feel like we don't

18  have any role in this case.

19    THE COURT:  All right.

20    Mr. Sbaiti, what about that?

21    MR. SBAITI:  Your Honor, they were originally added

22  as a nominal party.  And as a nominal party, because of the

23  potential need to have a derivative action, I think that based

24  upon Highland's arguments and the arguments that we had, I

25  don't think the derivative action is necessary for us to

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 21    Filed 08/13/104    Page 147 of 153    PageID 7616

98

1   maintain on a go-forward basis.  And so we don't oppose them

2   being dismissed.

3           THE COURT:  All right.  Then I assume, Mr. Morris,

4   you don't have any problem with this, correct?

5           MR. MORRIS:  No, Your Honor.

6           THE COURT:  Okay.  So I'll look for the parties to

7   submit an agreed order of dismissal of HCLOF after the hearing.

8   All right?

9           MR. JORDAN:  Thank you, Your Honor.

10          THE COURT:  All right.  Mr. Morris, you get the last

11  word.

12          MR. MORRIS:  Thank you, Your Honor.  I hope to be

13  relatively brief.  I really just want to focus on the arguments

14  concerning whether or not the order that was entered by this

15  Court was an order that was entered on the merits.

16          As the Court is well aware, a 9019 motion filed by a

17  debtor is done so on notice.  It is to give all parties in

18  interest an opportunity to be heard, not just as to whether or

19  not the debtor meets its burden of proof under Rule 9019 but

20  whether or not the Court can find, as it must, that the

21  proposed settlement is in the best interest of the estate.

22          The purpose of -- I mean that is the purpose of the

23  giving notice so that everybody has a chance to be heard.  The

24  questions that the Court asked, the questions that every

25  bankruptcy court asks in a 9019 is can the debtor do this deal,

007058

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 21   Filed 09/01/23   Page 148 of 153   PageID 7617

99

1   should the debtor do this deal, is it in the best interest of

2   the estate to do this deal.

3           And, you know, the idea that a 9019 order is somehow

4   res judicata only to the parties to a settlement is just

5   something that doesn't make any sense to me because it

6   abrogates so many rules that exist that allows and encourages

7   and requires parties who have objections to be heard.

8           Mr. Sbaiti's clients filed an objection.  They

9   initiated a contested matter.  They obtained rights.  They were

10  litigants.  They are litigants in a contested matter where

11  they're required to tell the Court what objections they have to

12  the settlement, and they did that.

13          Mr. Sbaiti, you know, told me that I wasn't allowed

14  to characterize the words that are used in the documents that

15  have now been admitted by the Court.  And, yet, I heard him say

16  that maybe Mr. Kane (phonetic) really meant to tell Your Honor

17  that he was withdrawing the claim because he was going to save

18  it for another day.

19          I'd just ask the Court to look at the transcript.  I

20  don't have to interpret it at all.  And I'd ask the Court to

21  read the words.  I can put them back up on the screen, but

22  they're pretty short.  It's at Pages 7 and 8 of the transcript

23  of what Mr. Kane told you and what you said in response.  It's

24  on the page, not my interpretation, and what the import of that

25  was.

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-82   Filed 01/10/2810   Page 149 of 153   PageID 7618

100

1        Mr. Sbaiti believes, I guess, if one is allowed to

2   engage in such conduct without consequence, that one is allowed

3   to allow to file objections, cause the Court and the litigants

4   to participate, to give discovery, to write briefs, to do

5   analyses, withdraw it on the basis of their own good faith

6   analysis of Guernsey law of the documents and somehow say it's

7   irrelevant.  Not what the law is, not what res judicata is

8   intended to do.

9        He should have put all of his cards on the table.  In

10  fact, I think that Mr. Kane believed he was putting all of his

11  cards on the table because that's what he did.  He filed a very

12  comprehensive objection.  He asserted a right to the

13  opportunity that the debtor was proposing to take in the 9019

14  motion.  That's what he was doing.  He was objecting on the

15  basis that he claimed his client had a superior right to this

16  asset.

17       And he didn't -- like I said earlier, Your Honor, I

18  don't think he would be permitted, I don't think these claims

19  would fly today if no objection was filed.  But the fact that

20  there was renders, I think, indisputable that there was a

21  finding on the merits, right.  And the only reason that the

22  Court didn't rule on Mr. Kane's motion, the only reason the

23  Court didn't rule on it is because Mr. Kane withdrew it.

24       Is that really the way this process is supposed to

25  work, that one can tell the Court that after a review of the

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 68-2   Filed 09/01/2310 Page 150 of 153   PageID 7619

101

1  documents, I'm going to withdraw the objection and then file a

2  claim for damages three months later with a different client,

3  with a different control person, with a different lawyer?

4  That's okay under doctrine of res judicata?  I don't think so.

5          They had a full and fair opportunity.  The fact that

6  this was somehow -- you know, they're denigrating the fact that

7  this was a 9019 motion.  There's not supposed to be a mini-

8  trial.  Your Honor had discretion as to what to do.  Every

9  court in every bench trial has discretion as to what to do and

10 whether or not to overrule objections and whether or not to

11 substain [sic] objections.  That's what judges to.

12         And there's nothing offensive about the fact that it

13 happened in the context of a 9019 motion.  They don't get to

14 sit on their hands and wait to fight another day.  If they

15 believed that the debtor was exposing itself to liability, and

16 that's what they actually say in the opposition, that's what I

17 actually think they say in the complaint, accept it as true,

18 they believe that the debtor created liability for itself by

19 rendering -- by entering into this transaction.

20         Shouldn't they have raised their hand and said you

21 can't do this deal, right?  And the only response to that --

22 they have to that is they had no idea about value.  Paragraph

23 127, Your Honor, Mr. Dondero, the architect of this complaint,

24 as was proven on June 8th, knew very well about value.  And it

25 doesn't matter that it was only MGM.  Your Honor commented on

Case 21-03067-sgj   Doc 78   Filed 11/24/21   Entered 11/24/21 12:20:12   Desc Main
Case 3:23-cv-01503-B   Document 8-2   Filed 09/02/2104   Page 151 of 153   PageID 7620
Document 63   Page 91 of 104

102

1  that at the June 8th hearing in a different context.  But

2  everybody knows, right, it is.  He sits on the board of MGM.

3            And I'm sorry if I called him a tippee instead of a

4  tipper.  But if this complaint goes forward, we'll dig into

5  that real deep.  But there's no reason it ought to, Your Honor.

6  This case ought to be dismissed on res judicata grounds.  It

7  should be dismissed on judicial estoppel grounds.  And it

8  should be dismissed for all the reasons that I said in my

9  argument in my brief.

10           But I do just want to close with one point, and that

11 is to read from a case called Goldstein, which I think I

12 alluded to earlier on this issue of whether there's a fiduciary

13 duty that's owed by an advisor to an investor and a fund:

14                "At best, it is counterintuitive to characterize the

15                investors in a hedge fund as the clients of the

16                advisors.  The advisor owes fiduciary duties only to

17                the fund, not to the fund's investors."

18           There's a lot of discussion about fiduciary duties,

19 Your Honor.  But to the extent that they have any basis to

20 defeat the motion to dismiss on res judicata or collateral

21 estoppel grounds, we hope and we trust and we know the Court

22 will review the case law vigorously to test some of the

23 assertions to that.

24           I have nothing further, Your Honor.

25                THE COURT:  All right.  Well, thank you to all of

Case 21-03067-sgj    Doc 78    Filed 11/24/21    Entered 11/24/21 12:20:12    Desc Main
Case 3:23-cv-01503-B    Document 68-32    Filed 01/03/2004    Page 152 of 153    PageID 7621

103

1    you.

2              As a reminder, I don't think you need it, but as a

3    reminder, I am essentially acting as a magistrate for Judge

4    Boyle in this action.  And whichever way I go on whichever

5    theories, I think she would expect a thorough write-up.  It

6    would, of course, be in the form of a report and recommendation

7    for her to either adopt or not if I dispose of some or all of

8    the counts in the lawsuit.

9              Even to the extent I deny dismissal, even though the

10   rule typically does not require a court to make detailed

11   findings and conclusions in connection with a denial of a

12   motion to dismiss, again, since I'm sitting as a magistrate, I

13   think Judge Boyle would expect some thorough explanations and

14   reasoning from me.

15             So that's my way of saying I'm taking this under

16   advisement.  I am going to drill down on some of the cases that

17   have been argued.  I think some important issues are raised

18   here that need some thorough reasoning.

19             So I will do the best to get this out without too

20   much delay.  I think there's probably zero chance, zero chance

21   I'm going to get it done by the end of the year.  We're just

22   too behind with some of our under-advisements.  But I will try

23   earnestly to get it out fairly soon after the first of the

24   year.  All right?

25             Thank you.  You all have a good holiday.

007063

104

```
 1           THE CLERK:  All rise.

 2        (Proceedings concluded at 12:37 p.m.)

 3                    * * * * *

 4

 5           C E R T I F I C A T I O N

 6           We, DIPTI PATEL, KAREN WATSON, CRYSTAL THOMAS, AND

 7   PATTIE MITCHELL, court approved transcribers, certify that the

 8   foregoing is a correct transcript from the official electronic

 9   sound recording of the proceedings in the above-entitled

10   matter, and to the best of my ability.

11

12   /s/ Dipti Patel

13   DIPTI PATEL, CET-997

14

15   /s/ Karen Watson

16   KAREN WATSON, CET-1039

17

18   /s/ Crystal Thomas

19   CRYSTAL THOMAS, CET-

20

21   /s/ Pattie Mitchell

22   PATTIE MITCHELL

23   LIBERTY TRANSCRIPTS              DATE: November 23, 2021

24
```

**WWW.LIBERTYTRANSCRIPTS.COM**

007064