**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| In Re: **Highland Capital Management, L.P** | § | Case No. **19-34054-SGJ11** |
| **Charitable DAF Fund, L.P et al** | | |
| Appellant | § | |
| vs. | § | 21-03067 |
| **Highland Capital Management, L.P** | § | |
| | § | |
| Appellee | § | **3:23-CV-01503-B** |

[167] Order granting Defendant Highland Capital Management, L.P.'s Renewed motion to dismiss adversary proceeding (related document # 122) Entered on 6/25/2023.

# Volume 33

# APPELLANT RECORD

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.*
*and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| CHARITABLE DAF FUND, L.P. AND CLO | § | |
| HOLDCO, LTD., DIRECTLY AND DERIVATIVELY | § | |
| | § | |
| Plaintiffs, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 21-03067-sgj11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| HIGHLAND HCF ADVISOR, LTD., AND | § | |
| HIGHLAND CLO FUNDING LTD., NOMINALLY | § | |
| | § | |
| Defendant. | § | |
| | § | *INDEX* |

### APPELLANTS' SECOND AMENDED STATEMENT OF ISSUES
### AND DESIGNATION OF RECORD ON APPEAL

Pursuant to Rules 8009(a)(1)(A)-(B) and (a)(4) of the Federal Rules of Bankruptcy
Procedure, The Charitable DAF Fund, L.P. and CLO Holdco, Ltd. ("Appellants") hereby designate
the following items to be included in the record and identify the following issues with respect to

their appeal of the Order Granting Defendant Highland Capital Management, L.P.'s "Renewed Motion to Dismiss Complaint" [Adv. Proc. Doc. No. 122] which was entered by the United States Bankruptcy Court for the Northern District of Texas on June 25, 2023.

## I.   STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

- Whether the Bankruptcy Court had jurisdiction to rule on Highland Capital Management L.P.'s Renewed Motion to Dismiss Complaint

- Whether the Renewed Motion to Dismiss Complaint was improperly granted

## II.   DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD

*Vol. 1*
*000001*

1.   Notice of Appeal for Bankruptcy Case Adversary Proceeding No. 21-03067-sgj11 [Doc. 168].

*000042*

2.   The judgment, order, or decree appealed from: Memorandum Opinion and Order Granting Defendant Highland Capital Management, L.P.'s "Renewed Motion to Dismiss Complaint" [Adv. Proc. Doc. No. 122] [Doc. 167].

*000080*

3.   Docket Sheet kept by the Bankruptcy Clerk.

4.   Documents listed below and as described in the Docket Sheet for Bankruptcy Case Proceeding No. 21-03067-sgj.

*Vol. 2*

| No. | Date Filed | Docket No. | Description/Document Text |
|---|---|---|---|
| 1 | 9/29/21 | 1 | (36 pgs; 3 docs) Adversary case 21-03067. ORDER REFERRING CASE NUMBER 21-CV-0842-Bfrom U.S District Court for the Northern District of Texas, Dallas Division to U.S. Bankruptcy Court for Northern District of Texas, Dallas Division. Complaint by Charitable DAF Fund, LP, CLO Holdco, Ltd. against Highland Capital Management, LP, Highland HCF Advisor Ltd., Highland CLO Funding, Ltd. Fee Amount $350 (Attachments: # 1 Original Complaint # 2 Docket Sheet from 3:20-cv-0842-B) Nature(s) of suit: 02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)). (Okafor, M.) |
| 2 | 9/29/21 | 2 | (1 pg) Supplemental Document (cover sheet) by CLO Holdco Ltd., Charitable DAF Fund (RE: related document(s)1 Adversary case 21-03067) [ORIGINALLY FILED IN 21-CV-0842 AS #2 ON 04/13/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |

*000102*

*000138*

| | | | | |
|---|---|---|---|---|
| *Vol. 2* *000139* | 3 | 9/29/21 | 6 | (93 pgs; 6 docs) MOTION for Leave to File First Amended Complaint filed by CLO Holdco Ltd., Charitable DAF Fund LP (Attachments: # 1 Exh 1_First Amended Complaint # 2 Exh 2_Motion for Authorization to Retain James Seery # 3 Exh 3_Order Approving Retention of James Seery # 4 Exh 4_Order Approving Settlement # 5 Proposed Order) (Bridges, Jonathan) (Entered: 04/19/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #6 ON 04/19/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *000232* | 4 | 9/29/21 | 22 | (7 pgs; 2 docs) MOTION for an Order to Enforce the Order of Reference filed by Highland Capital Management LP. (Attachments: # 1 Exhibit(s) A--Proposed Order) (Annable, Zachery) Modified text on 5/20/2021 (mjr). (Entered: 05/19/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #22 ON 05/19/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *000239* | 5 | 9/29/21 | 23 | (31 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re: 22 MOTION for an Order to Enforce the Order of Reference. (Annable, Zachery) Modified text on 5/20/2021 (mjr).(Entered: 05/20/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #23 ON 05/19/2021 IN U.S.DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *000270* *Thru Vol. 6* | 6 | 9/29/21 | 24 | (926 pgs; 29 docs) Appendix in Support filed by Highland Capital Management LP re: 23 Brief/Memorandum in Support. (Attachments: # 1 Appendix 1 # 2 Appendix 2 # 3 Appendix 3 # 4 Appendix 4 # 5 Appendix 5 # 6 Appendix 6 # 7 Appendix 7 # 8 Appendix 8 # 9 Appendix 9 # 10 Appendix10 # 11 Appendix 11 # 12 Appendix 12 # 13 Appendix 13 # 14 Appendix 14 # 15 Appendix 15 # 16 Appendix 16 # 17 Appendix 17 # 18 Appendix 18 # 19 Appendix 19 # 20 Appendix 20 # 21 Appendix 21# 22 Appendix 22 # 23 Appendix 23 # 24 Appendix 24 # 25 Appendix 25 # 26 Appendix 26 # 27 Appendix 27 # 28 Appendix 28) (Annable, Zachery) Modified linkage and text on 5/20/2021 (mjr). (Entered:05/19/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #24 ON 05/19/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *Vol. 7* *001196* | 7 | 9/29/21 | 26 | (7 pgs; 2 docs) MOTION to Dismiss Complaint filed by Highland Capital Management LP (Attachments: # 1 Exhibit(s) A--Proposed Order) (Annable, Zachery) Modified text on 5/28/2021 (jmg).(Entered: 05/27/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #26 ON 05/27/2021 IN U.S.DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |

| | | | | |
|---|---|---|---|---|
| *Vol. 7*<br>*001203*<br>*Thru Vol 8* | 8 | 9/29/21 | 28 | (508 pgs; 14 docs) Appendix in Support filed by Highland Capital Management LP (Attachments: # 1 Appendix 1 # 2 Appendix 2 # 3 Appendix 3 # 4 Appendix 4 # 5 Appendix 5 # 6 Appendix 6 # 7 Appendix 7 # 8 Appendix 8 # 9 Appendix 9 # 10 Appendix 10 # 11 Appendix 11 # 12 Appendix 12 # 13 Appendix 13) (Annable, Zachery) (Entered: 05/27/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #28 ON 05/27/2021 IN U.S. DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *Vol. 9*<br>*001711* | 9 | 9/29/21 | 33 | (1 pg) Amended Civil Cover Sheet by CLO Holdco Ltd, Charitable DAF Fund LP. Amendment to 2 Supplemental Document. (Sbaiti, Mazin) Modified text on 6/23/2021 (mjr). (Entered: 06/22/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #33 ON 06/22/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001712* | 10 | 9/29/21 | 36 | (26 pgs) RESPONSE filed by CLO Holdco Ltd, Charitable DAF Fund LP re: 22 MOTION for an Order to Enforce the Order of Reference (Sbaiti, Mazin) (Entered: 06/29/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #36 ON 06/29/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001738* | 11 | 9/29/21 | 37 | (22 pgs) Appendix in Support filed by CLO Holdco Ltd, Charitable DAF Fund LP re 36 Response/Objection Response to Motion for an Order to Enforce the Order of Reference (Sbaiti, Mazin) (Entered: 06/29/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #37 ON 06/29/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001760* | 12 | 9/29/21 | 38 | (45 pgs) RESPONSE filed by CLO Holdco Ltd, Charitable DAF Fund LP re: 26 MOTION to Dismiss (Defendant Highland Capital Management, L.P.'s Motion to Dismiss Complaint) (Sbaiti, Mazin) (Entered: 06/29/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #38 ON 06/29/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001805* | 13 | 9/29/21 | 39 | (88 pgs) Appendix in Support filed by CLO Holdco Ltd, Charitable DAF Fund LP re 38 Response/Objection to Defendant Highland Capital Management, L.P.'s Motion to Dismiss Complaint (Sbaiti, Mazin) (Entered: 06/29/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #39 ON 06/29/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *001893* | 14 | 9/29/21 | 42 | (12 pgs) REPLY filed by Highland Capital Management LP re: 22 MOTION for an Order to Enforce the Order of Reference (Annable, Zachery) (Entered: 07/13/2021) [ORIGINALLY FILED IN 21-CV-0842AS #42 ON 07/13/2021 IN U.S. |

| | | | | DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
|---|---|---|---|---|
| *Vol. 9* *001905 thru Vol. 13* | 15 | 9/29/21 | 43 | (852 pgs) Appendix in Support filed by Highland Capital Management LP re: 42 Reply. (Annable, Zachery) Modified text on 7/14/2021 (mjr). (Entered: 07/13/2021) [ORIGINALLY FILED IN 21-CV-0842AS #43 ON 07/13/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *Vol. 14.* *002757* | 16 | 9/29/21 | 45 | (21 pgs) REPLY filed by Highland Capital Management LP re: 26 MOTION to Dismiss (Defendant Highland Capital Management, L.P.'s Motion to Dismiss Complaint) (Annable, Zachery) (Entered:07/13/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #44 ON 07/13/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *002778* | 17 | 9/29/21 | 57 | (7 pgs; 2 docs) MOTION to Dismiss and Joinder in Motion to Dismiss of Highland Capital Management, L.P. filed by Highland CLO Funding Ltd. (Attachments: # 1 Proposed Order) Attorney Paul R Bessette added to party Highland CLO Funding Ltd (pty:dft) (Bessette, Paul) (Entered: 08/30/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #57 ON 08/30/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *002785* | 18 | 9/29/23 | 58 | (12 pgs) Brief/Memorandum in Support filed by Highland CLO Funding Ltd. re 57 MOTION to Dismiss and Joinder in Motion to Dismiss of Highland Capital Management, L.P. (Bessette, Paul) (Entered: 08/30/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #58 ON 08/30/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *002797* | 19 | 9/29/23 | 59 | (80 pgs; 5 docs) Appendix in Support filed by Highland CLO Funding Ltd re 58 Brief/Memorandum in Support of Motion (Attachments: # 1 Exhibit(s) A - Jackson v Dear # 2 Exhibit(s) B – Prudential Assurance v. Newman # 3 Exhibit(s) C - Harbourvest Settlement Agreement # 4 Exhibit(s) D – Boleat Declaration) (Bessette, Paul) (Entered: 08/30/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #59 ON 08/30/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *002877* | 20 | 9/29/21 | 64 | (1 pg) ORDER OF REFERENCE: Pursuant to 28 U.S.C. § 157 and this District's Miscellaneous Order No. 33, this case is hereby REFERRED to Judge Stacey G. C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, to be adjudicated as a matter related to the consolidated Chapter 11 Bankruptcy of Highland Capital Management, L.P., Chapter 11 Case No.19-34054. (Ordered by Judge Jane J. Boyle |

| | | | | |
|---|---|---|---|---|
| *Vol. 14* | | | | on 9/20/2021) (svc) (Entered: 09/20/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #64 ON 09/20/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.) |
| *002878* | 21 | 10/19/21 | 66 | (5 pgs) Notice of hearing filed by Defendant Highland Capital Management, LP (RE: related document(s) 26 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, LP, 47 Motion to strike document filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd., 55 Motion to abate filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) Hearing to be held on 11/23/2021 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 26 and for 47 and for 55, (Annable, Zachery) |
| *002883*<br>*Thru Vol. 16* | 22 | 11/22/21 | 71 | (509 pgs; 2 docs) Witness and Exhibit List *for Hearing on November 23, 2021* filed by Defendant Highland Capital Management, LP (RE: related document(s) 26 Motion to dismiss adversary proceeding). (Attachments: # 1 Exhibits 1-13) (Hayward, Melissa) |
| *Vol. 17*<br>*003392* | 23 | 11/22/21 | 72 | (2 pgs) Witness List filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 26 Motion to dismiss adversary proceeding, 47 Motion to strike (related document(s): 43 Document), 55 Motion to abate (related document(s) 1 Complaint), 69 Motion to abate *Plaintiffs' Amended Motion to Stay All Proceedings* (related document(s) 55 Motion to abate (related document(s) 1Complaint))). (Sbaiti, Mazin) |
| *003394* | 24 | 11/22/21 | 73 | (189 pgs; 4 docs) Exhibit List *for November 23, 2021 hearing* filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 47 Motion to strike (related document(s): 43 Document), 55 Motion to abate (related document(s) 1 Complaint)). (Attachments: # 1 Exhibit 1_Defendant's Memorandum of Law in Support of Motion for Reconsideration # 2 Exhibit 2_Highland Memorandum in Support of Motion to Dismiss # 3 Exhibit 3_Order (I) Confirming Fifth Amended Plan of Reorganization of Highland) (Sbaiti, Mazin) |
| *003583* | 25 | 12/7/21 | 80 | (2 pgs) Order granting Highland CLO Funding, Ltd.'s motion to dismiss adversary as a party with prejudice (related document 57) Entered on 12/7/2021. (Okafor, Marcey) Modified text on 3/11/2022 (Okafor, Marcey). |
| *003585* | 26 | 3/11/22 | 99 | (26 pgs) Memorandum of Opinion and order granting motion to dismiss the adversary proceeding (RE: related document(s) 26 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, LP). Entered on 3/11/2022 (Okafor, Marcey) |
| *003611* | 27 | 3/11/22 | 100 | (26 pgs) Order granting motion to dismiss adversary proceeding with prejudice (related document #26) Entered on 3/11/2022. (Okafor, Marcey) |

| | | | | |
|---|---|---|---|---|
| *Vol. 18*<br>*003637* | 28 | 3/21/22 | 104 | (29 pgs) Notice of appeal. Fee Amount $298 filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 100 Order on motion to dismiss adversary proceeding). Appellant Designation due by 04/4/2022. (Sbaiti, Mazin) |
| *003666* | 29 | 5/26/22 | 120 | (177 pgs; 2 docs) Support/supplemental document *Motion to Supplement Appellate Record* filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 111 Appellant designation). (Attachments: # 1 Amended Transcript of January 14, 2021 Hearing) (Sbaiti, Mazin) |
| *003843* | 30 | 6/9/22 | 121 | (1 pg) DISTRICT COURT Order: Case 3:22-00695-B is hereby transferred to the docket of the Honorable Judge Jane J. Boyle for consolidation with The Charitable DAF Fund LP, et al. v. Highland Capital Management LP, Case No. 3:21-cv-3129-N. Judge Karen Gren Scholer no longer assigned to case.(RE: related document(s) 86 Notice of appeal filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd., 104 Notice of appeal filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.). Entered on 6/9/2022 (Whitaker, Sheniqua) (Entered: 06/10/2022) |
| *003844* | 31 | 10/24/22 | 122 | (7 pgs) Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP (Annable, Zachery) |
| *003851* | 32 | 10/14/22 | 123 | (31 pgs) Brief in support filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)*). (Annable, Zachery |
| *Vol. 19*<br>*003882*<br>*Thru Vol 20* | 33 | 10/14/22 | 124 | (513 pgs; 15 docs) Support/supplemental document *(Appendix in Support of Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14) (Annable, Zachery) |
| *Vol. 21*<br>*004395* | 34 | 10/27/22 | 126 | (5 pgs) Notice of hearing *(Notice of Hearing and Briefing Schedule on Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, LP). Hearing to be held on 12/8/2022 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 122. (Annable, Zachery) |

| | | | | |
|---|---|---|---|---|
| *Vol. 21* *004400* | 35 | 11/18/22 | 128 | (10 pgs) Motion for withdrawal of reference. Fee amount $188, filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (Sbaiti, Mazin) |
| *004410* | 36 | 11/18/22 | 129 | (32 pgs) Response opposed to (related document(s): 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP) filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP. (Sbaiti, Mazin) |
| *004442* *Thru vol. 22* | 37 | 11/18/22 | 130 | (254 pgs; 2 docs) Response opposed to (related document(s): 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)* filed by Defendant Highland Capital Management, LP) filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP. (Attachments: # 1 Appendix) (Sbaiti, Mazin) |
| *Vol. 22* *004696* | 38 | 9/2/22 | 131 | (21 pgs) DISTRICT COURT MEMORANDUM OPINION AND ORDER: The Court REVERSES and REMANDS the bankruptcy court's Motion to Dismiss Order and AFFIRMS the bankruptcy courts Motion to Stay Order. re: appeal on Civil Action number: Case 3:22-00695-B consolidated with 3:21-CV-3129-B, (RE: related document(s) 81 Order on motion to abate, 100 Order on motion to dismiss adversary proceeding). Entered on 9/2/2022 (Whitaker, Sheniqua) (Entered: 11/29/2022) |
| *004717* | 39 | 12/2/22 | 133 | (15 pgs) Reply to (related document(s): 129 Response filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd., 130 Response filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) filed by Defendant Highland Capital Management, LP. (Annable, Zachery) |
| *004732* | 40 | 12/7/22 | 135 | (5 pgs) Notice of hearing filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, LP). Hearing to be held on 1/25/2023 at 01:30 PM at https://us-courts.webex.com/meet/jerniga for 122, (Annable, Zachery) |
| *004737* | 41 | 12/7/22 | 136 | (5 pgs) Notice of hearing filed by Defendant Highland Capital Management, LP (RE: related document(s) 128 Motion for withdrawal of reference filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.). Status Conference to be held on 1/25/2023 at 01:30 PM at https://us-courts.webex.com/meet/jerniga. (Annable, Zachery). |
| *004742* | 42 | 12/9/22 | 138 | (3 pgs) Response opposed to (related document(s): 128 Motion for withdrawal of reference. Fee amount $188, filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) filed by Defendant Highland Capital Management, LP. (Annable, Zachery) |

| | 43 | 12/9/22 | 139 | (25 pgs) Brief in support filed by Defendant Highland Capital Management, LP (RE: related document(s) 138 Response). (Annable, Zachery) |
|---|---|---|---|---|
| | 44 | 12/9/22 | 140 | (280 pgs; 8 docs) Support/supplemental document *(Appendix in Support of Highland Capital Management, L.P.'s Response to Renewed Motion to Withdraw the Reference)* filed by Defendant Highland Capital Management, LP (RE: related document(s) 138 Response). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7) (Annable, Zachery) |
| | 45 | 12/16/22 | 144 | (6 pgs) Reply to (related document(s): 138 Response filed by Defendant Highland Capital Management, LP) filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP. (Sbaiti, Mazin) |
| | 46 | 1/23/23 | 145 | (514 pgs; 15 docs) Witness and Exhibit List filed by Defendant Highland Capital Management, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 #3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14) (Annable, Zachery) |
| | 47 | 1/23/23 | 146 | (280 pgs; 8 docs) Witness and Exhibit List filed by Defendant Highland Capital Management, LP (RE: related document(s) 128 Motion for withdrawal of reference. Fee amount $188,). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7) (Annable, Zachery) |
| | 48 | 1/23/23 | 147 | (221 pgs; 7 docs) Witness and Exhibit List filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 122 Motion to dismiss adversary proceeding *(Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint)*). (Attachments: # 1 Exhibit 1_Excerpts from July 14, 2020 Hearing Transcript # 2 Exhibit 2_HCLOF Members Agreement Relating to the Company # 3 Exhibit 3_HarbourVest Settlement Agreement # 4 Exhibit 4_Order Approving Debtor's Settlement with HarbourVest # 5 Exhibit 5_HCLOF Offering # 6 Exhibit 6 Amended and Restated Investment Advisory Agreement) (Sbaiti, Mazin) |
| | 49 | 1/23/23 | 148 | (3 pgs) Witness and Exhibit List filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 128 Motion for withdrawal of reference. Fee amount $188,). (Phillips, Louis) |
| | 50 | 1/25/23 | 150 | (56 pgs; 2 docs) Amended Witness and Exhibit List filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP (RE: related document(s) 147 List (witness/exhibit/generic), 149 List (witness/exhibit/generic)). (Attachments: # 1 Exh 7_Testimony of Mark Patrick at June 8, 2021 hearing) (Sbaiti, Mazin |

*Handwritten annotations in left margin:*
Vol. 22 004745
Vol. 23 004770
Vol. 24 005050
005056 Thru Vol. 25
Vol. 26 005570
Vol. 27 005850
006071
Vol. 28 006074

*Vol. 28*
*006130*

| | 51 | 1/25/23 | 152 | (3 pgs) Notice of Appearance and Request for Notice by Louis M. Phillips filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP. (Phillips, Louis) |
|---|---|---|---|---|
| *006133* *Thru Vol. 31* | 52 | 1/25/23 | 154 | (1 pg) Court admitted exhibits date of hearing January 25, 2023 (RE: related document(s) 128 Motion for withdrawal of reference, filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) (COURT ADMITTED DEFENDANT'S EXHIBITS #1, #2, #3, #4, #5 & #6 OFFERED BY ATTY GREG DEMO). (Edmond, Michael) (Entered: 01/27/2023) |
| *Vol. 32* *006925* | 53 | 2/6/23 | 158 | Report and recommendation to the U.S. District Court by U.S. Bankruptcy Judge. (RE: related document(s) 128 Motion for withdrawal of reference filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.). Entered on 2/6/2023 (Okafor, Marcey) |
| *006942* | 54 | 2/6/23 | 161 | (18 pgs) DISTRICT COURT Notice of transmission of report and recommendation in re: renewed motion to withdraw reference. Civil Case # 3:22-cv-02802-S. (RE: related document(s) 158 Report and recommendation to the U.S. District Court by U.S. Bankruptcy Judge. (RE: related document(s) 128 Motion for withdrawal of reference filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.). Entered on 2/6/2023) (Whitaker, Sheniqua) |
| *006960* | 55 | 4/3/23 | 165 | (1 pg) DISTRICT COURT ORDER: The Court GRANTS the 11 Joint Motion to Transfer Proceeding and Consolidate Before Original Court and the above-numbered case (3:22-cv-02802-S) is transferred to the docket of the Honorable Judge Jane Boyle: Civil case 3:21-cv-00842-B (order referring case). (RE: related document(s) 1 Complaint filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd., 143 Notice of transmission of motion to withdraw reference). Entered on 4/3/2023 (Whitaker, Sheniqua) Modified on 4/10/2023 (Whitaker, Sheniqua). (Entered: 04/10/2023) |

TRANSCRIPTS

| | 56 | 11/24/21 | 78 | (104 pgs) Transcript regarding Hearing Held 11-23-2021 RE: Motion Hearing. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 02/22/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Liberty Transcripts/Dipti Patel, Telephone number 847-848-4907. (RE: related document(s) 75 Hearing held on 11/23/2021. (RE: related document(s)55 MOTION to Stay filed by CLO Holdco Ltd, Charitable DAF Fund LP (Sbaiti, Mazin) (Entered: 08/26/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #55 ON 08/26/2021 IN U.S. |
|---|---|---|---|---|
| *006961* | | | | |

| | | | | |
|---|---|---|---|---|
| | | | | DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.)) (Appearances: J. Pomerantz and J. Morris for Highland Defendants; J. Jordan and P. Bessett for HCLOF; M. Sbaiti for Plaintiffs. Nonevidentiary hearing. Motion denied. Mr. Pomerantz to upload order.), 76 Hearing held on 11/23/2021. (RE: related document(s) 47 Motion to strike 43 Appendix in support filed by CLO Holdco, Ltd., Charitable DAF Fund, LP (Bridges, Jonathan) Modified text on 7/16/2021 (mjr). (Entered: 07/15/2021) [ORIGINALLY FILED IN 21-CV-0842 AS #47 ON 07/15/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, M.)) (Appearances: J. Pomerantz and J. Morris for Highland Defendants; J. Jordan and P. Bessett for HCLOF; M. Sbaiti for Plaintiffs. Nonevidentiary hearing. Motion denied (Plaintiffs acknowledged complained-of Appendices it did not relate to Motion to Dismiss). Mr. Pomerantz to upload order.)). Transcript to be made available to the public on 02/22/2022. (Patel, Dipti) |
| VOL. 33<br><br>007065 | 57 | 2/21/23 | 164 | 164 (112 pgs) Transcript regarding Hearing Held 1/25/23 RE: HEARING ON DEFENDANT HIGHLAND CAPITAL MANAGEMENT L.P.'S RENEWED MOTION TO DISMISS COMPLAINT (122) AND STATUS CONFERENCE RE: MOTION FOR WITHDRAWAL OF REFERENCE FILED BY PLAINTIFF CLO HOLDCO, LTD., PLAINTIFF CHARITABLE DAF FUND, LP (128). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 05/22/2023. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Dipti Patel, Telephone number 847-848-4907. (RE: related document(s) 155 Hearing held on 1/25/2023. (RE: related document(s) 122 Motion to dismiss adversary proceeding, (Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint) filed by Defendant Highland Capital Management, LP filed by Defendant Highland Capital Management, LP) (Appearances: J. Morris and G. Demo for Movants; L. Phillips and M. Sbaiti for Plaintiffs. Evidentiary hearing (appendices). Court took matter under advisement.), 156 Hearing held on 1/25/2023. (RE: related document(s) 128 Motion for withdrawal of reference. Fee amount $188, filed by Plaintiffs CLO Holdco, Ltd., Charitable DAF Fund, LP filed by Plaintiff Charitable DAF Fund, LP, Plaintiff CLO Holdco, Ltd.) (Appearances: J. Morris and G. Demo for Movants; L. Phillips and M. Sbaiti for Plaintiffs. Evidentiary hearing (appendices). Court announced it will recommend denial to District Court. Court is working on Report & Recommendation.)). Transcript to be made available to the public on 05/22/2023. (Patel, Dipti) |

Dated:  July 14, 2023                    Respectfully submitted,

                                         **SBAITI & COMPANY PLLC**

                                         */s/  Mazin A. Sbaiti*
                                         **Mazin A. Sbaiti**
                                         Texas Bar No. 24058096
                                         **Jonathan Bridges**
                                         Texas Bar No. 24028835
                                         2200 Ross Avenue – Suite 4900W
                                         Dallas, TX  75201
                                         T:  (214) 432-2899
                                         F:  (214) 853-4367
                                         E:  mas@sbaitilaw.com
                                             jeb@sbaitilaw.com

                                         **Counsel for Appellants**


                         **CERTIFICATE OF SERVICE**

        I hereby certify that a true and correct copy of the foregoing document was filed
electronically through the Court's ECF system, which provides notice to all parties of interest, on
this 14th day of July, 2023.


                                         */s/ Mazin A. Sbaiti*
                                         Mazin A. Sbaiti

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS)

```
IN RE:                          .   Case No. 19-34054-11(SGJ)
                                .
HIGHLAND CAPITAL                .   Earle Cabell Federal Building
MANAGEMENT, L.P.,               .   1100 Commerce Street
                                .   Dallas, Texas 75242
                                .
           Debtor.              .
. . . . . . . . . . . . . . .   .
                                .   Adv. No. 21-03067-11(SGJ)
CHARITABLE DAF FUND,            .
LP, ET AL.,                     .
                                .
           Plaintiffs,          .
                                .
       v.                       .
                                .
HIGHLAND CAPITAL,               .
MANAGEMENT, L.P., ET AL.,       .
                                .
           Defendants.          .   Wednesday, January 25, 2023
. . . . . . . . . . . . . . .   .   1:38 p.m.
```

TRANSCRIPT OF HEARING ON DEFENDANT HIGHLAND CAPITAL MANAGEMENT
L.P.'S RENEWED MOTION TO DISMISS COMPLAINT (122) AND
STATUS CONFERENCE RE: MOTION FOR WITHDRAWAL OF REFERENCE FILED
BY PLAINTIFF CLO HOLDCO, LTD., PLAINTIFF CHARITABLE DAF FUND,
LP (128)

BEFORE THE HONORABLE STACEY G. JERNIGAN
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE

APPEARANCES ON NEXT PAGE.

Audio Operator:         Michael F. Edmond

Proceedings recorded by electronic sound recording, transcript
produced by a transcript service.

_____

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail:  DBPATEL1180@GMAIL.COM**
**(847) 848-4907**

2

APPEARANCES VIA WEBEX:

For the Plaintiffs:          Sbaiti & Company PLLC
                             BY: MAZIN AHMAD SBAITI, ESQUIRE
                             JP Morgan Chase Tower
                             2200 Ross Avenue, Suite 4900 W
                             Dallas, Texas 75201

                             Kelly Hart & Pitre
                             BY: LOUIS M. PHILLIPS, ESQUIRE
                             301 Main Street, Suite 1600
                             Baton Rouge, Louisiana 70801

For the Defendants:          Pachulski Stang Ziehl & Jones LLP
                             BY:  JOHN A. MORRIS, ESQUIRE
                                  GREGORY V. DEMO, ESQUIRE
                             780 3rd Avenue, 34th Floor
                             New York, New York 10017

007066

3

INDEX

                                                                    Page

Matters Heard:

Motion for withdrawal of reference filed by
Plaintiff CLO Holdco, Ltd., Plaintiff Charitable
DAF Fund, LP (128)

Court's Ruling - Recommendation of Denial of Motion         49
  to the District Court

Defendant Highland Capital Management, L.P.'s
Renewed Motion to Dismiss Complaint (122)

Court's Ruling - Taken Under Advisement                    110

**EXHIBITS**                                                ID    EVD

Motion for withdrawal of reference filed by
Plaintiff CLO Holdco, Ltd., Plaintiff Charitable
DAF Fund, LP (128)

FOR THE PLAINTIFFS:
(None)

FOR THE DEFENDANTS:

1 through 6                                                 31    31

Defendant Highland Capital Management, L.P.'s
Renewed Motion to Dismiss Complaint (122)
DAF Fund, LP (128)

FOR THE PLAINTIFFS:
(None)


FOR THE DEFENDANTS:

1 through 14                                                58    58

007067

4

1          (Proceedings commenced at 1:38 p.m.)

2          THE COURT:  All right.  We have settings this

3   afternoon in Highland Adversary 21-3067.  We have a renewed

4   motion to withdraw the reference set for status conference and

5   a renewed Rule 12(b)(6) motion to dismiss.

6          So let's get all of our appearances from the lawyers

7   before we get started.  I'll start with our plaintiffs.  Who do

8   we have appearing for Charitable DAF and CLO Holdco?

9          MR. SBAITI:  Your Honor, this is Mazin Sbaiti on

10  behalf of the two plaintiffs.

11         THE COURT:  Thank you.

12         Any other lawyer appearances for plaintiffs?

13         MR. PHILLIPS:  Your Honor, Louis N. Phillips on -- I

14  have been asked and agreed to argue the motion to withdraw

15  reference.  I did not file a special appearance.  We've talked

16  with opposing counsel, and they were aware that I was involved.

17  I am not counsel of record in the lawsuit, but I've been asked

18  to argue this, the bulk of the motion to withdraw reference.

19         THE COURT:  All right.

20         Appearing for defendants, who will appear today?

21         MR. MORRIS:  Good afternoon, Your Honor.  This is

22  John Morris from Pachulski Stang Ziehl & Jones.  I'll be

23  arguing if Your Honor chooses to hear the renewed motion to

24  dismiss.  I'm joined by my colleague Gregory Demo.  Mr. Demo is

25  going to argue on behalf of defendants and our position the

**WWW.LIBERTYTRANSCRIPTS.COM**

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 18-33   Filed 09/11/23   Page 18 of 125   PageID 7640

5

1    motion to withdraw the reference.

2            I would note just procedurally while we have

3    absolutely no objection to Mr. Phillips participating today, he

4    really should be making an appearance on behalf of the entity

5    making the motion.  I don't see how he can bind the plaintiffs

6    without serving as their counsel.

7            I've never heard that before.  That wasn't my

8    understanding of what was happening.  But, you know, given some

9    of the things that have happened in this case, I think it would

10   be prudent to make sure that the person who's advocating on

11   behalf of a party actually represents them.

12           THE COURT:  Okay.  We'll circle back to that.  But

13   have I missed any lawyer appearances?

14       (No audible response)

15           THE COURT:  All right.  Others --

16           MR. MORRIS:  Not for the defendants, Your Honor.

17           THE COURT:  Just observers.

18           All right.  Well, Mr. Phillips, let's be crystal

19   clear.  I know that during the underlying bankruptcy case you

20   have, if not this adversary, you have appeared for the

21   Charitable DAF.

22           Exactly let's be clear, you know, you said your role,

23   you've been asked to argue the motion to withdraw th reference.

24   Are you retained by Charitable DAF and CLO Holdco in connection

25   with this adversary?

6

1          MR. PHILLIPS:  Your Honor, I have and I will -- we

2  will file in today a notice of appearance.  And I'm assuming

3  that will be satisfactory, and we will provide any limitations

4  on our representation.  But we are authorized to represent the

5  plaintiff CLO Holdco and the plaintiffs in this matter with

6  respect to the motion to withdraw reference.

7          THE COURT:  All right.

8          MR. PHILLIPS:  And we will file a formal notice of

9  appearance to that effect.

10         THE COURT:  Okay.  So we will look for that to

11 happen.

12         All right.  We're going to take up the motion to

13 withdraw the reference now.  Just as a reminder, my courtroom

14 deputy was in communication with the lawyers and I think the

15 lawyers agreed to 15 minutes each as far as your arguments on

16 the motion to withdraw the reference.

17         Are we all on the same page on that?

18         MR. MORRIS:  It's 25.

19         THE COURT:  Twenty-five.

20         MR. MORRIS:  Correct.

21         THE COURT:  Okay.  That as wishful thinking maybe on

22 my part.

23         Okay, 25 minutes each.  And so I will hear from you,

24 Mr. Phillips.

25         MR. PHILLIPS:  Okay.  Thank you, Your Honor.

**WWW.LIBERTYTRANSCRIPTS.COM**

7

1          As an introductory matter, we discussed with Mr. Demo

2    and Mr. Morris.  We have a peculiar situation here where we

3    have a motion to dismiss that calls into question the claims

4    arising under federal law.  And that argument dovetails almost

5    completely with the argument about the consideration of federal

6    law.

7          And we have agreed that I will defer -- I will grant,

8    carve out some of the 25 minutes so that Mr. Sbaiti who is

9    going to be arguing the motion to dismiss can argue the

10   intricacies of the claim with respect to federal law.

11         THE COURT:  Okay.

12         MR. PHILLIPS:  Thank you, Your Honor.

13         Louis M. Phillips on behalf of the plaintiffs.

14         We're here on what's been deemed a re-urged motion

15   for withdrawal of reference.  We have a response that the

16   withdrawal of reference on multiple grounds, pretty much all

17   the grounds they could oppose.  And we'll start with what I

18   think would be kind of a clearing mechanism.  We have arguments

19   on both sides about various and sundry approaches to whether or

20   not the reference should be withdrawn.  And it seems to me like

21   some of those arguments may not necessarily be relevant.

22         And what I'm talking about is there's an argument,

23   both sides, about the nature of the jurisdiction core versus

24   non-core, whether or not this is an administrative expense

25   claim which is core, whether or not the Court has jurisdiction

**WWW.LIBERTYTRANSCRIPTS.COM**

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 18-33    Filed 09/01/23    Page 21 of 125    PageID 7643

8

1    pointing out that courts have jurisdiction to decide securities

2    law matters certainly, including 5.3(a)(19).  We think the

3    following with respect to all of this.

4              Number one, the structure of -- this is a mandatory

5    withdrawal motion.  The structure of 157(d) is that motions

6    that the court shall -- the district court shall withdraw upon

7    a timely motion a proceeding that requires for resolution

8    consideration of both Title 11 and other laws of the United

9    States for regulatory organization of activities affecting

10   interstate commerce.

11             So what we have here is a question of authority.  as

12   I see it, and as we argue, the withdrawal of reference is

13   compelled upon a timely motion, not with respect to -- not

14   considering whether or not the proceeding is core because core

15   proceedings can be withdrawn, not considering whether or not

16   the proceeding is an administrative expense claim or proceeding

17   because administrative expense claim proceedings if they meet

18   the statutory definition of a proceeding subject to mandatory

19   withdrawal can be withdrawn.  In fact, we've got a citation

20   later on in the argument where there's a proof of claim that is

21   subject to mandatory withdrawal.

22             We've seen this -- the point is the question of

23   whether -- there's no question about the Court having

24   jurisdiction.  If this was a matter of subject matter

25   jurisdiction, then you couldn't waive subject matter

007072

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 18-33   Filed 09/01/23   Page 22 of 125   PageID 7644

9

1 jurisdiction by failing to file a timely motion.  And clearly,

2 the jurisdiction of the district court under 1334 is referred

3 to the bankruptcy court in the event there is no motion to

4 withdraw reference.

5          So our position here in argument and before the Court

6 is that the question is not whether the Court has jurisdiction,

7 what the nature of the proceeding is, is it an administrative

8 expense proceeding, is it an adversary proceeding.  It's not

9 whether the Court is capable of deciding this type of issue

10 because clearly the statute provides that, number one, the

11 Court has authority to decide the proceeding if there's no

12 motion to withdraw reference and if it's not related to.  And

13 if it is related to and there's consent, you have authority to

14 decide the proceeding.

15          So the question is whether or not the Court,

16 notwithstanding its authority, notwithstanding the fact that

17 the proceeding might be a core proceeding, has to recommend to

18 the district court or the district court has to withdraw the

19 reference under mandatory withdrawal Section 157(d).  So --

20          THE COURT:  Okay.  Let me --

21          MR. PHILLIPS:  -- I think what we can do --

22          THE COURT:  Let me call time out and my law clerk

23 will stop the timer --

24          MR. PHILLIPS:  Yes, ma'am.

25          THE COURT:  -- when I interrupt with questions.

1          So we're on the same page, I think I hear you saying

2  you don't dispute that this is a core in nature proceeding,

3  that it's essentially a request for allowance of an

4  administrative expense claim and even if those involve federal

5  law or non-bankruptcy law, that's core.

6          What you're saying is sometimes even when you have a

7  core matter, whether it's a proof of claim or a request for

8  administrative expense claim, if it involves I guess a

9  significant enough amount of federal law, 157(d) requires it to

10 be yanked from the bankruptcy court?

11         MR. PHILLIPS:  Well, it would be 157(d) would deal

12 with a certain type of federal law, consideration of federal

13 law or an organization and activity involving the regulation of

14 interstate commerce.  So it's not federal law --

15         THE COURT:  Okay.  But I want to make sure I have an

16 answer from you because district courts like you to have

17 certain bells and whistles in your reports and recommendations

18 about is it core or non-core or stern.

19         You acknowledge this is a core matter?

20         MR. PHILLIPS:  Your Honor, what I would rather do if

21 tied to the stake, I might approach this in a different manner.

22 And if you want to tie me to the stake, I might have to.  But

23 what I would rather do is tell the Court that I don't think --

24 I hear the Court with respect to what the district court might

25 want as regards to whether it's core or non-core.

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-3   Filed 09/11/2312   Page 24 of 125   PageID 7646

11

1          But what I would rather do at this point, I don't

2  have authority to admit or acknowledge.  What I would rather

3  acknowledge is that I don't think it's relevant to the question

4  of whether a proceeding gets withdrawn under mandatory

5  abstention because --

6          THE COURT:  Okay.

7          MR. PHILLIPS:  -- the proceeding, the definition of a

8  proceeding that's subject to mandatory abstention has no

9  reference to core, non-core, or related to.  It is just a

10  proceeding.  And it clearly is subject to 1334 jurisdiction but

11  this is one provision of Section 157 that does not deal with

12  whether or not a proceeding is core, non-core, arising in,

13  arising under, related to.

14          It's just a proceeding with the assumption that you

15  have jurisdiction under 1334, an assumption that it got

16  referred to the bankruptcy court because of the order of

17  reference and 157 that authorizes reference of matters arising

18  in, arising under, or related to a bankruptcy case to the

19  bankruptcy court.

20          My position is that it's not relevant to whether or

21  not it is core, non-core --

22          THE COURT:  Okay.

23          MR. PHILLIPS:  -- related to because the statute

24  simply refers to the type of proceeding and its involvement

25  with a certain component of federal law.

12

1            THE COURT:  Okay.  We've started the timer again.

2            MR. PHILLIPS:  So -- okay, thank you.

3            I've got my own little timer but, of course, my phone

4   goes off and then I have to find it and if the Court could just

5   tell me when I -- I'd like to reserve five minutes.  If the

6   Court could tell me when I'm at ten minutes, I'd appreciate it.

7            THE COURT:  Okay.

8            MR. PHILLIPS:  So where I think we --

9            THE COURT:  When you are at ten minutes left.  Okay,

10  go ahead.

11           MR. PHILLIPS:  Where I think we were, Your Honor, is

12  that we have a motion to withdraw reference that was originally

13  filed in the district court.  I think there are two questions

14  here.  I think the questions are not -- the questions are

15  whether or not this is a timely motion and, secondly, whether

16  or not the requirements of 157(b) are met with respect to the

17  nature of the proceeding and the involvement of federal law

18  regulating activities or organizations under -- involving

19  interstate commerce.  That's what I think we're here to

20  discuss.

21           And so with respect to timeliness, we have a motion

22  filed in the district court.  We have a motion to enforce the

23  reference under the local order of reference.  And we have a

24  cross-motion that says to the district court don't do that

25  because it's not efficient.  You ought to go ahead and just

007076

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 68-3    Filed 09/31/2312    Page 26 of 125    PageID 7648

13

1   keep it and, quote, withdraw the reference because this is a

2   157(d) type proceeding.

3          I think what happened and what we have in the

4   district court's order of reference is no resolution of the

5   motion to withdraw reference.  It's simple an order enforcing

6   local order of reference that applies to all proceedings.

7          So I guess the way I look at this, the way I approach

8   -- I'm arguing to the Court that this should be approached is

9   that you can't withdraw reference of a proceeding unless the

10  order of reference is complied with.  And I can see how the

11  district court would say I am not -- we are not going to abide

12  by litigants that file -- we are not going to grant relief

13  because it's efficient in the face of a proceeding

14  automatically referred to the bankruptcy court that should have

15  been filed in the bankruptcy court but was not.

16         And if you look at the order of reference, the order

17  of reference simply says that the matter is referred under the

18  local -- under the order of reference and is to be treated as a

19  proceeding related to the bankruptcy case below and given an

20  adversary proceeding number.  There's no ruling on the question

21  of whether or not mandatory abstention applies because I think

22  what we're dealing with here, in fact, I know what we're

23  dealing with here.

24         We're dealing with a situation where the district

25  court considered any withdrawal of reference to be premature

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 68   Filed 09/11/23   Page 27 of 125   PageID 7649

14

1  because the order of reference in its mind needed to be

2  enforced so that the proceeding was in the bankruptcy court

3  prior to the ruling on, filing of, or consideration of a motion

4  to withdraw the reference.

5          THE COURT:  Okay.  Let me stop you again there.

6          MR. PHILLIPS:  So our position is --

7          THE COURT:  Let me stop you again there because --

8          MR. PHILLIPS:  Yes, ma'am.

9          THE COURT:  -- before I started preparing for today's

10  argument, I had wrongly had in my head that Judge Boyle, the

11  district judge just sua sponte did a one-paragraph order

12  sending this lawsuit to the bankruptcy court.  But then as I

13  started preparing, I either was reminded --

14          MR. PHILLIPS:  Yes, ma'am.

15          THE COURT:  -- or realized for the first time that

16  the debtor, defendants, filed a motion to enforce the reference

17  arguing, please send this to the bankruptcy court.  And your

18  clients opposed that and essentially made a cross-motion to

19  keep the case.

20          And so the district judge's short little order was

21  actually -- it wasn't sua sponte, it was after presumably

22  reading everybody's pleadings, right?

23          MR. PHILLIPS:  Agreed.  I don't think I argued that

24  it was a sua sponte order.  I did not do that, no.  It was --

25          THE COURT:  Well, no.  I point that out because I

15

1  think the argument was essentially no motion to withdraw the

2  reference even though this is called renewed was really fully

3  made and considered by the district court.  Was that not what

4  you were arguing?

5        MR. PHILLIPS:  I agreed that that's correct.  I

6  agreed that that's my argument.  And the reason that's my

7  argument is you don't have to rule and in fact the district

8  court -- I'm not going to say the district court was wrong

9  because if the district court made a decision that the order of

10 reference, that the plaintiff did not comply with the order of

11 reference, then trying to short-circuit the order of reference

12 by filing in the district court.

13       The court didn't have to, and this is not something

14 that had to be litigated to decide whether or not to refer in

15 accordance with the order of reference because technically I'm

16 not sure that the district court could have concluded that the

17 order of reference could be withdrawn before it was complied

18 with.  So I don't -- I think what we're -- we're not talking

19 about a collateral estoppel or res judicata on the motion to

20 withdraw reference because it was not necessary even to address

21 the motion to withdraw reference before ordering enforcement of

22 the reference.

23       So I'm not saying it was sua sponte.  I'm not saying

24 that the plaintiff who I represent in connection with this

25 argument didn't say keep it, but the plaintiffs' argument about

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 6-8   Filed 09/11/23   Page 29 of 125   PageID 7651

16

 1  keeping it was you might as well keep it because of efficiency.
 2  And the district court in our estimate made the determination
 3  that we don't care about efficiency.  We have an order of
 4  reference that needs to be complied with as an initial
 5  gatekeeper issue.  If you don't comply with the order of
 6  reference and file up here, we're going to make sure you start
 7  at a right place by ordering the enforcement of the reference.

 8          I don't think you have to -- I know you don't.  The
 9  district court didn't have to get to the issue of whether or
10  not the reference would be withdrawn on a mandatory withdrawal
11  under 157(d) to order compliance with the reference.  In other
12  words, you can't refer what's not -- you can't withdraw what's
13  not heard.  And I think that's what happened.  We're arguing
14  that that is what the district court did.

15          THE COURT:  Well, let me stop you again.  We're going
16  to be here a long time today, I fear.  Did you argue back at
17  that stage you can't send it to the bankruptcy court, Judge
18  Boyle, this involves material consideration of other federal
19  laws affecting interstate commerce, you can't do it.  And she,
20  nevertheless, did it?

21          MR. PHILLIPS:  No, I think the argument -- I mean I
22  didn't write the brief.  I didn't -- I don't think there was an
23  argument, frankly.  In the brief, as I read it, it was this
24  matter is subject to mandatory withdrawal.  And it makes no
25  sense to order the reference just so we would then bring it and

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 6-33   Filed 09/11/2312   Page 30 of 125   PageID 7652

17

1  try to bring it back.

2          So I don't think that -- even if -- and I'll tell you

3  that even if the plaintiff argued you can't do it, it's clear

4  to me that the -- it's clear that under the order of reference,

5  that the district court could absolutely have just said I'm not

6  listening to any of this.  I'm ordering the reference and

7  that's what I'm doing.

8          But there was never in the order that was issued by

9  the district court a ruling on mandatory withdrawal.  Why?

10 Because the district court's concern was that the reference had

11 not been complied with.  And so I don't think we're talking

12 about something that had to be actually litigated to get to the

13 district court decision that the order of reference needs to be

14 complied with and this needs to be given an adversary number.

15 Why?  That's what our automatic reference requires.

16         What we don't want at the district court is litigants

17 deciding we don't have to comply with the order of reference

18 because it's going to be withdrawn anyway.  And I think, Judge,

19 if you look at what the district court did, it did not mention

20 any type of withdrawal ruling.  It did not mention any analysis

21 of the nature of the proceeding.  I'm not sure it even knew

22 what the proceeding was.

23         I think what it did was exactly what the defendant

24 asked it to do was enforce the reference, which it could do and

25 did do without consideration of the premature request in its

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 63    Filed 09/18/2312    Page 31 of 125    PageID 7653

18

 1  mind that the reference be withdrawn as a mandatory withdrawal

 2  under 157(d).

 3          THE COURT:  Okay.

 4          MR. PHILLIPS:  That's our position.

 5          THE COURT:  All right.  Does that conclude your

 6  argument?

 7          MR. PHILLIPS:  No, ma'am.  We have to address

 8  timeliness, and we have to address --

 9          THE COURT:  Okay.

10          MR. PHILLIPS:  So the timeliness issue is that this

11  Court, the reference was not enforced.  The proceeding came to

12  this Court, and the defendants raised dismissal and basically

13  raised dismissal on the basis that everything raised in the

14  complaint was actually litigated or determined either through

15  the doctrine of res judicata or collateral estoppel and/or was

16  precluded by judicial estoppel.

17          None of -- those issues were not issues of the type

18  of federal law that is applicable to 157(d).  Those issues are

19  preclusion issues: res judicata, collateral estoppel.  This

20  Court ruled 100 percent on collateral estoppel and res judicata

21  and judicial estoppel and dismissed the complaint with

22  prejudice.

23          In the November hearing, this Court advised the

24  parties that it was in essence sitting as the magistrate and

25  would be writing up a recommendation.

**WWW.LIBERTYTRANSCRIPTS.COM**

19

1          "I'm essentially acting as a magistrate for Judge

2          Boyle in this action and whichever way I go and

3          whichever theories I think she would expect a

4          thorough write-up.  It would of course be in the form

5          of a report and recommendation. for her to either

6          adopt or, if not" --

7          THE COURT:  Can I stop you?

8          MR. PHILLIPS:  Yes.

9          THE COURT:  Did I later correct myself at some point

10 and go, oh wait, she referred this to me?  I thought at one

11 point I misspoke and then later in open court corrected myself?

12 Did I -- am I wrong?

13          MR. PHILLIPS:  Your Honor, I will look again.

14          THE COURT:  Okay.

15          MR. PHILLIPS:  We'll look again.

16          THE COURT:  Okay.  I --

17          MR. PHILLIPS:  But --

18          THE COURT:  Go ahead.

19          MR. PHILLIPS:  But I will say this.  I will say this,

20 we are faced with and we have to argue about and we're dealing

21 with a final order.  The Court issued a final order, and the

22 plaintiff appealed.

23          So there's no question that the Court, whether or not

24 it advised the parties, it made the decision to issue a final

25 order.  And that order was appealed.  So there's no question,

007083

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-8    Filed 09/01/23    Page 33 of 125    PageID 7655

20

1  we're not challenging the fact that the Court issued a final

2  order.  The Court did.  And the final order went to the Court

3  of Appeals, and it took time at the Court of Appeals to issue a

4  ruling.

5          And the ruling was that collateral estoppel/res

6  judicata did not apply because of the actual litigation

7  requirement given the difference in burdens of proof and

8  standards of proof; and, secondly, that there was one of the

9  components of judicial estoppel that was not resolved by the

10  Court with respect to the request to dismiss Counts 2 and 5

11  through judicial estoppel.

12          So the matter was sent back to Your Honor.  And a

13  motion to dismiss was filed that focuses, re-urges judicial

14  estoppel on Counts 2 and 5 and focuses on the substantive

15  nature of the complaint and kind of a pure failure to state a

16  claim under Rule 12 which involves the substantive nature of

17  the claim.

18          And so what in the answer, in the response to the

19  motion to dismiss, there was a motion to re-urge or renew the

20  motion to withdraw reference.  Now that the substantiative

21  nature of the claim is put at issue by a motion to dismiss,

22  because there's no preclusion -- there is a preclusion argument

23  on Counts 2 and 5, there's no preclusion argument on res

24  judicata or collateral estoppel.

25          The motion to withdraw reference was re-urged, and we

**WWW.LIBERTYTRANSCRIPTS.COM**

21

 1  don't think that was a surprise to anybody.  In fact, in

 2  November of '21, counsel for the defendants was suggesting that

 3  a motion to withdraw reference was coming and it would be

 4  sanctionable, et cetera, et cetera.  We don't think it's

 5  sanctionable, clearly, or it wouldn't have been brought.

 6          But we now have the substantive issues in the

 7  complaint being put to the test by a motion to dismiss.  And at

 8  this point, we think it's ripe for motion to withdraw

 9  reference.  And we also --

10          THE COURT:  This is your ten-minute warning.

11          MR. PHILLIPS:  -- would point out that --

12          THE COURT:  This is your ten-minute warning --

13          MR. PHILLIPS:  Okay, thank you.

14          THE COURT:  -- you asked for.

15          MR. PHILLIPS:  Yes, thank you very much, Judge.

16          We'd point out that there are -- you know, this court

17  and other courts take the position that -- some courts take the

18  position motions to withdraw reference are premature until and

19  unless there's a jury trial or a trial that the matters are

20  trial-ready.  In fact, I think in the Curson (phonetic)

21  litigation, you have recommended withdrawal of reference but

22  not until it's trial-ready, although those were motions to

23  withdraw reference up at front.

24          But we'd point out In re Reed.  We cited -- we'd

25  point out In re Reed, 2017 WL 1788295, which deals with a

**WWW.LIBERTYTRANSCRIPTS.COM**

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 68   Filed 09/21/2312   Page 35 of 125   PageID 7657

22

1   prematurity finding by the court pending jury trial readiness.

2          And we also look at National Gypsum, 145 B.R.

3   539,542, which is a Judge Fish case.  And in that case, you had

4   an objection to a proof of claim and a subject judgment on the

5   proof of claim.  I don't really understand that, but the

6   respondent to the summary judgment waited until that was filed

7   to bring a motion to withdraw reference because the summary

8   judgment had raised the issue of antitrust law.  And Judge Fish

9   said that this was -- notwithstanding this was late into the

10  case, that the motion to withdraw reference would have been

11  premature prior to that.

12         We understand -- we think this is a very closely

13  analogous case and that the question of the substantive nature

14  of the cause of action and the causes of action are now

15  squarely before the Court which generates a motion to withdraw

16  reference where when we're talking basically about preclusion,

17  that wasn't necessarily -- this is the better time to bring it

18  than that time was.

19         Finally, I would say there's an allegation of

20  prejudice.  Everything's been briefed.  The only question in

21  our mind is whether the Court issues a final order or proposed

22  findings and conclusions so no party is prejudiced.  The Court

23  will either do one or the other based on the briefing that's

24  before the Court.

25         So I'll use the rest of my 20 minutes to defer to Mr.

**WWW.LIBERTYTRANSCRIPTS.COM**

23

1  Sbaiti about the applicability of federal law and the intricacy

2  of federal law and necessity of dealing with federal law.

3              THE COURT:  Okay.  Mr. Sbaiti?

4              MR. SBAITI:  Good afternoon, Your Honor.

5              I've prepared some remarks for the actual motion to

6  dismiss, and so if it's okay, I'd like to just go through just

7  the legal portions and then I'll save the actual motion to

8  dismiss arguments for my time during the motion to dismiss.  Is

9  that okay?

10             THE COURT:  Okay.

11             MR. SBAITI:  Your Honor, so the main federal statute

12 or the federal statute that we're dealing with here is the

13 Advisers Act, as Your Honor knows.  When we first filed this

14 case, the core allegations or principal allegation was that

15 Highland breached the Advisers Act by -- well, several sections

16 of the Advisers Act by essentially cherry-picking a provision,

17 an opportunity to buy the HarbourVest, the HarbourVest interest

18 in HCLOF.

19             And it does so essentially by making a statement

20 about the value of the HarbourVest, the interest, and then

21 using its position as both a principal and as an adviser in the

22 HarbourVest business in order to accomplish that.  Section 206

23 of the Advisers Act establishes fiduciary duties.  The Supreme

24 Court in Transamerica Mortgage Advisers v. Lewis, 444 U.S.

25 11,17, held that Section 206 imposes federal fiduciary

007087

24

1   standards to govern the conduct of investment advisers.  And

2   the -- if you actually look at Mr. Seery's appointment hearing

3   in July of 2020, he admitted that the Investment Advisers Act

4   puts a fiduciary duty on Highland Capital to discharge its duty

5   to the investors.

6         And that language that he used I think is going to be

7   important later on when we talk about whether there is a direct

8   fiduciary duty owed by Highland to Holdco, for example, as an

9   investor in HCLOF.

10         I'd like to focus specifically, Your Honor, on

11   Section 206(4) of the Advisers Act which says it's unlawful to

12   directly or indirectly engage in any practice or act in the

13   course of business which is fraudulent, deceptive, or

14   manipulative.  Some of the cases cited by the other side tend

15   to argue that, no, there's only a direct fiduciary duty to a

16   client.  The language that they refer to or the cases they're

17   referring to are usually citing the language in Section 206(1)

18   or Section 206(2), indeed, do discuss the duties directly owed

19   to a client.  Section 206(4) has no such limitation.

20         The next point about that issue, Your Honor, is

21   Section 206(4) also gave the SEC the power to explain the scope

22   of what 206(4) means.  And they cast a rule, 206(4)-8, which

23   Your Honor can find at 17 CFR 275.206(4)-8.  And it

24   specifically says that an investment adviser shall not make any

25   untrue statement of material fact or admit to state a material

007088

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-8   Filed 09/15/23   Page 38 of 125   PageID 7660

25

1  fact necessary to make the statements made not misleading to

2  any investor or prospective investor in a pool investment fund,

3  which HCLOF is.

4          And it also prohibits them from otherwise engaging in

5  any act, practice, or course of business that is fraudulent,

6  deceptive, or manipulative with respect to any investor in such

7  a fund.

8          Our argument has been the premise of the complaint --

9  and this rule is cited in the breach of fiduciary duty claim in

10  the complaint.  The premise of the complaint is that these

11  (indiscernible) fiduciary duties that Highland had to abide by,

12  and those fiduciary duties can be broken down into a couple

13  that are relevant for us here.

14          The first one is, is there's a fiduciary duty of care

15  which ports, for example, SEC v. Tambone which we cite in our

16  brief, 550 F.3d 106, says the Advisers Act imposes a fiduciary

17  duty to act at all times in the best interest of the fund and

18  its advisers.  There's also a duty of care which we -- excuse

19  me, a duty of loyalty, and we cite several cases on that.

20          And one example is SEC v. Word Tree Financial, which

21  is a Fifth Circuit case, 43 F. 4th 448,460.  And there, the

22  Fifth Circuit held that because cherry-picking involves

23  allocating more profitable trades to certain accounts, an

24  adviser is stealing from one customer to enrich himself when

25  they engage in cherry-picking.

**WWW.LIBERTYTRANSCRIPTS.COM**

007089

26

1    And in that case, an advisor was cherry-picking

2  between one customer and sending the opportunity to another

3  customer.  Here, it's worse.  Here the --

4    THE COURT:  Okay.  I'm going to --

5    MR. SBAITI:  -- adviser is sending the --

6    THE COURT:  I'm going to interrupt again.  You did --

7    MS. SBAITI:  Yes, Your Honor.

8    THE COURT:  -- foreshadow that your argument might

9  overlap a little with the motion to dismiss argument.

10    MS. SBAITI:  Yes.

11    THE COURT:  I really want to hear why 28 U.S.C.

12  157(d) is triggered here.  And I'm going to give you a "for

13  example."  This court --

14    MS. SBAITI:  Okay.

15    THE COURT:  -- other bankruptcy courts get proofs of

16  claim, claims made against the estate that involve other

17  federal law and certainly state law all the time.

18    The most readily -- the example that most readily

19  comes to mind is employee WARN Act claims, okay.  We see them

20  sometimes in large Chapter 11s where employees were laid off,

21  didn't get the 60 days' notice that the WARN Act contemplated,

22  so under Fair Labor Standards Act, we think we're entitled to X

23  amount of claim.

24    No one ever asks for those to be sent to the district

25  court.  Well, I mean maybe here have been before, but my point

**WWW.LIBERTYTRANSCRIPTS.COM**

27

1   is we try things in this Court involving other federal law

2   fairly often.  What makes your situation different?  What is so

3   hard or beyond what bankruptcy courts should do about your

4   claims if they go forward?

5            MS. SBAITI:  Your Honor --

6            MR. PHILLIPS:  Your Honor, if I --

7            MR. SBAITI:  Yeah, I was going to ask Mr. -- the

8   bankruptcy attorney to --

9            MR. PHILLIPS:  Your Honor, I just want to -- we

10  agreed --

11           THE COURT:  Well, no, no, no.

12           MR. PHILLIPS:  We agreed --

13           THE COURT:  I had understood that Mr. Sbaiti was

14  going to address the federal law --

15           MR. PHILLIPS:  Okay.

16           THE COURT:  -- in more in depth.  And so I'm hearing

17  some explanations of the claims, but I'm not really hearing him

18  zero in on what is significant about these claims or so

19  significant that 157(d) is triggered.  So Mr --

20           MS. SBAITI:  Your Honor, if I may, I would -- sorry,

21  am I on mute?

22           MR. PHILLIPS:  No.  You're -- we can hear you.

23           MR. SBAITI:  Can you hear me?

24           Okay.  Your Honor, I would have two points to make,

25  Your Honor.  Number one, I don't know much about the WARN Act.

**WWW.LIBERTYTRANSCRIPTS.COM**

28

1  I do know that the Advisers Act is one of the statutes that is

2  not as highly litigated as an employment statute.  And so while

3  there is case law to support the general proposition --

4        THE COURT:  Well, and the argument is because it

5  doesn't give a private right of action is what I hear the other

6  side saying.

7        MS. SBAITI:  And that was where I was going is they

8  now are citing cases in their reply that says, well, there's no

9  private right of action, at least their reply to the motion to

10 dismiss.  You know, and I'm assuming that's what they've argued

11 in the motion to withdraw reference is that there's not private

12 right of action under Section 215.

13       Well, that kind of -- obviously, we disagree with

14 that because the Supreme Court in Transamerica specifically

15 said there is a private right of action.  It's a private right

16 of action for rescission and there's a private right of action

17 for what the Supreme Court called the incidence of voidness.

18       Section 215 does two things.  It makes void any

19 contract hat requires someone to waive any rights or

20 obligations under the Advisers Act.  And Section 215 also voids

21 the rights of anybody who performed a contract in violation of

22 the Advisers Act.  Now the precise scope of that hasn't been

23 heavily litigated and it's -- you know, these are broad

24 principles.

25       And, in fact, in the reply to the motion to dismiss,

**WWW.LIBERTYTRANSCRIPTS.COM**

007092

29

1   they bring up a case pending in New York where a court there,

2   although against the overwhelming weight of authority said,

3   well, Section 215 only applies when you have a contract that

4   facially requires someone to violate the Advisers Act or which

5   was made in violation of the Advisers Act.

6           But we argue that the settlement was made in

7   violation of the Advisers Act because it was made as part of a

8   way -- a part of a self-dealing scheme.  But the intricacies of

9   that law and the background and the underlying rules and

10  regulations that go into that that we claim violated I think

11  are not -- I don't know that 157 is a sort of court-competency

12  issue.

13          The way I've always understood it to be is, you know,

14  when there's an Article III court deciding these types of

15  things and there's going to be a jury, that's where this is

16  supposed to go.  I would defer to the bankruptcy experts to

17  correct me on that.  But that is how I've always understood the

18  position that -- on the bankruptcy issue on mandatory

19  withdrawal to be.

20          THE COURT:  All right.  Anything else?

21          MS. SBAITI:  Your Honor, I'll just hit the actual

22  causes of action issue and get them (indiscernible) on the

23  motion to dismiss if that's okay with Your Honor.  I hope we

24  gave Your Honor a flavor of the federal law issues that are

25  very much at play here.

30

1          THE COURT:  Okay.  Yeah, just to be clear, you have

2     one more minute so.

3          MR. SBAITI:  Oh, I'll kick it back to Mr. Phillips.

4          THE COURT:  Okay.

5          MR. PHILLIPS:  We just have one more minute out of

6     the 25?

7          THE CLERK:  Yes, Your Honor.

8          THE COURT:  Yes.

9          MR. PHILLIPS:  Okay.  I'll reserve one minute, Your

10    Honor, for rebuttal.

11         THE COURT:  Okay.

12         Mr. Demo?

13         MR. DEMO:  (Clears throat).  Excuse me.

14         Yes, Your Honor.  Greg Demo for the record, Pachulski

15    Stang Ziehl & Jones, on behalf of Highland Capital Management.

16         That's a lot to unpack, Your Honor, mostly because

17    most of it is factually inaccurate.  And I'll go through why

18    it's factually inaccurate in a minute.  But as we go through

19    this -- oh, I'm sorry, Your Honor.  Before I start, can I do

20    our exhibits?

21         THE COURT:  All right.  So you have exhibits on a

22    motion to withdraw the reference?

23         MR. DEMO:  We do, Your Honor.  And they're at Docket

24    Number 146.  There are six exhibits.  Five of them are just

25    cases that are either on your docket in the Acis bankruptcy or

007094

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-38    Filed 09/11/23    Page 44 of 125    PageID 7666

31

1    on the docket.  Two of them are SEC guidance.  We think Your

2    Honor can just take judicial notice of those.

3          The last which is Exhibit 3 is the investment

4    management agreement between Highland Capital Management and

5    the DAF.  I did talk to Mr. Phillips before we started, and he

6    said he had no objection to these being entered.

7          THE COURT:  All right.

8          MR. PHILLIPS:  Correct.  Correct.

9          THE COURT:  Then I'll admit them.  I'll admit them.

10    (Defendant's Exhibits 1 through 6 admitted into evidence)

11          MR. DEMO:  Okay.  Thank you, Your Honor.  And

12    apologies for that aside.

13          But going back and, again, I'll unpack these facts,

14    you know, as we go through.  But the one thing that I'd ask

15    Your Honor to keep in mind as we go through this is that Your

16    Honor has actually already adjudicated this issue.  In November

17    of 2023 [sic], Highland filed a substantially similar motion to

18    dismiss.  All parties fully briefed that motion to dismiss.  On

19    November 23, 2021, all parties argued the merits of that motion

20    to dismiss including the Investment Advisers Act in this court.

21          In March of 2022, Your Honor entered a final order on

22    that motion to dismiss which again is substantially the same as

23    what we're here on today.  But we're still here today because

24    plaintiffs are asking you to withdraw the reference on a motion

25    to dismiss that Your Honor has already heard and entered a

32

1  final order on.

2          I would ask Your Honor just keep that in your mind,

3  keep the absurdity of that in your mind as I walk through the

4  rest of this case because I am going to have a timeline as I

5  normally do.  But before we get to that timeline, Your Honor,

6  you've heard plaintiffs' arguments, and their argument boils

7  down to mandatory withdrawal is required because the Investment

8  Advisers Act is somehow implicated.

9          And now plaintiffs also had an argument that

10 mandatory withdrawal is somehow required because this was a

11 non-core proceeding barely even related to this.  Now they've

12 backed off that second argument, Your Honor, and I thin they've

13 done it tactically because they don't want to admit it.  Mr.

14 Phillips said he couldn't admit to Your Honor that this is a

15 core proceeding.

16         And while we agree that in terms of Section or 28

17 U.S.C. 157(d) that that is not entirely relevant.  Your Honor

18 can withdraw or a core proceeding can be referenced and

19 withdrawn in that case.  But because it's a core proceeding,

20 and I'll get to this at the end if Your Honor wants me to go

21 once again in the Supreme Court's Reading (phonetic) case, and

22 this is, claims allowance, equitable jurisdiction of an

23 administrative expense claim, Your Honor can enter final

24 orders, which you just heard Mr. Sbaiti said that, well, maybe

25 you shouldn't do it, and there is no jury trial right.

**WWW.LIBERTYTRANSCRIPTS.COM**

007096

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-8   Filed 09/11/23   Page 46 of 125   PageID 7668

33

1        And so while again we believe that there's limited

2   relevance to the motion to withdraw the reference, it is an

3   extremely important issue that plaintiffs put into relevance

4   and now are (indiscernible).  And now going -- and Ms. Canti

5   (phonetic), can you please put up Slide 1 -- going to the text

6   of 28 U.S.C. 157(d).  And this is the text that we all know

7   well.  And when it comes up on the screen, you'll see it.  It's

8   really the second section of 157(d) that governs mandatory

9   withdrawal of the reference.

10       And there are two elements to that.  The first

11  element is timeliness, if a movant -- not this court, but if a

12  movant does not file a timely motion, there can be no mandatory

13  withdrawal.  The second element assumes that a timely motion

14  has been filed and requires mandatory withdrawal only if

15  there's substantial consideration, and that's the case law of a

16  non-bankruptcy federal law.

17       Neither of those two elements are met here, Your

18  Honor.  And in terms of timeliness, we take fresh approaches in

19  our case, our papers and we cite other case.  And for the

20  purpose of timeliness, a movant is supposed to file a motion to

21  withdraw a reference as soon as it becomes apparent that there

22  is going to be issues that must be adjudicated by the district

23  court.  Courts look at that dispositively.  If that motion is

24  not timely filed, there is no withdrawal of the reference under

25  157(d).

007097

34

1          But there's more, Your Honor, and again, we cite

2    these cases.  If the motion to withdraw the reference seems to

3    be forum-shopping, that goes into the timeliness requirement.

4    If the motion to withdraw the reference is prejudicial to a

5    non-movant -- in this case, Highland and its creditors -- that

6    goes to timeliness.

7          All of those elements are present here, Your Honor.

8    Not timely, forum shopping, and it's prejudicial.  And this,

9    Your Honor, is where, you know, I want to go through the

10   timeline again because I think the timeline proves our case.

11   And as we go through the timeline, I'll rebut some of the

12   factual misstatements that Mr. Phillips and Mr. Sbaiti made.

13         And, Ms. Canti, if you can go to the next slide,

14   please.

15         As Your Honor knows, this case was started not in

16   this court, notwithstanding the fact that it sought an

17   administrative expense claim, but it was began in district

18   court on April 12th, 2021.

19         And, Ms. Canti, there should be dates up on the top

20   of those slides if you can make sure that those show.

21         The next slide, I'll give you a second to adjust.

22         They're not there, but I can go through the dates,

23   Your Honor.  So this is April 12th, 2021.  In the next slide is

24   May 19th, 2021.  On this date, Highland filed its motion to

25   dismiss their complaint both for failure to state a claim on

007098

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 6-38   Filed 09/15/23   Page 48 of 125   PageID 7670

35

1    the merits and pursuant to res judicata.  And this complaint --

2    I'm sorry, this motion to dismiss that we filed originally I

3    believe is Docket Number 36 on the docket.

4            And if you just go to the table of contents of that

5    pleading, Your Honor, Article 3, subsection (c) is failure to

6    state a claim.  And it's failure to state a claim under RICO.

7    It's failure to state a claim for breach of fiduciary duty.

8    It's failure to state a claim for negligence.  It's failure to

9    state a claim for tortious interference.  And it's failure to

10   state a claim for breach of contract.

11           And if you go to the back end of that motion to

12   dismiss, Your Honor, you'll see that we argue Transamerica, no

13   private right of action under 206.  We argue Goldstein, no

14   fiduciary duty to an investors in a fund.  We argue all of the

15   Investment Advisers Act claims that you are going to hear

16   today.  That was in our motion to dismiss filed in May of 2021.

17           Ms. Canti, next slide, please.

18           And this is May 27th, 2021, and it's plaintiffs file

19   their response to the motion to enforce the reference.  And

20   you've heard a lot of talk about how plaintiffs filed a motion

21   in district court for mandatory withdrawal, and that's the

22   basis for their timeliness argument, Your Honor, is that

23   there's a motion sitting out there somewhere that's never been

24   ruled on.

25           But if you look at this response, and this is the

36

1  only thing they filed in the district court, it's a response to

2  our paper and in the title, it says "Cross motion to withdraw

3  the reference."  There is no stand-alone motion.  It was

4  procedurally improper the way they did it, and basically they

5  only made an argument to the district court that mandatory

6  withdrawal of the reference should apply.  And that argument is

7  verbatim, nearly verbatim the arguments that you're hearing

8  today.  They brought those two in district court.

9          And now you heard Mr. Phillips says things about how,

10 you know, it's just -- there's no thought of judicial economy,

11 right.  It's just you enforce the reference and then Your Honor

12 gets to decide whether it would have to bounce it up to the

13 district court.  That's just not true, Your Honor.

14         In this motion, plaintiffs cited a case, it's called

15 In re Harrah's Entertainment.  They actually cited it in this

16 round of pleadings.  And in that case, which was filed in the

17 Eastern District of Louisiana, there was a case filed in the

18 Eastern District of Louisiana, and the question there was

19 whether or not that case should be referred to the bankruptcy

20 court as a related case.

21         A party filed a motion for mandatory withdrawal of

22 the reference in the district court and also a motion for

23 permissive withdrawal again in the district court.  The

24 district court denied the motion to enforce and decided that it

25 wouldn't make sense because you would end up having to withdraw

**WWW.LIBERTYTRANSCRIPTS.COM**

1    the reference anyway.  Judicial economy, Your Honor.

2            Plaintiffs cited that case.  And they cited that case

3    in this paper that we're talking about now to argue to the

4    district court that it made absolutely no sense to enforce the

5    reference and bring it down here because it would just get

6    roundtrip back and how does that make sense in terms of

7    judicial economy.  The exact opposite of what you heard

8    earlier.

9            And I'll also point you to another case they cite,

10   and this is Continental Airlines, which was affirmed by the

11   Fifth Circuit.  Substantially similar facts, and in that case,

12   the Southern District of Texas, the district court said, "This

13   court strongly suspect that if it does not withdraw the

14   reference, it will only see this exact same lawsuit again in

15   the future on such a de novo review of a report and

16   recommendation.  That duplication of judicial effort would

17   needlessly waste this court's limited resources."

18           The idea -- and again, we'll get to the order that

19   the district court entered, but the ideas that Mr. Phillips put

20   forth in this Court is not borne out by the case law nor are

21   they borne out by what they actually pled.

22           And next slide, please, and I'll move this a little

23   bit faster.

24           June 28th, 2021 -- I'm sorry, we are now in August,

25   Your Honor.  And this is plaintiffs' move to stay the

38

1   complaint.  You've hard this one before, arguing they can't be

2   prosecuted because of the plan injunction.

3           Next slide.

4           September 20th, 2021, this is when the district court

5   entered its order referring this case to Your Honor to be

6   adjudicated as -- and there is a typo there -- it just said

7   related to Highland's bankruptcy.  Now you just heard me cite

8   Harrah's, you heard me cite their papers.  Now did the district

9   court say that this cross-motion, this procedurally improper

10  cross-motion was denied?  No, but it enforced the reference

11  notwithstanding plaintiff's arguments that it would aid

12  judicial economy because the reference would have to be

13  withdrawn.  They made the exact same arguments that are being

14  made here today.

15          The inference is not what Mr. Phillips said.  The

16  inference is that the district court read plaintiffs' papers

17  and said, no, there's no basis for mandatory withdrawal, let's

18  send it to the bankruptcy court where it should have been filed

19  in the first instance.

20          Next slide, please.

21          This is November 8th, 2021.  Now this is the first

22  time that plaintiffs indicate in this Court that they think

23  that the reference should be withdrawn, and they did it by

24  attaching a proposed motion to withdraw the reference to a

25  procedurally improper amended motion to stay pending

**WWW.LIBERTYTRANSCRIPTS.COM**

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 63    Filed 09/11/23    Page 52 of 125    PageID 7674

39

1  adjudication of the confirmation order in the Fifth Circuit.

2  Again, that motion that they attached was verbatim the

3  arguments they made in the district court and verbatim the

4  arguments that they're making here today.

5          Now it begs the question, Your Honor, why they

6  thought they needed to file a motion to withdraw the reference

7  in this Court in November of 2021 if they already had a motion

8  to withdraw the reference pending when it was referred down to

9  this Court.  It makes not sense, Your Honor.

10         Now they've threatened to file that motion if you

11 were to deny the stay.  And now -- can we go to the next slide,

12 please?

13         November 23, 2021, Your Honor denied the stay.  What

14 did plaintiffs do?  I can tell you what they didn't do.  They

15 didn't file their motion to withdraw the reference.  Again,

16 they argued in the Court the merits of the motion to dismiss

17 including that the Investment Advisers Act claims should be

18 dismissed.

19         Now fast track because there's a fairly large gap

20 between September '21 and November of '21.  What happened in

21 that gap?  The answer to that, Your Honor, is not that a motion

22 to withdraw the reference was filed.  What happened in that gap

23 is that the parties agreed on the November 23rd date to hear

24 both the motion to dismiss and the motion to stay.

25         Next slide, please, Ms. Canti.

**WWW.LIBERTYTRANSCRIPTS.COM**

40

 1              And this is March 11th, 2022.  This is the date that

 2      Your Honor entered a final order.  All the equivocation about

 3      whether you're acting as a magistrate, all of that stuff goes

 4      out the window.  Your Honor did not enter a report and

 5      recommendation to the district court.  Your Honor entered a

 6      final order, as Your Honor could do because this is a core

 7      proceeding.

 8              Important to Mr. Phillips' argument is what did this

 9      order say.  Primarily it dismissed on collateral and res --

10      and, sorry, and judicial estoppel grounds.  That's correct.

11      But if you look at the last paragraph of Your Honor's March

12      2022 order, it said that it reviewed all of Highland's other

13      arguments which are the arguments as to why the Investment

14      Advisers Act claims should be dismissed.

15              And Your Honor in March of 2022 in the last paragraph

16      of that order said she was inclined to agree with our arguments

17      on the Investment Advisers Act claims.  Your Honor has done

18      this before, yet we're here again today.

19              Next slide, please.

20              Now this is fast forwarding a year.  Now we are in

21      September, specifically September 2nd, 2022.  This was when the

22      district court remands this back to Your Honor for one finding.

23      But, again, there's a fairly large gap between March of 2022

24      and September of 2022.  And so what was happening during that

25      time period?  Again, no motion to withdraw the reference was

**WWW.LIBERTYTRANSCRIPTS.COM**

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-8   Filed 09/11/23   Page 54 of 125   PageID 7676

41

1   filed.

2           But what was happening is that the parties were fully

3   briefing the merits of your final order on the motion to

4   dismiss to the district court.  Plaintiffs at no point during

5   that briefing made reference to a need to withdraw the

6   reference or made reference to the Court's, your inability to

7   enter a final order.  September 2nd, 2022.

8           Next slide, please.

9           This is October 14th, 2022.  Now this is when

10  Highland filed its renewed motion to dismiss in this Court.

11  Again, there's a month.  September, October, no motion to

12  withdraw the reference filed.  The motion to dismiss that

13  you'll hear today from Mr. Morris, again, substantially similar

14  to the motion to dismiss that you heard in November of 2021, a

15  year ago.

16          Next slide, please, Ms. Canti.

17          All right.  Now we are at finally, finally November

18  18th, 2022.  Plaintiffs respond to the renewed motion to

19  dismiss and file what they call a renewed motion to withdraw

20  the reference pursuant to 28 U.S.C. 157(d).  That renewed

21  motion, again, is the exact same as their supposedly cross-

22  motion that was filed in the district court.  It's the exact

23  same as the motion they threatened to file a year ago in

24  November of '21.  And it's now being asked to be heard today

25  when Your Honor has already adjudicated these exact same facts.

42

1         And, again, look at that gap, Your Honor.  November

2  -- I'm sorry, September to November, Highland takes the time

3  and effort to file a renewed motion to dismiss.  At no point in

4  that three-month gap until November of 2022, a year after Your

5  Honor already heard this issue, did they file their first

6  motion to withdraw the reference.  And, again, if they already

7  had one on file, why did they file one again?  It doesn't make

8  sense, Your Honor.

9         And that's timeliness.  And, Ms. Canti, if you can go

10  to the next slide, please.

11         And all this is, Your Honor, is a summary of what I

12  just went through, right.  Like look at this, April 2021,

13  November 2022.  November 2022 after we've done all of this is

14  the first time they asked this Court to withdraw the reference.

15  Where is the timeliness?  This is per-se untimely.

16         They could have filed a motion to withdraw the

17  reference in September of 2021.  They didn't.  They could have

18  filed their threatened motion to withdraw the reference in

19  November of 2021.  They didn't.  They could have at any time

20  between November '21 and March '22 before Your Honor entered

21  her final order filed a motion to withdraw the reference.  They

22  didn't.  Instead, they briefed their appeal, made no mention of

23  it.

24         September 2nd, 2022 it's remanded back here for an

25  adjudication on the merits of the motion to dismiss.  They

**WWW.LIBERTYTRANSCRIPTS.COM**

43

1  could have filed a motion to withdraw the reference.  Didn't.

2  Highland filed this motion to dismiss, no motion to withdraw

3  the reference.  Only a year after Your Honor has heard the

4  merits of his exact motion to dismiss did they ask Your Honor

5  to withdraw the reference.

6         That's untimely, Your Honor.  That is absolutely at

7  least in my estimation untimely, and I don't know how you get

8  around it.  But it's worse than that, Your Honor.  It's forum

9  shopping.  Again, April 2021, they start this thing in the

10  district court an administrative expense claim.  They seek to

11  prosecute outside of Your Honor.  That's the first indication.

12         But going back to March of 2022 when Your Honor

13  reviewed the argument that Mr. Morris is about to make and said

14  that it was inclined to agree with Mr. Morris -- I'm sorry,

15  inclined to agree with Highland.  Only after Your Honor gave

16  plaintiffs a preview of how you would rule on the motion to

17  dismiss that you're to hear today did Highland -- I'm sorry,

18  did plaintiffs file their motion to withdraw the reference.

19  That's forum shopping.

20         And the prejudice to Highland should also be apparent

21  from the timeline.  Each of these little bullet represents a

22  significant cost to the estate.  And what do plaintiffs want?

23  They want to go from November 2022 back to April of 2021.  They

24  don't want any of this, Your Honor.  They want to restart the

25  clock with significant cost to Highland and it creditors.

44

1   Impermissible.

2          28 U.S.C. 157(d) requires timeliness.  If timeliness

3   is not met, the motion must be denied.  There is no timeliness,

4   there is forum shopping, and there is prejudice.  If that

5   weren't enough, Your Honor, they still lose on the merits on

6   the question of the (indiscernible) consideration of federal

7   non-bankruptcy law.  And I think the clearest indication of

8   that is Mr. Sbaiti's argument.  Supreme Court case, Supreme

9   Court case, Supreme Court case.  Here are the SEC guidance.

10         Where did he say that there's a circuit split?  Where

11  did he say that there's any unsettled law?  Nowhere, Your

12  Honor, and he did that because there is no unsettled law.

13  These are very simple questions.  Was there a fiduciary duty?

14  Was there a breach of that duty?  And what is the remedy?

15  That's the exact same question that Your Honor and bankruptcy

16  courts all over this country answer and adjudicate every day.

17         There is nothing complicated about this case,

18  notwithstanding what plaintiffs want you to believe because

19  let's look at the issues, right.  Let's drill them down.  The

20  first issue is, is there a fiduciary duty under the Investment

21  Advisers Act.  Yes.  How do we know that?  The Supreme Court

22  told us so.  Non-issue.

23         The second issue is who does that fiduciary duty run

24  to?  Under Goldstein, which we cited in our papers, under the

25  SEC guidance which we cited in our papers, it's very clear that

**WWW.LIBERTYTRANSCRIPTS.COM**

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 68   Filed 09/51/2312   Page 58 of 125   PageID 7680

45

1   that fiduciary duty which is separate and apart from Rule

2   206(4) that Mr. Sbaiti cited, that fiduciary duty runs only to

3   the fund, not to the investors in that fund.  And that makes

4   perfect sense, Your Honor.  If an investment manager has a

5   fiduciary duty to the hundreds of -- potentially hundreds of

6   people who are invested in a fund individually, that's chaos.

7   And the investment manager will be sued every day.  Settled

8   law, Your Honor.

9          And so what do you have to do?  You have to look at

10  two agreements, the HCLOF investment management agreement,

11  Highland is indirectly the investment manager to HCLOF,

12  fiduciary duty.  CLO Holdco is an investor in HCLOF.  No

13  fiduciary duty between Highland to CLO Holdco because of HCLOF.

14  Again, <u>Goldstein</u> clear precedent.

15         Highland had an investment management agreement with

16  the DAF.  Is there a fiduciary obligation to the DAF under that

17  agreement?  Yeah.  That's it, Your Honor.  Okay, question one's

18  done.

19         Question two, assuming there's a fiduciary

20  obligation, what's the scope of that obligation and what's the

21  remedy for breach?  Going to breach first, again, you heard Mr.

22  Sbaiti argue 206, 206, 206.  Supreme Court precedent is

23  absolutely clear that 206 provides no private right of action.

24  Cases have been dismissed because they've been brought by a

25  private investor under Rule 206.  That's the <u>Corman</u> case.

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 53    Filed 09/11/23   Page 59 of 125    PageID 7681

46

1    That's the Fifth Circuit we cite in our papers.

2            The Fifth Circuit doesn't stand alone on this, Your

3    Honor.  Supreme Court precedent.  206 which again is the only

4    actual rule that they pled in their complaint does not provide

5    a private right of action.  That's it, Your Honor.  That's all

6    you have to do.  Not complicated.

7            And I'll get to 215 in a second because even though

8    it wasn't pled in the complaint, I still want to talk about it.

9    Okay.  So what is the scope of that allegation?  Mr. Sbaiti

10   talked about a duty of care.  Okay, that's fine.  That's

11   clearly set out in the guidance, and a duty of loyalty.  The

12   duty of loyalty under clear, again, Supreme Court precedent,

13   SEC guidance and, as Mr. Morris will talk about, a Northern

14   District of Texas case entered in an appeal from Mr. Dondero,

15   one of this Court's orders said the same thing.  That duty of

16   loyalty is satisfied by disclosure.

17           So all Your Honor has to do is look at the

18   disclosures made to the DAF and say are those sufficient to

19   satisfy a reasonable investor about the conflict of interest or

20   the potential conflict of interest.  That's it.  Easy-peasy.

21           And so where do we go next?  And, you know, I'm

22   actually going to leave out 215.  It wasn't pled.  It can't be

23   a motion.

24           THE COURT:  This is your two-minute warning.

25           MR. DEMO:  The case law is clear.

**WWW.LIBERTYTRANSCRIPTS.COM**

47

1          THE COURT:  You have two more minutes.

2          MR. DEMO:  Okay.  Thank you.

3          Thank you, Your Honor.  And I guess the last point,

4  and it bears repeating, is that Your Honor has already

5  adjudicated this in this Court and Your Honor actually

6  adjudicated it in the Acis bankruptcy.  And this is on our

7  witness and exhibit list.

8          In the Acis bankruptcy, Highland then under the

9  control of Jim Dondero filed an objection to the plan saying

10  that it could not be confirmed because it violated applicable

11  law.  What was that applicable law?  The Investment Advisers

12  Act of 1940 for the exact same things that they're doing here.

13          (Indiscernible) examples of significant federal law,

14  plan injunction prohibits it.  That's already been addressed

15  three times.  Jury trial right, it's not up, but they don't

16  have a jury trial right because this is an administrative

17  expense claim, Your Honor.

18          The motion is untimely, it's prejudicial, it's forum

19  shopping, and there is nothing that's not -- nothing that rises

20  to the level of a material consideration of unsettled federal

21  law.  All you have to do is look at the federal law and apply

22  it to a set of facts, the same thing you do every day in this

23  courtroom.  For that reason, Your Honor, we'd ask the motion to

24  be denied and I can answer any questions.

25          THE COURT:  All right.  Mr. Phillips, you get one

007111

48

1  minute in rebuttal.

2          MR. PHILLIPS:  Your Honor, a couple of thing very

3  quickly.

4          Number one, whether or not what the district court

5  did, we asked and frankly maybe don't know the answer to

6  whether or not this Court can decide what the district court

7  did in its order of reference.  But I guess, number one, I

8  guess we'll find out what the district court did.

9          We understand the case law, but we also understand

10 there's another version of the approach to matters filed in the

11 district court and that is we want the reference withdrawal

12 order to be complied with before we deal with anything.

13         That is a long-term judicial economy because if you

14 have people filing in the district court making their own

15 determinations, what's the best way to stop that from

16 happening?  The order of reference will be enforced and if you

17 have a motion to withdraw reference, file it then.

18         Secondly, one of the things about the scope of

19 fiduciary duty that's before the Court in the lawsuit is that

20 they say there's an investment adviser agreement with DAF Fund,

21 the DAF Fund but not CLO Holdco.

22         But the investment advisory services subject to --

23 (indiscernible) the investment adviser shall act as an

24 investment advisor to the fund -- that's the DAF -- the general

25 partner with respect to the fund and its subsidiaries and shall

007112

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 68   Filed 09/11/23   Page 62 of 125   PageID 7684

49

1  provide investment advice with respect to the investment and

2  reinvestment of the cash, financial instruments, and other

3  properties comprising the assets and liabilities of the fund

4  and the subsidiaries.

5          The subsidiary CLO Holdco is the one where the

6  investments are.  That's where the investment advice actually

7  bore fruit.  So the question -- there is a question about scope

8  of fiduciary duty and you couldn't have the investment adviser

9  agreement without the investment adviser being subject to the

10 Investment Advisers Act.

11         THE COURT:  Okay.

12         MR. PHILLIPS:  My point is from my standpoint --

13         THE COURT:  Time's up.

14         MR. PHILLIPS:  -- is that there was a question about

15 the scope of the duty.  Thank you, Your Honor.

16         THE COURT:  Thank you.

17         All right.  Here's what I am going to do.

18         I am going to recommend that the district court deny

19 this renewed motion to withdraw the reference.  First, I had

20 put together my own timeline before I saw Mr. Demo's and I

21 think I have to find that this is not a timely motion to

22 withdraw the reference.

23         The action as we all know was filed April 12th, 2021.

24 We are now January 25th, 2023.  So I don't think the timeliness

25 requirement has been met here.

**WWW.LIBERTYTRANSCRIPTS.COM**

50

1          Second, this does feel like a second bite at the

2   apple, to use that worn-out metaphor.  I think substantially

3   the same arguments were made, albeit in a differently-worded

4   pleading maybe to Judge Boyle, again, back in 2021.  I guess it

5   was June 29th, 2021 when the plaintiffs first argued that the

6   district court should keep this matter and, among other things,

7   argued 28 U.S.C. 157(d).  This involved consideration of both

8   Title 11 and other laws of the United States.

9          So it's sort of a second reason on top of

10  untimeliness that I think this has already been asked for once

11  and denied.

12          But yet another reason I will recommend denial of

13  this motion is I don't think this action ultimately involves

14  material consideration or significant consideration of other

15  laws of the U.S. regulating organizations or activities

16  affecting interstate commerce.

17          Again, the Investment Advisers Act is implicated.

18  RICO is implicated.  But I don't think it's terribly

19  complicated.  As I alluded to, bankruptcy courts consider

20  proofs of claim as well as requests for administrative expense

21  claims all the time that involve significant other law

22  including federal law, and I just don't think this triggers

23  mandatory withdrawal under 28 U.S.C. 157(d).

24          So I am going to go ahead and do that written report

25  and recommendation to the district court.  Now normally, I

007114

51

1  guess my most often followed practice is I don't rule on

2  motions to dismiss or any kind of dispositive motions while I'm

3  waiting on the district court to either adopt or reject a

4  report and recommendation.

5          But I'm going to go ahead and hear the arguments on

6  the motion to dismiss today even with that risk that the

7  district court may say, no, you're wrong, I'm yanking the case.

8  I'm going to go ahead and hear the arguments because my best

9  guess is the district court is going to adopt my report, okay.

10          My best guess is the district court is going to say

11  untimely, is going to say second bite at the apple, and I think

12  this is not materially enough other federal law to yank it from

13  the bankruptcy court.  I may be wrong, and this may all be a

14  waste of time today.  But I'm going to go ahead and hear the

15  hearing, the arguments on the motion to dismiss.

16          I'll say a couple of additional things.  It's still

17  nagging at me the transcript that Mr. Phillips read from where

18  I said in this adversary I'm going to do a report and

19  recommendation to the district court on the previously-argued

20  motion to dismiss.  I'm not questioning that because I have

21  this memory of me later going why did I say that.

22          This was referred to me.  I had in my mind core

23  matter because it was a request for an allowance of

24  administrative expense claim against a debtor for conduct while

25  it was still a debtor in possession.  So I thought at some

**WWW.LIBERTYTRANSCRIPTS.COM**

52

1  point I had come out and announced maybe in a different

2  Highland hearing and maybe others, not everyone was on the

3  call.

4          I thought I remembered correcting myself out loud to

5  the parties.  Maybe I didn't.  Maybe that was just back in

6  chambers to my law clerk, and I had every intention of coming

7  out and telling y'all and I didn't.  So that's just an

8  explanation of that.  I misspoke when I did that.

9          And then what was the other thing I wanted to say.

10  Well, gosh, I've lost my train of thought on that.  Oh, I know

11  what it was.  My law clerk noticed this week that when the

12  renewed motion to withdraw the reference was transmitted to the

13  district clerk's office from the bankruptcy clerk's office,

14  guess what?  A new district court civil action number was

15  created, and it was assigned to a different district judge,

16  Judge Karen Scholer.

17          I don't think anyone would think that is the most

18  efficient thing to happen here, so we'll do our part on our end

19  to get personnel talking to personnel and hopefully get that

20  fixed to where it goes back to Judge Boyle.  But no promises

21  there.  We will just point it out and point out that we think

22  that was inefficient and a mistake and they'll do whatever

23  they're going to do.

24          All right.  So with that, do you all need a five-

25  minute break before we launch into the motion to dismiss

**WWW.LIBERTYTRANSCRIPTS.COM**

53

1  arguments?

2          MR. MORRIS:  I would --

3          MR. PHILLIPS:  Your Honor, this is Louis Phillips.  I

4  just wanted to tell Your Honor that we wanted to make sure that

5  we hadn't overlooked anything in the transcript that we cited.

6  And we read it again.  I didn't.  Ms. Heard read it again while

7  we were arguing.  And we did not find anything else.

8          I have to -- I will tell the Court on the record that

9  we read a lot of pleadings, but we did not -- we did not come

10 across anything that we left out that would contradict that.

11 And we made sure again today there's nothing else in that

12 transcript that would contravene what I read to Your Honor.  So

13 --

14         THE COURT:  Okay.

15         MR. PHILLIPS:  -- look, we understand that what

16 happened after was -- there was a final order.  And so we

17 understand there was an appeal of the final order.  And we have

18 to admit that we didn't read the entire record, and we have not

19 come across and ignored and not brought before Your Honor

20 something that would contravene what we've mentioned today in

21 argument.

22         THE COURT:  Okay.  Thank you for that.  And, again,

23 it may have been back in chambers that I said what did I say

24 that for.  I have the authority to issue a final order, and

25 certainly someone could have raised that on appeal if they

**WWW.LIBERTYTRANSCRIPTS.COM**

54

1    thought she made a mistake.

2              All right.  So --

3              MR. PHILLIPS:  Understood.  Understood.

4              THE COURT:  -- why don't we take a five-minute --

5    please, five minutes, not six -- five-minute break, and we'll

6    hear the oral arguments on motion to dismiss.

7              THE CLERK:  All rise.

8              MR. PHILLIPS:  Thank you, Your Honor.

9         (Recess at 2:58 p.m./Reconvened at 3:05 p.m.)

10             THE CLERK:  All rise.

11             THE COURT:  Please be seated.

12             All right.  We are going back on the record in the

13   Adversary, CLO Holdco DAF versus Highland, the renewed motion

14   to dismiss.

15             Mr. Morris, I think we agreed 45 minutes and 45

16   minutes, right?

17             MR. MORRIS:  That's correct.

18             THE COURT:  Okay.  You may proceed.

19             MR. MORRIS:  Okay.  Before I begin, Your Honor, may I

20   please just move for the admission into evidence of the

21   Defendant's Exhibits that are lodged at Docket 145?  It's

22   Exhibits 1 through 14, and I understand there's no objection.

23             THE COURT:  Confirm there's no objection.

24             MR. SBAITI:  Your Honor, we agreed that we would

25   reserve our rights to object to the relevance of those to

55

1  certain arguments, but overall, we have no objection.  And I

2  guess while we're on it, we also were asking to admit our

3  exhibits, which are on Docket 150.

4          THE COURT:  Okay.  And there's no objection to those,

5  Mr. Morris?

6          MR. MORRIS:  Yeah.  It's a little vague to say that I

7  have no objection to the exhibits, except potentially as to

8  relevance.  I didn't quite understand that part.

9          THE COURT:  Well --

10          MR. MORRIS:  Is there objection or isn't there?

11          MR. SBAITI:  Well, I just, they might not be relevant

12  to some arguments, is all I'm saying, but they can still be --

13          THE COURT:  Well --

14          MR. MORRIS:  So --

15          THE COURT:  I'm going to say something.  I've been

16  saying this a lot lately.  You probably haven't heard it.  But

17  I'm old enough to remember when a 12(b)(6) motion was, I look

18  at the motion response reply and look at the four corners of

19  the complaint, and there's either a plausible claim articulated

20  or not.

21          And what I have been seeing is these motions to

22  dismiss with appendices that are hundreds of pages long and

23  then responses with appendices that are hundreds of pages long.

24  So much so that one day, different case, I had a law clerk go

25  do research for me.  Am I an old fogey who has it wrong, who

56

1   thinks I'm only supposed to look at the four corners of the

2   complaint?

3          And to my surprise, there is a Fifth Circuit case,

4   maybe everyone knew about it but me, that says if it's either

5   something attached to the complaint or something that goes at

6   the heart of the claims in the complaint, or words to that

7   effect, yeah, you can go beyond the four corners of the

8   complaint and have some evidence.

9          But I will tell you, I and every judge I know just we

10  keep getting these longer and longer and longer appendices and

11  then people just agree, as opposed to saying no, it doesn't go

12  to something at the heart of the complaint.  And then, we find

13  ourselves with 4,000 pages of stuff to read before we can even

14  rule on a 12(b)(6) motion.

15         So that was my rant.  If each side thinks the

16  appendices are within the spirit of that Fifth Circuit case

17  that says these items go to the heart of the complaint, the

18  claims articulated in the complaint, then I'll consider it all.

19  So are you both --

20         MR. SBAITI:  Your Honor, if I may --

21         THE COURT:  -- conceding to that?

22         MR. SBAITI:  If I may, Your Honor --

23         MR. MORRIS:  No, Your Honor.  The point I was

24  making --

25         THE COURT:  Okay.  One at a time.  One at a time.  So

57

1    I'll let Mr. Sbaiti --

2            MR. MORRIS:  -- with respect to the defendants'

3    exhibits --

4            THE COURT:  -- since he --

5            MR. MORRIS:  -- Your Honor --

6            THE COURT:  Okay.  Mr. Sbaiti, do you agree or not

7    agree that the Court can consider these exhibits of defendant?

8            MR. SBAITI:  Yeah, Your Honor.  Your point went to

9    the heart of my reservation of rights to argue relevance.  I

10   think a lot of the exhibits they've attached and what we've

11   attached are relevant to the judicial estoppel argument because

12   I think that's something we do have to look outside the

13   complaint to look to whether judicial estoppel was there.

14           I don't think those exhibits are relevant to the

15   other issues.  That's the heart of my reservation.

16           MR. MORRIS:  And I would agree with that, Your Honor.

17   I was going to actually make the exact same point.  So --

18           THE COURT:  Okay.

19           MR. MORRIS:  -- there you've got (indiscernible)

20   agreement on the admission of the exhibits, but on the scope.

21           MR. SBAITI:  Yeah.

22           THE COURT:  Okay.  Got it.  So you both agree to all

23   of your exhibits with the understanding that these go to the

24   judicial estoppel arguments.  Yes?

25           MR. SBAITI:  Not all of them.  Exhibits 13 and 14 are

WWW.LIBERTYTRANSCRIPTS.COM

58

1  two agreements that are at the heart of the case that --

2            MR. MORRIS:  I agree with that.

3            MR. SBAITI:  -- at the heart of the matter.

4            THE COURT:  All right.  So with that out of the way,

5  we'll start the timer.  I've admitted these exhibits.

6            You may proceed.

7       (Defendants' Exhibits 1 to 14 admitted into evidence)

8            MR. MORRIS:  Okay.  Thank you, Your Honor.

9            John Morris, Pachulski Stang Ziehl and Jones, for the

10 defendants.

11           Your Honor, I want to begin with just a brief

12 background.  Although I know how familiar the Court is with

13 these facts, this entire adversary proceeding arises from the

14 debtor's settlement with HarbourVest.  HarbourVest had a $300

15 million claim based, unfortunately, on misrepresentations and

16 other causes of action.

17           And as the Court is aware, a settlement was a reach

18 that was effectively a rescission of HarbourVest's investment

19 whereby the debtor divided HarbourVest with allowed claims of

20 $80 million, which was their investment amount, a portion of

21 which was in Class 8 and a portion of which was a subordinated,

22 unsecured claim in Class 9.  And HarbourVest surrendered their

23 interest in HCLOF to a wholly owned affiliate of Highland.

24           There's no dispute that CLO Holdco objected,

25 contending that the transfer of HarbourVest's interest was not

007122

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-3    Filed 09/11/23    Page 72 of 125    PageID 7694

59

1  permitted under the members agreement because it violated

2  supposedly its right of first refusal and there's no dispute

3  that after the issue of the ROFR was fully briefed that CLO

4  Holdco did further diligence and thereafter acknowledged that

5  the ROFR did not apply to the circumstances at issue, and they

6  withdrew their objection.

7           Following the withdrawal of CLO Holdco's objection,

8  the Court heard argument, overruled the remaining objections,

9  and approved the 9019 settlement and the settlement was

10  effectuated.  The settlement order expressly provided that the

11  transfer of the HarbourVest interest to the debtor's affiliate

12  could be effectuated "without the need to obtain the consent of

13  any party or to offer such interest first to any other investor

14  in HCLOF."  And while that order is the subject of an appeal

15  pending in the Fifth Circuit right now, it wasn't appealed for

16  purposes of challenging that provision.

17           A couple of months later, the plaintiffs brought this

18  action with new counsel and a new trustee.  Your Honor may

19  recall that shortly after the HarbourVest settlement, Grant

20  Scott left the trustee, and John Kane, his lawyer, was

21  terminated as well to be replaced by Mr. Patrick and

22  Mr. Sbaiti.

23           And they commenced this action originally in the

24  district court.  And in substance, there's really two issues

25  that underlie the entirety of the complaint.  Number one, the

007123

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 68    Filed 09/11/2312    Page 73 of 125    PageID 7695

60

1  plaintiffs allege that the debtor had a legal obligation to

2  offer the HarbourVest interest to the plaintiffs before

3  effectuating the transfer.  We'll show in a few minutes that

4  the plain and unambiguous terms of the two agreements I just

5  pointed out, Exhibits 13 and 14, the very agreements that

6  plaintiffs rely upon, prove that no such duty existed and no

7  such duty exists under federal law or fiduciary duty for this

8  particular transaction because of the nature of the parties'

9  agreements.

10         The second issue that underlies the complaint is the

11  allegation that Mr. Seery received inside information in

12  December, 2020, and therefore, knew or should have known, the

13  $22.5 million value be placed on HarbourVest's interest was, I

14  think the words used in the complaint are, "off the mark."

15         Rest assured, Your Honor, if Highland is ever

16  required to do so, Highland will prove that these insider

17  trading allegations are absurd.  But we understand the law.  We

18  understand that for purpose of a motion to dismiss, the Court

19  must accept the allegations as true.

20         But at the end of the day, Your Honor, since Highland

21  had no legal or contractual obligation to make this transaction

22  available to the plaintiffs, the valuation is completely

23  irrelevant.  It really doesn't matter because there's nothing

24  for the plaintiffs to rely upon at the end of the day if they

25  had no ability to participate in the transaction.

61

1           Based on these two issues, Your Honor, plaintiffs

2    have conjured up five separate causes of action, breach of

3    fiduciary duty, breach of the members agreement for the ROFR,

4    negligence in regards to Mr. Seery's testimony about the sales

5    price, and the failure to give plaintiffs the opportunity to

6    buy the asset.  There is a RICO claim, of course, and there's

7    tortious interfere.

8           Procedural history, very briefly, Your Honor.

9    Highland, as Mr. Demo described, moved to dismiss on

10   substantive grounds, as well as on grounds of collateral and

11   judicial estoppel.  Ultimately, this Court granted the motion

12   on collateral and judicial estoppel and stated that while it

13   was inclined to agree with the defendants on the substantive

14   points, it simply refrained from addressing the motion to

15   dismiss on 12(b)(6) grounds really for purposes of judicial

16   economy.

17          The plaintiffs appealed that final order.  After

18   determining that collateral estoppel did not apply, the

19   district court affirmed this Court's findings on the first two

20   elements of judicial estoppel, but remanded on the sole issue

21   of whether the plaintiffs' inconsistent positions was

22   "inadvertent" and really the only issue that the Court sent

23   down here, and here we are.

24          Let me begin with Counts 2 and 5 and the matter that

25   the district court referred back to the bankruptcy court,

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 6-38    Filed 09/21/23    Page 75 of 125    PageID 7697

62

1  judicial estoppel.  The only issue is whether the inconsistent

2  positions are inadvertent.  CLO Holdco, as I mentioned and as

3  the Court knows, withdrew its objection to the 9019 motion

4  based on the ROFR with the advice of very sophisticated

5  counsel, John Kane.

6          Mr. Kane's statements to the Court provide all the

7  evidence that's needed to show that CLO Holdco's decision to

8  withdraw the objection based on the ROFR was deliberate,

9  intentional, and made on a fully informed basis.

10          Ms. Canty, if you can put up Slide 1.

11          I'm putting up on the screen, Your Honor, just an

12  excerpt of Mr. Kane's presentation to the Court where he said,

13  among other things, that CLO Holdco has had the opportunity to

14  review the reply briefing.  After doing so, has gone back and

15  scrubbed the HCLOF corporate documents.  They analyzed

16  Guernsey law and some of the arguments of counsel in those

17  pleadings and they reviewed appropriate documents.

18          And after doing all of that work, Mr. Kane informed

19  the Court that he had obtained the authority from his client,

20  Grant Scott as the trustee for CLO HoldCo, to withdraw the CLO

21  Holdco objection based on "the interpretation of the member

22  agreement."

23          You can take that down now.

24          Plaintiffs can't refute this, right?  There's nothing

25  to refute.  Those words are clear as day.  The decision to

007126

63

1  withdraw was informed.  It was deliberate.  It was purposeful.

2  And it was consequential.

3          Instead, new counsel makes arguments concerning

4  basically the state of mind of Mr. Scott and Mr. Kane that not

5  only have no factual basis but really are not plausible at all,

6  right?  If they wanted this Court to know what Mr. Scott or

7  Mr. Kane thought, perhaps they should have had them submit some

8  evidence into this.  They didn't do that.  They didn't do that,

9  and instead, they speculate as to what they would have done if

10 they were in their shoes.  That's not proper here.

11         They argue first that the claim now is that Highland

12 breached the members agreement, a claim that Mr. Kane and

13 Mr. Scott were apparently unaware of since they only waived the

14 objection with respect to HarbourVest's obligations under the

15 agreement.  So this is their first argument that it was

16 inadvertent because they didn't know.

17         There's no evidence that they didn't know, but that's

18 their argument.  Simply an argument that they made by new

19 counsel on behalf of a new trustee with citation to nothing.

20 More importantly, Your Honor, the district court has already

21 held that CLO Holdco "made clear in the withdrawal of its

22 objection that it no longer disputes the other party's

23 interpretation of the right of first refusal, which now forms

24 the basis of Charitable DAF's second and fifth causes of

25 action.  That's at Page 16 of the Court's order.

WWW.LIBERTYTRANSCRIPTS.COM

007127

64

1        The district court's holding that CLO Holdco's

2   position applied to all parties was correct.  It's the law of

3   the case and cannot be overcome by new counsel's speculative

4   musings.

5        Second, plaintiffs speculate that quote, and this is

6   I think on Page 9 of their opposition, "But for the

7   misrepresentation, Holdco would not have withdrawn its

8   objection.  It would've made a more robust objection to the

9   settlement or sought a different path."  This argument fails

10  for at least the following reasons.

11       Again, there's absolutely no evidence to support it.

12  It's simply an argument made by new counsel on behalf of a new

13  trustee with citation to nothing.  But more troubling to me,

14  Your Honor, is it suggests that Mr. Kane would have engaged in

15  unethical conduct.  We know what he told the Court.  We know

16  that he concluded that his clients couldn't rely on the ROFR to

17  prevent the transfer.  That's what he told you.

18       Even the plaintiffs don't contend that valuation is

19  relevant to determining whether ROFR applies.  It doesn't.  The

20  ROFR applies or it doesn't, and it has nothing to do with

21  value.  And yet, we're told today that counsel wants this Court

22  to find that even though the legal analysis would not change at

23  all, Mr. Kane would have pressed the objection or done

24  something different, even though he concluded it was without

25  merit based on a representation that has absolutely nothing to

007128

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-38   Filed 09/11/23   Page 78 of 125   PageID 7700

65

1   do with the ROFR.  I don't think that's proper.

2          I don't think the Court should find that Mr. Kane,

3   having concluded that the ROFR applied, would have told the

4   Court that it did simply because you have to accept the

5   misrepresentation claim as true.  It's not a particularly

6   credible argument.  (Indiscernible), Your Honor, that the

7   purpose of judicial estoppel is to protect the integrity of the

8   judicial process by "preventing parties from playing fast and

9   loose with the courts to suit the exigencies of self-interest."

10          The evidence conclusively establishes that based on

11   Mr. Kane's thoughtful advice and analysis, after due

12   deliberation, that CLO Holdco knowingly and intentionally

13   acknowledge that the ROFR and the members agreement did not

14   preclude the HarbourVest transaction to an affiliate of the

15   debtor.

16          The Court should protect the integrity of the

17   judicial process, reject plaintiffs' attempts to play fast and

18   loose, and dismiss Counts 2 and 5 on the ground of judicial

19   estoppel.

20          Having said all that, it's kind of easier on a

21   certain level, although I think that's pretty black and white.

22   If you just look at Mr. Kane's own words, it's really easy to

23   dismiss both counts on the merits.  Even if Count 2 wasn't

24   barred by judicial estoppel, it must be dismissed for failure

25   to state a claim upon which relief can be granted.

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-8   Filed 09/11/23   Page 79 of 125   PageID 7701

66

1              And if we can put up Slide 2, please.

2              Let's take a look at the members agreement, Your

3    Honor.  This is the members agreement.  It's Defendant's

4    Exhibit 13.  We're looking at Sections 6.1, 6.2.

5              Section 6.1 of the members agreement expressly

6    provides that members shall not transfer their shares other

7    than to an affiliate of an initial member party hereto without

8    getting consent.

9              So if a member wants to transfer their shares to an

10   affiliate of an initial member to this agreement, they don't

11   have to get consent.  They can do it whenever they want.  And

12   there is no dispute that HarbourVest was a member.  And there's

13   no dispute that the transfer was to an affiliate of Highland

14   who was an initial member and party to this agreement.  So I

15   don't think there's any argument at all that HarbourVest had

16   the ability to transfer its interest in HCLOF to an affiliate

17   of Highland.

18             6.2 is the ROFR, okay.  So what we've done is we've

19   highlighted the portion that I think applies here.  Prior to

20   the transfer, prior to making any transfer, and that's where

21   the parenthetical really ends the whole discussion.  Other than

22   transfers to affiliates of an initial member, a member must

23   first offer to the other members the right to purchase the

24   shares.

25             So the obligation, the ROFR, by the plain unambiguous

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-3   Filed 07/11/23   Page 80 of 125   PageID 7702

67

1  terms of the agreement simply does not apply to transfers to

2  affiliates of an initial member.  Again, this was a transfer in

3  the settlement to an affiliate of an initial member.  In this

4  instance, Highland.  This is the parties' agreement.

5           Highland and HarbourVest had every right under this

6  agreement to do this transaction.  They had no obligation to

7  offer it to the plaintiffs or to anybody else.  That's what the

8  plain terms say.  So while we think they should be estopped,

9  judicially estopped, from making the arguments and pursuing

10 these claims, they fail on the merits anyway.  And these

11 Counts 2 and 5 should be dismissed with prejudice because

12 there's nothing they can do to rewrite this agreement.  There's

13 no way around it.  The agreement says what it says.  The

14 parties are bound by it.

15          Let's turn to Count 5.  We can take that down.

16          Count 5 fails to allege a plausible plan for tortious

17 interference, and that's kind of simple because the tortious

18 interference here is that Highland allegedly interfered with

19 CLO Holdco's rights under Section 6.2 of the management

20 agreement.  As we just saw, it did not.  It could not.  It had

21 no obligation.  It simply had no obligation.

22          Let me state it differently.  CLO Holdco had no right

23 to participate in this transaction.  They had no right of first

24 refusal and there was no right in the contract otherwise

25 because they cite exclusively to 6.2.  There's no right

1  otherwise that the plaintiffs rely upon as a right that

2  Highland tortiously interfered with.

3       So since 6.2 did not provide CLO Holdco with a ROFR

4  under these particular circumstances, Highland could not have

5  tortiously interfered with it.  Stated differently.  There

6  can't be a cause of action for tortious interference with a

7  contractual right that never existed.  No amendment changed

8  that.  Count 5 should be dismissed with prejudice.

9       Count 4 fails to state a cause of action for RICO.

10  Plaintiffs allege that defendants are liable under RICO.  The

11  defendants move to dismiss this count because there is no

12  plausible cause of action for at least the following reasons.

13       RICO claims can't be predicated on Securities Law

14  violations.  Allegations concerning mail and wire fraud were

15  not stated with particularity and otherwise fail to meet the

16  heightened pleading requirements under Rule 9(b).

17       Plaintiffs fail to plead a pattern of racketeering

18  activity, nor could they since, based on the pleading, the

19  entire complaint is based on a singular statement during the

20  9019 hearing concerning a singular transaction with no

21  suggestion that there would or could be a continuing or future

22  threat.  So you don't have a pattern of racketeering activity.

23       They fail to state a cause of action because they

24  fail to plead that the RICO association in fact enterprise.

25  They fail to plead causation.  And here's the thing, Your

69

1   Honor, this is really simple, they didn't contest any of this.

2   Plaintiffs did not file a substantive response to the motion to

3   dismiss on RICO.

4        Instead, at the end of their pleading, at Page 23,

5   they purport to move to dismiss the RICO claim "at this time,

6   pursuant to Rule 41, while purportedly reserving the right to

7   bring the claim at some future time."  Your Honor has heard

8   this playbook before.  We heard it in HCRE.  We heard it with

9   claims that have been withdrawn.  You know, don't rule on this

10  because we want to save it for another day.  They can't do

11  that.  The Fifth Circuit has said you can't do that.  That's

12  not what Rule 41 is about.

13       Their so-called motion on Page 23 is improper for at

14  least the following reasons.

15       It doesn't comply with Bankruptcy Rule 8013(a)(2)(A)

16  because it fails to state with particularity the grounds for

17  the motion and the legal argument necessary to support it.

18       Rule 41(a) is made applicable to this adversary

19  pursuant to Bankruptcy Rule 7041.  The title of that rule, Your

20  Honor, is "Dismissal of Adversary Proceedings."  Neither the

21  title of the Rule nor the substance of the Rule concerns,

22  addresses, or permits the dismissal of individual claims.

23       The same is true for Rule 41 itself.  It is titled,

24  "Dismissal of Actions."  Section (a), which the plaintiffs rely

25  upon, states "Plaintiff may dismiss an action without a court

007133

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-3    Filed 07/11/23    Page 83 of 125    PageID 7705

70

1  order under certain circumstances." That's not what they're

2  trying to do here. They're trying to dismiss a singular claim.

3          Even if they had complied with 8013, and they didn't,

4  they have no right to do that under Rule 41. You don't have to

5  take my word for it, Your Honor, we cite it in our brief. The

6  Fifth Circuit's decision in <u>National Horsemen's</u>. It's in

7  Paragraph 1 of our reply.

8          The Fifth Circuit said very clearly that Rule 41(a)

9  does not allow for the dismissal of individual claims, right.

10  If they wanted to dismiss an individual claim, they had to

11  amend their pleading and proceeded under Rule 15, and we would

12  have had the opportunity to say they can't do this unless it's

13  without prejudice -- you know, unless it's with prejudice,

14  right.

15          We would have argued hard that all of these issues

16  should be pled together, that there is no basis to with

17  withdraw it to save it for another day. It would be, you know,

18  it would wreck havoc on the judiciary. You'd be trying the

19  same case in multiple forums at multiple times. They didn't do

20  that. They went under Rule 41(a). The Fifth Circuit has said

21  you can't do that.

22          So the dismissal of this claim, the RICO claim,

23  should be with prejudice. There is no plausible claim that can

24  be alleged under the circumstances. There is no defense to the

25  motion to dismiss. There is no substantive defense. They'll

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-3    Filed 09/11/23    Page 84 of 125    PageID 7706

71

1  never be able to plead a pattern of racketeering.  We know what

2  the factual predicates are here.

3          It's the HarbourVest settlement, a singular

4  transaction that occurred over a matter of weeks with no

5  continuing or future, you know, harm that could ever be done.

6  That's the claim that they have.  So this cause of action, too,

7  should be dismissed with prejudice.

8          Negligence, Count 3, should also be dismissed with

9  prejudice.  Count 3 alleges that Mr. Seery negligently valued

10 HarbourVest's interest in HCLOF.  They fail to give plaintiff

11 the opportunity to purchase the interest.  This count should be

12 dismissed with prejudice for the following reasons.

13         Number one, of course, Highland's plan of

14 reorganization exculpates the debtor for claims of negligence

15 arising from the administration of the estate.  That part of

16 the confirmation order has been specifically affirmed by the

17 Fifth Circuit Court of Appeals.  I can't think of a better

18 example of a debtor administrating the estate and resolving

19 claims.

20         If there's one thing that I know a debtor does, and I

21 know a debtor does many things, but there's no dispute that one

22 of the -- there's one thing debtors must do to administer the

23 estate is to resolve claims.  So the exculpation provision bars

24 Count 3.

25         They suggest somehow that the defense should be

72

1  stricken because it was raised previously and therefore waived.

2  I'm not sure what that means, but there's no evidence.  There

3  will never be any evidence that Highland ever knowingly,

4  intentionally, you know, relinquished their protection from

5  negligence claims arising from the administration of the

6  estate.  The plan's exculpation clause really should end this

7  inquiry.

8          But there is more if Your Honor needs it.

9          The plaintiffs also refer to the Advisers Act to

10 contend that it imposes a duty of care and loyalty.  You heard

11 Mr. Sbaiti say that earlier under Section 206.  This is their

12 argument.

13         You know, he did refer to some case out there that

14 said otherwise.  And he's right and he should know that because

15 it's his case.  He brought the case on behalf of NexPoint from

16 Mr. Dondero, the Southern District of New York, against Josh

17 Terry and Acis.  It's the case that we've cited in our brief.

18         And last summer, the Southern District of New York,

19 who probably does have a lot of experience with Investment

20 Adviser Act claims, said "No private right of action under

21 206."  Plain and simple.  They cited to Transamerica.  They

22 quoted Transamerica.  They said the Supreme Court held there

23 that there is no private right of action under Section 206.

24 Transamerica made no distinction between investors or the fund.

25 It unequivocally held that there is no private right of action

007136

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 68   Filed 09/31/23   Page 86 of 125   PageID 7708

73

1  under Rule 206.

2           But there's more because there's always more.  In the
3  advisory agreement, there's a very explicit separate
4  exculpation clause that the DAF agreed to.  And if we can put
5  up to the screen Slide 3.  And I will admit, Your Honor, this
6  is not in our brief.  But this is the document that the
7  Plaintiffs are relying upon.  This is the advisory agreement
8  that they contend, you know, imposes duties on Highland.

9           I'll wait for Mr. Sbaiti to explain his views as to
10  this agreement, but the Court has to consider the four corners
11  of the agreement.  It is the principal -- one of the principal
12  basis for the whole lawsuit.  And in Section 11, the DAF agreed
13  that to the fullest extent permitted by law, no covered person
14  shall be liable, general partner, or the Fund, or any of its
15  subsidiaries including CLO Holdco.

16           I heard Mr. Phillips say that somehow CLO Holdco is a
17  beneficiary under this agreement.  Well, if they are, they've
18  also exculpated Highland for any reason whatsoever, less the
19  act or omission constituted willful misconduct or gross
20  negligence.  They can't bring their own agreement.  And it's
21  funny, Your Honor, because think about the context in which
22  this agreement is drafted.

23           This agreement is drafted by Mr. Dondero's company,
24  Highland, who's going to provide advisory services to his own
25  Donor Adviser Fund, the DAF.  This is his agreement.  I want to

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 68   Filed 09/11/23   Page 87 of 125   PageID 7709

74

1   hear why it doesn't apply.  I want to hear why this exculpation

2   provision doesn't preclude a negligence claim.  It absolutely

3   does.

4          Finally, the negligence claim could never be

5   plausible in any event, because the Plaintiffs didn't have a

6   right of first refusal.  We saw that they reached an agreement

7   with Highland that said they were not going to get a right of

8   first refusal if there's a transaction between affiliates of

9   initial members.

10          And so if you have agreed that that conduct is

11  permitted, you cannot plausibly assert a cause of action that

12  says you were negligent in executing that same contract.  And

13  by the same token, the whole concept of oh, they misstated the

14  value.  Also irrelevant, because the valuation has nothing to

15  do with any rights that the Plaintiff has.  There's nothing for

16  them to rely on.

17          HarbourVest maybe.  You know, HarbourVest would have

18  a complaint.  I haven't heard from them on that point, although

19  I speak to from time to time.  But Plaintiffs have no standing

20  here.  They have no interest.  There's no reliance.  Whatever

21  Mr. Seery said about value, the Court can accept as true.  All

22  the allegations in the complaint, it is a big so what.

23          Finally, the fiduciary duty issue.  That also must be

24  dismissed.  Count 1 is for breach of fiduciary duties.  It's

25  premise are the exact same facts; insider trading,

75

1 misrepresentation, or the concealment of the true value of

2 HarbourVest's interests and the diversion of the investment

3 opportunity.  This count must also be dismissed with prejudice.

4 To be clear, as a matter of law, the Defendants never owed a

5 fiduciary duty to CLOF -- CLO Holdco.

6        HCF as the adviser, is a wholly-owned affiliate of

7 the debtor and it serves as the portfolio manager of HCLOF, but

8 it is black-letter law -- and this is gold standard, you heard

9 Mr. Demo refer to it earlier -- that there is no fiduciary

10 relationship between a Fund adviser and the funds investors.

11       The relationship is between the Fund adviser and the

12 Fund.  That's who the agreement is with.  That's who they

13 serve.  They all take direction from Fund investors.  They have

14 no obligation to listen to Fund investors.  And as Mr. Demo

15 cogently pointed out, think about the chaos that would result

16 if Fund advisers owed fiduciary duties to each of the Fund's

17 investors.

18       To the extent that the Plaintiffs allege that the

19 fiduciary duties are owed by Highland to the DAF under the

20 Investment Advisers Act, I'd again point out, Your Honor, there

21 is no private right of action under the Investment Advisers Act

22 to enforce violations of Rule 206, which is the only thing that

23 the Plaintiffs have pled.  There is no viable remedy.  You

24 can't bring a claim for damages as they're trying to do here.

25 That's the holding of the Supreme Court in TransAmerica.  And

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-33   Filed 09/06/23   Page 89 of 125   PageID 7711

76

1   that's the holding in Mr. Sbaiti's <u>NexPoint</u> case from the

2   Southern District of New York.

3            But here's the thing.  Even if a fiduciary duty

4   existed, they still can't plead a plausible cause of action.

5   Why?  Because Highland owes no duty to CLO Holdco as an

6   investor in HCLOF.  None.  Even if it did, Highland complied

7   with the members agreement governing HCLOF.  They were

8   permitted to do this transaction.  How can you breach your

9   fiduciary duty by complying with the very agreement that the

10  Plaintiff is a party to?  They can't.

11           Second, Highland had an investment advisory agreement

12  with the DAF as Mr. Demo conceded.  It does give rise to

13  fiduciary duties.  But what are the obligations?  To make a

14  full and fair disclosure of potential conflicts of interest.

15  And what did Highland do under the direction of Mr. Dondero?

16  He did exactly that.  Right?  Mr. Dondero is always looking out

17  for Mr. Dondero.  And he's got to live with the consequences of

18  that now, even though he's not in control of Highland.

19           And here's the thing.  Mr. Dondero knows that because

20  Dugaboy made the exact same argument that Mr. Sbaiti is making

21  here.  He did it in connection with the UBS settlement.  Your

22  Honor, will recall that Dugaboy objected to that settlement.

23  They appealed that settlement to Judge Starr.  It wound up in

24  front of Judge Starr in the District Court.  And he heard the

25  exact same argument that these folks are making here.

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-3    Filed 07/10/23    Page 90 of 125    PageID 7712

77

1          Dugaboy argued that Highland, that's Multi Strat's

2     investment manager, had fiduciary duties that could not be

3     waived, right?  We hear Mr. Sbaiti say that.  Unwaivable

4     fiduciary duties could not be waived.  But Judge Starr found

5     that the applicable provision, and I'm going to quote from it

6     here, this is the Dugaboy decision that we've cited in our

7     brief.

8          He said, "It's true that the Act prohibits any

9     provision binding any person to waive compliance with any

10    provision of the Act, but that provision stands for the

11    proposition that general waivers of the Investment Advisers Act

12    protections will not be enforceable."  It says nothing about

13    whether a fiduciary duty beneficiary, such as the Plaintiffs

14    here, gave informed consent to a specific scheme.

15         So the notion that the fiduciary duties somehow can

16    never be waived, it's not true, right?  Take Judge Starr's word

17    for it.  He's in the District Court, right.  The same court

18    that these guys think would be a more appropriate forum to hear

19    these very sophisticated issues.  Judge Starr said no.

20    Dugaboy, you're absolutely wrong.

21         Judge Starr found specifically in the conflict of

22    interest section in the Multi Strat private placement memo,

23    evinced informed consent that Highland might resolve issues in

24    a manner inconsistent with the interests of Multi Strat's

25    investors.  Highland was allowed -- Highland had complete

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-8   Filed 07/10/23   Page 91 of 125   PageID 7713

78

1   authority to settle or compromise suits on behalf of Multi

2   Strat without notice, without seeking anybody's prior approval.

3            He went through in detail and quoted some of the

4   conflict of interest language.  The same result hold here.

5   Let's take a look at the advisory agreement and see the

6   conflict of issues that were disclosed to the Plaintiffs here.

7   If we can put Slide 4 on the screen.

8            So Slide 4, this is Exhibit A, again to the advisory

9   agreement.  It's Exhibit 14, and they've got a whole section.

10  It goes on for a couple of pages, Your Honor, called potential

11  conflicts of interests.  And it says that the Highland Group

12  can age in transactions whether or not such vendors are

13  competitive with the Fund.  The Fund here is the DAF.

14           "The Fund will be subject to a number of actual and

15  potential conflicts of interest involving Highland, including

16  among other things, that Highland may actively engage in

17  transactions for the same securities saw by the Fund and may

18  compete with the Fund for investment opportunities, or may hold

19  positions opposite to positions maintained by the Fund."  If we

20  can go to the next slide, because it continues.

21           "Highland Group Trading as part of its regular

22  business, the members of the Highland Group may hold, purchase,

23  sell, trade, or take other related actions for their own

24  account.  The members of the Highland Group will not be

25  restricted in their performance of any services or in the types

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-33   Filed 09/11/23   Page 92 of 125   PageID 7714

79

1  of debt or equity investments, which they may make."

2          And this is the most important part here.  In

3  connection with those activities, "The members of the Highland

4  Group may hold, purchase, sell, trade, or take related actions

5  in securities or investments of a type that may be suitable to

6  investments for the Fund.

7          "Members of the Highland Group will not be required

8  to offer such securities or investments to the Fund or provide

9  notice of such activities to the Fund."  In other words,

10  Highland could enter into this -- this is the party's

11  agreement.  This is exactly what Judge Starr said was

12  permitted.  Informed consent.

13          This is Mr. Dondero talking to Mr. Dondero.  It's his

14  company talking to his Donor Adviser Fund, and he's talking to

15  himself, and he's saying, okay, look, I may -- I'm going to be

16  able to do whatever I want.  And don't worry.  You know, it may

17  conflict with you.  But if I want to look out for this guy,

18  I'll look out for this guy.  I want to look out for that guy,

19  I'll look out for that guy.  I'm not going to tell you.  I'm

20  not going to give you the opportunity.  This is the agreement

21  that he struck with himself.  He may not like it today.  But

22  that's the agreement that he struck with himself.

23          Through these provisions, Highland has made full

24  disclosure about potential conflicts of interest.  DAF, a

25  fiduciary duty beneficiary, to use Judge Starr's term, gave its

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 68   Filed 09/01/23   Page 93 of 125   PageID 7715

80

1  informed consent to a specific scheme.  It was not a general

2  waiver of the IAA's protections.  That would be wrong.  No

3  general waiver.  That's what Judge Starr said he couldn't do.

4  And that's not what's happening here.  Rather, a specific

5  scheme was agreed upon between Mr. Dondero's company and his

6  donor advised Fund.

7          Finally, let's just look at reality.  There was no

8  corporate opportunity to divest.  Highland didn't buy anything.

9  They settled a $300 million claim.  They structured it at the

10  request of HarbourVest in a manner of rescission.  So they took

11  the investment back, gave the $80 million back in the form of

12  claims.  And that's it.  That's not an opportunity that ever

13  existed for the Plaintiffs or for anybody else.

14          In short, no fiduciary duty to CLO Holdco.  Highland

15  made full and complete disclosure of its conflicts of interest,

16  including expressly stating that Highland could acquire

17  securities without offering them to the DAF or even giving the

18  DAF notice.  At the end of the day, Highland didn't take an

19  opportunity that was ever available to the DAF that they had no

20  right to.  Rather it settled a $300 million claim and

21  transferred its interest as part of the settlement.

22          No amendment can change these facts, Your Honor.

23  There was no private cause of action under the Investment

24  Advisers Act.  Highland owed no duty to CLO Holdco.  Highland

25  fully disclosed the very scheme that purported to settle the

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-33   Filed 09/11/23   Page 94 of 125   PageID 7716

81

1  HarbourVest claim as it did.  And there was no opportunity that
2  the Plaintiffs could have taken advantage of.  By my count,
3  Your Honor, I'm at 38 minutes, so I'd like to reserve seven for
4  rebuttal.
5        THE COURT:  Okay.  My law clerk confirms 38 minutes.
6        All right.  Mr. Sbaiti?
7        MR. SBAITI:  Thank you, Your Honor.  Your Honor, the
8  -- I'm going for the most part rest on our briefs because I
9  think they deal with a lot of the issues that were discussed.
10  And I'd like to focus on the Advisers Act and the fiduciary
11  duty argument and I'll address Mr. Morris' arguments there.
12        The case does begin though with Mr. Seery's testimony
13  at the settlement appeal hearing on January 14th, 2021.  Mr.
14  Morris has that correct.  He testified specifically that the
15  HarbourVest interest in HCLOF was worth 22 and a half million.
16  He also testified that that was the value at the end of
17  November of 2020.  He also testified that that was a fair value
18  for the HarbourVest interest that Highland actually had, and he
19  testified that the value hasn't gone up explosively.  And he
20  said that we think that's good real value.
21        After Your Honor approved the settlement, the DAF
22  discovered two months later that in January 2021, Highland's
23  internal metrics did or should have valued HCLOF under an NAV,
24  a net asset value basis, because these are not totally liquid
25  securities.  And when they went back and did the math

82

1   internally, the net asset value as we pled of those securities

2   at the end of November, would have been about 34 and a half

3   million, not 22 and a half million.  And it would have been

4   closer to $42 million by the time that he was testifying in

5   Your Honor's court.  So we start with that misrepresentation

6   and the case it arises from the outcroppings of the

7   implications of that misrepresentation.

8           One of the things that we looked at is under the

9   Advisers Act is that under Transamerica Mortgage, as I said

10  earlier, it says that violations of Section 206 are actionable

11  under Section 215.  You've heard Mr. Demo and now Mr. Morris

12  say that the Supreme Court has held that Section 206 does not

13  have a private right of action for damages.  And he's

14  absolutely correct.  But that doesn't mean that if there's a

15  violation of Section 206, that you have nothing.

16          What Transamerica Mortgage held, was that there was a

17  private right of action under Section 215 of the Advisers Act

18  for breaches of Section 206.  You do have a private right of

19  action.  And that's one of the ways we believe violations of

20  Section 206 are actionable.

21          The other way we argued that violations of Section

22  206, which does impose fiduciary duties on an investment

23  adviser, purely by virtue of its activities as an investment

24  adviser is that Judge Boyle and other courts, as we cite in our

25  brief, Judge Boyle had a case called Douglas v. Beekley

007146

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 68   Filed 09/11/23   Page 96 of 125   PageID 7718

83

1  (phonetic).  Held that state fiduciary duty actions can be

2  predicated upon breaches of the fiduciary duties owed under the

3  Investment Advisers Act.

4          Judge Boyle found that, and then we've also cited

5  cases in other jurisdictions that have similarly found.  And I

6  would note that although in the reply, Mr. Morris, or excuse

7  me, Highland takes the position that, you know, we haven't pled

8  a state cause of action.  We actually pled a breach of

9  fiduciary duty and then pled both damages, and

10 discouragement/rescission, the full panoply which are available

11 under both state and federal.

12         And in fact, as you've heard Highland's lawyers say

13 multiple times today that they originally filed their motion to

14 dismiss, and that this new motion to dismiss is substantially

15 similar.  In our response to their original motion to dismiss,

16 we also cited the case law that says that violations of Section

17 206 of the Advisers Act are actionable through state law,

18 fiduciary duty actions, and that's what we've pled.  We didn't

19 limit ourselves to only state or federally available remedies.

20 So I'll concede --

21         THE COURT:  Can I stop you?  Because I'm really hung

22 up on this issue.  If it's actionable, what is the remedy?  If

23 it's not damages, what is the remedy you think is available?

24         MR. SBAITI:  So I do believe damages are available

25 under a fiduciary duty claim under Section -- under the Section

84

1   215.  And this is where I was going earlier on.  Section 215

2   essentially voids either a contract that waives or waives

3   compliance with the Advisers Act or voids the provisions, but

4   it also voids the rights of someone who performs a contract in

5   violation or makes a contract in violation of one of the duties

6   under the Advisers Act.

7        And what the Supreme Court said in Transamerica is,

8   once you have a void right or a void provision, then the

9   incidences of voidness, which they included to be restitution

10  or disgorgement, and other courts have construed to mean other

11  equitable remedies that would happen once you have voided a

12  right, it could include things like disgorgement, of course,

13  then you actually have those rights.

14       And in fact, Judge Boyle's case, Douglas v. Beekley

15  also addresses the fact that those can be the remedies once the

16  rights of a violator have been voided under Section 215 of the

17  Advisers Act.

18       THE COURT:  So let's take that from conceptual to

19  these facts.  How would that play out?

20       MR. SBAITI:  Sure.  So Your Honor, we would argue,

21  because we're seeking damages for the lost opportunity, or

22  disgorgement of the asset, and so one of two options could

23  happen.  Either Highland could transfer the interest in

24  exchange for, you know, would have an offset, would have an

25  unjust enrichment right.  DAF I think would owe $22 and a half

007148

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-8   Filed 09/11/23   Page 98 of 125   PageID 7720

85

1   million to Highland to compensate for what it paid.  Or we

2   could just get damages under a state cause of action for

3   whatever the potential value is.  I'm not sure what the value

4   of it is stands today.  But that would be the idea.

5           THE COURT:  Okay.  Well, I have to say, and you can

6   either move on or not, I'm very confused.  Because --

7           MR. SBAITI:  Okay.

8           THE COURT:  -- no private right of action -- and you

9   say that just applies to damages -- you know, no private right

10  to damages.  But you can get the remedy of voiding a contract

11  or voiding provisions of the contract.  But somehow at the end

12  of it, you're saying damages or disgorgement?  You want to --

13          MR. SBAITI:  Sure.  Let me be a little bit more

14  specific, Your Honor.

15          If there's a violation of Section 206, the Supreme

16  Court in Transamerica has held that you can seek to avoid the

17  rights of the other party violating Section 206.  And then you

18  can seek the equitable remedies surrounding the voiding of

19  those rights.  That's what Transamerica held.  It held that you

20  can simply walk in and say you violated Section 206.  We want

21  damages.  But you can seek to (indiscernible) the rights of the

22  violator and then seek whatever equitable remedies arise out of

23  that, whatever those may be.

24          The flip side of that, Your Honor, is that as Judge

25  Boyle has held and as other courts have held, is that because

007149

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-38    Filed 09/10/23    Page 99 of 125    PageID 7721

86

1   the Advisers Act imposes fiduciary duties, those are formal

2   fiduciary duties recognizable under Texas fiduciary duty law.

3   So I can have a Texas fiduciary duty claim for breach.  And

4   then I get the full panoply of remedies, including damages that

5   are available under Texas law for a breach of fiduciary duty.

6          So in other words, Section 206, and both of these

7   regimes simply provides the duty, the basis of the duty.  It's

8   a federal law imposition of a fiduciary duty.  The violation of

9   that then is actionable through either Section 215, or it's

10  bore by the state or adopted by the state fiduciary duty cause

11  of action.  That's what the case law says that we cite.

12          THE COURT:  Okay.  And again --

13          MR. SBAITI:  I'm hoping I'm answering your question.

14          THE COURT:  Sorry to interrupt.  Maybe you're going

15  to get to this, but --

16          MR. SBAITI:  It's okay.

17          THE COURT:  But the argument very strongly made --

18  vehemently made by Highland is there's no fiduciary

19  relationship to investors, i.e. the DAF.  If you're right, this

20  could only be a tool of CLO Holdco.  You disagree with that?

21          MR. SBAITI:  I do, for a couple of reasons, Your

22  Honor.

23          THE COURT:  Okay.

24          MR. SBAITI:  I can address that.

25          THE COURT:  Okay, go ahead.

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 31   Filed 08/16/23   Page 100 of 125   PageID 7722

87

1          MR. SBAITI:  And if Mr. Morris is correct, they

2     didn't argue the implications of the contract as it would apply

3     to the fiduciary duty.  So I'll address that at the end of

4     these comments, Your Honor.

5          THE COURT:  Okay.

6          MR. SBAITI:  Because I think they're obviously

7     relevant and they've been brought up.  But in terms of simply a

8     matter of federal law, there is a fiduciary duty by Highland to

9     the DAF and its subsidiaries and that's in the agreement that

10    Mr. Morris was going through.  So they can't escape the idea

11    that there's not a fiduciary duty.  Those fiduciary duties

12    arise as a result of Highland performing services as an

13    investment adviser to the DAF.

14         I think what Mr. Morris was arguing is that because

15    that contract waives anything, what anything -- any liability

16    for anything that was less than gross negligence or intentional

17    misconduct.  I think he was arguing that therefore that

18    contract takes away the idea that the fiduciary duties imposed

19    under the Advisers Act, to the extent that they're actionable

20    is negligence.  I think he was arguing that goes away, because

21    that's where I understood his argument to come from.

22         I didn't understand his argument to say there is no

23    fiduciary duty from Highland directly to the DAF.  In fact, I

24    believe Mr. Demo conceded that that fiduciary duty existed

25    because he was trying to show Your Honor how simple of an issue

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 19-1   Filed 09/11/23   Page 101 of 125   PageID 7723
Document   Page 88 of 112

88

1   it is and how not complicated it is in terms of for the

2   purposes of the question of withdrawing reference.

3           So you have a direct fiduciary duty from Highland as

4   the DAF's adviser.  You also have a direct fiduciary duty by

5   Highland to Holdco.  Now you've heard them cite a case.  They

6   call it Goldstein.  It's a DC Circuit case.  And what Goldstein

7   held is that you own -- is that an investment adviser only has

8   a fiduciary duty to its client.  And the client is the Fund.

9   It's not the investors in the Fund.

10          And I mentioned this without mentioning the name of

11  the case.  But I mentioned that they had cited cases that deal

12  with Section 206(1) or (2) of the Advisers Act, which Goldstein

13  is a Section 206 -- I believe (2) case.  And indeed, it

14  specifically says Section 206(2) specifically only applies to

15  the clients or the advisers due to its client.

16          So under 206(2), indeed, you have a fiduciary duty

17  only for the Fund.  The part that they miss is that Rule

18  206(4)-8, which I brought up earlier in regards to when I was

19  going through the mechanisms.  That rule was actually passed in

20  response to Goldstein to actually clarify that, no, under

21  206(4), those same duties are going to exist directly to the

22  Fund and its (indiscernible).

23          And that's what I read, Your Honor, the rule and it's

24  -- I believe I read you the statutory -- the actual cite, which

25  is -- get to it again, for Your Honor's record.  And it's in

89

1  the CFR.  I believe it's 17 CFR 275.206(4)-8.  And it is very

2  clear.  And if you look at the SEC -- and the SEC passed it, if

3  you look at when they passed it.  They passed it the year after

4  <u>Goldstein</u>.  So <u>Goldstein</u> isn't good law for the provision that

5  there's no fiduciary duty to the investor in a Fund.  It's just

6  not good law at this point.  Nor in any of the other cases that

7  they cite, or that <u>Goldstein</u> backs with the same proposition,

8  because it relies on the wrong part of the statute.  The

9  statute, I should say.

10         So now that we have an agreement that Highland and

11 its subsidiary are the investment advisers to HCLOF, and this

12 provision, this regulation passed by the SEC says there -- the

13 duties under 206(4) actually do apply to the investors in the

14 Fund, and not just Fund itself.  That's the direct investment

15 advisory relationship to Holdco.  So you can get at it either

16 way, Your Honor, under the statute.  And that's kind of the

17 point that we make.

18         And then you look at the other cases that we've

19 cited, and the statutes that we've cited, and they're all

20 basically get to the same provision.  So the math is pretty

21 simple for us on this.  Section 206 of the Advisers Act says,

22 those fiduciary duties, that's what <u>Transamerica</u> and its

23 progeny held.  And Rule 206 defines the scope of Section 206,

24 which includes investors in the managed Funds, which means

25 there's a direct fiduciary duty.

007153

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 9-31   Filed 09/01/23   Page 103 of 125   PageID 7725

90

1        They hang their hat a lot on the lack of a direct
2  fiduciary duty or the lack of a cause of action for actuating
3  these duties when they've been breached, but they're just
4  simply wrong as a matter of law.  In their reply, Your Honor,
5  they also bring up the argument which we talked about a little
6  earlier, that there is -- they cite the Acis -- NexPoint v.
7  Acis decision for a premise that, you know, therefore, there's
8  no private right of action.  That's actually not what that case
9  held.

10        What that case held is that under Section 215, you
11  could only void -- you can't void someone's performance of an
12  otherwise lawful agreement.  Which is not the issue here.
13  Here, we're saying that an agreement was made in violation of
14  the Advisers Act, because the settlement agreement was
15  predicated on a misrepresentation of fact to the advisers and
16  breached the adviser's duty to cherry-pick for itself the best
17  investments.

18        And if you look at the contract that Mr. -- and which
19  I'll get to now -- look at the contract that Mr. Morris was
20  talking about, right after the provisions he read under the
21  Attachment A specifically says, "It is the policy of the
22  investment adviser to allocate investment opportunities fairly
23  and equitably over time."  And it goes on to say that the
24  considerations -- that's its fiduciary duties -- owed to the
25  accounts, the primary mandate of the accounts.

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 31    Filed 09/11/23    Page 104 of 125    PageID 7726

91

1          In other words, if there are some accounts that are

2     specifically there for certain types of investments, those

3     investments are going to be allocated there.  The capital

4     available to the accounts, restrictions on the accounts and the

5     investment opportunity, the sourcing of the investment, the

6     size, and so on.  It goes through about 11 different

7     considerations.

8          So as a matter of fact, we can argue later whether or

9     not Highland went through those provisions when it decided to

10    take it for itself.  But the most important thing about

11    everything that Mr. Morris read to you about Highland's ability

12    to trade and to do these things, is that the allocation of the

13    investments is amongst its other accounts.  It doesn't get to

14    (indiscernible) it somewhere for itself at the expense of its

15    advisees, number one.

16         And number two, if it does, we would argue that

17    that's void under Section 215(a) and (b), that the Advisers Act

18    doesn't let it -- the Advisers Act imposes duties where it's

19    not allowed to do that.

20         Now he cited anew Judge Starr's decision, which I

21    actually haven't had a chance to read.  I tried to pull it up

22    while he was reading from it, but it just didn't come up and so

23    I don't know what to say about that specifically, what he found

24    or how he relates in any way.

25         I don't have the underlying documents to see whether

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 31   Filed 09/21/23   Page 105 of 125   PageID 7727

92

1    or not it's the exact same language or different.  But the

2    upshot, I believe, of what he said was that by disclosing all

3    of these things that Highland, the person who signed it

4    basically made an agreement that they were going to let

5    Highland do whatever it did.

6            And that was an informed -- that amounted to informed

7    consent except for one thing, that the Advisers Act doesn't let

8    you do it ahead of time.  You have to go through specifically

9    with the actual investment, talk about it just like the

10   provisions in the agreement I was reading from which comes

11   right after Mr. Morris's quotation.

12           And those provisions don't talk about it being ahead

13   of time.  Those considerations have to be done on an

14   investment-by-investment basis.  So it is a general waiver

15   otherwise, if you're not talking about a particular investment

16   and that's all I can really comment on that, Your Honor,

17   because I don't have Judge Starr's opinion or the underlying

18   facts in front of me, unfortunately.

19           Turning back to sort of the core argument, Your

20   Honor, so the alleged breach we have is that Highland as an

21   adviser is liable for cherry-picking and making it, bringing it

22   over to itself.

23           In our brief, we actually cited a Fifth Circuit case

24   that said that's a violation of the Advisers Act and it's not

25   -- again, it's not a waiveable -- it's simply not waivable in

1  the way that they've cited.  And the second alleged breach that

2  we have is that Highland failed to disclose the true violation

3  of it, excuse me, the true valuation of the HarbourVest

4  interest.

5          And so the fact that they didn't do those two things

6  and keep the DAF apprised or keep Holdco apprised as the case

7  may be, are two independent and actionable violations -- and

8  I'm making these points in summary -- and that's really what it

9  boils down to is it was an act of self-dealing.

10         The remedy for breach of fiduciary duty is, Your

11 Honor, as is for any loss suffered by the plaintiff.  And I

12 would cite, I would refer Your Honor, for example, to the cases

13 we cited, but also to Hsin-chi-Su v. Vantage Drilling, for

14 example, 474 S.W.3d 284, which also says, under state law

15 disgorgement of profits is an equitable remedy appropriate when

16 a party has breached his fiduciary duty; its purpose is to

17 protect relationships of trust by discouraging disloyalty.

18 We've got both state and now federal remedies, including a

19 panoply of possibilities for violations of breaches of

20 fiduciary duty.

21         Turning to, Your Honor, to some of the arguments that

22 were made by Mr. Morris regarding these, the argument that they

23 make about, excuse me, about Section 215 not having a, having a

24 viable cause of action -- and like I said, the argument's

25 incorrect.  It is a viable cause of action -- I admit it is a

94

1   limited cause of action.

2          It's limited to declaring a provision or a right void

3   and then, you know, crafting an appropriate remedy that arises

4   out of that.  But it doesn't mean that there's no cause of

5   action.

6          And I've seen no case cited by them, and I've looked,

7   and I haven't seen a case saying that a Texas or a state

8   fiduciary duty action cannot be predicated on the breach of a

9   federally imposed fiduciary duty, which is what (indiscernible)

10  actually held.

11         Interestingly, Your Honor, twice, at the beginning

12  and at the end of his colloquy, Mr. Morris said that the

13  settlement was essentially a rescission of the HarbourVest

14  investment in HCLOF, a rescission to Highland.  The problem

15  with that language and maybe it is a rescission, but I don't

16  see how it could possibly be because we actually pled the

17  background of that transaction.

18         And the background of that transaction is that HCLOF

19  was a hundred percent owned by Holdco, by the DAF, not by

20  Highland.  So if it was a rescission then the shares should

21  have gone back to the DAF or Holdco.  They shouldn't have gone

22  to Highland if that's how they were going to treat it.

23         And I believe he makes that argument because he

24  wanted to show that it's just not a big deal that this is

25  simply a way to settle the case, and I can see that.  This

007158

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 31    Filed 09/15/23    Page 108 of 125    PageID 7730

95

1  lawsuit is not about unwinding the HarbourVest settlement to

2  drag them back in here and undo and unscramble the egg.

3          But that doesn't mean that there aren't specific

4  equitable remedies that Highland had, excuse me, that the DAF

5  or Holdco had vis-a-vis Highland because of the breaches of

6  fiduciary duty.  The fact that he admits that it's a rescission

7  action but it was rescinded to the wrong party, I think, is

8  very telling.

9          I'll briefly touch upon the other arguments, Your

10  Honor.  I think, I don't think I need to use all 45 minutes.  I

11  think these arguments are pretty well laid out in our brief.  I

12  think the law is pretty well laid out in our brief as much as

13  they want to argue that, you know, that we're just misstating

14  it.

15          When he says Highland owes no duty to Holdco, I think

16  I've addressed that.  But he also says, well, how could there

17  be a breach of fiduciary duty when Highland was complying with

18  the agreement that Holdco agreed to, and I believe he's talking

19  about the membership agreement.  But we have two different

20  readings of the membership agreement, which is why I don't

21  think it's appropriate to dismiss at this stage.

22          The reading that Highland wants you to adopt is that

23  when it says in 6.1, no member shall sell its shares other than

24  to an affiliate of an initial member, thereto, without the

25  prior written consent of the portfolio manager, and then it

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 31    Filed 09/06/23    Page 109 of 125    PageID 7731

96

1    goes on in 6.2 to say you have to offer it to another member,

2    highland wants you to read that as saying that well, then you

3    can only sell, as long as you don't sell to your own affiliate,

4    which is how we read it, then you're in the clear.

5            But if you actually look at the way it's constructed,

6    it's the member selling to its own affiliate that was supposed

7    to be carved out.  So Holdco might be able to sell to its own

8    affiliate.  That was the purpose and intent, otherwise it

9    really doesn't make any sense that a member has to offer it to

10   another member unless it sells to another member's affiliate.

11           It's actually kind of an absurd reading that Highland

12   wants you to adopt.

13           THE COURT:  You're going to have to repeat that.  I

14   got very lost during that.

15           MR. SBAITI:  Oh, sure.  Would it help if I bring it

16   up, Your Honor?

17           THE COURT:  It would be helpful if it was on the

18   screen again, but if you could --

19           MR. SBAITI:  May I share my screen, Your Honor?

20           THE COURT:  Absolutely.

21           MR. SBAITI:  Do you see the contract, Your Honor?

22           THE COURT:  I do.

23           MR. SBAITI:  I just want to make sure I -- where it

24   says "no member," so it's this language, Your Honor, that we're

25   looking at, 6.1 and then down here, 6.2.  And I'll just -- so

97

 1  6.1 first says, "no member shall sell, pledge, charge,

 2  mortgage, assign, assign by way of security transfer."  And it

 3  goes on "other than to an affiliate of an initial member party

 4  thereto without the prior written consent of the portfolio

 5  manager."

 6          That exclusion which also exists in 6.2, prior to

 7  making any transfers of shares other than transfers to

 8  affiliates of an initial member, or in the case of CLO Holdco

 9  or Highland, to Highland, its affiliates or another Highland

10  principal, "a member must first offer to the other members a

11  right to purchase the shares."

12          Your Honor, setting aside the judicial estoppel

13  argument, I'm simply talking about the read of this.  What

14  Highland wants you to adopt here is the idea that where it

15  says, "other than transfers to affiliates of an initial

16  member," it's talking about an affiliate of a member other than

17  the one doing the transferring, and that's an absurd read.

18          What it means, they way they read it, it means that

19  if I'm CLO Holdco, I can't transfer it to HarbourVest but I can

20  transfer it to a HarbourVest affiliate.  But if I transfer it

21  to HarbourVest, then I have to offer it to the other members.

22  That makes no sense.  There's no reason for that.

23          The better reading, we believe, is that the exclusion

24  is that if I'm Holdco, I could transfer it to my own affiliate

25  without offering it to anybody else because it's basically the

007161

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 31    Filed 09/21/23    Page 111 of 125    PageID 7733

98

 1  same person sitting in that membership seat.  The same would go

 2  for HarbourVest.  HarbourVest can offer it to its own

 3  affiliate, but shouldn't be able to offer it to somebody else

 4  or their affiliate without first offering it to the other

 5  membership pro rata.

 6          So that's --

 7          THE COURT:  What about that word --

 8          MR. SBAITI:  -- the reading in the --

 9          THE COURT:  -- "initial member?"  In your example,

10  you said HarbourVest could only transfer it to an affiliate of

11  HarbourVest, but HarbourVest wasn't an initial member.

12          MR. SBAITI:  I actually believe HarbourVest is an

13  initial member to this agreement, Your Honor, because they're

14  actually named up here.  Sorry to scroll.  See, those are

15  there.  I believe all the signatories of this are initial

16  members and I believe that definition is down here.  Sorry to

17  scroll fast.  I'm just trying to find it.  It may not be a

18  defined term here, Your Honor.

19          THE COURT:  Well, I saw HarbourVest.  It's just what

20  you would expect, all the HarbourVest entities, but it wasn't

21  an initial member.  It was not an initial member of HLO or

22  whatever the --

23          MR. SBAITI:  It's an initial member of this --

24          MR. MORRIS:  Your Honor, I believe it is.  I think if

25  you just scroll to the top you'll see they are.  This is the

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 18-23    Filed 09/01/23    Page 112 of 125    PageID 7734

99

1  original document.

2              THE COURT:  They were an initial member?

3              MR. MORRIS:  Yes, they were.

4              MR. SBAITI:  Yes.

5              THE COURT:  Oh.

6              MR. MORRIS:  They are right there.  This is the

7  original agreement.

8              MR. SBAITI:  And they're an original member.

9              MR. MORRIS:  I would agree with that.  So.

10             THE COURT:  Okay.

11             MR. SBAITI:  So anyway, Your Honor, our position is

12 it's -- this is at best an ambiguous contract that would

13 require discovery to go into what that was really supposed to

14 mean.  I know there is a judicial estoppel.  I think that

15 argument's been beaten to death by both sides in the briefing

16 so, you know, we'll rest on our briefing in that issue and, you

17 know, I guess to the extent they are relevant in the exhibits.

18             But, Your Honor, the point of the matter is the

19 agreement, you know, read the way Highland is suggesting just

20 really doesn't make a whole heck of a lot of sense from a

21 practical and common sense standpoint.  I think it's ambiguous

22 as to what that meant, "an affiliate of the initial member."

23             I think it was intend -- we believe it was intended

24 to mean the member doing the transferring can transfer to its

25 own subsidiary, its own affiliate without anybody objecting,

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-38   Filed 09/00/0311   Page 113 of 125   PageID 7735

100

1  which makes perfect sense because all of these investment

2  company are, you know, they sometimes need to move investments

3  around.

4  HarbourVest did it.  That's why there's ten, you

5  know, the half dozen of their affiliates that are there, Your

6  Honor.  So, you know, when it comes down to that, I don't

7  really don't have an argument other than that because I think

8  that's the only argument Mr. Morris made on the membership

9  agreement.

10  And I believe the tortious interference argument,

11  specifically, has, you know, has a little bit heightened

12  relevance because of the testimony and because nobody knew what

13  the actual value was until one of Highland's people left and

14  there was a discussion which you have heard about.

15  I believe at one of the hearings there was a

16  discussion where he actually told some of the advisers to the

17  DAF that those values were actually much higher at the

18  (indiscernible).  I think discovery if bears true then there's

19  been a misrepresentation and there should be consequences for

20  those misrepresentations.

21  And nothing in Highland's agreement with the DAF or

22  with HCLOF says that misrepresentations are somehow excused or

23  that those misrepresentations don't rise above the negligence

24  level, you know, to the extent where those are actionable.

25  I don't know if you have any more questions, Your

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 68   Filed 09/01/23   Page 114 of 125   PageID 7736
Document 88   Page 91 of 112

101

1  Honor, but that really is the argument, I think.  We rest on

2  our briefs and ultimately we have fulsome argument on a lot of

3  these issues the last time.  So unless Your Honor has

4  additional questions, I'll rest.

5           THE COURT:  I guess a couple of follow-up questions.

6           Okay, I'm zeroing in on the -- what exhibit is this?

7  I think it's Exhibit 6 in your notebook, the amended and

8  restated investment advisory agreement.

9           MR. SBAITI:  Okay.

10          THE COURT:  Paragraph 11, the exculpation, the

11 indemnification, 11B.  I think every single adviser agreement

12 I've seen in my history of dealing with Acis and Highland has

13 had a provision like this, substantially similar if not exactly

14 like this.

15          Is your position that basically even though these

16 provisions are always in investment advisory agreements, this

17 is a meaningless provision?  That you cannot contract around

18 some federal fiduciary duty in the IAA, so any, you know,

19 agreement between sophisticated people that says, you know,

20 we're not going to hold you liable for negligence or any other

21 misconduct, it's just wasted ink on paper.

22          It's not -- it's overridden by the IAA.

23          MR. SBAITI:  Your Honor, I've seen this.  Yes.  I

24 mean in a word, yes.  I think a lot of times these are in

25 boilerplate -- this is boilerplate -- not only in Highland's

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-8   Filed 09/02/2311   Page 115 of 125   PageID 7737

102

1    but in a lot of investment adviser agreements.

2            And one thing you're allowed to do under the IAA is

3    define the scope of your services, what you're going to do and

4    what you're not going to do in terms of the types of

5    investments you're going to advise; whether you're going to be

6    the one to buy them or make the investor go buy them

7    (indiscernible).  There's a whole way to discuss the scope.

8            But within that scope, the Advisers Act is fairly

9    crystal clear in Section 215(a) and (b) that when there is a

10   duty imposed -- and the duties are under Section 206 and

11   elsewhere, by the way.  Section 208(d) says you can't do

12   indirectly what you can't do directly, you know, you can't

13   waive those.

14           It specifically says anything that allows someone to

15   not comply with the Advisers Act is void.

16           THE COURT:  Okay.

17           MR. SBAITI:  And I don't blame investment advisers

18   for putting things, I mean they're not the only ones who put

19   things like this in their contracts to give themselves a

20   fighting chance, I suppose, or to make the arguments that Mr.

21   Morris has made and maybe sometimes they're even successful.

22           But I think the statute is so plain and clear that I

23   don't know how this --

24           THE COURT:  Okay.  My last question was the motion to

25   dismiss the RICO claim that is --

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 8-38   Filed 09/03/2311   Page 116 of 125   PageID 7738

103

 1          MR. SBAITI:  Yes.

 2          THE COURT:  -- on Page 23 of your response to the

 3 motion to dismiss.  What about the argument that you dismiss

 4 actions not claims pursuant to Rule 41, this is not a proper

 5 procedural mechanism for what you're trying to do here.

 6          MR. SBAITI:  Here's how I was thinking about it, Your

 7 Honor, when we put that in.  If Your Honor doesn't dismiss the

 8 Securities Act claim, essentially the Advisers Act claim, then

 9 I think the lead argument that they made because we've pled

10 RICO in the alternative, the lead argument that they made is

11 that if we have an Advisers Act claim we don't have a RICO

12 claim, I think, is correct.

13          So in a world where you uphold the Advisers Act

14 claim, then I think the RICO claim is dismissed with prejudice,

15 without prejudice because we have an actionable Securities Act

16 claim, so I think their lead argument on that was correct.

17          In a world where you dismiss based upon everything

18 because you don't think we have a Securities Act claim, we are

19 asking Your Honor to dismiss that claim without prejudice

20 because we believe there would be other reasons to plead

21 because we do think we can show a, you know, as we argued in

22 response to the first motion to dismiss, there are other things

23 that we think this adviser has done in similar fashion that

24 show a pattern of activity of misleading the activity or

25 violating their duties under state law, for example, but using

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-8    Filed 09/04/31 12    Page 117 of 125    PageID 7739

104

1   the interstate wires to accomplish that.

2          We do believe we can plead that, but we agreed with

3   their lead argument that if we succeed on Count 1 then we don't

4   have a RICO.

5          THE COURT:  Okay.  But what is the efficiency in

6   taking it out now without prejudice to reasserting it?  Where's

7   the judicial economy and efficiency there?

8          MR. SBAITI:  I guess what we're asking for, Your

9   Honor, is either a dismissal for, well, allowing us to re-plead

10  to meet the other issues that they talked about, which is the

11  further, you know, is there an actual (indiscernible).

12      Rather than brief that all the way, we saw the argument

13  that they've cited which they didn't bring in their first

14  motion, but we saw the argument that they were making, "Well,

15  these two can't co-exist.  You can't have a Securities Act

16  claim and a RICO claim."  We agree.  So if we win our Advisers

17  Act claim, RICO claim goes away.  We agree with that.

18      If we don't though, we should be allowed to re-plead

19  because we disagreed with everything else he said.  I think we

20  do have, we do meet 9(b), but we should have an opportunity to

21  plead the other acts that we believe make this part of a

22  (indiscernible).

23          THE COURT:  Okay, thank you.

24          All right, Mr. Morris, you have seven minutes.

25          MR. MORRIS:  Okay.  To try to get to this as quickly

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 38    Filed 09/05/2011    Page 118 of 125    PageID 7740

105

1  as I can, first of all, Your Honor, to the extent that Mr.

2  Sbaiti is suggesting that there is more claims to come, I'll

3  just remind him in court that the administrative bar date

4  passed a year and a half ago.

5          Going to Section 6.1, there is not two readings of

6  this.  There's nothing irrational about the plain words that

7  are on this page.  It says other than to an affiliate of an

8  initial member.  It doesn't say other than to an affiliate.  It

9  says other than to an affiliate of an initial member.

10         And it makes absolute perfect sense.  Just look at

11  the percentages of the interests that were held at the time

12  this agreement was entered into.  HarbourVest had almost but

13  not quite 50 percent and every entity and person controlled by

14  Mr. Dondero, the majority.

15         Mr. Dondero was in control.  He didn't care if, you

16  know, it was never going to happen under his watch that somehow

17  somebody was going to transfer something to HarbourVest.  He

18  was always going to be in control, so it didn't matter to him.

19         It didn't matter to him how among the members it was

20  transferred because the one thing he knew was not going to

21  happen was that he was not going to lose control.  I guess he

22  just didn't foresee the bankruptcy two years later.  But that's

23  perfectly consistent with this.

24         What this provision does say is that we're keeping

25  this in the family.  We're keeping this among ourselves and

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 28   Filed 09/06/2311   Page 119 of 125   PageID 7741

106

1   we're not letting anybody in who's not already here.  Because

2   dealing with the people who are already here, he knew he would

3   always be in control and that's perfectly consistent with the

4   way this is drafted.

5            The language is unambiguous, "other than to an

6   affiliate of an initial member."  That is exactly what this

7   transaction did.  It transferred HarbourVest's interests.

8   HarbourVest was a member.  It transferred HarbourVest interest.

9   They sold, they assigned, they transferred, actually, the word

10  is "transfer."

11           HarbourVest is the member who transferred its

12  interest to an affiliate of an initial member.  Highland is the

13  initial member.  Actually, Your Honor had it right before

14  because HarbourVest actually acquired its interest from CLO

15  Holdco, so you were right.  I don't know that HarbourVest was

16  an initial member, but I know Highland was.  I know HarbourVest

17  was a member.  But these provisions say --

18           THE COURT:  Yeah.  And again, I'm not counting -- I

19  had thought it came along, you know, a couple years down the

20  road but, you know, shortly --

21           MR. MORRIS:  You may be right.

22           THE COURT:  -- shortly before the whole Acis.  But

23  anyway, but I guess Mr. Sbaiti's wanting me to read this

24  parenthetical in 6.2 as other than transfers from --

25           MR. MORRIS:  To an affiliate.

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 18   Filed 09/07/03   Page 120 of 125   PageID 7742

107

1        THE COURT:  -- an initial member to its own

2   affiliate.  And that's, it's not worded that way.

3        MR. MORRIS:  It's not what it says.

4        THE COURT:  Yeah.

5        MR. MORRIS:  It's just not what it says.  It may be

6   what they wish it said today, but that doesn't -- you can't

7   just change a contract to make it say what you wished it did.

8   This is the contract that they drafted.  This is Dondero's

9   contract.

10       It says other than to an affiliate of an initial

11  member.  And it's kind of irrelevant as to whether HarbourVest

12  was an initial member.  The important point is that Highland

13  was an initial member and HarbourVest was a member.  So the

14  member HarbourVest transferred its interest to an affiliate of

15  an initial member.  Period, full stop.  It was permitted under

16  6.1 and the ROFR doesn't apply under 6.2.

17       Number two, next, the concept of rescission is a

18  euphemistic term, okay.  It's not like what Mr. -- because, you

19  know, if Mr. Sbaiti was right and we were trying to undo it and

20  put everybody back to where they were, his clients would have

21  to take on $300 million of liability.

22       You don't just get to take the interest.  The whole

23  thing was part of a transaction.  He forgot the 300 million

24  dollar debt.  Let's go to Section 215.  215 is not anywhere in

25  the complaint, okay, but the important point here is what does

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-8    Filed 09/08/2011    Page 121 of 125    PageID 7743

108

1   215 say?

2          If you go back to the Nexpoint case from the Southern

3   District of New York, it says that every contract made in

4   violation of a provision of the Investment Advisers Act shall

5   be void.  Period.  Full stop.  It doesn't have other remedies.

6   It doesn't mean that the plaintiffs here get money.

7          In fact, I would argue that they don't even have

8   standing to pursue this under 215.  They are not party to the

9   agreement.  How do they even have the ability to come in?

10  There's no case that Mr. Sbaiti can cite to.  No court has ever

11  said a nonparty to the agreement can come in and somehow try to

12  void it.

13         No case in the history of the world has ever said

14  that a third party who's not party to the agreement cannot only

15  come in and void the agreement but somehow benefit from it.

16  They're nobody.  Like the plaintiffs are nobody here.  The

17  agreement that they signed said that Highland that they didn't

18  have a right of first refusal.

19         The agreement that the court approved was an

20  agreement between Highland and HarbourVest.  If there's a

21  misrepresentation as to the price, maybe HarbourVest has a

22  complaint.  I don't know what their remedies would be.  I'm not

23  saying they do, but they're not here.

24         Who are the plaintiffs?  What on earth gives them the

25  right to come in here and say they should have that contract,

Case 21-03067-sgj    Doc 164    Filed 02/21/23    Entered 02/21/23 18:20:32    Desc Main
Case 3:23-cv-01503-B    Document 8-8    Filed 09/09/2011    Page 122 of 125    PageID 7744

109

1    they should have that benefit without, of course, the

2    liability?  There's nothing.  It's prohibited under the

3    members' agreement.

4            It's permitted under the advisory agreement.  No

5    fiduciary duty at all.  How can you breach a fiduciary duty

6    when all you're doing is complying with the terms of the

7    parties' agreement?  There's no connection between 215 and 206,

8    like he said.

9            There's no case that's ever said that.  Just take a

10    look at the Nexpoint case from the Seventh District of New

11    York.  It says a plaintiff may only pursue a remedy, may only

12    pursue a claim to avoid the contract, right.  That's all there

13    is to it.

14            And so again, you can't just unwind the portion of

15    the contract that they're really interested in.  You can't just

16    say Highland has to give back its interest.  That means that

17    Highland also has to pay back the 300 million-dollar liability.

18    Where is HarbourVest here?  How come HarbourVest doesn't have

19    notice?  How come -- think about how HarbourVest's rights would

20    be impacted from what the plaintiffs are saying here.

21            They need to be at the table.  They're the biggest

22    party of interest of all.  They thought this was in their

23    rearview mirror.  They wanted to get out of here.  And now

24    we're going to -- you can't just unwind part of a contract.

25    You have to unwind the whole contract.

1           This is so much, this is so untenable, Your Honor,

2    that it really needs to be dismissed with prejudice.  I think

3    that's all I have.  I mean there's no -- you know, the remedies

4    that are being suggested now, they're not in the pleading.  But

5    how, I just ask the Court to consider where's HarbourVest?

6           How do you unwind the piece of the transaction and

7    not the only full transaction?  Where does the plaintiff who

8    agreed that it wouldn't have a right of first refusal, who

9    agreed that Highland could pursue transactions on its own

10   without notice of the other side, how do they come in here and

11   try to undo a piece that they want?  They can't.

12          Complaint should be dismissed with prejudice, Your

13   Honor.  Thank you very much.

14          THE COURT:  All right.  Thank you all.

15          Well, I'm obviously going to take this one under

16   advisement and read all of your cases and pleadings.  And I

17   feel like I'm becoming a broken record on that sentence.  Right

18   now let's see where we are under Highland advisements.

19          We have the written ruling I need to do on the motion

20   to conform plan to be consistent with the Fifth Circuit.  We

21   have the HCRE proof of claim trial.  And then we have the

22   motion, the renewed motion to recuse me, and then now we're

23   going to have this, okay?

24          So that's going to be four Highland matters under

25   advisement.  All I can tell you is we've had a brutal December

Case 21-03067-sgj   Doc 164   Filed 02/21/23   Entered 02/21/23 18:20:32   Desc Main
Case 3:23-cv-01503-B   Document 6-33   Filed 09/11/2311   Page 124 of 125   PageID 7746

111

1  and January with things under advisements, trials, and

2  different court commitments of all different kinds.  So I hope

3  we can have a very productive rest of January and February and

4  March.

5         Inside baseball, judges, they tend to look at March

6  31st and September 30th as important catch-up days because we

7  do these reports of how many things you have under advisement

8  to our circuit courts.  And I'm just giving you that inside

9  baseball to let you know I really anticipate catching up on

10  some of these things before that looming deadline.  But

11  hopefully, hopefully sooner.

12         And, of course, the report and recommendation I

13  should have that out in a few days because I need to get that

14  squared away, I feel like with the district court, especially

15  since a different district judge is now in that loop because of

16  what I think was a mess up between the clerk's offices.

17         So anyway --

18         MR. MORRIS:  They've been pretty good about moving

19  them when we've asked, Your Honor, as well.  So maybe we can

20  file something.

21         THE COURT:  Okay.  All right.  But just circling

22  back, the report and recommendation I should have out in a few

23  days.  But there may be a little bit of waiting on the ruling

24  on the motion to dismiss.

25         All right.  Is there anything else as far as

112

1  housekeeping?

2          MR. MORRIS:  Just thank you very much, Your Honor.  I

3  know this was a long day.  We appreciate your diligence, as

4  always, and for your time.

5          THE COURT:  Okay.  All right.

6          MR. SBAITI:  Thank you for your time, Your Honor.

7          THE COURT:  Okay.  Thank you.  We're adjourned.

8          THE CLERK:  All rise.

9      (Proceedings concluded at 4:35 p.m.)

10                      * * * * *

11

12

13              **C E R T I F I C A T I O N**

14          I, DIPTI PATEL, court approved transcriber, certify

15  that the foregoing is a correct transcript from the official

16  electronic sound recording of the proceedings in the above-

17  entitled matter, and to the best of my ability.

18

19  /s/ Dipti Patel

20  DIPTI PATEL, CET-997

21

22  LIBERTY TRANSCRIPTS              DATE: January 26, 2023

23

24

007176