Case No. 3:23-cv-1503-B

---

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

---

In re: HIGHLAND CAPITAL MANAGEMENT, L.P.,

                Reorganized Debtor.

---

CHARITABLE DAF FUND, L.P. and CLO HOLDCO, LTD., directly and derivatively,

                Appellants,

     v.

HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., and
HIGHLAND CLO FUNDING, LTD., nominally,

                Appellees.

---

On Appeal from the United States Bankruptcy Court for the Northern
District of Texas, Dallas Division, Adv. Pro. No. 21-03067-sgj
Hon. Stacey G. C. Jernigan

---

## APPELLEE'S BRIEF

---

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    ISSUES PRESENTED.................................................................................................2

II.    STANDARD OF REVIEW .......................................................................................2

    A.    Judicial Estoppel ..........................................................................................2

    B.    Dismissal Under FRCP 12(b)(6)..................................................................3

III.    STATEMENT REGARDING ORAL ARGUMENT................................................3

IV.    SUMMARY OF ARGUMENT ................................................................................3

V.    COUNTERSTATEMENT OF THE CASE...............................................................6

    A.    The Bankruptcy Case ...................................................................................6

    B.    The HarbourVest Settlement.........................................................................8

    C.    CLOH Objects to the Settlement Motion...................................................10

    D.    Appellants File the Complaint; the Bankruptcy Court Dismisses It.....................12

    E.    HCM Files the Renewed MTD; Complaint Is Dismissed ...................................14

    F.    Appellants Appeal the Order ......................................................................16

VI.    ARGUMENT..........................................................................................................17

    A.    The Bankruptcy Court Correctly Found that Judicial Estoppel Bars Counts 2 and 5....................................................................................................17

    B.    The Bankruptcy Court Correctly Found that the Complaint Fails to State Claims Under FRCP 12(b)(6) .............................................................23

        1.    Appellants Fail to Plead a Breach of Fiduciary Duty in Count 1 .............23

        2.    Appellants Fail to Plead a Breach of Contract Claim in Count 2 .............36

        3.    Appellants Fail to Plead a Claim for Negligence in Count 3....................38

        4.    The Bankruptcy Court Properly Dismissed Count 4 (RICO) with Prejudice ........................................................................................40

        5.    Appellants Fail to Plead Tortious Interference in Count 5 ......................41

    C.    Appellants Request to Amend Under FRCP 15 Is Procedurally Improper ..........42

    D.    Appellants' Request for Reconsideration of the Withdrawal Order Is Procedurally Improper .............................................................................46

VII.    CONCLUSION......................................................................................................46

## TABLE OF AUTHORITIES

**Page**

### CASES

*1st & Trinity Super Majority, LLC v. Milligan*,
    657 S.W.3d 349 (Tex. App. 2022) ................................................................................. 42

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 23

*Belmont v. MB Inv. Partners*,
    708 F.3d 470 (3d Cir. 2013) ........................................................................................... 35

*Blankship v. Buenger*,
    653 F. Appx. 330 (5th Cir. 2016) ................................................................................... 32

*Brandon v. Interfirst Corp.*,
    858 F.2d 266 (5th Cir.1988) ........................................................................................... 18

*C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*,
    61 F.3d 288 (5th Cir. 1995) ............................................................................................ 23

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
    2022 Bankr. LEXIS 2780 (Bankr. N.D. Tex. Sept. 30, 2022) ................................... 43, 45

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
    643 B.R. 162 (N.D. Tex. 2022) .................................................................................. passim

*CLO Holdco Limited v. Highland CLO Funding Limited*,
    [2023] GRC061 (Roy. Court of Guernsey 1 Dec. 2023) ............................................... 33

*CLO Holdco, Ltd. v. Kirschner (In re Highland Cap. Mgmt., L.P.)*,
    2023 U.S. Dist. LEXIS 87842 (N.D. Tex. May 18, 2023) ............................................. 44

*Corwin v. Marney, Orton Inv.*,
    788 F.2d 1063 (5th Cir. 1986) ........................................................................................ 26

*Douglass v. Beakley*,
    900 F. Supp. 2d 736 (N.D. Tex. 2012) ...................................................................... 34, 35

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
    2022 U.S. Dist. LEXIS 185186 (N.D. Tex. Sept. 26, 2022) .......................................... 10

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
    2023 U.S. App. LEXIS 19671 (5th Cir. Jul. 31, 2023) .................................................. 10

*Dugaboy Inv. Trust v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351 (N.D.
Tex. Sept. 22, 2022), *aff'd* 2023 U.S. App. LEXIS 19553 (5th Cir. Jul. 28, 2023) ......... 30

*Eubanks v. FDIC*,
977 F.2d 166 (5th Cir. 1992) ......................................................................................... 44

*Gabarick v. Laurin Mar. (Am.) Inc.*,
753 F.3d 550 (5th Cir. 2014) ......................................................................................... 18

*Goldenson v. Steffens*,
2014 U.S. Dist. LEXIS 201258 (D. Me. Mar. 7, 2014)................................................. 32

*Goldstein v. SEC*,
451 F.3d 873 (D.C. Cir. 2006) ....................................................................................... 31

*Grigsby v. CMI Corp.*,
765 F.2d 1369 (9th Cir.1985) ........................................................................................ 25

*Holstein v. Brill*,
987 F.2d 1268(7th Cir. 1993) ........................................................................................ 44

*In re Al Copeland Enters., Inc.*,
991 F.2d 233 (5th Cir. 1993) ......................................................................................... 42

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
258 F. Supp. 2d 576 (S.D. Tex. 2003) ........................................................................... 25

*In re Kolstad*,
928 F.2d 171 (5th Cir. 1991) .................................................................................... 5, 44

*In re Linn Energy, L.L.C.*,
927 F.3d 862, 866-67 (5th Cir. 2019) ........................................................................... 39

*In re Romano*,
350 B.R. 276 (Bankr. E.D. La. 2005) ........................................................................... 34

*In re Soporex, Inc.*,
463 B.R. 344 (Bankr. N.D. Tex. 2011)........................................................................... 34

*Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*,
258 F.3d 385 (5th Cir. 2001) ......................................................................................... 43

*Jethroe v. Omnova Sols., Inc.*,
412 F.3d 598 (5th Cir. 2005) ................................................................................... 18, 20

*Kahn v. Kohlberg, Kravis, Roberts, & Co.*,
970 F.2d 1030 (2d Cir. 1992).......................................................................................... 29

*Laird v. Integrated Res.*,
897 F.2d 826 (5th Cir. 1990) ......................................................................................... 34

*Little v. KPMG LLP*,
2008 U.S. Dist. LEXIS 26281 (W.D. Tex. Jan. 22, 2008) ............................................ 37

*Love v. Tyson Foods, Inc.*,
   677 F.3d 258 (5th Cir. 2012) ................................................................. 2, 19

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
   2022 U.S. App. LEXIS 31958 (5th Cir. Nov. 18, 2022) ................................ 40

*NexPoint Adv., L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
   48 F.4th 419 (5th Cir. 2022) ......................................................... 8, 39, 45

*NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*,
   2023 U.S. App. LEXIS 23756 (2nd Cir. Apr. 25, 2023) ................... 27, 28, 29, 35

*NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.*,
   620 F. Supp. 3d 36 (S.D.N.Y. 2022) ........................................................ 32

*Omega Overseas Partners, Ltd. v. Griffith*,
   2014 U.S. Dist. LEXIS 109781 (S.D.N.Y. Aug. 7, 2014) ............................. 29

*Pridgin v. Safety-Kleen Corp.*,
   2021 U.S. Dist. LEXIS 240210 (N.D. Tex. Dec. 16, 2021) ........................... 33

*Reading Co. v. Brown*,
   391 U.S. 471 (1968) ....................................................................... 42, 43

*Rodgers v. City of Lancaster Police*,
   2017 U.S. Dist. LEXIS 14588 (N.D. Tex. Jan. 6, 2017) ............................... 39

*SEC v. ABS Manager, LLC*,
   2014 U.S. Dist. LEXIS 80542 (S.D. Cal. Jun. 11, 2014) .............................. 32

*SEC v. Cap. Gains Rsch. Bureau, Inc.*,
   375 U.S. 180 (1963) ........................................................................... 30

*SEC v. Markusen*,
   143 F. Supp. 3d 877 (D. Minn. 2015) ....................................................... 32

*SEC v. Northshore Asset Mgmt.*,
   2008 U.S. Dist. LEXIS 36160 (S.D.N.Y. May 5, 2008) ............................... 31

*SEC v. Tambone*,
   550 F.3d 106 (1st Cir. 2008) vacated, 597 F.3d 436 (1st Cir. 2010) ............... 32

*SEC v. Trabulse*,
   526 F. Supp. 2d 1008 (N.D. Cal. 2007) .................................................... 31

*Sivertsen v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*,
   390 F. Supp. 3d 769 (E.D. Tex. 2019) ..................................................... 39

*Snowden v. Wells Fargo Bank, N.A.*,
   2019 WL 587304 (N.D. Tex. Jan. 18, 2019), *adopted by* 2019 U.S. Dist. LEXIS 22982 (N.D. Tex. Feb. 12, 2019) ............................................................. 37

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ............................................................................... 24, 25

*Specialties of Mexico Inc. v. Masterfoods USA*,
    2010 U.S. Dist. LEXIS 58782 (S.D. Tex. June 14, 2010) ................................. 42

*Steadman v. SEC*,
    603 F.2d 1126 (5th Cir. 1979) .............................................................................. 35

*Stripling v. Jordan Prod. Co., LLC*,
    234 F.3d 863 (5th Cir. 2000) ................................................................................... 3

*Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*,
    374 F.3d 330 (5th Cir. 2004) ....................................................................... 18, 20

*T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*,
    2008 U.S. Dist. LEXIS 112613 (S.D. Tex. May 22, 2008) ............................... 24

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
    2004 U.S. Dist. LEXIS 27582 (N.D. Tex. Nov. 15, 2004) ............................... 24

*Town North Bank, N.A. v. Shay Fin. Servs.*,
    2014 U.S. Dist. LEXIS 137551 (N.D. Tex. Sep. 30, 2014) ............................. 25

*Transamerica Mtg. Advisors, Inc. (TAMA) v. Lewis*,
    444 U.S. 11 (1979).................................................................................. 26, 27, 28, 29

*Tuchman v. DSC Commc'ns Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ................................................................................ 25

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
    798 F.3d 265 (5th Cir. 2015) ........................................................................... 2, 20

*United States v. McCaskey*,
    9 F.3d 368 (5th Cir.1993) ...................................................................................... 18

*Villarreal v. Showalter (In re Villarreal)*,
    413 B.R. 633 (Bankr. S.D. Tex. 2009) ............................................................... 34

*WickFire, L.L.C. v. Woodruff*,
    989 F.3d 343 (5th Cir. 2021) ................................................................................ 41

## **STATUTES**

11 U.S.C. § 1141 .............................................................................................................. 7, 45

11 U.S.C. § 503 ................................................................................................................... 43

11 U.S.C. § 507 ................................................................................................................... 43

15 U.S.C. § 80b-15 ...................................................................................................... passim

15 U.S.C. § 80b-15(a) ................................................................................................ 38

15 U.S.C. § 80b-6 ............................................................................................... passim

17 CFR §240.10b-5 ............................................................................................ 15, 24

18 U.S.C. § 1964 ....................................................................................................... 40

Federal Rule of Civil Procedure 12(b)(6) ......................................................... passim

Federal Rule of Civil Procedure 15(a) .............................................................. passim

Federal Rule of Civil Procedure 41(a) ............................................................... 16, 40

Federal Rule of Civil Procedure 60 ............................................................... 6, 45, 46

Federal Rule of Civil Procedure 9(b) ................................................................. 16, 24

## OTHER AUTHORITIES

*Prohibition on Fraud by Advisers to Certain Pooled Investment Vehicles*,
    Release No. IA-2628; File No. S7-25-06 (Aug. 3, 2007) ................................ 31

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellee Highland Capital Management, L.P. is a limited partnership, the general partner of which is HCMLP GP LLC, a privately held limited liability company. No publicly held corporation owns 10% or more of the interests in either entity.

# I.   ISSUES PRESENTED

1.   Whether the Bankruptcy Court properly exercised its discretion by determining that Counts 2 and 5 were barred by judicial estoppel where such determination was based on, *inter alia*, the Bankruptcy Court's factual finding that Appellants' "inconsistent positions regarding the 'Right of First Refusal' under the Members Agreement would appear, by any plausible measure, to be deliberate, directed, and ***not inadvertent***"?

2.   Whether the Bankruptcy Court properly dismissed all Counts pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to plausibly state a claim?

# II.   STANDARD OF REVIEW

## A.   Judicial Estoppel

A finding of judicial estoppel is reviewed for "abuse of discretion." *See, e.g., U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015); *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 169 (N.D. Tex. 2022). A court abuses its discretion only if it: "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (internal quotations omitted). "Deference … is the hallmark of abuse-of-discretion." *Id.*

## B.   Dismissal Under FRCP 12(b)(6)

"An appellate court reviews a dismissal under Rule 12(b)(6) de novo." *Charitable DAF Fund, L.P.*, 643 B.R. at 169; *see also Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 868 (5th Cir. 2000) (same).

## III.   STATEMENT REGARDING ORAL ARGUMENT

The issues on appeal are straightforward. Appellee does not believe oral argument would assist the Court.

## IV.   SUMMARY OF ARGUMENT[1]

This is the second appeal brought by Appellants—two entities controlled by James Dondero, HCM's ousted founder—to overturn the dismissal of their Complaint alleging that HCM and its management violated their alleged fiduciary duties to Appellants under the Investment Advisers Act (the "IAA") by entering into a settlement approved by the Bankruptcy Court in early 2021 after Appellants knowingly and intentionally withdrew their objection to the settlement.

On June 25, 2023, the Bankruptcy Court granted the Renewed MTD finding judicial estoppel barred Counts 2 and 5 and all Counts failed to state a claim. This Appeal followed. The Bankruptcy Court's order should be affirmed.

***First***, after making detailed findings of fact based on the clear factual record before it, the Bankruptcy Court correctly found that the last necessary element for

---

[1] Capitalized terms used but not defined in this section have the meanings given to them below.

judicial estoppel—inadvertence—was satisfied by Appellants' "inconsistent positions regarding the 'Right of First Refusal' under the Members Agreement" which "would appear, by any plausible measure, to be deliberate, directed, and ***not inadvertent***" and that Count 2 (Breach of Contract) and Count 5 (Tortious Interference) were therefore barred by judicial estoppel.

***Second***, the Bankruptcy Court properly dismissed all Counts for failure to state a claim under FRCP 12(b)(6):

- Count 1 (Breach of Fiduciary Duty): Clear Supreme Court precedent bars Appellants' claims under the IAA. Appellants failed to plead the required elements for a Rule 10(b)(5) claim. Finally, Appellants did not plead a state (or Guernsey) law breach of fiduciary duty claim (nor could they).

- Count 3 (Negligence): The confirmed Plan bars Count 3 because it exculpated HCM for "conduct occurring on or after" the Petition Date arising from the "administration of the Chapter 11 Case" unless such claims constituted bad faith, gross negligence, or criminal or willful misconduct. Moreover, Appellants failed to plead the required elements of a negligence claim.

- Count 4 (RICO): After finding Appellants' attempt to withdraw and preserve their RICO claim was procedurally improper, the Bankruptcy Court correctly found that the RICO Count failed to plead any required element and was

predicated on a securities law violation and therefore barred by the RICO statute.

In addition to being barred by judicial estoppel, the Bankruptcy Court also properly found that Counts 2 and 5 failed to state a claim. Count 2 was premised on HCM's alleged failure to honor the ROFR, but, as the Bankruptcy Court found based on the Members Agreement's "plain and unambiguous" terms, the ROFR did not apply to the Settlement. Count 5, alleging HCM tortiously interfered with the ROFR, is duplicative of Count 2 and failed because Appellants had no ROFR (or other contractual right) for HCM to interfere with.

**Third**, Appellants' request to amend under FRCP 15(a) is procedurally improper. Each Count in the Complaint asserts that HCM violated its fiduciary, contractual, and other obligations to Appellants during the Bankruptcy Case while HCM was a debtor-in-possession. Appellants concede, as they must, that such conduct creates an "administrative claim" against HCM's estate, *i.e.* a bankruptcy claim. Amendment of a bankruptcy claim is not governed by FRCP 15(a). Instead, it requires assessing, *inter alia*, (a) if the claimant is attempting to assert a "new" claim that could not have been foreseen from the earlier claim and (b) the prejudice caused by the delay. *See, e.g., In re Kolstad*, 928 F.2d 171, 176 n.7 (5th Cir. 1991). Appellants have not pled *Kolstad* nor could they ever satisfy it.

**Fourth**, Appellants seek reconsideration of the order denying their Motion to Withdraw *if* the Order is overturned. That request is procedurally improper; reconsideration requires a standalone motion under FRCP 60. Appellants' request is also not ripe; this Court has not yet overturned the Order (nor is it likely to do so).

## V.    COUNTERSTATEMENT OF THE CASE

### A.    The Bankruptcy Case

On October 16, 2019 (the "Petition Date"), Highland Capital Management, L.P. ("HCM"), filed a voluntary petition for relief under chapter 11 of the U.S. Bankruptcy Code (the "Bankruptcy Case"). The Bankruptcy Case is pending in the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

On January 9, 2020, James Dondero, HCM's founder and former CEO, agreed to be removed from all control positions at HCM because of concerns about his ability to function as an estate fiduciary. The Bankruptcy Court approved the appointment of an independent board to manage the Bankruptcy Case and estate. [B.D.I. 339].[2]

On February 22, 2021, the Bankruptcy Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [B.D.I. 1943] (the "Confirmation

---

[2] "B.D.I." refers to the docket maintained by the Bankruptcy Court in Case No. 19-34054-sgj11.

Order"), which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [B.D.I. 1943-1] (the "Plan").

On August 11, 2021, the Plan became effective [B.D.I. 2700] (the "Effective Date"). Pursuant to the Plan, (a) the deadline for filing administrative claims against the estate was September 25, 2021 (forty-five (45) days after the Effective Date (ROA.2387), and, (b) subject only to timely filed administrative claims, claims arising prior to the Effective Date were discharged pursuant to 11 U.S.C. § 1141 (ROA.2432).

Moreover, the Plan also exculpated HCM "for conduct occurring on or after the Petition Date in connection with or arising out of (i) the … administration of the Chapter 11 Case … and (v) any negotiations, transactions, and documentation in connection with the foregoing" unless such conduct constituted "bad faith, gross negligence, criminal misconduct, or willful misconduct" (ROA.2432-33).

On September 7, 2022, the Fifth Circuit Court of Appeals affirmed, *inter alia*, the exculpation and discharge provisions as to HCM. *NexPoint Adv., L.P. v.*

*Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 433-34, 438 (5th Cir. 2022); *see also Charitable DAF*, 643 B.R. at 176.[3]

## B.   The HarbourVest Settlement

Highland CLO Funding, Ltd. ("HCLOF") is a Guernsey-based investment vehicle managed by its Guernsey-based board of directors. Highland HCF Advisors, Ltd. ("HCFA"), a wholly owned subsidiary of HCM, is HCLOF's portfolio manager. Notwithstanding Appellants' unsupported assertions, HCLOF has been controlled at all relevant times by its Guernsey-based directors who are unaffiliated with HCM. HCFA's role is limited to advising on the liquidation of HCLOF's portfolio.

Prior to the Bankruptcy Case, HarbourVest[4] invested approximately $80 million in HCLOF, which was then managed by Dondero-controlled HCM. Following the investment, CLO Holdco, Ltd. ("CLOH"),[5] held 49.02% of HCLOF's interests, HarbourVest held 49.98%, and HCM and certain HCM employees held the remaining 1%. HarbourVest filed claims in the Bankruptcy Case exceeding $300

---

[3] Writs of Certiorari have been filed with the United States Supreme Court. HCM seeks review of the ruling limiting the exculpation provision to HCM, the independent board, and the official committee of unsecured creditors and its members (No. 22-631). NexPoint Advisors, L.P. (a Dondero-entity) seeks review of the grant of exculpation to the independent board (No. 22-669). A separate appeal is pending in the Fifth Circuit pursuant to which certain Dondero affiliates also appealed the Bankruptcy Court's order [B.D.I. 3672] conforming the Confirmation Order to the Fifth Circuit's opinion. Case No. 23-10534 (5th Cir. 2023).

[4] "HarbourVest" means, collectively, HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P.

[5] CLOH is a wholly owned subsidiary of Appellant Charitable DAF Fund, L.P. (the "DAF"). B.D.I. 2547 ¶ 18; ROA.67. The DAF was formed in 2011 by Mr. Dondero.

million, alleging that Dondero and certain of his employees fraudulently induced it into making the investment and engaged in other wrongful conduct. ROA.3887-3945.

On December 23, 2020, HCM filed its motion [B.D.I. 1625] (the "Settlement Motion") seeking Bankruptcy Court approval of its settlement of all HarbourVest's claims (the "Settlement"). ROA.3947-79. Pursuant to the Settlement, HarbourVest's investment in HCLOF was to be effectively rescinded with HarbourVest receiving allowed claims against HCM in the approximate amount of its investment in HCLOF and transferring its interest in HCLOF to an HCM affiliate.

The Settlement Motion disclosed all aspects of the Settlement and Transfer, including (i) the amount and priority of HarbourVest's allowed claims against HCM; (ii) the identity of the HCLOF interests and that they were being transferred to an HCM affiliate; and (iii) the valuation (and method of valuation) of the transferred interests. *Id.*

Contrary to Appellants' assertions, pursuant to the Settlement, the HCLOF interests were not transferred to HCM. HarbourVest was always required to transfer the HCLOF interests directly to an HCM affiliate in a one-step transaction. ROA.65-66. ("HarbourVest did not 'offer' its … interest in HCLOF to [HCM]. Rather, a component of the [Settlement] was for HarbourVest to transfer its membership interest in HCLOF to [HCM's] nominee ….")

## C.      **CLOH Objects to the Settlement Motion**

On January 8, 2021, CLOH objected to the Settlement [B.D.I. 1707] (ROA.4008-17) (the "Objection")[6] challenging HarbourVest's right to effectuate the Settlement, including the transfer of the HCLOF interests, and contending CLOH had a "Right of First Refusal" (the "ROFR") to those interests under the Members Agreement. In its Objection, CLOH offered a lengthy, but faulty, analysis of the applicability of the ROFR to the Settlement. *See* ROA.4011-16.

CLOH and Dondero conducted discovery under Bankruptcy Rule 9014(c) and deposed Michael Pugatch, HarbourVest's representative [B.D.I. 1705]. ROA.4019-72.

On January 13, 2021, HCM filed its reply [B.D.I. 1731] (ROA.4074-95), which demonstrated that the ROFR did not apply to the Settlement. ROA.4087-93.

At the January 14, 2021, hearing on the Settlement, CLOH *voluntarily withdrew* its Objection after considering HCM's analysis of the Members Agreement and applicable law. CLOH's counsel unequivocally and advertently stated:

> CLO Holdco has had an opportunity to review the reply briefing, and after doing so has gone back and scrubbed the HCLOF corporate documents. ***Based on our analysis of Guernsey law and some of the***

---

[6] Dondero and his family trusts also objected to the Settlement. B.D.I. 1697; 1706. After their objections were overruled, they appealed but their appeals were dismissed for lack of standing. *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. Dist. LEXIS 185186 (N.D. Tex. Sept. 26, 2022); *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. App. LEXIS 19671 (5th Cir. Jul. 31, 2023).

> *arguments of counsel on those pleadings and our review of the*
> *appropriate documents, I obtained authority from my client*, Grant
> Scott, as trustee for CLO Holdco, *to withdraw the CLO Holdco*
> *objection based on the interpretation of the Members Agreement*.

ROA.4104 (emphasis added).

HCM called two witnesses in support of the Settlement Motion—its court-appointed CEO, James P. Seery, Jr., and Pugatch. Dondero and his family trusts cross-examined HCM's witnesses but failed to inquire about the value of the HCLOF interests, HCM's purported fiduciary obligations, or the various components of the Settlement. ROA.4158-88; 4209-37. Relying on CLOH's withdrawal of its Objection, and the evidence admitted at the hearing, the Court overruled the remaining objections and approved the Settlement, including the transfer of the HCLOF interests [B.D.I. 1788] (the "Settlement Order"). ROA.4246-53, 4271-74; *Charitable DAF*, 643 B.R. at 174.

Consistent with the Settlement Agreement, the Settlement Order *expressly* authorized the transfer of HarbourVest's interest in HCLOF directly to an HCM subsidiary providing, in relevant part, that "[p]ursuant to the express terms of the [Members Agreement] … HarbourVest is authorized to transfer its interest in HCLOF to a wholly-owned and controlled subsidiary of [HCM] … without the need to obtain the consent of any party or to offer such interests first to any other investor in HCLOF." ROA.61, 78, 4274.

**D.**    **Appellants File the Complaint; the Bankruptcy Court Dismisses It**

On April 12, 2021, Appellants—with a new trustee and counsel—commenced this action by filing the *Original Complaint* (ROA.103-28) (the "Complaint") in this Court. The Complaint asserts five causes of action (the "Counts"):

- Count 1 alleges HCM violated its "broad" fiduciary duties to Appellants under the IAA by: (a) "insider trading with HarbourVest"; (b) "concealing" the value of the HCLOF interests; and (c) "diverting" the investment opportunity in HCLOF to HCM without first offering it to Appellants.

- Count 2 alleges breach of the Members Agreement by failing to offer CLOH the HCLOF interests as Appellants allege was required by the ROFR.

- Count 3 alleges HCM negligently breached its duties to Appellants under the IAA by, among other things, miscalculating the value of the HCLOF interests and breaching the ROFR.

- Count 4 alleges HCM and the other defendants violated RICO by failing to disclose the "true" value of the HCLOF interests and by transferring those interests to HCM's affiliate.

- Count 5 alleges HCM tortiously interfered with Appellants' ROFR.

ROA.113-26.

On May 19, 2021, HCM filed a motion to enforce this Court's *Miscellaneous Order No. 33* (ROA. 232-39), and, on May 27, 2021, its *Motion to Dismiss*

*Complaint* (the "Original MTD") (ROA.1196-1202). On September 20, 2021, this Court referred this action, including the Original MTD, to the Bankruptcy Court for adjudication. ROA.2877.

On March 11, 2022, the Bankruptcy Court issued its order dismissing the Complaint based on collateral and judicial estoppel. ROA.3585-3610. Appellants appealed. ROA.3637-3655. This Court reversed in part and remanded. *Charitable DAF*, 643 B.R. at 177. This Court found the Complaint was not barred by collateral estoppel. *Id.*, at 173. With respect to judicial estoppel, this Court determined that, although the Bankruptcy Court properly found that the first two elements of judicial estoppel were satisfied, the Bankruptcy Court did not address whether Appellants' inconsistent position was "inadvertent" and remanded solely for the Bankruptcy Court to make that determination. *Id.*, at 175 ("[T]he district court finds no issue in the bankruptcy court's analysis of the first two elements of judicial estoppel, [but] the bankruptcy court did not address this third element, warranting remand for determination … whether [Appellants] acted inadvertently to change its legal position.")

**E.**   **HCM Files the Renewed MTD; Complaint Is Dismissed**

Following remand, on October 14, 2022, HCM renewed its motion to dismiss (ROA.3844-81) (the "Renewed MTD") moving to dismiss Counts 2 and 5 on judicial estoppel grounds and all counts for failure to state a claim.[7]

On June 25, 2023, the Bankruptcy Court entered its order dismissing the Complaint (ROA.42-79) (the "Order"), finding Counts 2 and 5 were barred by judicial estoppel because the "inadvertence" element was satisfied and dismissing all Counts for failure to state a claim under FRCP 12(b)(6).

In its Order, the Bankruptcy Court made detailed factual findings regarding the "advertence" of Appellants' withdrawal of the Objection (which was premised on the applicability of the ROFR), including:

- Appellants "***knew*** of and analyzed the factual and legal issues underpinning Counts 2 and 5 when they unequivocally withdrew the CLO Holdco objection … [and Appellants'] acts were intentional based on the unrefuted record."[8]

---

[7] On November 18, 2022, Appellants filed a renewed motion to withdraw the reference in the Bankruptcy Court (ROA.4400-09) (the "Withdrawal Motion"). The Bankruptcy Court recommended to this Court that the Withdrawal Motion be denied (ROA.6925-41) (the "R&R"). On July 26, 2023, this Court denied the Withdrawal Motion as moot (Civ. Action No. 3:22-cv-2802-B, Docket No. 17 (N.D. Tex. Jul. 26, 2023)) (the "Withdrawal Order").

[8] The Bankruptcy Court also found that "[i]t is indisputable that the Plaintiff DAF is in privity with the Plaintiff CLO Holdco and therefore cannot argue that only CLO Holdco should be bound by judicial estoppel for filing and then withdrawing its objection." ROA.67. This finding was not challenged on appeal.

- Appellants' allegations that "they were not informed … that HarbourVest had offered its shares to [HCM] for $22.5 million" was both "irrelevant, but … also inaccurate and contradicted by the record" because the Settlement provided for HarbourVest to transfer its interests to HCM's affiliate and the estimated value of the interests was fully and publicly disclosed.

- Appellants had a "motive to take inconsistent positions on Counts 2 and 5." Appellants allowed HCM to bear the risk of loss on the HCLOF interests and only sought to acquire the interests after their value had crystalized.

ROA.64-66 (emphasis in original). Ultimately, the Bankruptcy Court found CLOH's "inconsistent positions regarding the 'Right of First Refusal' under the Members Agreement would appear, by any plausible measure, to be deliberate, directed, and **not inadvertent**. There can be no legitimate dispute that [Appellants'] conduct … was 'advertent.'" ROA.67 (emphasis in original).

The Bankruptcy Court also found all Counts failed to state a plausible claim as required by FRCP 12(b)(6).

- <u>Count 1 (Breach of Fiduciary Duty)</u>: Appellants' claim under the IAA was barred by Supreme Court precedent and Appellants otherwise failed to plead the elements required for a Rule 10b-5 claim and to allege any breach of fiduciary duty premised on Texas or Guernsey law. ROA.68-72.

- <u>Count 3 (Negligence)</u>: Appellants' claim was barred by the Plan's exculpation provision and, even if it were not, Appellants' "negligence allegations [were] speculative, conclusory, and fail[ed] to allege proximate cause." ROA.72.

- <u>Count 4 (RICO)</u>: Appellants' attempt to withdraw and preserve their RICO Count was procedurally improper because it did not comply with FRCP 41(a). Moreover, Appellants failed to plead with particularity as required by FRCP 9(b); failed to plausibly allege any RICO element; and improperly predicated this Count on a violation of securities law. ROA.73-77.

- <u>Counts 2 (Breach of Contract) and 5 (Tortious Interference)</u>: In addition to being barred by judicial estoppel, the Bankruptcy Court found that, as a matter of law, (a) the breach of contract claim failed because the ROFR did not apply to the Settlement; (b) the tortious interference claim failed because the ROFR did not apply; and (c) Counts 2 and 5 were duplicative. ROA.77-78.

**F.    Appellants Appeal the Order**

On June 27, 2023, Appellants appealed the Order (ROA.1) (the "<u>Appeal</u>"). Appellants argue that the Bankruptcy Court incorrectly dismissed Count 1 (Breach of Fiduciary Duty) because (a) fiduciary duties are allegedly owed under both the IAA and Texas common law and (b) the Complaint adequately alleges breaches of those duties. (Br. at 16-33). Appellants also challenge the Bankruptcy Court's dismissal of Count 2 (Breach of Contract) and Count 5 (Tortious Interference), both

of which are premised on the alleged ROFR, because, according to Appellants, the Objection was withdrawn "inadvertently" (Br. at 35-39) and they adequately argued that the ROFR applied to the Settlement (*id.* at 40-41). Appellants further argue that Count 3 (Negligence) is not barred by the Plan's exculpation provision and that they otherwise adequately pled the elements of negligence. Finally, Appellants argue that Count 4 (RICO) should have been dismissed "without prejudice" instead of with prejudice (*id.* at 41-42) and that the Bankruptcy Court erred by declining to grant leave to replead under FRCP 15(a) (*id.* at 43).

## VI.     ARGUMENT

For the reasons set forth below, the Court should affirm the Order as the Appeal is meritless.

## A.    The Bankruptcy Court Correctly Found that Judicial Estoppel Bars Counts 2 and 5

The Bankruptcy Court correctly found, in a proper exercise of its discretion, that Count 2 (for breach of the Members Agreement) and Count 5 (for tortious interference with the Members Agreement) were barred by judicial estoppel.

Judicial estoppel is "a common law doctrine by which a party who has assumed one position in [its] pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988). The purpose of the doctrine is "to protect the integrity of the judicial process" by "prevent[ing] parties from playing fast and loose with the courts to suit the

exigencies of self-interest." *Brandon*, 858 F.2d at 268 (internal quotations omitted); *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir.1993). As this Court stated: "A court examines three criteria when determining the applicability of judicial estoppel: '(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.'" *Charitable DAF*, 643 B.R. at 173.

As discussed *supra*, the only issue before this Court concerning the application of judicial estoppel is the element of "inadvertence."[9] A failure to disclose is considered "'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004) (internal quotations omitted); *see also Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600-01 (5th Cir. 2005) (same). Whether a party acted inadvertently "presents a question of fact." *Love*, 677 F.3d at 262.

---

[9] As noted by the Bankruptcy Court, and highlighted by the cases cited herein, "in the Fifth Circuit, the element of 'inadvertence' is generally applied in a bankruptcy context where a ***debtor***, post-discharge, seeks to assert a claim that had or could have been addressed within the bankruptcy. Therefore, one might be unclear whether the element of 'inadvertence' applies in this case, which relates to ***a non-debtor plaintiff's change of position in an adversary proceeding***." ROA.64 (citing *Gabarick v. Laurin Mar. (Am.) Inc.,* 753 F.3d 550, 553 n.3 (5th Cir. 2014)) (emphasis in original).

The Bankruptcy Court's factual finding that Appellants did not act inadvertently in withdrawing their Objection was not clearly erroneous. Based on the clear and undisputed record, the Bankruptcy Court did not abuse its discretion in ruling that Appellants' inconsistent position concerning the ROFR was "advertent."

In their Objection, Appellants argued the transfer of the HCLOF interests pursuant to the Settlement breached the ROFR. Then, during the hearing on the Settlement, Appellants expressly, voluntarily, openly, and unequivocally withdrew their Objection after conceding that the Settlement and related transfer did not implicate the ROFR. Appellants even explained their reasoning. Specifically, Appellants represented to the Bankruptcy Court that, "based on the interpretation of the Members Agreement," and after "review[ing] the reply briefing," "scrubb[ing] the HCLOF corporate documents," analyzing Guernsey law, and reviewing the "appropriate documents," they were withdrawing their multi-page Objection, the foundation of which was that the Settlement allegedly violated the ROFR. ROA.65, 4104. Nevertheless, as the Bankruptcy Court found and as this Court affirmed, Counts 2 and 5 are now premised entirely on HCM's alleged violation of the ROFR—the very theory Appellants expressly disavowed when withdrawing their Objection. *Charitable DAF*, 643 B.R. at 174 ("[CLOH] made clear in the withdrawal of its objection that it no longer disputed the other parties' interpretation of the [ROFR] which now forms the basis of [DAF's] second and fifth causes of action.").

The unrefuted record establishes that Appellants knew all the facts and legal issues underlying Counts 2 and 5 when they voluntarily withdrew their Objection.

Furthermore, as the Bankruptcy Court explained, it also "seems implausible" that Appellants had "no motivation to take inconsistent positions" on the ROFR, because the only risk in asserting their position now is "litigation risk," while "they have borne none of the speculative risk of what would happen to the value of the HCLOF membership interests, had they had the opportunity to acquire it." ROA.67. Appellants do not dispute the factual findings regarding their motive.

Appellants' inconsistent positions regarding the ROFR were thus deliberate, directed, and advertent. Appellants' attempt to play "fast and loose with the court" on this legal position is precisely the type of conduct the doctrine of judicial estoppel is intended to prevent. *Superior Crewboats*, 374 F.3d at 335-36 (non-disclosure of a viable claim was not "inadvertent" where debtors "were aware of the facts underlying the claim"); *Jethroe*, 412 F.3d at 601 (failure to disclose claim was not "inadvertent" where party was aware of "the facts giving rise to them"); *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015) (failure to disclose claims was not "inadvertent" where party "was aware of the facts underlying his claims as early as 2010 and [] filed this lawsuit in 2011," noting inadvertence through lack of knowledge cannot be shown "as long as the debtor has enough information to suggest that he may have a potential claim.").

Notwithstanding the indisputable facts in the record, Appellants now contend they acted inadvertently in withdrawing the Objection because they lacked "information about the asset valuations" of the HCLOF interests until after the Settlement hearing. Br. at 37-38. That claim is false and irrelevant.[10] As the Bankruptcy Court found, even if the ROFR applied to the Settlement (and it does not), the ROFR "would not be dependent on the value of the HCLOF shares/membership interests" (ROA.65)—*i.e.*, the value of the HCLOF interests could be relevant to whether to acquire the interests but not to whether the ROFR created an acquisition right. The only information relevant to determine whether the Settlement violated the ROFR was the terms of the Settlement and HCLOF's governing documents, including the Members Agreement. Appellants indisputably had this information and specifically cited it when withdrawing the Objection. ROA.4104.

Appellants now contend their inconsistent position was "inadvertent" because they did not litigate the "merits" of Counts 2 and 5 during the Settlement hearing. Br. at 38-39. Appellants are conflating *collateral estoppel* with *judicial estoppel*. Collateral estoppel requires a legal position to have been "actually litigated."

---

[10] Appellants' allegation that the $22.5 million valuation of the HCLOF interests disclosed during the Settlement hearing was somehow "false" (Br. at 9, 11, 37-38) is flatly contradicted by the record. The Settlement Motion expressly stated that the net asset value of the HCLOF interest was "estimated to be approximately $22 million as of December 1, 2020." ROA.3955.

*Charitable DAF*, 643 B.R. at 172. Judicial estoppel has no such requirement. *Id.* at 173. The issue is not whether Count 2 and 5 were *litigated* in connection with the Settlement. It is whether Appellants acted *advertently* when they asserted a plainly inconsistent legal position in Counts 2 and 5.

Appellants next argue they are not judicially estopped because they had no "duty" to object to the Settlement in the first place. (Br. at 37). Whether a party has a "duty" to object is irrelevant to judicial estoppel. Again, the issue is whether Appellants took inconsistent positions (they did). Appellants conceded that the ROFR did not apply to the Settlement when they knowingly and intentionally withdrew their Objection. But now (after replacing Appellants' representative and counsel) they take the exact opposite position in Counts 2 and 5. It is the intentionality of their concession that is relevant to "advertence."

Appellants' argument that the Bankruptcy Court did not "rely" on their previous inconsistent position (Br. at 39) is also irrelevant, erroneous, and foreclosed by this Court's prior order (*Charitable DAF*, 643 B.R. at 174). The only issue on remand regarding judicial estoppel was whether Appellants acted "inadvertently" in taking inconsistent positions.

The Bankruptcy Court's factual finding that Appellants' contradictory positions were not "inadvertent" is not clearly erroneous, and its finding that Counts

2 and 5 are barred by judicial estoppel was therefore not an abuse of discretion and should be affirmed.

**B.     The Bankruptcy Court Correctly Found that the Complaint Fails to State Claims Under FRCP 12(b)(6)**

The Bankruptcy Court correctly found that all Counts fail to state claims upon which relief could be granted under FRCP 12(b)(6). To survive a motion to dismiss pursuant to FRCP 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper under Rule 12(b)(6) when, taking the facts alleged in the complaint as true, it appears that the plaintiff "cannot prove any set of facts that would entitle it to the relief it seeks." *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citations omitted). A court may take judicial notice of matters of public record when considering a motion to dismiss for failure to state a claim. *See, e.g., T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*, 2008 U.S. Dist. LEXIS 112613, at *5 (S.D. Tex. May 22, 2008).

**1.     Appellants Fail to Plead a Breach of Fiduciary Duty in Count 1**

Appellants' fiduciary duty claim is premised on HCM's alleged: (i) insider trading; (ii) concealment of the value of the HCLOF interests; and (iii) diversion of

an investment opportunity, each in violation of the anti-fraud provisions in Rule 10b-5 of the Securities and Exchange Act of 1934 (the "Exchange Act") and Section 206 of the IAA (codified at 15 U.S.C. § 80b-6). ROA.115-18. Count 1 fails to state a claim and must be dismissed.

Where, as here, a plaintiff's breach of fiduciary duty claim is premised on theories of securities fraud, FRCP 9(b)'s heightened pleadings standards apply. *See Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, 2004 U.S. Dist. LEXIS 27582, at *4 (N.D. Tex. Nov. 15, 2004). "A cause of action lies under Rule 10b-5 'only if the conduct alleged can be fairly viewed as manipulative or deceptive 'within the meaning of the statute." *Id.* (citations omitted). To state a securities-fraud claim under section 10(b) and Rule 10b–5, plaintiffs must plead: "(1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 368 (5th Cir. 2004). "A fact is material if there is 'a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'" *Id.* (quoting *Grigsby v. CMI Corp.*, 765 F.2d 1369, 1373 (9th Cir.1985)). "[S]cienter is a crucial element of the securities fraud claims." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

As found by the Bankruptcy Court, Appellants' allegations underlying their breach of fiduciary duty claim are conclusory and plead without factual support or particularity. *See, e.g.,* ROA.118-19 (speculating about Appellants' "lost opportunity cost," and vaguely asserting that "Defendants' malfeasance" has "exposed HCLOF to a massive liability from HarbourVest."). Appellants' allegations also fail to give rise to a "strong interference of scienter" sufficient to state a claim under Rule 10(b). *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 635 (S.D. Tex. 2003); *Southland*, 365 F.3d at 368 (plaintiff must plead "more than allegations of motive and opportunity to withstand dismissal" for claim of securities fraud). Appellants' allegations regarding proximate cause are equally deficient. ROA.119 (vaguely alleging that because of HCM's actions, "[Appellants] have lost over $25 million"). Because Appellants fail to properly plead securities fraud, any fiduciary claim premised on such allegations necessarily fails as well. *See Town North Bank, N.A. v. Shay Fin. Servs.*, 2014 U.S. Dist. LEXIS 137551, at *74 (N.D. Tex. Sep. 30, 2014).

Appellants allege HCM breached its "unwaivable" fiduciary duty under the IAA. ROA.118. This Count is purportedly premised on the IAA because (i) HCM

was the DAF's investment advisor under an advisory agreement[11] and (ii) HCFA is HCLOF's investment advisor under a separate advisory agreement (together, the "Advisory Agreements").

In their Complaint, Appellants alleged that they had a private right of action for breach of fiduciary duty under Section 206 of the IAA. But Section 206 does not provide a private right of action. *See, e.g., Transamerica Mtg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979) (finding no private right of action under Section 206 of the IAA); *Corwin v. Marney, Orton Inv.*, 788 F.2d 1063, 1066 (5th Cir. 1986) (affirming dismissal of IAA claim "because the investors had no private causes of action"). Confronted with this legal reality, Appellants, abruptly pivoted, arguing that Section 215 of the IAA (codified at 15 U.S.C. § 80b-15) supports Count 1 because Section 206 was "violated in the 'making' of the settlement agreement and the 'performance' of the advisory agreements" (Br. at 22)—*i.e.*, HCM's *conduct* violated the IAA.

---

[11] Appellants mistakenly relied on the *Amended and Restated Investment Advisory Agreement*, executed on July 1, 2014. ROA.114. That document was superseded by the *Second Amended and Restated Investment Advisory Agreement*, effective January 1, 2017 (the "DAF Agreement"). ROA.4899-4920. Under the DAF Agreement (executed when Dondero controlled HCM and DAF), HCM provided the DAF with investment advice but had no authority to bind the DAF unless directed. *See, e.g.*, ROA.4902 (granting HCM limited authority "to purchase or otherwise trade in Financial Instruments that have been approved by the General Partner)*;* ROA.4903 ("ALL INVESTMENT DECISIONS … SHALL AT ALL TIMES REST SOLELY WITH THE GENERAL PARTNER AND/OR THE … SUBSIDIARY ….").

As an initial matter, and as found by the Bankruptcy Court, Appellants did not plead a claim under Section 215. ROA.70-71 ("Plaintiffs have not pleaded any such claim [under Section 215]"). It is axiomatic that an unpled claim cannot allege facts sufficient to withstand a motion to dismiss.

Even if Appellants had asserted a claim under Section 215, Count 1 would still fail as a matter of law. Section 215 provides only a limited private right of action. *TAMA*, 444 U.S. at 18 ("In the case of § 215, we conclude that the statutory language itself implies a right to specific and limited relief in a federal court."); *NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, 2023 U.S. App. LEXIS 23756, at *8 (2nd Cir. Apr. 25, 2023) (same). However, Section 215 is expressly limited to *voiding* an advisory agreement *if* the formation or performance of *such agreement* would violate the IAA. *TAMA*, 444 U.S. at 18-19. Here, Appellants seek damages for Appellees' allegedly wrongful conduct, not recission or the voiding of an allegedly unlawful agreement. Section 215 thus does not support Count 1 and Appellants know it.

Earlier this year, in another HCM-related action, NexPoint Diversified Real Estate Fund ("NexPoint")[12] appealed an order dismissing a claim under the IAA to the United States Court of Appeals for the Second Circuit. In its appeal, NexPoint

---

[12] NexPoint is another entity controlled by Dondero. ROA.2308. NexPoint's counsel is the same counsel representing Appellants.

argued—exactly as Appellants do here—that a cause of action for damages existed under Section 215 because the defendants allegedly breached their obligations to NexPoint under Section 206.

The Second Circuit flatly rejected NexPoint's argument, finding, consistent with *TAMA* and established precedent, that Section 215 is "centered on <u>contracts</u>, not the <u>conduct</u> of parties to contracts" and that Section 215 did not support a cause of action premised on an advisor's alleged misconduct:

> Here, NexPoint alleges that the Advisers engaged in self-dealing conduct … that this "performance" … involve[d] the violation of" the IAA -- specifically, §206 …. NexPoint does not contend that any provision of the PMA or the Indenture <u>requires</u> anything unlawful. To the contrary, it alleges that most of the Advisers' conduct <u>breached</u> their obligations under the PMA or the Indenture. NexPoint argues that it is nonetheless entitled to rescission under §215(b) because the alleged misconduct occurred in the course of the Advisers' performance of their general portfolio-management activities. The question before us is whether this claim is within the scope of the cause of action Congress authorized when it "declared in §215 that certain contracts are void." … Like the District Court, we conclude that it is not.
>
> ***
>
> Read as a whole, §215 -- again, entitled "Validity of contracts" -- is a statute centered on <u>contracts</u>, not the <u>conduct</u> of parties to contracts …. As such, permitting claims under §215(b) based solely on conduct not required by the contract would create … "a backdoor to the private right of action that the Supreme Court refused to find under §206." … The Supreme Court concluded in *TAMA* that Congress did not intend §206 to be enforced through private litigation. This holding would have little practical significance if plaintiffs could sue under §215 for <u>any</u> violation of §206, with the only difference being in the nature of the remedy (rescission and restitution under §215 as opposed to damages).

*NexPoint*, 2023 U.S. App. LEXIS 23756, at *10-14 (emphasis in original) (citing *TAMA*, 444 U.S. at 17; *Kahn v. Kohlberg, Kravis, Roberts, & Co.*, 970 F.2d 1030 (2d Cir. 1992); *Omega Overseas Partners, Ltd. v. Griffith*, 2014 U.S. Dist. LEXIS 109781, at *2 (S.D.N.Y. Aug. 7, 2014)).[13]

Here, just like in *NexPoint*, there is no allegation that the formation or the performance of the Advisory Agreements required the violation of the IAA. Instead, Appellants argue the "'making' of the settlement agreement" and HCM's alleged violation of Section 206 in connection with the Settlement creates a cause of action under Section 215. The Complaint thus only addresses HCM's conduct, not the propriety of the Advisory Agreements themselves. But, as found by the Second Circuit, Section 215 does not apply to claims arising from conduct; it only applies if an advisory agreement's formation or performance requires a violation of the IAA. Even if it did, the only remedy available to Appellants would be a claim for recission and restitution, not the compensatory damages they seek. *TAMA*, 444 U.S. at 19, 25 n.4 ("Restitution [under §215] would not … include compensation for any diminution in value of the … investment alleged to have resulted from the adviser's action or inaction. Such relief could provide by indirection the equivalent of a private

---

[13] The Second Circuit also rejected Appellants' argument that Section 29 of the Exchange Act supports their Section 215 argument. *Id.* at *16.

damages remedy [under §206] that we have concluded Congress did not confer.")
Appellants have not sought recission or restitution.

Moreover, even if a viable claim existed under the IAA (and it does not),
Appellants' allegations would still be deficient for failure to plead "duty" or
"breach." As Appellants admitted when withdrawing their objection to the
HarbourVest Settlement, HCM owed no duty to offer the HCLOF interests to
Appellants. The Settlement and transfer of the HCLOF interests were effectuated in
compliance with the Members Agreement and the Bankruptcy Court's Settlement
Order. And the DAF Agreement transparently disclosed that HCM could compete
with the DAF for investments with no obligation to offer those investments to the
DAF.[14] *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 181-82 (1963) (noting
"the evident purpose of the [IAA was] to substitute a philosophy of disclosure for
the philosophy of caveat emptor" and finding disclosure of an adviser's "practice of
purchasing shares … for his own account" satisfied the IAA fiduciary duties);
*Dugaboy Inv. Trust v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351,
at *10-11 (N.D. Tex. Sept. 22, 2022), *aff'd* 2023 U.S. App. LEXIS 19553 (5th Cir.
Jul. 28, 2023) (addressing argument that fiduciary duties under the IAA cannot be

---

[14] *See, e.g.*, ROA.4914 ("The Fund will be subject to a number of actual and potential conflicts of interest … including … that … Highland … may actively engage in transactions in the same securities sought by the Fund and, therefore, may compete with the Fund for investment opportunities…").

waived and finding investor consented to potential conflict when clear disclosure was made).[15]

HCM also owed no duty to CLOH as an investor in HCLOF under the HCFA Agreement or otherwise; there is no fiduciary relationship between an adviser to a fund and the fund's individual investors. *Goldstein v. SEC*, 451 F.3d 873, 879 (D.C. Cir. 2006) ("The adviser owes fiduciary duties only to the fund [i.e., the client], not to the fund's investors … If the investors are owed a duty and the entity is also owed a fiduciary duty, then the adviser will inevitably face conflicts of interest"); *see also SEC v. Northshore Asset Mgmt.*, 2008 U.S. Dist. LEXIS 36160, at *18-20 (S.D.N.Y. May 5, 2008) (dismissing claim that advisor owed a duty to investors rather than just the fund); *SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1016 (N.D. Cal. 2007) (same); *Prohibition on Fraud by Advisers to Certain Pooled Investment Vehicles*, Release No. IA-2628; File No. S7-25-06 (Aug. 3, 2007), ROA.4891 (Rule 206(4)-8 "does

---

[15] The Dugaboy Investment Trust is one of Dondero's two family trusts. Dugaboy's claims in this action arose from HCM's settlement with UBS in which Dugaboy argued, *inter alia*, that HCM, by settling, breached its "unwaivable" fiduciary duties to Dugaboy as an investor in another HCM-managed fund.

not create under the Advisers Act a fiduciary duty to investors or prospective investors in a pooled investment vehicle not otherwise imposed by law").[16]

Finally, as explained by the Bankruptcy Court, there was no corporate opportunity to divert. HarbourVest asserted bankruptcy claims against HCM seeking, among other things, the effective rescission of its investment in HCLOF. The Settlement effectuated that remedy. Because HarbourVest had no claims against Appellants, there was no taking of a corporate opportunity. HCM was resolving a claim against HCM, not purchasing a security, and could not transfer its liability to HarbourVest to Appellants.

Appellants also fail to allege any breach of fiduciary claims premised on state law. First, the Complaint references no state law (or Guernsey law) fiduciary duties;

---

[16] To contradict the law, Appellants argue Seery is bound by a "judicial admission." Br. at 19. Judicial admissions apply to statements of fact, not conclusions of law like whether a fiduciary duty exists. *See, e.g., Blankship v. Buenger*, 653 F. Appx. 330, 334 (5th Cir. 2016) ("Judicial admissions are defined as 'factual assertions in pleadings ....' A judicial admission 'has the effect of withdrawing a fact from contention.'") Appellants also cite several inapposite cases. *SEC v. Tambone*, 550 F.3d 106 (1st Cir. 2008) was vacated, 597 F.3d 436 (1st Cir. 2010). *SEC v. ABS Manager, LLC*, 2014 U.S. Dist. LEXIS 80542 (S.D. Cal. Jun. 11, 2014), did not grant the SEC's summary judgment motions but granted summary judgment on the Rule 206 claims *to the defendants* (2014 U.S. Dist. LEXIS 80542, at *48). *SEC v. Markusen*, 143 F. Supp. 3d 877 (D. Minn. 2015), did not deny a motion to dismiss by investors; it granted the SEC a default judgment (and dealt with a scheme to defraud a fund, not individual investors). *Goldenson v. Steffens*, 2014 U.S. Dist. LEXIS 201258 (D. Me. Mar. 7, 2014), did not hold that an advisor had "a general fiduciary duty to investors" but stood for the unremarkable proposition that an advisor who acted as an advisor to an individual, rather than a fund, had fiduciary duties to the individual investor/advisee. NexPoint also cited *Goldenson*. *NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.*, 620 F. Supp. 3d 36, n.3 (S.D.N.Y. 2022) ("Plaintiff also cites *Goldenson* ... that ... does not change the analysis here. There, the plaintiff had argued that the defendant breached a fiduciary duty under Maine common law, not the IAA.")

the only allegation is that HCM violated its alleged federal duties to Appellants under the IAA. Again, an unpled claim cannot allege facts sufficient to withstand a motion to dismiss.

Even if Appellants had alleged a state law fiduciary duty claim, it would be subject to dismissal. Texas law[17] provides "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 221 (5th Cir. 2017) (internal quotations omitted). "The plaintiff must plead some facts as to the nature of the relationship to state a plausible claim that that a fiduciary duty has been breached." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019).

---

[17] If Appellants allege a breach of fiduciary duty to HCLOF's members (*i.e.*, CLOH), HCLOF is a Guernsey entity and the Members Agreement is governed by Guernsey law. ROA.4359. Under the internal affairs doctrine, Guernsey law controls on issues of fiduciary duties to the members. *See Pridgin v. Safety-Kleen Corp.*, 2021 U.S. Dist. LEXIS 240210, at *6 (N.D. Tex. Dec. 16, 2021). If they are alleging a breach arising from the HCFA Agreement, they have no right to do so as they are not a party to the HCFA Agreement and are owed no fiduciary duty as an investor in HCLOF by either HCFA or HCLOF under Guernsey law. *CLO Holdco Limited v. Highland CLO Funding Limited*, [2023] GRC061 (Roy. Court of Guernsey 1 Dec. 2023) ("It is no part of a company director's general duties to consider or take account of the personal interests or circumstances of particular shareholders …. [A]ny such proposition would be entirely unworkable in practice … [and] would almost inevitably lead to a failure to do the same as regards the interests of another shareholder …. It would also … put directors in an impossible position of conflict of interest."). Regardless, Appellants fail to plead a breach of fiduciary duty under Texas or Guernsey law.

The Complaint fails to sufficiently allege facts regarding the nature of the relationship between Appellants and HCM. ROA.114 (generally alleging only that (i) HCM "owed a fiduciary duty to [Appellants]" pursuant to which HCM "agreed to provide sound investment advice," and (ii) this fiduciary relationship is "broad and applies to the entire advisors-client relationship"). The Complaint also fails to adequately allege that any state law or Guernsey fiduciary duty existed, let alone was breached, for the same reasons. *Life Partners*, 926 F.3d at 125 (no allegation of "the nature of the fiduciary duty owed" to plaintiff). The allegations of HCM's alleged breach of its "internal policies and procedures" or the diversion of "corporate opportunities" are vague and conclusory. ROA.116-19; *In re Soporex, Inc.*, 463 B.R. 344, 417 (Bankr. N.D. Tex. 2011).

Appellants contend *Douglass v. Beakley* supports their unasserted state law fiduciary duty claim. 900 F. Supp. 2d 736 (N.D. Tex. 2012). Although *Douglass* allowed a state law breach of fiduciary duty claim premised on Section 206 of the IAA to proceed, *Douglass* does not bind this Court[18] and its logic has been criticized: A litigant cannot avoid the Supreme Court's clear prohibition on private rights of action under the IAA by simply alleging the prohibited IAA claim arises under state

---

[18] *See, e.g., Villarreal v. Showalter (In re Villarreal)*, 413 B.R. 633, 641 (Bankr. S.D. Tex. 2009) ("the decisions of one district judge do not bind another judge of the same court …. [A bankruptcy court] operates as a unit of the District Court …. The majority of courts that have considered the issue have concluded that stare decisis does not apply to the decisions of the district court.") (citations omitted); *In re Romano*, 350 B.R. 276, 279 (Bankr. E.D. La. 2005) ("[A] single decision of a district court in this multi-judge district is not binding upon [a bankruptcy court]").

law. *See Laird v. Integrated Res.*, 897 F.2d 826, 837 (5th Cir. 1990) ("The Supreme
Court has recognized the investment advisers' fiduciary status. Courts may refer to
these cases instead of state analogies in deciding whether this status prohibits
particular conduct. And, because state law is not considered, uniformity is
promoted."); *Steadman v. SEC*, 603 F.2d 1126, 1142 (5th Cir. 1979) ("[T]he purpose
of the IAA … was to regulate the 'delicate fiduciary nature of an investment advisory
relationship.' … We do not think this overall purpose is a warrant to read section
206 … of the IAA … as the vehicle to reach all breaches of fiduciary trust."); *see
also Belmont v. MB Inv. Partners*, 708 F.3d 470, 502 (3d Cir. 2013) ("With the
exception of a private remedy [under Section 215], 'the [IAA] confers no other
private causes of action, legal or equitable.' That reality ought to call into serious
question whether a limitation in federal law can be circumvented simply by hanging
the label 'state law' on an otherwise forbidden federal claim."); *NexPoint*, 2023 U.S.
App. LEXIS 23756, at *10-14 (prohibiting the use of Section 215 to create a
"backdoor" cause of action under Section 206).

Regardless, in *Douglass*, the plaintiff properly pled all elements of a Texas
fiduciary duty claim. *Douglass*, 900 F. Supp. 2d at 751-52. Here, even assuming
*Douglass* applies, Appellants still failed to plead (a) breach of fiduciary duty and (b)
injury from such breach and thus failed to state a claim.

### 2.     <u>Appellants Fail to Plead a Breach of Contract Claim in Count 2</u>

In addition to finding Count 2 was barred by judicial estoppel, the Bankruptcy Court correctly found that it failed to state a plausible claim. As found by the Bankruptcy Court, the Settlement and related transfer of the interests to an HCM affiliate "was permitted under the plain and unambiguous terms of the HCLOF Members Agreement" and the ROFR did not apply. ROA.77-78. Section 6.1 of the Members Agreement grants members the unconditional right to transfer interests to an "Affiliate of an initial Member." ROA.4352-53. Section 6.2 sets forth the ROFR and has two exceptions: (i) transfers to "affiliates of an initial Member" from Members *other than* CLOH and the "Highland Principals" and (ii) transfers from CLOH or a Highland Principal to (a) HCM, (b) HCM's "Affiliates," or (c) another Highland Principal. ROA.4353. "Affiliate" is defined as, "with respect to a person, (i) any other person who, directly or indirectly, is in control of, or controlled by, or is under common control with, such person …." ROA.4347. A "Member" is a "holder of shares in the Company." ROA.4348. The "initial Member[s]" are the initial Members listed on the first page of the Members Agreement and include HCM, HarbourVest, and CLOH. ROA.4346. Because HarbourVest transferred its interests directly to HCM's subsidiary—an Affiliate of an initial Member—the transfer was permitted, without restriction, under section 6.1 and satisfied the exception to the ROFR in section 6.2. ROA.77-78.

To avoid the Members Agreement, Appellants argue the Settlement Agreement "constitutes an offer and sale to [HCM]" that "facially violated Section 6.2." Appellants misread the Settlement Agreement and the Members Agreement and fabricate transfers and obligations that never existed. As found by the Bankruptcy Court, HarbourVest directly transferred its interests to HCM's subsidiary. Appellants also rely on an "offer and sale," but, as discussed above, there was neither an offer nor a sale. Rather, the transfer of the interests was but one component of a complete Settlement effectuating HarbourVest's desire for recission and HCM's need to resolve bankruptcy claims.

Appellants' pleading is also defective because it failed to plead actual damages, simply contending that "had plaintiff been allowed to do so, it would have obtained the interests." *See, e.g.,* ROA.121. Such conclusory allegations ignore that CLOH *never* offered to purchase the HCLOF interests and, in any event, are insufficient to state a claim. *See Snowden v. Wells Fargo Bank, N.A.*, 2019 WL 587304, at *6 (N.D. Tex. Jan. 18, 2019), *adopted by* 2019 U.S. Dist. LEXIS 22982 (N.D. Tex. Feb. 12, 2019) (actual damages inadequately pled); *Little v. KPMG LLP*, 2008 U.S. Dist. LEXIS 26281, at *15 (W.D. Tex. Jan. 22, 2008) (lost profits claim "speculative and conjectural.")

### 3.    <u>Appellants Fail to Plead a Claim for Negligence in Count 3</u>

Appellants allege HCM negligently breached its duty to Appellants under the IAA and argues that the Bankruptcy Court somehow *sua sponte* dismissed Count 3. Those claims are false. HCM argued that Appellants' breach of fiduciary claim (a) was barred by the Plan, (b) was duplicative of Appellants' other Counts, and (c) was, in any event, inadequately pled. The Bankruptcy Court agreed. ROA.72.

The Plan exculpated HCM for, *inter alia*, all "Causes of Action" arising from the administration of the Bankruptcy Case unless such conduct constituted "bad faith, gross negligence, criminal misconduct, or willful misconduct." ROA.2432-33. As defined in the Plan, "Causes of Action" include "any claim for breach of contract or breach of duties imposed by law or equity." ROA.2389. Count 3 asserts a "Cause of Action," *i.e.*, a claim for breach of contract or duty, and the Settlement was indisputably part of the "administration of the Chapter 11 Case." HCM has therefore been expressly exculpated from Appellants' claim for negligence.[19]

---

[19] Exculpation provisions similar to those in the Plan are common in bankruptcy. *See, e.g.*, *Findings of Fact, Conclusions of Law, and Order (i) Approving the Debtors' Disclosure Statement and Disclosure Statement Supplement on a Final Basis and (ii) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Party City Holdco Inc. and Its Debtor Affiliates*, Case No. 23-90005 (DRJ), Docket No. 1701, ¶ 43 (Bankr. S.D. Tex. Sept. 6, 2023) (citing *NexPoint* and exculpating debtor, among others, for "claims on contracts or for breaches of duties imposed by law"); *Order Approving the Debtors' Disclosure Statement and Confirming the Third Amended Joint Chapter 11 Plan of Reorganization of Cineworld Group PLC and Its Debtor Subsidiaries*, Case No. 22-90726 (MI), Docket No. 1982, ¶ 52 (Bankr. S.D. Tex. Jun. 28, 2023) (same).

To avoid the Plan, Appellants argue, without citation or authority, that the Plan cannot exculpate HCM from a "*federally imposed duty* which is *unwaivable under 15 U.S.C. § 80b-15(a)*." Br. at 34 (emphasis in original). But the Plan—and its exculpation clause—is not a waiver. The Plan is a federal court order, and the exculpation provision was expressly affirmed as to HCM by the Fifth Circuit over the objection of other Dondero-controlled entities. *NexPoint*, 48 F.4th at 437-38. Appellants cannot collaterally attack the Plan or its exculpation provision through this Appeal. *Id.* at 438 n.15 ("We lack jurisdiction to consider collateral attacks on final bankruptcy orders even when it concerns whether the court properly exercised jurisdiction or authority at that time") (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009); *In re Linn Energy, L.L.C.*, 927 F.3d 862 (5th Cir. 2019)).

Even absent exculpation, Appellants fail to state a claim. "The elements of a negligence claim under Texas law are: '(1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach.'" *Sivertsen v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 789 (E.D. Tex. 2019). The negligence allegations (ROA.121-22) are speculative, conclusory, and fail to allege proximate cause; Count 3 must be dismissed. *Rodgers v. City of Lancaster Police*, 2017 U.S. Dist. LEXIS 14588, *37-37 (N.D. Tex. Jan. 6, 2017). To the extent Count 3 is premised on a breach of the Members Agreement, the DAF

Agreement, or the IAA, it is duplicative of the other Counts and fails for the reasons set forth above.

**4.    The Bankruptcy Court Properly Dismissed Count 4 (RICO) with Prejudice**

In the Renewed MTD, HCM argued that Appellants failed to plead any of the elements required to support a RICO claim ("1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity") and that Count 4 was impermissibly predicated on a securities law violation. ROA.3868-73. Instead of substantively responding, Appellants, unilaterally and without leave of the Bankruptcy Court, declared they were "dismiss[ing] the RICO claim under [FRCP] 41(a)" without prejudice and "reserv[ing] the right to bring such claim" in the future. ROA.4440. FRCP 41(a), however, only permits a plaintiff "to dismiss an action," not a single claim. *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 2022 U.S. App. LEXIS 31958, at *19, n.15 (5th Cir. Nov. 18, 2022). The Bankruptcy Court was thus justifiably "confused and concerned a bit about the procedure employed" by Appellants. ROA.73.

Because Count 4 was not dismissed (Appellants could not dismiss a single Count), the Bankruptcy Court was required to rule on the merits. In doing so, the Bankruptcy Court correctly found that (a) Appellants' RICO Count was impermissibly premised on an allegation of securities fraud and thus barred by the express language of 18 U.S.C. §1964(c) and (b) Appellants otherwise failed to allege

(i) a pattern of racketeering activity and (ii) damages. ROA.74-77. The Bankruptcy Court's dismissal of Count 4 with prejudice should be upheld.

### 5.   Appellants Fail to Plead Tortious Interference in Count 5

The Bankruptcy Court properly found Count 5 (Tortious Interference), which was premised on the alleged violation of the Members Agreement and alleged concealment of the value of HCLOF (ROA.126-27), was duplicative of Count 2 (Breach of Contract). The Bankruptcy Court also properly found that because the ROFR did not apply to the Settlement (and thus there was no breach of contract), there was no tortious interference. ROA.78 ("Tortious interference with contract claims cannot exist in the absence of a contract right with which a defendant can interfere") (citing *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 354 (5th Cir. 2021) ("[T]o prevail on an interference claim, the plaintiff must 'present evidence that some obligatory provision of a contract [was] breached'")). Appellants have no response to this finding other than to allege HCM's supposed "self-dealing and misleading statements" as to the value of the interests were themselves somehow a violation of the ROFR. But, as discussed above, allegations about hiding "value" have nothing to do with whether the ROFR applied to the Settlement. ROA.65 ("This allegation is irrelevant because the 'Right of First Refusal' … would not be dependent on the value of the … interests.")

The Bankruptcy Court also correctly found that Appellants failed to "explain how [HCM], a party to the HCLOF Members Agreement, could have interfered with it; only third parties can interfere with a contract." ROA.78 (citing *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 372 (Tex. App. 2022). Appellants did not (and could not) address this finding.[20]

## C.     Appellants Request to Amend Under FRCP 15 Is Procedurally Improper

Appellants request leave to amend the Complaint under FRCP 15(a); that request is procedurally improper. The Counts are bankruptcy claims governed by the Bankruptcy Code, not FRCP 15(a).

Each Count asserts that HCM violated its fiduciary, contractual, and other obligations to Appellants during the Bankruptcy Case while HCM was a debtor-in-possession and under Bankruptcy Court supervision. Accordingly, Appellants, if they have a claim, have an "administrative claim" against HCM under the Supreme Court's "*Reading* exception," which provides that "administrative claims" include claims arising from a debtor-in-possession's postpetition negligence, tortfeasance, and malfeasance. *See Reading Co. v. Brown*, 391 U.S. 471, 478-79 (1968) (holding that if a debtor commits a tort or harms a non-debtor the injured party's claim is an

---

[20] Appellants also failed to allege proximate causation or any actual damage sustained as a result of the alleged interference. *Specialties of Mexico Inc. v. Masterfoods USA*, 2010 U.S. Dist. LEXIS 58782, at *15 (S.D. Tex. June 14, 2010) (The elements of tortious interference with contract are: "(1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that proximately causes damage, and (4) actual damage or loss.")

"administrative claim"); *In re Al Copeland Enters., Inc.*, 991 F.2d 233, 239 (5th Cir. 1993) ("[T]hose injured during … administration of an estate are entitled to an administrative priority [claim] regardless of whether their injury was caused by a tort or other wrongdoing"). The "*Reading* exception" is routinely applied. *Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 388 (5th Cir. 2001) ("The *Reading* exception has survived Congressional amendments to the bankruptcy code and been recognized and applied by nearly every Court of Appeal in the nation."); *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 2780, at 18-21 (Bankr. N.D. Tex. Sept. 30, 2022) ) (finding DAF's allegation that HCM violated its fiduciary duties under the IAA by its postpetition management of an investment vehicle were "administrative claims" under *Reading*).[21]

Accordingly, and as Appellants concede, each Count constitutes an "administrative claim" against HCM's estate, *i.e.* a bankruptcy claim governed by, among other provisions, 11 U.S.C. §§ 503 and 507. Br. at 47 ("What is more, the case was brought and was before the bankruptcy court prior to the plan effectiveness or exculpation became effective. ***As an administrative claim, it would be***

---

[21] The claims asserted by DAF in *Charitable DAF Fund, L.P. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*, Adv. Proc. No. 22-03052-sgj, Docket No. 1 (Bankr. N.D. Tex. 2022) arose from HCM's alleged breach of its fiduciary duty to DAF as an investor in a different HCM-managed fund and were largely duplicative of the Counts. DAF's counsel in that action is the same as Appellants' counsel.

*preserved*.") (emphasis added); *see also* ROA.57 ("[**All Counts**] *are all claims being asserted against Highland relating to its actions during its Chapter 11 bankruptcy case* …. All of the causes of action … are tantamount to the assertion of administrative expense claims against a Chapter 11 Debtor.") (emphasis in original).

Amendment of a bankruptcy claim, including an "administrative claim, is governed by the Bankruptcy Code, not FRCP 15(a). Under applicable case law, whether to allow amendment of a claim is left to the bankruptcy court's discretion after assessing, *inter alia*, (1) whether the amending party is "attempting to stray beyond the parameters of the original proof of claim and effectively file a 'new' claim" and (2) "the degree and incidence of prejudice" caused by the delay in amendment. *Kolstad*, 928 F.2d at 172, 175 n.7; *see also CLO Holdco, Ltd. v. Kirschner (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. Dist. LEXIS 87842, at *13 (N.D. Tex. May 18, 2023) (same). A court exercises its discretion "with due consideration for the current stage of the bankruptcy" with particular attention paid to whether the plan has been confirmed and bar dates have passed. *CLO Holdco*, 2023 U.S. Dist. LEXIS 87842, at *13-14. "[O]nce the plan is confirmed, further amendments 'should be allowed only for compelling reasons.'" *Id.* (citing *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993)); *see also Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir. 1992).

Appellants have not pled *Kolstad* nor could they satisfy it. The Plan was confirmed in February 2021 and became effective in August 2021. The applicable bar date was September 25, 2021. ROA.2387; *see also Charitable DAF Fund,* 2022 Bankr. LEXIS 2780, at *12. Notwithstanding that *all* claims arising prior to August 2021 were discharged pursuant to 11 U.S.C. § 1141 (ROA.2432; *NexPoint*, 48 F.4th at 433 (affirming discharge over Dondero objections)),[22] Appellants admit they want to amend the Complaint to assert new claims (Br. at 43 ("Plaintiffs could further add, if necessary, other acts by [HCM] wherein it has sold assets and used the funds to pay off its own creditors ….")).

Amendment would also be futile. The administrative bar date has passed and HCM has been discharged and exculpated. New claims (and amendments that create new claims) are barred by the Plan and the Confirmation Order. Appellants cannot circumvent the Plan via FRCP 15. *See, e.g., Charitable DAF Fund,* 2022 Bankr. LEXIS 2780, at *35-37 (denying leave to amend as futile when amended claim would be timed barred by the Plan).

---

[22] The Complaint was referred to the Bankruptcy Court prior to the administrative claims bar date and therefore allowed to proceed as an administrative claim. Like all claims, however, it is subject to the Plan, including the exculpation provision.

**D.**   **Appellants' Request for Reconsideration of the Withdrawal Order Is Procedurally Improper**

Appellants request that, if the Order is reversed, this Court reconsider the Withdrawal Order. Br. at 44. Motions to reconsider are governed by FRCP 60 and require a motion and appropriate briefing schedule. FRCP 60(b) ("On motion and just terms, the court may relieve a party … from a final … order"). Even if Appellants' request were procedurally proper, it is not yet ripe for adjudication. Appellants ask this Court to reconsider the Withdrawal Order only if the Order is overturned. In the unlikely event that this Court overturns the Order, Appellants can bring a motion to reconsider the Withdrawal Order under FRCP 60.[23]

## VII.   CONCLUSION

The Bankruptcy Court properly dismissed the Complaint based on judicial estoppel and failure to state a claim. This Court should deny the Appeal and affirm the Order.

---

[23] HCM reserves all rights with respect to any such motion.

Dated: December 22, 2023        **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 8015</u>

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, according to Microsoft Word, it contains 10,947 words, excluding the portions of the document exempted by Fed. R. Bankr. P. 8015(g).

By: <u>*/s/ Zachery Z. Annable*</u>
Zachery Z. Annable

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 22, 2023, the foregoing document was served electronically via the Court's CM/ECF system on those parties registered to receive such service.

<u>*/s/ Zachery Z. Annable*</u>
Zachery Z. Annable