CIVIL ACTION NO. 3:23-CV-1503-B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

In re: HIGHLAND CAPITAL MANAGEMENT, L.P.,
Reorganized Debtor.

_____

CHARITABLE DAF FUND, L.P.
and CLO HOLDCO, LTD.,

*Appellants,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P., et al.

*Appellee.*
_____

On Appeal from the United States Bankruptcy Court for the Northern District
of Texas, Adversary No. 21-03067-sg, Hon. Stacey G.C. Jernigan, Presiding

REPLY BRIEF OF APPELLANTS THE CHARITABLE DAF
FUND, L.P. AND CLO HOLDCO, LTD.

Mazin A. Sbaiti
Jonathan Bridges
Sbaiti & Company PLLC
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367

Counsel for Appellants

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES .......................................................................... ii

I.  INTRODUCTION ........................................................................... 1

II. ARGUMENTS & AUTHORITIES ................................................... 2

    A.  Breach of Fiduciary Duty ................................................... 2

        1.  Violations of the Advisers Act § 206 Give Rise to An Equitable Claim Under IAA § 215 ............................... 2

            a.  Section 206(4) Is Not Limited to Direct Advisees, which the IAA Defines as "Clients" ............................. 3

            b.  The NexPoint Decision Does Not Help Defendant ....... 5

        2.  Violations of the Advisers Act Give Rise to a Common Law Breach of Fiduciary Duty Claim ...................................... 8

        3.  Plaintiffs Still Have Not Pled a 10b-5 Claim ......................... 14

        4.  Defendant's Arguments on Fiduciary Breach and No Causation are Misleading and Silly ....................................... 15

    B.  Negligence ................................................................................ 16

    C.  Judicial Estoppel ...................................................................... 17

    D.  Breach of Contract and Tortious Interference .................................. 20

    E.  Racketeering Influenced Corrupt Practices Act ("RICO") ............. 22

    F.  Plaintiffs Have the Right to Amend .................................................. 23

    G  Motion to Withdraw the Reference .................................................. 25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*2925 Briarpark Ltd. v. Comm'r*,
  163 F.3d 313 (5th Cir. 1999) ............................................................................... 21

*Abrahamson v. Fleschner*,
  568 F.2d 862 (2d Cir. 1977) ................................................................................ 4

*Barnhart v. Peabody Coal Co.*,
  537 U.S. 149 (2003) ............................................................................................. 6

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) ................................................................................ 9

*Burger-Phillips Co. v. Commissioner*,
  126 F.2d 934 (5th Cir. 1942) ............................................................................... 21

*Douglass v. Beakley*,
  900 F. Supp. 2d 736 (N.D. Tex. 2012) .............................................................. 8, 9

*Goldstein v. SEC*,
  451 F.3d 873 (2006) ......................................................................................... 4, 6

*In re Age Ref., Inc.*,
  505 B.R. 447 (W.D. Tex. Bankr. 2014) ............................................................. 16

*In re Howe*,
  913 F.2d 1138 (5th Cir. 1990) ........................................................................... 19

*In re Krisu Hosp., LLC*,
  2021 Bankr. LEXIS 788 (N.D. Tex. Bankr. March 26, 2021) ......................... 24

*Laird v. Integrated Res.*,
  897 F.2d 826 (5th Cir. 1990) ............................................................................. 9

*McConnell v. Commonwealth Pictures Corp.*,
  166 N.E.2d 494 (N.Y. 1960) ............................................................................. 8

*NexPoint Diversified Real Est. Tr. v. Acis Cp. Mgmt., L.P.*,
    2023 U.S. App. LEXIS 23756 (2nd Cir. Sept. 7, 2023)............................5, 6, 7

*Reading Co. v. Brown*,
    391 U.S. 471 (1968)............................................................... 14, 16, 24

*Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*,
    678 F.2d 552 (5th Cir. 1982) ......................................................... 6-7,

*Sayles v. Abilene*,
    290 S.W. 239 (Tex. App. 1926).........................................................8

*SEC v. Capital Gains Research Bureau, Inc.*,
    375 U.S. 180 (1963)........................................................................2

*SEC v. Markusen*,
    143 F. Supp. 3d 877 (D. Minn. 2015) ................................................3

*Steadman v. SEC*,
    603 F.2d 1126 (5th Cir. 1979) ..........................................................9

*Town Planning & Eng'g Assocs., Inc. v. Amesbury Specialty Co.*,
    342 N.E.2d 706 (Mass. 1976) ...........................................................8

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
    444 U.S. 11 (1979)...................................................................2, 4, 5

*Troutman v. Southern R. Co.*,
    441 F.2d 586 (5th Cir. 1971) ............................................................8

*United States v. Elliott*,
    62 F.3d 1304 (11th Cir. 1995) ..........................................................4

*United States ex rel. Steury v. Cardinal Health, Inc.*,
    625 F.3d 262 (5th Cir. 2010) ..........................................................23

*Weingarten Realty Investors v. Miller*,
    No. H-11-2522, 2012 U.S. Dist. LEXIS 99958
    (S.D. Tex., July 18, 2012) ..............................................................13

*Wells Fargo Bank, N.A. v. Titus Chinedu Operaji*,
  698 F.3d 231 (5th Cir. 2012) ....................................................................... 18-19

## **Rules, Statutes and Regulations**

17 C.F.R. 240.10b-5 ...........................................................................14, 22

17 C.F.R. 240.10b5-1 .........................................................................14, 15

17 C.F.R. § 275.202(a)(30)-1(a) ...........................................................

17 C.F.R. § 275.206(4)-7 ........................................................................14

17 C.F.R. § 275.206(4)-8 ............................................................... *passim*

11 U.S.C. § 101(5) ................................................................................23

11 U.S.C. § 503 ...............................................................................16, 23

15 U.S.C. § 78j......................................................................................14

15 U.S.C. § 80b-15.......................................................................... *passim*

15 U.S.C. § 206............................................................................... *passim*

18 U.S.C. § 1964(c) ...............................................................................22

FED. R. BANKR. P. 7015 ..........................................................................23

FED. R. CIV. P. 8.......................................................................... 15, 21, 22

FED. R. CIV. P. 9(b) ...............................................................................15

FED. R. CIV. P. 15...................................................................................23

## **Other Authorities**

Investment Advisers Act of 1940 .................................................................. *passim*

*Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*,
72 Fed. Reg. 44,756, Release No. IA-2626 (Aug. 9, 2007) ...................................3

RESTATEMENT (SECOND) OF TORTS, § 766 ...........................................................22

SAMUEL WILLISTON, THE LAW OF CONTRACTS § 1761 (1922) ..............................7

# I.

## <u>INTRODUCTION</u>

Plaintiffs/Appellants Charitable DAF Fund (the "<u>DAF</u>") and CLO Holdco Ltd. ("<u>Holdco</u>") (DAF and Holdco, "<u>Plaintiffs</u>" herein) respectfully file this Reply in support of their direct appeal of the grant of a motion to dismiss filed by Appellee Highland Capital Management L.P. ("<u>Defendant</u>" or "<u>Highland</u>" herein).[1] This case is on its *second* trip to this Court to resolve a 12(b)(6) motion to dismiss.

Plaintiffs have a bona-fide complaint about how Highland took a $45 million asset for itself and only paid $22 million for it via self-dealing, false representations and omissions, and now it is actually worth double that amount. The basic question raised for this Court is should a registered investment advisor who lied about the value of an investment be allowed to take it for itself to the detriment of its advisees and get away with it? The Investment Advisers Act of 1940 ("<u>IAA</u>") says no. As does Texas fiduciary duty, the HCLOF Members Agreement,[2] and negligence law.

No authority cited by Highland holds that an advisor can do what Highland did with impunity. This Court should be the first to do so.

---

[1] To the extent not specifically defined herein, Plaintiffs continue to use the same defined terms as defined in the Opening Brief. *E.g.* "HarbourVest" as defined in n.2 of the Complaint. Plaintiffs refer to their opening brief in this appeal as "Opening Brief," and refer to the brief filed by Highland as the "Appellee's Brief." "HarbourVest Interest" is defined in the Opening Brief, p. 5.

[2] Holdco's and Highland's investments in HCLOF are governed by the *Members Agreement Relating to the Company* dated November 15, 2017 ("<u>Company Agreement</u>") (Compl. at ¶¶ 93–94) [R.000120]).

## II.

## ARGUMENTS & AUTHORITIES

### A. BREACH OF FIDUCIARY DUTY

#### 1. Violations of the Advisers Act § 206 Give Rise to An Equitable Claim Under IAA § 215

The Advisors Act declares void the rights of any party to a contract who makes or performs the contract in violation of any provision or rule of the IAA. 15 U.S.C. § 80b-15 ("§ 215"). The Supreme Court has held that one may bring a claim for any equitable remedy that is the "customary legal incidents of voidness" such as restitution or disgorgement. *See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979). Plaintiffs identified the predicate violations of 15 U.S.C. § 206 ("§ 206") and its promulgated rule, 17 C.F.R. § 275.206(4)-8 ("Rule 206(4)-8") as the bases for seeking to void Highland's right to receive and keep the HarbourVest Interest.[3]

There is no dispute that § 206(4) is a statute that imposes a fiduciary duty on investment advisors. *TAMA*, 444 U.S. at 17; *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 200-01 (1963) (in enacting IAA Congress "recognized" fiduciary duties at common law, and § 206 considers it a "fraud or deceit" when an adviser fails to disclose what it stands to gain from a transaction).

---

[3] Contrary to Defendant's unsupported statements, Plaintiffs never contend or pleaded that § 206 or § 215 provide a cause of action for damages or "diminution in value".

### a. § 206(4) is Not Limited to Direct Advisees, Which the IAA Defines as "Clients"

The IAA generally defines "clients" as direct advisees. *See* 17 C.F.R. § 275.202(a)(30)-1(a) (incorporated generally, *see id.* § 275.222-2). Sections 206(1) and 206(2) are limited to the relationship between an advisor and "client." But § 206(4) is not so limited. The term "clients" is nowhere in there. Therefore, the fiduciary duties imposed by § 206(4) are likewise not limited to direct advisees.

Section 206(4) expressly states that "The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative." 15 U.S.C. § 206(4). The SEC promulgated Rule 206(4)-8 to clarify that the fiduciary duties in § 206(4) protect investors in a "pooled investment fund." *See Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*, 72 Fed. Reg. 44,756 (Aug. 9, 2007) ("SEC Rule Release")[4], at 44,757-59.[5] It explained that Rule 206(4)-8 adopts § 206(4)'s negligence-based standard and is a means to prevent "reckless fraud" against investors in funds managed by the advisor. *Id*. at 44759-60.

---

[4] https://www.govinfo.gov/content/pkg/FR-2007-08-09/pdf/E7-15531.pdf

[5] Although Defendant does not contest it, HCLOF is a pooled investment fund because it has fewer than 100 investors and does not offer public securities. *See* Rule 206(4)-8; *SEC v. Markusen*, 143 F. Supp. 3d 877, 891 (D. Minn. 2015) ("The Funds are 'pooled investment vehicles' because they have less than 100 investors and do not publicly offer their securities.").

Defendant hangs its hat on the SEC's statement that "Rule 206(4)–8 does not create under the Advisers Act a fiduciary duty to investors or prospective investors in a pooled investment vehicle *not otherwise imposed by law*." *Id.* at 44760 (emphasis added). Defendant misconstrues this statement. The SEC did not say that one who breaches Rule 206(4)-8 is not in breach of its fiduciary duties. For one thing, by definition, a breach of Rule 206(4)-8 is a breach of § 206(4), which is a breach of fiduciary duty "…otherwise imposed by law." *Id*. Indeed, even before the rule, the Supreme Court and circuit courts recognized the right of investors in pools of funds to bring direct actions against the fund advisers for breaches of the IAA. *See, e.g., TAMA*, 444 U.S. at 13; *Abrahamson v. Fleschner*, 568 F.2d 862, 871-74 (2d Cir. 1977) (investors in fund could sue fund advisor under § 206) *rev'd in part on other grounds*; *Cf. United States v. Elliott*, 62 F.3d 1304, 1311-13 (11th Cir. 1995) (holding that adviser-client relationship was not required for fraud conviction for violations of § 206).[6]

Even if Rule 206(4)-8 does not itself reflect a breach of fiduciary duty,

---

[6] Defendants cite *Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006) for the proposition that only direct advisees are owed duties. But *Goldstein* actually holds in Plaintiffs' favor. It addressed a rule identical to Rule 206(4)-8 that was promulgated pursuant to § 206(2). *Id.* The D.C. Circuit explained that because § 206(2) was limited to "clients," the rule could not be applied to investors in investment funds since those investors are not clients. *Goldstein,* however, observed that the "anti-fraud provision [§ 206(4)] applies…to persons other than clients" and cited cases wherein liability under § 206(4) had been found against advisors for acts committed against non-clients. *Id.* n.6. Critically, the SEC expressly promulgated Rule 206(4)-8 *in response to Goldstein*. *See* SEC Rule Release No. IA-2626 at 44756-57 and n.3-5.

---

Defendant's violation of it is actionable under § 215 because it is triggered by the violation of "any" IAA section *or rule*. 15 U.S.C. § 80b-15(b). Plaintiffs have otherwise already briefed the violations of § 206(4) and Rule 206(4)-8 and why the claim under § 215 should survive. *See* Opening Br. at 25-29.

### b. The NexPoint Decision Does Not Help Defendant

Defendant contends that under *NexPoint,* the Second Circuit held that § 215 only voids advisory agreements that were made in violation of the IAA or which could not be performed without violating the IAA. *See NexPoint Diversified Real Est. Tr. v. Acis Cp. Mgmt., L.P.¸* 2023 U.S. App. LEXIS 23756 (2nd Cir. Sept. 7, 2023). There are several reasons why the *NexPoint* opinion is no help to Defendant and, in fact, supports Plaintiffs.

***First***, while *NexPoint* did limit the application of § 215 to voiding contracts that were made in violation of the IAA or which could not be performed without violating the IAA, it did not limit the application of § 215 to only advisory agreements—it was simply addressing the agreement before it which happened to be an advisory agreement. To say that in *TAMA* the Supreme Court intended to read the phrase "any contract" in IAA § 215 to mean only "advisory agreements" is also a bridge too far when it too only had a challenge to an advisory agreement before it. *See TAMA*, 444 U.S. at 14.  Indeed, the plain language of § 215 applies to "any contract." And the term "advisory agreement" is actually a defined term in the IAA

§ 206(d) (15 U.S.C. § 80b-5(d)). Had Congress intended to limit the application of § 215 to only advisory agreements, it would have expressly done so. The fact that it did not means it intended for § 206(d) to apply more broadly. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003); *Goldstein*, 451 F.3d at n.6 (holding that the "anti-fraud provision [§ 206(4)] applies, however, to persons other than clients") (citations omitted).

   ***Second***, in *NexPoint*, the plaintiff's sole argument was that the advisory agreement was *performed* in violation of the IAA. Here, however, Plaintiffs have pled, in part, that the settlement agreement was *made* in violation of the IAA (e.g., via misrepresentation to advisees and investors and in violation of the fiduciary duties against self-dealing and cherry-picking). Therefore, inasmuch as *NexPoint* might apply here, it supports Plaintiffs' claim under § 215.

   ***Third***, the *NexPoint* decision's holding was predicated in part on cases construing the Exchange Act § 29's [15 U.S.C. § 78cc(b)] identical language to § 215. However, in *Regional Properties*, the Fifth Circuit expressly rejected the very construction of the language that the *NexPoint* court adopted, albeit as that language appears in § 29(a) [which the Circuit Court noted was identical to § 215 of the Advisors Act and should be read the same way]:

> Section 29(b) does not render void only those contracts that "by their terms" violate the Act....A statute that voided only contracts by which persons have agreed in express terms to

violate the Act would be so narrow as to be a waste of the congressional time spent in its enactment.

If section 29(b) voids only those contracts "which by their terms" …this interpretation involves reading the word, "necessarily," into the statute when it simply is not there….

Interpreting section 29(b) to render voidable those contracts that are either illegal when made or as in fact performed not only avoids these problems but also, in our view, most nearly comports with the language used in Section 29(b).

*Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 678 F.2d 552, 560-61(5th Cir. 1982) and *id.* at 558 (noting parallel language and intent between § 29(a) and IAA § 215). Thus, binding Fifth Circuit precedent holds that the language in § 215 means just what it says: that one who makes an illegal contract, *or who performs a legal contract in an illegal way*, can have their rights under the contract voided or forfeited.[7] To the extent that the Second Circuit's *NexPoint* opinion held

---

[7] This notion is wholly consistent with the common law which recognizes that as to a contract that can be performed through either lawful or unlawful means, one who performs through unlawful means voids not the whole contract but their rights under the contract. Professor Samuel Williston—the reporter of the original Restatement of Contracts—likewise explained that one who tenders illegal performance of an otherwise valid agreement (i.e., one which did not require unlawful performance) has no right to recovery under that contract:

> It is true that not every illegal act in performing a contract will vitiate recovery; . . . but if the performance rendered by the plaintiff is something in itself forbidden by law to be rendered the fact that the contract was in such general terms as to cover either such illegal performance or a lawful performance, and that both parties originally had no intention to have the performance unlawful, will surely not justify a recovery on the contract for the price of the unlawful performance . . . . [*It is*] [*n*]*ot the illegality of the contract, but the illegality of the plaintiff's conduct either in entering into or in performing the contract [that] is the true ground denying recovery* (italics added).

SAMUEL WILLISTON, THE LAW OF CONTRACTS § 1761 (1922). Decisions confirm this view of the

otherwise, it does not reflect the law in this Circuit or in this state.

### 2. Violations of the Advisers Act Give Rise to a Common Law Breach of Fiduciary Duty Claim

In their opening brief to this Court, Plaintiffs slashed a shortcut path to why violations of the IAA are actionable via state fiduciary duty claims, citing this Court's (literally, this Chamber's) prior decision that held that a violation of the Advisors Act § 206 is actionable via an action for common law fiduciary duty. Plaintiffs also showed how they had pled fiduciary duty breaches under Texas state law even in the absence of reliance on the Advisers Act. *See* Opening Br. 23-28 (and authorities cited therein). Defendant's responsive arguments quickly fail:

**<u>*First*</u>**, Defendant conceded that this Court's decision in *Douglass v. Beakley* held that one could bring a state law fiduciary duty claim based upon violations of the IAA. See Appellee Br. at 34-35; *see also Douglass v. Beakley,* 900 F. Supp. 2d 736, 751-52, n.16 (N.D. Tex. 2012) (Boyle, J.) (denying motion to dismiss state fiduciary duty claims because "the Amended Complaint clearly pleads a formal fiduciary relationship of some type" including "the *Transamerica* court's recognition that Section 206 of the IAA 'establishes federal fiduciary standards to govern the conduct of investment advisers[.]'"). But, Defendants argue, *Douglass* was not

---

common law. *E.g., Troutman v. Southern R. Co*., 441 F.2d 586, 591 n.2 (5th Cir. 1971); *Sayles v. Abilene*, 290 S.W. 239, 243 (Tex. App. 1926); *McConnell v. Commonwealth Pictures Corp.*, 166 N.E.2d 494, 497 (N.Y. 1960); *Town Planning & Eng'g Assocs., Inc. v. Amesbury Specialty Co.*, 342 N.E.2d 706, 710 n.4 (Mass. 1976).

binding on the lower court because it goes against the weight of law. What other law? Defendant cites NO CASE that has held that a breach of a fiduciary duty imposed by IAA § 206 is not actionable via a common law fiduciary duty claim.[8] On the other hand, a multitude of such cases agree with *Douglass*. *See* Opening Br. at 23-24 (and cases cited therein). Therefore, as a matter of law, the breaches of the IAA § 206 and Rule 206(4)-8 are actionable via Texas fiduciary duty law.

**<u>*Second*</u>**, Highland further contends that Texas would not recognize a fiduciary duty owed by an advisor to an advisee, but literally cites no case holding their way. Rather, it relies on two Fifth Circuit cases which—unremarkably—noted that because the IAA supplies a federal basis of fiduciary duty, there is no need to consult state law or defer to it. *See* Appellee Br. at 35. That is a hundred miles from the proposition that Texas law would not or does not recognize a similar or parallel fiduciary duty to the one in the IAA. The *Douglass* case recognized that the formal

---

[8] None of the opinions Defendant cited rebuts or even criticized *Douglass's* logic. The quotes are radically out of context. In *Laird v. Integrated Res.*, 897 F.2d 826, 837 (5th Cir. 1990), the Fifth Circuit implicitly rejected the argument Defendant makes here—that there is no state-imposed fiduciary duty; the court explained that, with a federal cause of action, whether there is a state fiduciary duty is irrelevant in light of the federally recognized one. That in no way holds that Texas does not have a fiduciary obligation imposed on investment advisors. In *Steadman v. SEC*, 603 F.2d 1126, 1142 (5th Cir. 1979), the Fifth Circuit was addressing the SEC's use of § 206 to confer to itself the right to adjudicate breaches of trust—the SEC had to allow the *courts* to adjudicate those. *Id.* at 1141-42. It too had nothing to do with whether a state law fiduciary duty existed. And in *Belmont v. MB Inv. Partners*, 708 F.3d 470 (3d Cir. 2013), the court conceded that "questionable or not," courts have roundly accepted that state fiduciary duty claims can be used to recover for violations of the IAA. *Id.* at 502-03.

---

relationship formed between an advisor and advisee meets the test under Texas law. 900 F. Supp. 2d at 751-52, n.16. Plaintiffs also cited a multitude of cases holding that Texas not only would but actually *has* recognized that the advisor/advisee relationship is a fiduciary one *as a matter of state law*. Opening Br. at 24-25 (and cases cited therein). Not only that, but Texas adopted the IAA as its own law for registered investment advisors who register with the SEC (further supporting the position that the formal relationship formed under the IAA gives rise to a state-recognized fiduciary duty)—an argument raised in the Opening Brief and completely ignored in the Appellee's Brief. *See id*. at n. 5 (and citations and discussion therein)

**_Third_**, Defendant contends that under the internal affairs doctrine, Guernsey law determines whether a fiduciary duty exists between an advisor and an advisee. Although Plaintiffs concede that Guernsey law would determine whether CLO Holdco, as an investor in HCLOF, would have *derivative* standing to enforce a breach of fiduciary duty owed to HCLOF,[9] the fiduciary duty owed by Defendant is not determined by Guernsey law because the internal affairs doctrine is irrelevant to that question. Defendant cites not a single case or authority for the premise that the internal affairs doctrine applies outside the internal affairs of HCLOF. And it is

---

[9] We again note that nowhere does the Defendant deny that HoldCo would have derivative standing under Guernsey law.

undisputed that Highland is not being sued in its capacity as an officer or director of HCLOF, whereas Plaintiffs cited several cases holding that the advisory relationship, to the extent it is governed by federal law, cannot be trumped by an internal affairs analysis. *See* Opening Brief at 29-31.

Moreover, Highland and the DAF have a direct advisory relationship. The internal affairs doctrine has nothing to do with that. It is undisputable that IAA § 206 and Rule 206(4)-8 supply a direct fiduciary duty to the DAF and to CLO Holdco. And the Fifth Circuit has held that, even where it otherwise applies, the internal affairs doctrine cannot supplant federally-imposed duties. And no case has held that the internal affairs doctrine applies to the relationship between an investor in a fund and one who is NOT an officer or director of the fund. In fact, all of the applicable cases go the other way.

**_Fourth_**, Defendant contends that the advisory agreement allowed Highland to compete with Plaintiffs. Not so. This was fully briefed in Plaintiffs' Opening Brief. *See* Opening Br. at p. 27 n.7. Defendant failed to address a single argument raised therein. Defendant instead selectively read passages from the Advisory Agreement and rehashed them as if the Opening Brief did not exist.[10] But, again, what those

---

[10] Highland attempts to confuse the Court by arguing that at the original hearing on the original motion to dismiss, Plaintiffs cited an earlier version of the Advisory Agreement, as if to suggest that Plaintiffs' current argument is somehow mooted by the amended version. However, in the Opening Brief, Plaintiffs cited the current version, and nothing in the Appellee's Brief disputes that.

provisions actually say is that if an investment opportunity is right for multiple advisees, Highland is not in breach if the DAF lost out on an opportunity *that went to another advisee*. *Id.* In other words, Highland may send investment opportunities that might be proper for the DAF to other people it advises, but it cannot keep them for itself—a violation of an unwaivable fiduciary duty.

**<u>Next</u>**, Defendant contends that if this Court finds that judicial estoppel applies, then that must mean that this Court agrees that Defendant did not violate the right of first refusal obligation in the HCLOF Members Agreement, and therefore there can be no fiduciary duty owed by Defendant to either Plaintiff. This Court has already ruled against this argument when it held that neither collateral nor judicial estoppel applied to the non-contract-based claims. Moreover, this Court's decision on judicial estoppel would be a procedural finding, not a substantive one on the merits. So there would be no factual finding to apply to the other claims.

Moreover, Defendant's argument conflates Highland's role as an advisor—which gives rise to its fiduciary duties, and its separate capacity as a co-signatory to the HCLOF Members Agreement, which gives rise to contractual duties. As argued above, Texas and federal law both impose a nonwaivable duty against self-dealing on advisers. So, while the Company Agreement may be relevant to whether Highland owed a contractual duty, it is irrelevant to whether it, *as an investment advisor*, owed fiduciary duties. Therefore, even if this Court were to affirm dismissal of the contract

claim on the merits, it is irrelevant to the fiduciary duty claims.

*__Finally__*, Defendant contends because HarbourVest sued Highland for rescission of its purchase of 49% of HCLOF, Highland had no duty to offer the HarbourVest Interest to the DAF or CLO Holdco because it was simply taking the interest back as part of its settlement—which it contends is not a "corporate opportunity," and therefore, there is no breach of fiduciary duty because there was "no corporate opportunity to divert." Appellee's Br. at 32. *Id*. Highland could have easily offered the HarbourVest Interest to Holdco for $22 million with full disclosure that it was worth over $42 million at the time. It did not. Instead, Highland took the HarbourVest Interest for itself and gained an immediate windfall. It is absurd to suggest that what Highland took was not a "corporate opportunity".

The argument also requires the Court to ignore the well-pleaded complaint, construe the allegations in Defendant's and not Plaintiffs' favor, and rewrite history. Highland did not sell HarbourVest its interest in HCLOF—Holdco did *on advice from its then-advisor, Highland.* Compl. ¶¶ 10-14 [R.000106-000107]. Highland "cannot rescind a contract they were not a party to[.]" *Weingarten Realty Investors v. Miller*, No. H-11-2522, 2012 U.S. Dist. LEXIS 99958, *4 (S.D. Tex., July 18, 2012).

Furthermore, the statement that "HarbourVest <u>sued</u> for rescission" is false. HarbourVest filed several proofs of claim. [R.00405-00464]. But *nowhere* does

Defendant even use the term "rescission" or "rescind."[11] Therefore, to use the rescission construct as a basis for arguing that Highland's purchase of the HarbourVest Interest was not a corporate opportunity is disingenuous at best.

### 3. Plaintiffs Still Have Not Pled a 10b-5 Claim

Defendant contends that Plaintiffs pleaded a claim under 15 U.S.C. § 78j and 17 C.F.R. 240.10b-5 ("Rule 10b-5"), triggering the PSLRA's pleading requirements. But Plaintiffs again do not assert a cause of action under Rule 10b-5, nor did they have to.[12]

Indeed, as Plaintiffs showed in their Complaint and explained in their Opening Brief, an investment advisor can be liable for violating Rule 10b-5 because an advisor has a duty to disclose and to obtain informed consent, the failure to do which will satisfy the misrepresentation and reliance elements. Opening Br. 32-33 (and cases cited therein). That, coupled with the allegations that Seery's

---

[11] [R.00405-00464]. The allegations are in ¶¶ 2-4 of the "Annex" to each HarbourVest Proof of Claim. *See, e.g.,* R.00461. Although HarbourVest filed multiple Proofs, these paragraphs did not change.

[12] It appears that perhaps Defendant seized on the allegation of "insider trading" and the statement that insider trading violates Rule 10b5 and Rule 10b5-1. (Compl. ¶ 69) [R.000115]. However, Defendant ignores the totality of the allegations leading up to that, which first point out that insider trading violates the IAA § 206 and 17 C.F.R. § 275.206(4)-7 (Compl. ¶ 66) [R.000115. The Complaint then recaps in Paragraph 69 that Highland "violated a multitude of [the IAA regulations, 17 C.F.R. part 275], **in addition to Rules 10b5 and 10b5-1**." (emphasis added). The mere mention of Rule 10b-5 is not enough. Nor is it a necessary predicate to finding liability under the Advisors Act or for breach of fiduciary duty.

Therefore, Defendant's framing of the issue is completely misleading. One could simply remove the reference to Rules 10b-5 and 10b5-1, and it would change nothing of Count I.

---

misrepresentations were reckless if not intentional (because they violated their own internal policies) and were in connection with the purchase and sale of security (Compl. p. 2 and ¶¶ 39-48) [R.000104, R.000110-00012], amounts to a violation of Rule 10b-5. Opening Br. 32-33 (and cases cited therein). Moreover, Highland's possession of inside information about the value of HCLOF and its assets (Compl. p. 2 and ¶¶ 76-78) [R.000104, R.000117] would also make its purchase of the HarbourVest Interest a violation of Rule 10b5-1, which does not require scienter or causation. *See* 17 C.F.R. § 240.10b5-1. Thus, even if Plaintiffs had pled a claim under Rule 10b-5 or 10b5-1, Plaintiffs' allegations satisfy the elements.

### 4. Defendant's Arguments on Fiduciary Breach and No Causation Are Misleading and Silly

Defendant contends that Plaintiffs have not pled a breach of fiduciary duty and have not pled causation or injury with sufficient particularity. But Plaintiffs have pled what they contend the violation of fiduciary duty or of the IAA is specifically—and have done so in spades. *E.g.,* Opening Br. at 25-29 (and record and legal citations therein). Also, Plaintiffs did plead damages as specifically as one can—the lost value of the asset minus what Holdco would have had to pay for it ($22 million). *See, e.g.,* Compl. ¶¶ 88, 100, 102, 143 [R.000119, R.000121, R.000127]. This is sufficient under Rules 8 and 9(b). *See* Opening Br. at 25-29 (and record and legal cites therein).

## B. NEGLIGENCE

Defendant's Response on the right-to-amendment issue[13] cannibalizes both its argument and the lower court's holding dismissing the negligence claim.

Specifically, Defendant concedes that the Complaint was filed prior to the effective date of the Final Plan—meaning, Plaintiffs have had no opportunity to fix any pleading defects if they exist. Moreover, Highland now concedes that the Complaint is being treated as an "administrative expense," Appellee's Br. at 42-44. It is beyond challenge that the term "administrative expense" under the *Reading* exception invoked by Highland includes torts like negligence (*see id., citing Reading Co. v. Brown*, 391 U.S. 471, 478-79 (1968)).

Notably, while the Final Plan discharge provision may facially appear to apply to an administrative expense request [R.003565], it cannot discharge valid administrative expense requests under § 503, because their allowance and payment is mandatory. 11 U.S.C. § 503 (noting that valid administrative expenses "shall" be allowed and paid); *In re Age Ref., Inc.*, 505 B.R. 447, 454 (W.D. Tex. Bankr. 2014) (noting mandatory nature of § 503 allowance). Art. IX.B/C [R.003565]) are subject to Article XI which effectively excludes administrative expense claims from the scope of discharge and exculpation. *See* Art.I.B.2 and Art.IX.B [R.003565,

---

[13] Plaintiffs incorporate their arguments in that section as they are germane to the amendment and discharge issue as well.

R.003570]. Indeed, Highland concedes at p. 42-43 that administrative expense claims have not been discharged or exculpated. Therefore, because it is part of the administrative expense request, the negligence claim has NOT been discharged or exculpated.

Moreover, even if the Plan exculpation applied to an amendment, the Plan exculpation does not apply to gross negligence. Art. IX.B [R.003565]. Defendant contends that gross negligence has neither been pled nor are the facts sufficient to make out such a pleading. The former is not true, and the latter was not a basis for the lower court's opinion and is also not true. The negligence claim follows the same factual allegations as the other tort claims, but accepts that any error by Highland may have been unintentional and is thus pled in the alternative. Highland is alleged to have known of the proper means of calculating the current interest, yet did not do so in violation of its own compliance policies. *E.g.*, Compl. p.2 ¶¶ 45-48 [R.000104, R.000111-00012].  Therefore, gross negligence is properly pled—and if amendment is necessary to expressly attach the label to it as such, or to more clearly state the facts, leave should be granted.

## C. JUDICIAL ESTOPPEL

Defendant completely ignores Plaintiffs' arguments on judicial estoppel.

***First***, there is no basis for concluding that CLO Holdco's withdrawal of the objection was intentionally inconsistent with bringing the current contract-based

claims to be decided on the merits. Holdco's withdrawal of the objection reflected its position on the *settlement*; it is not the same thing as saying that Holdco took the position that its claims lacked merit. Such a position, if communicated to the Court, was totally inadvertent given that when it withdrew the objection, Holdco had no idea that Highland was self-dealing and had misrepresented the true value of the HarbourVest interest—which underlies the current claims. (Compl. ¶¶ 27-52) [R.000109-112]. More importantly, Holdco's counsel explicitly declined to stipulate that the objection had no merit or that the right of first refusal had not been violated. *See* 9019 Corr'd Hrg Tr. at 18 [R.003687]. What more could he have done to make clear that all he was doing was allowing the *settlement* to move forward, but was not conceding the merits of the underlying claim? Defendant has never even bothered to address this simple issue. Therefore, the withdrawal of the objection cannot be construed as an intentional concession that the current contract claim has no merit.

**<u>Second</u>**, Defendant further ignores binding Fifth Circuit precedent which explains the material difference, and then reversed the application of judicial estoppel against a non-debtor *precisely because they had no duty to disclose*. *See Wells Fargo Bank, N.A. v. Titus Chinedu Operaji*, 698 F.3d 231, 236-37 (5th Cir. 2012). Because *Wells Fargo* stands for the proposition that judicial estoppel does not bar claims that a creditor failed to make in a complete disclosure in its proofs of

claim—which is a path for decision on the merits[14]—then certainly judicial estoppel cannot apply here given that the 9019 hearing was not a means to resolution on the merits—and in fact, the lower court admitted it could and would have approved the settlement even in the face of a valid objection. Accordingly, it is highly material that Holdco had no obligation to object—its withdrawal of the objection, combined with the fact that the withdrawal was expressly not a statement about the merits of the claim, is tantamount to not having made any objection in the first place.

*Third*, Defendant contends that Holdco had an incentive to "conceal" its claim due to the expected appreciation in value of the HarbourVest Interest. Appellee's Br. at 20. This is based on no pleading and zero evidence. For this to even begin to have legs, there would have to be evidence that Plaintiffs suspected that Highland had lied about the value of the interest, and wanted to "wait and see" whether it played out. There is no evidence of that. In fact, the evidence is to the contrary: *Highland* misrepresented the true value of the HarbourVest Interest and then reaped a windfall. Only Highland concealed its intentions to take advantage of an underpriced asset. To accuse Holdco of doing what Highland actually did is comical.

*Finally*, Defendant continues to argue that the withdrawal of the objection is

---

[14] The Fifth Circuit has expressly held that because of the "quick" and non-adversarial nature of a 9019 hearing, non-settling creditors are not even *supposed to* bring claims for damages in a 9019 hearing for resolution on the merits. *See In re Howe*, 913 F.2d 1138, 1145 (5th Cir. 1990) (and authorities cited therein).

the key issue. But it ignores, again, the facts that (i) the 9019 settlement approval hearing was not when or where the objection was going to be litigated on the merits anyway; (ii) the settlement could have been approved even if the objection was totally valid; (iii) the lower court admitted in the Order that given the breadth and complexity of the settlement and the need for finality, it would have been approved even had the objection not been withdrawn [R000065-000067]; and (iv) Defendant's admission that the current litigation is not about the reasonableness of the Settlement but is about damages caused by Highland.

At bottom, there is simply no evidence of intentional inconsistency here or intent to conceal the merits of the contract-related claims.

**D. B**REACH OF **C**ONTRACT AND **T**ORTIOUS **I**NTERFERENCE

Plaintiffs' contract argument is that the Members Agreement's right of first refusal (ROFR) is triggered by any offer or sale, and that because the Settlement Agreement was an offer and/or sale to Highland, and not to Highland's subsidiary, the Settlement Agreement facially violated the ROFR, and the subsequent assignment by Highland of its right to receive the HarbourVest interest is irrelevant and cannot undo the violation. Opening Br. at 40-41.

Highland contends that "HarbourVest transferred its interest directly to HCM's subsidiary." and because the Settlement Agreement is not an "offer" or a "sale," then there is no violation. The first premise is false.

The latter argument—that a Settlement Agreement wherein one settling party receives an asset from another in exchange for releases and $22 million in Class 8 creditor claims is not an "offer" or "sale" is preposterous. *See Burger-Phillips Co. v. Commissioner*, 126 F.2d 934, 936 (5th Cir. 1942) (rejecting argument similar to Highland's). Not surprisingly, Highland cites no case to support this argument. The Members Agreement says that the ROFR is triggered when one tries to "sell" their Shares. [R.004497-98]. The Settlement Agreement is with Highland, and only Highland is the offeree and purchaser of the HarbourVest Interest. [R004517-004534]. That fits the definition of "sell" like a glove—it is an exchange of property for consideration. *See 2925 Briarpark Ltd. v. Comm'r*, 163 F.3d 313, 318 (5th Cir. 1999).

Highland also for the first time contends that the contract action fails because Holdco did not plead damages. The argument is waived having not been raised or briefed below. But even so, Rule 8 applies to this cause of action, and Plaintiffs did plead damages—the lost value of the asset minus what Holdco would have had to pay for it ($22 million), and the attended costs and liabilities. *See, e.g.,* Compl. ¶¶ 88, 100, 102, 143 [R.000119, R.000121, R.000127].

As for tortious interference, the Opening Brief addressed the main arguments Highland raises. Highland newly contends that because it was a party to the HCLOF Members Agreement, it cannot be liable for interfering with its "own contract." But

this misconstrues the allegation: Highland is not being accused of inducing the breach of its own (or its affiliate's) contract. Highland is being accused of inducing *HarbourVest* to breach its independent obligations to *Holdco* under the Members Agreement. That allegation meets the specific elements of tortious interference to a "T" because Highland was not interfering with its "own contract." *See* RESTATEMENT (SECOND) OF TORTS, § 766. Defendant's contention that Plaintiffs have not pled proximate cause assumed a pleading burden greater than Rule 8 and in any event was not raised below.

## E. RACKETEERING INFLUENCED CORRUPT PRACTICES ACT ("RICO")

Defendant wants to have its cake and eat it too: it contends that the RICO claim is barred by 18 U.S.C. § 1964(c) ("no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962"), but then contends that nothing Defendant did is actionable as fraud in the purchase or sale of securities. Plaintiffs' position is this simple: Plaintiffs concede that violations of § 206 trigger the exclusion cited above under § 1964(c). Therefore, RICO should be dismissed without prejudice. But if the Court finds that, indeed, there is no way to find a violation of Rule 10b-5—even though it has not been pled—then Plaintiffs should be entitled to amend their RICO count. To dismiss the entire case in this fashion was simply a bridge too far.

## F. **PLAINTIFFS HAVE THE RIGHT TO AMEND**

Defendant completely ignores the fact that Plaintiffs have yet to be afforded a single opportunity to amend the Complaint, which is reversible error. *United States ex rel. Steury v. Cardinal Health, Inc*., 625 F.3d 262, 270-71 (5th Cir. 2010). Defendant contends that Rule 15 does not apply in this Adversary and that 11 U.S.C. § 503 bars amendment. Both are wrong.

**_First_**, Bankruptcy Rule 7015 expressly adopts FRCP 15 "in adversary proceedings." Therefore, Rule 15 is the correct procedural rule.

**_Second_**, Highland's position that any amendment would present a new "administrative expense claim" turns on the equivocal use of the term "claim." While conceding that the Complaint is already deemed an administrative expense request, (Appellee's Br. at 42-43) Highland—without any legal basis—contends that a new factual allegation or theory of recovery for the same injury is tantamount to a new "claim" that can be excluded by the administrative expense bar under § 503.

But § 503 does not use the term "Claim," which is defined in the bankruptcy code. It refers to a "request for payment of an administrative expense." 11 U.S.C. § 503. The Plan defines an "administrative expense" to include "the actual and necessary costs and expenses incurred after the petition date…under § 503" [R.003520]. Moreover, it defines a "Claim" as a "right to payment." Plan Art.I.B. [R.003522] (incorporating 11 U.S.C. § 101(5)). The Complaint—and any

amendments sought—relate to a single such expense or cost or right to payment: the loss of the value of the HarbourVest Interest and related liabilities, costs or losses.

Given the above definitions and provisions, so long as an amendment does not raise a new "request for payment of an administrative expense," there is no new "administrative expense" and no new "Claim." There is no reason why a single Claim or administrative expense can have multiple factual allegations and legal theories behind it. Indeed, the *Reading Exception* equates the "administrative expense" with the *injury* for which compensation is being sought, not with a single theory of recovery for that injury. *See, e.g., In re Krisu Hosp., LLC*, 2021 Bankr. LEXIS 788, *9-10 (N.D. Tex. Bankr. March 26, 2021) (noting that purpose of *Reading* exception is to avoid unfairness in "deny[ing] innocent victims compensation for injuries" post-petition) (citations omitted). Therefore, by definition, the addition of new factual allegations or even theories of recovery for the purposes of recovering the already pled Claim or "administrative expense" does not in itself amount to a new claim or a new "request for payment of an administrative expense," and therefore does not trigger § 503's bar.

Equally, no such proposed amendment should be deemed already discharged or exculpated. The request to amend, while conditioned on this Court's decision to dismiss one or more claims, is procedurally proper and required as a matter of justice and due process before dismissing any claim with prejudice.

**G. MOTION TO WITHDRAW THE REFERENCE**

Given what has been put before this Court in the Opening Brief and here, Plaintiffs respectfully request that the Court reconsider the *Renewed Motion to Withdraw the Reference* (Dkt. 128) [R.004400-004409]. Plaintiffs agree with Highland that this Court need only do so if it reverses any part of the dismissal order.

Dated: January 12, 2023

Respectfully submitted,

*/s/ Mazin A. Sbaiti*

**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
Sbaiti & Company PLLC
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367

Counsel for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2024, a true and correct copy of the foregoing was served via the Court's CM/ECF system on all counsel of record.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti


## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure ("Rule") 8015(h) as it contains 6,495 words, excluding the portions of the document exempted by Rule 8015(g).

I further certify that this document complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(7)(B) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14 point Times New Roman.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti