UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| HIGHLAND CAPITAL | § | |
| MANAGEMENT, L.P., | § | |
| | § | |
| Debtor, | § | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P. | § | |
| and CLO HOLDCO, LTD., | § | |
| | § | |
| | § | |
| Plaintiffs/Appellants, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-1503-B |
| | § | |
| | § | |
| HIGHLAND CAPITAL | § | |
| MANAGEMENT, L.P., et al., | § | |
| | § | |
| Defendants/Appellees. | § | |

<u>MEMORANDUM OPINION & ORDER</u>

Before the Court is Plaintiffs/Appellants The Charitable DAF Fund, L.P. ("DAF") and CLO Holdco, Ltd. ("CLO Holdco")'s appeal from the bankruptcy court's Memorandum Opinion and Order dismissing the case. For the reasons that follow, the bankruptcy court's Order is **AFFIRMED**.

I.

BACKGROUND

This is an appeal arising out of an adversary proceeding in a bankruptcy case. The Debtor, Highland Capital Management, L.P. ("HCM"), filed for Chapter 11 bankruptcy on October 16, 2019, in the United States Bankruptcy Court for the District of Delaware and that court transferred venue to the United States Bankruptcy Court for the Northern District of Texas. *In re Highland Cap.*

*Mgmt. L.P.*, 2022 WL 780991, at *1 (Bankr. N.D. Tex. Mar. 11, 2022). Appellants DAF and CLO Holdco (collectively, "Appellants") initiated this adversary proceeding based on conduct allegedly engaged in by Defendant/Appellee HCM during HCM's Chapter 11 bankruptcy proceedings. Doc. 18-2, R., 102.[1]

Appellants have alleged the following: In 2017, DAF–through its holding entity CLO Holdco–purchased 49.02% of the available shares of Highland CLO Funding, Ltd. ("HCLOF") based upon investment advice from HCM. Doc. 18-2, R., 107. Another entity, HarbourVest, acquired 49.98% of the HCLOF shares, while HCM and its employees acquired the remaining 1% of HCLOF. *Id.* The HCLOF Member Agreement contained a "Right of First Refusal" provision specifying that, when an HCLOF member, such as Appellants or HCM, intends to sell its HCLOF interest to a third-party, "the other members have the first right of refusal to purchase those interests pro rata for the same price that the member has agreed to sell." *Id.* at 120.

During HCM's bankruptcy proceedings, HarbourVest filed a proof of claims against HCM, seeking over $300 million in damages from HCM. *Id.* at 107–09. HCM offered to settle HarbourVest's claims by purchasing HarbourVest's 49.98% interest in HCLOF ("HarbourVest Settlement"). *Id.* at 110. CLO Holdco then filed an objection to the HarbourVest Settlement, contesting that the Settlement violated the Right of First Refusal provision in the HCLOF Member Agreement because CLO Holdco was not first given an opportunity to purchase HarbourVest's shares at the same price. Doc. 18-19, R. 4008–17. However, CLO Holdco later withdrew this objection at the Settlement Hearing. *Id.* at 4103–04. The Bankruptcy Court subsequently approved the HarbourVest Settlement. Doc. 18-20, R., 4246–52. At the time of the HarbourVest Settlement,

---

[1] The parties' record on appeal is a multi-volume record found in Document 18 on the docket. The record cites refer to the parties' pagination of that multi-volume record.

HCM provided evidence that the HarbourVest ownership interest in HCLOF was worth $22.5 million. Doc. 18-2, R., 117. Appellants later discovered, however, that the HarbourVest interest was actually worth "almost double that amount." *Id.*

The final reorganization plan in the underlying bankruptcy proceedings included an exculpatory provision, *see* Doc. 18-12, R., 2380, which provided that the parties could not bring any cause of action against the Debtors—here, HCM—arising from the underlying bankruptcy proceedings unless HCM engaged in "bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct." *Id.* at 2432–33.

Appellants assert five claims in this suit. Count 1 is a breach of fiduciary duty claim brought under § 206 of the Investment Advisors Act ("IAA"), 15 U.S.C. § 80b-6, based on the theory that HCM breached their fiduciary duties to Appellants by acquiring the HarbourVest ownership interest in HCLOF without first offering it to Appellants.[2] Doc. 18-2, R., 113–19. Count 2 is a breach of contract claim, alleging that the HarbourVest Settlement breached the Right of First Refusal provision found in the HCLOF Member Agreement. *Id.* at 120–21. Count 3 is a negligence claim based on the theory that HCM should have known its actions violated the IAA. *Id.* at 121–22. Count 4 is a civil Racketeer Influenced and Corrupt Organizations ("RICO") claim arising out of the HarbourVest Settlement. *Id.* at 122–26. And Count 5 is a claim for tortious interference with an existing contract arising out of the HCLOF Member Agreement's Right of First Refusal provision. *Id.* at 126–27.

---

[2] The parties dispute what breach of fiduciary claims Appellants asserted in their Complaint. The Court will address this dispute in the Analysis section of this Order.

This is the second time that this matter has been appealed to this Court. Previously, this Court affirmed in part and reversed in part the bankruptcy court's dismissal of the case based on collateral estoppel and judicial estoppel. *See In re Highland Cap. Mgmt., L.P.*, 643 B.R. 162, 167 (N.D. Tex. 2022) (Boyle, J.). This Court reversed the decision on collateral estoppel grounds and affirmed in part and reversed in part the decision on judicial estoppel grounds. *Id.* at 173–75. This Court then remanded the case to the bankruptcy court to make findings on the inadvertence element of judicial estoppel, and to otherwise rule on the merits of the case. *Id.* at 175.

After remand, HCM subsequently filed a Renewed Motion to Dismiss all five of Appellants' claims. *See* Doc. 18-18, R., 3844–81. The bankruptcy court granted the Renewed Motion to Dismiss in its entirety and dismissed all five claims with prejudice. *See* Doc. 18-1, R., 41. Appellants subsequently appealed this final order, arguing that the bankruptcy court erred in dismissing their claims, as well as not granting them leave to file an amended complaint. *See generally* Doc. 22, Appellants' Br. The Court considers the Appeal below.

## II.

## LEGAL STANDARDS

### A.    *Bankruptcy Appeal*

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court. 28 U.S.C. § 158(a). Because the district court functions as an appellate court in this scenario, it applies the same standards of review that federal appellate courts use when reviewing district court decisions. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992) (citations omitted). The Court reviews the bankruptcy court's conclusions of law *de novo* and the bankruptcy court's findings of fact for clear error. *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008).

B.      *Motion to Dismiss*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the appellant." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration in original) (citation omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the appellant pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (citation omitted).

## III.

## ANALYSIS

The Court first affirms the bankruptcy court's finding that judicial estoppel bars Counts 2 and 5 of Appellants' Complaint because Appellants took the position that the HarbourVest Settlement did not violate the Right of First Refusal provision. The Court next affirms the dismissal of the Appellants' breach of fiduciary duty claim. Section 206 of the IAA does not confer a private cause of action for damages, Appellants did not assert a claim under § 215 of the IAA, and Appellants did not plead any state law breach of fiduciary duty claims in their Complaint. Next, the Court affirms the bankruptcy court's dismissal of Appellants' negligence claim. Lastly, the Court concludes that the bankruptcy court did not err by not granting Appellants leave to amend their RICO claim or any of their other claims.

A.      *Judicial Estoppel Bars Counts 2 and 5 of the Complaint.*

Judicial estoppel is an equitable common law doctrine aimed at preventing a party from asserting an inconsistent legal position from a previous proceeding. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). "The purpose of the doctrine is 'to protect the integrity of the judicial process', by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest.'" *Id.* (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)) (alteration in original). A court examines three criteria when determining the applicability of judicial estoppel: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc).

This Court previously affirmed the bankruptcy court's finding that the first two elements of judicial estoppel are satisfied here–i.e., that Appellants previously took the position that the HarbourVest Settlement did not violate the Right of First Refusal provision and that this position led to the bankruptcy court accepting the HarbourVest Settlement. *In re Highland Cap. Mgmt., L.P.*, 643 B.R. 162, 173–75 (N.D. Tex. 2022) (Boyle, J.). But the Court remanded to the bankruptcy court to determine whether the third element, inadvertence, was also satisfied. *Id.* at 176. The Court now affirms the bankruptcy court's finding that Appellants did not act inadvertently, and that they are judicially estopped from pursuing Claims 2 and 5.

The Court reviews the bankruptcy court's decision to invoke judicial estoppel for abuse of discretion. *See Cox v. Richards*, 761 F. App'x 244, 246 (5th Cir. 2019). "A [bankruptcy] court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 311 (5th Cir. 2024) (citations omitted). The question of whether the third element of judicial estoppel, inadvertence, is satisfied is a finding of fact. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012). So, the Court must determine whether the bankruptcy court's conclusion as to the third element was clearly erroneous. *In re Chamber of Com. of United States of Am.*, 105 F.4th at 311. The Court concludes that it was not.

A party's failure to disclose a claim arising out of a bankruptcy case is only inadvertent if the party either (1) lacked knowledge of the claim or (2) the party has no motive to conceal the claims. *In re Coastal Plains, Inc.*, 179 F.3d at 210. Neither apply here. Appellants knew about the potential breach of contract claim and the potential tortious interference with a contract claim arising from the Right of First Refusal provision because CLO Holdco, one of the plaintiffs in this suit, initially

objected to the underlying HarbourVest Settlement on grounds that it would violate the Right of First Refusal provision. Doc. 18-19, R. 4014–15. Claims 2 and 5 accuse HCM of the same violations with respect to the same settlement. Doc. 18-2, R., 120–21, 126–27. Thus, their objection in the underlying bankruptcy proceedings establishes that Appellants had knowledge of these two claims.

The only argument Appellants raise in response to the bankruptcy court's finding is that they did not know the exact value of the HarbourVest interest—the assets that would be purchased by HCM in the HarbourVest Settlement. Doc. 22, Appellants' Br., 37–38. The bankruptcy court correctly rejected this argument because Appellants did not learn it could potentially assert a breach of contract claim or tortious interference with a contract claim after the HarbourVest Settlement was approved. Instead, Appellants only learned they could potentially recover *more damages* from asserting these claims after the HarbourVest Settlement was approved. Later learning that a claim could potentially lead to recovering more damages does not establish that they lacked knowledge of their claims as necessary to establish inadvertence. *Cf. Howard v. Am. Healthways Servs., LLC*, No. SA-13-CV-1164-XR, 2014 WL 2168401, at *3 (W.D. Tex. May 22, 2014) (concluding a debtor's failure to disclose a potential claim was not inadvertent when the debtor knew about the claim but did not know she could recover monetary damages if she pursued the claim).

Appellants offer no argument in response to the bankruptcy court's conclusion that Appellants would have plenty of motive to take inconsistent positions. *In re Coastal Plains, Inc.*, 179 F.3d at 210. The Court concludes that the bankruptcy court did not err in this finding either.

The Court ultimately concludes that the bankruptcy court did not abuse its discretion to apply judicial estoppel. Appellants offer numerous arguments for why the Court should not apply judicial estoppel in this case. Doc. 22, Appellants' Br., 35–39. However, the Court largely rejected

these arguments previously when it affirmed the bankruptcy court's finding that the first two elements of judicial estoppel were satisfied, *In re Highland Cap. Mgmt., L.P.*, 643 B.R. at 173–75, and the Court will not reconsider its previous decision here. And because there is no clear error as to the third element, the Court now concludes the bankruptcy court did not abuse its discretion in invoking the judicial estoppel doctrine. Accordingly, the Court affirms the bankruptcy court granting the Renewed Motion to Dismiss as to Counts 2 and 5 of Appellants' Complaint.

B.    *The Court Affirms the Bankruptcy Court Dismissing Count 1 of the Complaint.*

The Court next turns to whether Appellants stated a claim for breach of fiduciary duties. At the outset, the Court notes that the parties dispute the type of fiduciary duty claims Appellants have asserted in their Complaint. *Compare* Doc. 22, Appellants' Br., 12–13, *with* Doc. 27, Appellee's Br., 27, 32–33. After reviewing the Complaint, the Court concludes that Appellants have only asserted one breach of fiduciary duty claim under § 206 of the IAA.

Section 206 of the IAA imposes fiduciary duties upon investment advisors to act in the best interest of their investors. 15 U.S.C. § 80b-6; *see also Nat'l Ass'n of Priv. Fund Managers v. Sec. & Exch. Comm'n*, 103 F.4th 1097, 1103 (5th Cir. 2024) (noting that the IAA "recognizes a fiduciary duty between an investment adviser and his client"). Appellants go to great lengths discussing rules promulgated by the SEC defining the duties owed by investment advisors to their clients. Doc. 22, Appellants' Br., 16–20. However, § 206 does not confer a private cause of action. *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979). Thus, the bankruptcy court correctly dismissed this claim.

The main thrust of Appellants' arguments appears to be that HCM breached the fiduciary duties created by § 206 of the IAA, which then gives rise to an equitable claim under § 215. Doc.

32, Reply Br., 2, 4–5. The problem with this argument is that the Appellants failed to plead a § 215 claim in their Complaint. *See* Doc. 18-1, R., 32–33.

Section 215 of the IAA dictates that "[e]very contract made in violation of any provision of [the IAA] and every contract heretofore or hereafter made, the performance of which involves the violation of . . . [the IAA] . . . shall be void." 15 U.S.C. § 80b-15(b). The Supreme Court has interpreted § 215 of the IAA to render certain contracts void and to allow appellants to maintain "a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors*, 444 U.S. at 19. The Complaint never cites § 215 of the IAA—the breach of fiduciary duties section only discusses §§ 204 and 206 of the IAA, as well as various federal regulations interpreting § 206. Doc. 18-2, R., 113–19. Appellants also did not allege in their Complaint that the HarbourVest Settlement was void because it violated the IAA[3] and that, because the Settlement is void, Appellants were entitled to recover the HarbourVest interest under a theory of restitution. *Id.*; *see Transamerica Mortg. Advisors*, 444 U.S. at 19. Appellants, therefore, did not assert a claim under § 215 of the IAA.

Appellants' arguments that they properly asserted a § 215 claim in their Complaint fail. The argument goes as follows: Section 215 of the IAA allows for equitable relief if a contract violates the IAA, Appellants asked for disgorgement in their Complaint, thus they asserted a claim under § 215. Doc. 22, Appellants' Br., 21. This is far too attenuated. In Appellants' view, they properly asserted a claim under a statutory provision that was mentioned nowhere in their Complaint solely because

---

[3] The Complaint only alleges that any attempt by Defendants to waive their alleged breach of the IAA's fiduciary duties under are void. Doc. 18-2, R., 166. Appellants did not, however, allege that the HarbourVest Settlement itself or any other contract entered into by Defendants is void as would be necessary to assert a claim under § 215.

of one of five forms of relief[4] they claimed to be entitled to recover. Such a conclusion would effectively require defendants to look at each remedy a plaintiff requested and then by process of reverse engineering, determine every possible statutory provision that a plaintiff could conceivably use to seek that relief. Appellants entirely fail to explain how HCM would have fair notice of such a claim. *Cf. Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) (affirming a district court's decision to not consider a claim that was not mentioned in the complaint because the defendant was not given fair notice that plaintiff intended to assert such a claim).

Appellants also contest that the lower court "incorrectly assumed that Appellants were not seeking relief under § 215 of the [IAA] even though it featured prominently in Appellants' Response briefing." Doc. 22, Appellants' Br., 12. However, "[i]t is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." *United States ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Co., L.P.*, 491 F. Supp. 3d 220, 233 (N.D. Tex. 2020) (Kinkeade, J.) (citation and internal alterations omitted). As Appellants were not permitted to allege a new claim in their Response to HCM's Renewed Motion to Dismiss, any purported § 215 claim was not properly before the bankruptcy court. Therefore, the Court agrees with the bankruptcy court's conclusion that Appellants failed to plead a § 215 claim in their Complaint.

Next, the Court concludes that Appellants did not assert a state law breach of fiduciary duty claim in their Complaint. Appellants contend that a violation of a fiduciary duty owed under § 206 of the IAA can be used to maintain a state law breach of fiduciary duty claim. Doc. 22, Appellants' Br., 23–28. However, as with Appellants' purported § 215 claim, the Complaint does not assert a state law claim for breach of fiduciary duty. The breach of fiduciary duties section of the Complaint

---

[4] Appellants also asked for "damages, exemplary damages, attorneys' fees and costs." Doc. 18-1, R., 119.

exclusively discusses federal law and federal regulations, Doc. 18-2, R., 113–19, and the Complaint makes no mention of any state law regarding fiduciary duties. *Id.* at 103–13. Because Appellants did not assert a state law breach of fiduciary duty claim, the Court agrees with the bankruptcy court that they failed to state such a claim.

To the extent Appellants argue it is sufficient to assert a claim under state law through the Complaint's allegation that HCM owed them a duty of loyalty and a duty of care, Appellants are mistaken. As Appellants have argued throughout this lawsuit, *see* Doc. 18-21, R., 4427, the IAA imposes the duties of loyalty and care upon investment advisors. *SEC v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 286, 300 (E.D. Pa. 2021); *see also Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, 84 Fed. Reg. 33,669-01 (June 5, 2019). Thus, simply alleging HCM owed these fiduciary duties, while exclusively discussing federal law, is insufficient to have raised a state law claim in their Complaint. Because the Court concludes that Appellants did not assert a state law breach of fiduciary duty claim, the Court need not address the bankruptcy court's conclusion that Appellants failed to allege sufficient facts to state a claim for breach of fiduciary duty under Texas law or the parties' dispute about whether Texas law or Guerney law would apply.

In sum, Appellants only asserted a breach of a fiduciary duty claim under § 206 of the IAA, which does not confer a private cause of action. Thus, the Court affirms the bankruptcy court's dismissal of the Appellants' breach of fiduciary duty claim.

C.    *The Court Affirms the Bankruptcy Court's Dismissal of Count 3 of the Complaint.*

The bankruptcy court dismissed Count 3 of Appellants' Complaint—a negligence claim— because the final reorganization plan in the underlying bankruptcy proceedings includes an exculpation provision that prohibits Appellants from later asserting a negligence claim arising out

of HCM's conduct in the bankruptcy proceedings. Doc. 18-1, R., 34. On appeal, Appellants contend the dismissal was erroneous for two reasons. First, Appellants argue that the Plan's exculpation provision does not bar their negligence claim because they allege HCM breached a duty that is unwaivable under federal law. Doc. 22, Appellants' Br., 33–35. Second, Appellants argue the exculpation provision does not prohibit Appellants from asserting a claim for gross negligence, and Appellants properly pleaded such a claim. Doc. 22, Appellants' Br., 13. The Court disagrees on both counts.

First, the bankruptcy Plan's exculpation provision bars Appellants' negligence claim. Appellants argue that the Plan's exculpation provision does not bar their negligence claim because their negligence claim is premised on duties of care and loyalty imposed by § 206 of the IAA and that these duties are unwaivable under 15 U.S.C. § 80b-15. Doc. 22, Appellants' Br., 34–35. However, § 80b-15 only prevents an investment advisor from waiving the IAA's fiduciary duties by contract, *see* 15 U.S.C. § 80b-15, which is not what happened here. Instead, the bankruptcy court entered an order in the underlying bankruptcy proceedings that prevented Appellants from later asserting certain causes of action, including negligence, arising out of the HCM's conduct during the underlying bankruptcy proceedings. The Court concludes that a court order limiting future liability against an investment advisor does not serve as the investment advisor attempting to improperly waive its duties imposed by the IAA. Thus, the Plan's exculpation provision prohibits Appellants from asserting a negligence claim against HCM.

Further, the Court notes that Appellants have cited no authority supporting the proposition that a court order exculpating one party from future liability against the other party should be construed as a party attempting "to waive compliance with any provision of [the IAA]." *See* Doc. 22,

Appellants' Br., 34–35; 15 U.S.C. § 80b-15(a). Additionally, even if this was a waiver, Appellants also fail to cite any authority for their proposition that § 80b-15 can be used to render a court order unenforceable, thus the Court rejects this argument. Accordingly, the Court affirms the bankruptcy court dismissing the negligence claim.

Second, Appellants' argument that they asserted a claim for gross negligence fails. Appellants did not assert a claim for gross negligence in their Complaint. Count 3 of the Complaint only alleges that HCM was negligent—it does not allege gross negligence, nor can a claim for gross negligence be inferred from the allegations in the Complaint. Doc. 18-2, R., 121–22. Thus, HCM was not given fair notice that Appellants were asserting a claim for gross negligence. *Cf. Sims*, 894 F.3d at 643.

To make matters worse, Appellants did not argue before the bankruptcy court that they pled a claim for gross negligence. Doc. 18-21, R., 4439–40. Thus, any argument about whether the Complaint asserted a claim for gross negligence was not presented to the bankruptcy court, and this Court will not consider it on appeal. *Gilani v. Wynn Las Vegas, LLC*, 654 B.R. 238, 243 (E.D. Tex. 2023), *aff'd sub nom. Matter of Gilani*, No. 23-40477, 2024 WL 340822 (5th Cir. Jan. 30, 2024).

D.    *The Court Affirms the Bankruptcy Court Dismissing the RICO Claim with Prejudice.*

The bankruptcy court dismissed Appellants' civil RICO claim with prejudice, Doc. 18-1, R., 39, and Appellants only appear to argue that the bankruptcy court erred by dismissing this claim with prejudice without giving Appellants leave to amend. Doc. 22, Appellants' Br., 41–42. Before the bankruptcy court ruled on the Renewed Motion to Dismiss, Appellants attempted to use Federal Rule of Civil Procedure 41(a) to voluntarily dismiss their RICO claim without prejudice. Doc. 18-21, R., 4440. To the extent that Appellants argue they successfully dismissed their RICO claim under

Rule 41(a) *before* the bankruptcy court ruled on the Renewed Motion to Dismiss, Appellants are mistaken.

Rule 41(a) allows plaintiffs to unilaterally dismiss *actions* without prejudice if the opposing party has not yet filed an answer or a motion for summary judgment. FED. R. CIV. P. 41(a)(1)(A)(i). The Fifth Circuit has interpreted "action" to mean either a plaintiff's entire lawsuit or all of a plaintiff's claims against one defendant. *Williams v. Seidenbach*, 958 F.3d 341, 345 (5th Cir. 2020). Here, Appellants attempted to use Rule 41(a) to dismiss only one of their claims against HCM, which Rule 41(a) does not allow. *See id.* Thus, Appellants had not effectively dismissed their RICO claim without prejudice before the bankruptcy court ruled on the Renewed Motion to Dismiss.

E.    *The Bankruptcy Court Correctly Concluded It Would be Futile to Grant Leave to Amend.*

The Court lastly addresses Appellants' argument that they should have been granted leave to amend each of their counts. "Ordinarily, this Court reviews the denial of a motion for leave to file an amended complaint for abuse of discretion. However, where, as here, the district court's denial of leave to amend was based solely on futility, we apply a *de novo* standard of review." *Def. Distributed v. Platkin*, 55 F.4th 486, 494 (5th Cir. 2022) (quotation and alteration omitted); *see also In re Webb*, 954 F.2d at 1103–04. The Court concludes that it would be futile to grant Appellants leave to amend.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." FED. R. CIV. P. 15(a)(2); *see also*

FED. R. BANKR. P. 7015 (incorporating Federal Rule of Civil Procedure 15 into adversary proceedings filed in bankruptcy court). This liberal standard, however, is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

When deciding whether to grant leave to amend, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citations and emphasis omitted). Granting leave to amend a complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

While courts should ordinarily state their reasons for denying plaintiffs leave to amend, failing to do so is not error when "the record reflects ample and obvious grounds for denying leave to amend." *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). Appellants argue that the bankruptcy court erred by not addressing their request to amend the Complaint. Doc. 22, Appellants' Br., 43. However, the Court finds that this was not error because it is clear from the record that the bankruptcy court denied leave to amend because it would have been futile to do so. *See Mayeaux*, 376 F.3d at 426.

With regards to Count 1 of the Complaint, it would have been futile to grant Appellants leave to amend as their breach of fiduciary duties claim was brought solely under a statutory provision that does not confer a private cause of action. Thus, the Court finds it appropriate to

dismiss this claim with prejudice as no set of facts would be able to state a claim under § 206. *See Stripling*, 234 F.3d at 873.

With regards to Counts 2 and 5, the Court also finds granting leave to amend these claims would be futile because these claims are barred by judicial estoppel—thus any amended complaint would likewise fail to state a claim. *See Stripling*, 234 F.3d at 873.

With respect to Count 3, the final reorganization Plan's exculpation provision expressly prohibits Appellants from asserting a claim for negligence—thus, no set of facts could support a negligence claim. Doc. 18-12, R., 2432–33. Therefore, it would likewise have been futile to grant leave to amend their negligence claim under these circumstances. *See Stripling*, 234 F.3d at 873.

And with regards to Count 4—the civil RICO claim—Appellants did not propose to the bankruptcy court any new set of facts that would have shown the bankruptcy court that Appellants had a viable claim under the RICO statute. Doc. 18-21, R., 4440–41; *see Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (affirming a district court denying leave to amend when the plaintiffs "fail[ed] to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies" (citation omitted)). Appellants simply asked the bankruptcy court for leave to amend while saying it could plead "other acts" committed by HCM, but their request to amend did not identify any *specific* facts that would address the deficiencies in the RICO claim identified by the bankruptcy court. Doc. 18-21, R., 4441; *see also* Doc. 18-1, R., 35–39.

Accordingly, the Court affirms the bankruptcy court dismissing Appellants' Complaint with prejudice.

IV.

CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the bankruptcy court's opinion in its entirety. The appeal is **DISMISSED WITH PREJUDICE**.

    **SO ORDERED**.

    **SIGNED:** September 10, 2024.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE